# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KELLIN JOHNS, individually,** | ) | |
| **and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:20 cv 00264** |
| | ) | |
| **v.** | ) | **Judge Nancy Rosenstengel** |
| | ) | |
| **PAYCOR, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT PAYCOR, INC.'S ANSWER AND
### ADDITIONAL DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT

Defendant Paycor, Inc. ("Defendant"), by its attorneys Reed Smith LLP, for its Answer and Additional Defenses to Plaintiff's Class Action Complaint ("Complaint"), states as follows:

### NATURE OF THE ACTION

1.      Defendant Paycor, Inc. designs and manufactures fully-integrated time and attendance products and services for businesses ranging from small service companies to global corporations.

**ANSWER:**    Defendant admits it offers time and attendance products and payroll solution services to its clients.  Defendant denies the remaining allegations of Paragraph No. 1.

2.      Chief among the products Defendant manufactures are biometric solutions such as biometric time keeping devices, which feature fingerprint readers, hand geometry readers, and other similar devices (collectively referred to as "Biometric Time Clocks"), which require scans of users' biometric data[1] in order for those users to clock in and out of work.

---

[1] The term "biometric data" collectively refers to and encompasses biometric identifiers and biometric information as defined in 740 ILCS 14/10.

**ANSWER:**    Defendant admits that it offers timekeeping devices ("time clocks") which may include an optional fingerprint or hand geometry device.  Defendant denies the remaining allegations of Paragraph No. 2.

3.    Defendant's systems and software require users to scan their biometric identifiers, namely their fingerprints or hand geometry, when using Biometric Time Clocks as an authorization method to track their time worked. The Biometric Time Clock scans the worker's fingerprints or hand geometry to clock in and out of work shifts and meal breaks. Upon information and belief, once a user has registered his or her fingerprint or hand geometry with a Biometric Time Clock, that biometric identifier and related biometric information is enrolled and stored in Defendant's database(s).

**ANSWER:**    Defendant admits that some time clocks that Defendant offers include devices that may, but need not, scan worker's fingerprints or hand geometry, but denies the remaining allegations of Paragraph No. 3.

4.    While there are benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints and handprints are unique, permanent biometric identifiers associated with the individual. This exposes individuals who use Paycor's Biometric Time Clocks to serious and irreversible privacy risks. For example, if a database containing fingerprints, hand geometry, or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed — like in the recent Equifax, Facebook/Cambridge Analytica, and Suprema data breaches or misuses — individuals have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

**ANSWER:**     Defendant admits there are benefits to using time clocks equipped with optional fingerprint or hand geometry reading devices.  Defendant denies the remaining allegations of Paragraph No. 4.

5.     Biometrics are not relegated to esoteric corners of commerce. Many businesses and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

**ANSWER:**     Defendant admits different businesses may use time clocks with optional fingerprint or hand geometry reading devices, and that certain consumer and financial products may incorporate biometric applications.  Defendant denies the remaining allegations of Paragraph No. 5.

6.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., Cybersecurity Incidents (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

**ANSWER:**     Defendant admits the webpage referenced in Paragraph No. 6 contains a June 2015 United States Office of Personnel Management ("OPM") cybersecurity incident report, but denies this Paragraph accurately characterizes the OPM's report.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 6.

7.     An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data — including fingerprints, iris scans, and facial photographs — of over a billion

Indian citizens. See Vidhi Doshi, A Security Breach in India Has Left a Billion People at Risk of Identity Theft, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has- left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

**ANSWER:**    Defendant admits the webpage referenced in Paragraph No. 7 contains a January 4, 2018 Washington Post report, but denies this Paragraph accurately characterizes the Washington Post's report.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 7.

8.    In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details, The Tribune (Jan. 4, 2018), available  at  http://www.tribuneindia.corn/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

**ANSWER:**    Defendant admits the webpage referenced in Paragraph No. 8 contains a January 3, 2018 Indian newspaper report, but denies this Paragraph accurately characterizes this report. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 8.

9.    In August 2019, it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. Josh Taylor, Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms, The Guardian (Aug. 14, 2019),

available at https://www.theguardian.com/technology/2019/aug/14/major-breach-found-i n-biometrics-system-used-by-banks-uk-police-and-defence-firms.

**ANSWER:** Defendant admits the webpage referenced in Paragraph No. 9 contains an August 14, 2019 report by The Guardian, but denies this Paragraph accurately characterizes this report. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 9.

10. In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches,* The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/.

**ANSWER:** Defendant admits the webpage referenced in Paragraph No. 10 contains a July 7, 2019 Washington Post report, but denies this Paragraph accurately characterizes this report. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 10.

11. This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests,* Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

**ANSWER:**    Defendant admits the webpage referenced in Paragraph No. 11 contains a July 9, 2019 Jacksonville Journal-Courier report, but denies this Paragraph accurately characterizes this report.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 11.

12.    Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.,* specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

**ANSWER:**    Defendant admits the Illinois Biometric Information Act ("BIPA" or the "Statute"), including the Act's express legislative findings and intent, is codified at 740 ILCS 14/1, *et seq*., but denies the remaining allegations of Paragraph No. 12.

13.    Notwithstanding the clear and unequivocal requirements of the law, Paycor disregards Biometric Time Clock users' statutorily protected privacy rights and unlawfully collects, captures, otherwise obtains, stores, maintains, and uses their biometric data in violation of BIPA. Specifically, Paycor has violated and continues to violate BIPA because it did not and continues not to:

  a. Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their biometric data was being collected, captured, otherwise obtained, stored, maintained and used, as required by BIPA;

  b. Receive a written release from Plaintiff and others similarly situated to collect, capture, otherwise obtain, store, or use their biometric data, as required by BIPA;

  c. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data, as required by BIPA; and

  d. Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric data to a third party, as required by BIPA.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 13.

14.     Upon information and belief, Defendant improperly discloses its Biometric Time Clock users' fingerprint and hand geometry data to other, currently unknown, third parties, including but not limited to Defendant's clients and/or other third parties that host biometric data in their data center(s).

**ANSWER:**    Defendant denies the allegations of Paragraph No. 14.

15.     Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs (sic) and other similarly-situated individuals' biometric data and has not and will not destroy their biometric data, as required by BIPA.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 15.

16.     Biometric Time Clock users have a proprietary right to control their biometric identifiers and information. In failing to comply with the requirements of BIPA, Defendant intentionally interferes with each user's right of possession and control over their valuable, unique, and permanent biometric data.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 16.

17.     Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 17.

18.     Accordingly, Plaintiff seeks an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

**ANSWER:**    Defendant admits Plaintiff purports to seek declaratory, legal, and statutory relief in the form of an Order described in Paragraph No. 18, but denies Plaintiff is entitled to such Order, or to any relief whatsoever.

## PARTIES

19.     Plaintiff Kellin Johns is a natural person and a citizen of the State of Illinois.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 19.

20.     Defendant Paycor, Inc. is a Delaware corporation that is registered to do business in Illinois.

**ANSWER:**    Defendant admits the allegations of Paragraph No. 20.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over Defendant pursuant to 735 ILCS 5/2-209 because it conducts business transactions in Illinois and committed the statutory violations alleged herein in Madison County and throughout Illinois.

**ANSWER:**    Defendant admits this Court has jurisdiction over it, but denies the remaining allegations of Paragraph No. 21.

22.     Venue is proper in Madison County because Defendant conducts business transactions in Madison County, and because Defendant committed the statutory violations alleged herein in Madison County and throughout Illinois.

**ANSWER:**    Defendant admits on information and belief that it has conducted business in Madison County, but is without knowledge or information sufficient to form a belief as to whether venue is proper, and denies the remaining allegations of Paragraph No. 22.

## FACTUAL BACKGROUND

**I.      The Biometric Information Privacy Act.**

23.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS

8

14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 23.

24.    In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records — which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data — could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 24.

25.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

**ANSWER:**    Defendant admits BIPA was enacted in 2008, but denies BIPA—specifically Section 5—contains the quoted language in Paragraph No. 25.  *See* 740 ILCS 14/1, *et seq*.  Defendant is without knowledge or information sufficient to form a belief about the truth of

the allegation that the quoted language in Paragraph No. 25 is contained in a transcript of 2008 Illinois House regular session proceedings.

26.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

**ANSWER:**    Defendant admits Section 20 of BIPA sets forth the relief available to a prevailing party in a private right of action under BIPA (*see* 740 ILCS 14/20**)**, but denies Paragraph No. 26 fully and accurately recites or characterizes Section 20, and further denies Plaintiff is entitled to any relief under Section 20 or under any other Section of BIPA whatsoever.

27.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.  Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.  Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.  Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

**ANSWER:**    Defendant admits Section 15(b) of BIPA (*see* 740 ILCS 14/15(b)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 27 fully and accurately recites or characterizes Section 15(b), and further denies Section 15(b) is applicable.

28.    BIPA specifically applies to individuals who work or reside in the State of Illinois.

**ANSWER:**    Defendant denies Paragraph No. 28.

29.    Biometric identifiers include retina and iris scans, voiceprints, scans of face geometry, and — most importantly here — scans of fingerprints and hand geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

**ANSWER:**    Defendant admits Section 14/10 of BIPA sets forth definitions of certain terms, including definitions for "biometric identifiers" and "biometric information" (*see* 740 ILCS 14/10), but denies Paragraph No. 29 fully and accurately recites or characterizes these definitions. Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 29.

30.    BIPA also establishes standards for how entities must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

**ANSWER:**    Defendant admits Section 15(c)-(d) of BIPA (*see* 740 ILCS 14/15(c)-(d)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as those terms are defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 30 fully and accurately recites or characterizes Section 15(c)-(d), and further denies Section 15(c)-(d) is applicable.

31.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written, publicly-available policy establishing a retention schedule and

guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

**ANSWER:**    Defendant admits Section 15(a) and (c) of BIPA (*see* 740 ILCS 14/15(a) and (c)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as those terms are defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 31 fully and accurately recites or characterizes Section 15(a)-(c), and further denies Section 15(a)-(c) is applicable.

32.    The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and — most significantly — the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

**ANSWER:**    Defendant admits Section 5 of BIPA sets forth certain legislative findings and intent, but denies Paragraph No. 32 fully quotes or accurately characterizes the legislative findings and intent set forth in Section 5, (*see* 740 ILCS 14/5), and further denies the remaining allegations of this Paragraph.

33.    BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometric data. BIPA also protects individuals' rights to know the precise nature for which their biometric identifiers and information are being obtained and used, how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA

strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

**ANSWER:**   Defendant admits Section 20 of BIPA sets forth the statutory requirements for a private right of action under BIPA (*see* 740 ILCS 14/20**)**, but denies the remaining allegations of Paragraph No. 33.

34.    Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric identifiers and biometric information secure. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief about the truth of the allegation of Paragraph No. 34.

## II.    Defendant Violates the Biometric Information Privacy Act.

35.    By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

**ANSWER:**   Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 35.

36.    However, Defendant failed to take note of the shift in Illinois law governing the collection, obtainment, storage, use and dissemination of biometric data. As a result, Defendant continues to collect, obtain, store, use and disseminate Illinois citizens' biometric data in violation of BIPA.

**ANSWER:**   Defendant denies the allegations of Paragraph No. 36.

37.    Specifically, when individuals first use Defendant's Biometric Time Clock, they are required to have their fingerprint or hand geometry scanned in order to enroll them in the Paycor database(s).

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 37.

38.    Unfortunately, Defendant fails to inform these individuals that they are collecting, capturing, obtaining, storing or using their sensitive biometric data, the extent of the purposes for which they do so, or to whom the data is disclosed, if at all.

**ANSWER:**    Defendant denies BIPA is applicable, and further denies the allegations of Paragraph No. 38.

39.    Defendant fails to maintain a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' biometric identifiers and information when the initial purpose for collecting, capturing or obtaining their biometric data is no longer relevant, as required by BIPA.

**ANSWER:**    Defendant denies BIPA is applicable, and further denies the allegations of Paragraph No. 39.

40.    In addition, Defendant profits from the use of individuals' biometric data. For instance, Paycor markets its Biometric Time Clocks to employers as superior options to traditional time clocks, which can be deceived by "buddy punching" — where one employee punches in to or out of a time clock for another (absent) employee.[2] By marketing its clocks in this manner, Defendant obtains a competitive advantage over other biometric time clock companies and secure profits from their use of biometric data, all while failing to comply with the minimum requirements for handling users' biometric data established by BIPA.

---

[2] *Paycor, Don't Fall Victim to Time Theft*, available at https://www.paycor.com/resource-center/dont-fall-victim-to-time-theft (listing "biometric time clocks that read employee fingerprints or handprints to prevent buddy punching" as a way to minimize time theft).

**ANSWER:**    Defendant admits that https://www.paycor.com/resource-center/dont-fall-victim-to-time-theft contains the language quoted in footnote 2, but denies the remaining allegations of Paragraph No. 40.

41.    The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct — where individuals are aware that they are providing biometric data but not aware to whom or for what purposes they are doing so — is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as fingerprints and hand geometry, who exactly is collecting or obtaining their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and these individuals' statutory rights, and instead unlawfully collects, captures, obtains, stores, uses and disseminates their biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegation relating to the Pay By Touch bankruptcy and its purported impact on Illinois citizens and legislators.  Defendant denies the remaining allegations of this Paragraph No. 41.

42.    Remarkably, Defendant has created the same situation that Pay By Touch did by assembling a database of biometric data through broadly deployed fingerprint and hand geometry readers, but failed to comply with the law specifically designed to protect individuals whose biometrics are collected in these circumstances. Defendant disregards these obligations and Illinois citizens' statutory rights and instead unlawfully collects, captures, obtains, stores, uses, and disseminates individuals' biometric identifiers and information without ever receiving the individual's informed written consent as required by BIPA.

15

**ANSWER:** Defendant denies the allegations of Paragraph No. 42.

43.    Plaintiff and others similarly situated are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when any other third-party entity, that has received their biometric data, folds.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 43.

44.    Because Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection or obtainment of biometric data, individuals are left in the dark regarding the extent to which Defendant stores, uses, sells, discloses, re-discloses, or otherwise disseminates their biometric data to whom and when. Moreover, Plaintiff and others similarly situated are not told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations Paragraph No. 44.

45.    These violations have raised a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

**ANSWER:** Defendant denies the allegations of Paragraph No. 45.

46.    By and through the actions detailed above, Defendant disregarded Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

**ANSWER:** Defendant denies the allegations of Paragraph No. 46.

**III.    Plaintiff Kellin Johns' Experience**

47.    Plaintiff Kellin Johns worked for Club Fitness, Inc. from 2013 to 2017 in six Illinois locations: Alton, Wood River, Granite City, Collinsville, Fairview Heights, and Belleville.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 47.

48.    Paycor provided Club Fitness with time and attendance hardware and software, including Biometric Time Clocks. As part of its services, Paycor collected and managed the biometric data of Mr. Johns and other Club Fitness employees.

**ANSWER:**    Defendant admits that for a short period of time it provided payroll services for certain Club Fitness locations that included a time clock equipped with an optional fingerprint reading device.  Defendant denies the remaining allegations of Paragraph No. 48.

49.    Plaintiff was required to scan his fingerprint on Paycor's Biometric Time Clock at Club Fitness so it could be used as an authentication method to track his time worked.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 49.

50.    Defendant subsequently stored Plaintiffs (sic) fingerprint biometric data in its databases.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the allegations of Paragraph No. 50.

51.    Plaintiff has never been informed of the specific limited purposes or length of time for which Defendant collects, captures, obtains, stores, and/or uses his biometric data.

**ANSWER:**    Defendant denies it collected, captured, obtained, stored, and/or used Plaintiff's biometric data as alleged by Plaintiff.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 51.

52.    Plaintiff has never been informed of any written, publicly available biometric data retention policy developed by Defendant, nor has he ever been informed of whether Defendant will ever permanently delete his biometric data.

**ANSWER:**    Defendant denies it possessed, as alleged by Plaintiff, his biometric data such that it could ever delete it.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 52.

53.    Plaintiff has never been provided with, nor ever signed, a written release allowing Defendant to collect, capture, obtain, store, use and/or disseminate his biometric data.

**ANSWER:**    Defendant denies it collected, captured, obtained, stored, used and/or disseminated Plaintiff's biometric data as alleged by Plaintiff.  Defendant is without knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph No. 53.

54.    Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 54.

55.    No amount of time or money can compensate Plaintiff if his biometric data is compromised by the lax procedures through which Defendant collected, captured, obtained, stored, and/or used his and other similarly-situated individuals' biometrics. Moreover, Plaintiff would not have provided his biometric data to Defendant if he had known that Defendant would retain such information for an indefinite period of time without his consent.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 55.

56.    A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.,* 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved"(sic) person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

**ANSWER:**    Defendant admits the quoted language is contained in *Rosenbach v. Six Flags Ent. Corp.*  2019 IL 123186, ¶ 40, but denies Paragraph No. 56 is a complete and accurate statement of law.

57.    Nonetheless, Plaintiff is aggrieved because he suffered an injury-in-fact based on Defendant's violations of his legal rights. Defendant has intentionally interfered with Plaintiff's right to possess and control his own sensitive biometric data. Additionally, Plaintiff suffered an invasion of a legally protected interest when Defendant secured his personal and private biometric data at a time when it had no right to do so, a gross invasion of his right to privacy. B IPA protects individuals like Plaintiff from this precise conduct. Defendant had no lawful right to obtain this data or share it with third parties absent a specific legislative license to do so.

**ANSWER:**    Defendant denies Paragraph No. 57.

58.    As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach,* 2019 IL 123186, ¶ 40.

**ANSWER:**    Defendant admits Plaintiff purports to seek statutory damages, but denies Plaintiff is entitled to statutory damages or any damages whatsoever, and denies the remaining allegations of Paragraph No. 58.

## CLASS ALLEGATIONS

59.    Pursuant to the Illinois Code of Civil Procedure, 735 ILCS 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.,* to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

**ANSWER:**    Defendant admits Plaintiff purports to bring this action under Illinois law on behalf of himself and as a representative of a putative class of similarly situated individuals for

alleged violations of BIPA, but denies certification of the class is appropriate, denies Defendant

violated BIPA, and denies Plaintiff or any putative class members are entitled to the relief

requested or any relief whatsoever.

60.     As discussed *supra,* Section 14/15(b) of BIPA prohibits a company from, among

other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a

person's or a customer's biometric identifiers or biometric information, unless it ***first (1)*** informs

the individual in writing that a biometric identifier or biometric information is being collected,

obtained or stored; (2) informs the individual in writing of the specific purpose and length of time

for which a biometric identifier or biometric information is being collected, obtained, stored, and

used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or

biometric information. 740 ILCS 14/15.

**ANSWER:**     Defendant admits Section 15(b) of BIPA (*see* 740 ILCS 14/15(b)) sets forth

certain regulations relating to "biometric identifiers" and "biometric information," as defined in

Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 60 fully and

accurately recites or characterizes Section 15(b), and further denies Section 15(b) is applicable.

61.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735

ILCS 5/2-801, for the following class of similarly situated individuals under BIPA:

> All in individuals working in the State of Illinois who had their fingerprints,
> hand geometry, or other biometric data collected, captured, received, or
> otherwise obtained or disclosed by Defendant during the applicable
> statutory period.

**ANSWER:**     Defendant admits Plaintiff purports to bring this action on behalf of himself

and as a representative of a putative class of similarly situated individuals as set forth in Paragraph

No. 61, but denies certification of the class is appropriate, denies Defendant violated BIPA, and

denies Plaintiff or any putative class members are entitled to the relief requested or any relief whatsoever.

62.    This action is properly maintained as a class action under 735 ILCS 5/2-801 because:

      A.    The class is so numerous that joinder of all members is impracticable;

      B.    There are questions of law or fact that are common to the class;

      C.    Plaintiff's claims are typical of the claims of the class; and,

      D.    Plaintiff will fairly and adequately protect the interests of the class.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 62.

## Numerosity

63.    The total number of putative class members exceeds fifty (50) individuals. The exact number of class members may easily be determined from Defendant's records.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 63.

## Commonality

64.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

      A.    Whether Defendant collected, captured, maintained, stored or otherwise obtained Plaintiff's and the putative Class members' biometric identifiers or biometric information;

      B.    Whether Defendant properly informed Plaintiff and the Class members of its purposes for collecting, using and storing their biometric identifiers or biometric information;

21

C.      Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use and store Plaintiff's and the putative Class members' biometric identifiers or biometric information;

D.      Whether Defendant has disclosed or re-disclosed Plaintiff's and the putative Class members' biometric identifiers or biometric information;

E.      Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the putative Class members' biometric identifiers or biometric information;

F.      Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

G.      Whether Defendant complies with any such written policy;

H.      Whether Defendant's violations of BIPA have raised a material risk that Plaintiff's and the putative Class members' biometric data will be unlawfully accessed by third parties;

I.      Whether Defendant used Plaintiff's and the putative Class members' fingerprints and hand geometry to identify them; and

J.      Whether Defendant's violations of BIPA were committed negligently; and

K.      Whether Defendant's violations of BIPA were committed intentionally or recklessly.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 64.

65.    Plaintiff anticipates that Defendant will raise defenses that are common to the class.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph No. 65.

**Adequacy**

66.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff,

moreover, has retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**ANSWER:**    Defendant is without knowledge or information sufficient to form a belief about the truth of the allegations of this Paragraph No. 66, but Defendant denies that class certification is appropriate.

## Typicality

67.    The claims asserted by Plaintiff are typical of the class members he seeks to represent. The Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 67.

68.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS 5/2-801.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 68.

## Predominance and Superiority

69.    The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 69.

70.    Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

**ANSWER:**    Defendant denies that class certification is appropriate, and denies the allegations of Paragraph No. 70.

### FIRST CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

71.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**    Defendant incorporates the foregoing answers as if fully set forth herein.

72.    BIPA mandates that companies that collect, capture or otherwise obtain biometric data establish and maintain a satisfactory biometric data retention — and, importantly, deletion — policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most

24

three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

**ANSWER:**    Defendant admits Section 15(a) of BIPA (*see* 740 ILCS 14/15(a)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as those terms are defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 72 fully and accurately recites or characterizes Section 15(a), and further denies Section 15(a) is applicable.

73.    Defendant fails to comply with these BIPA mandates.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 73.

74.    Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant admits it is a corporation registered to conduct business in Illinois, but denies BIPA is applicable.

75.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections II and III, *supra. See* 740 ILCS 14/10.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 75.

76.    Plaintiff's and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 76.

77.    Defendant failed to implement and maintain a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information, as specified by BIPA. *See* 740 ILCS 14/15(a).

**ANSWER:**    Defendant denies Section 15(a) of BIPA is applicable, and further denies the allegations of Paragraph No. 77.

78.    Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiff's and the Class members' biometric data, and have not and will not destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of an individual's last interaction with the company.

**ANSWER:**    Defendant denies Section 15(a) of BIPA is applicable, and further denies the allegations of Paragraph No. 78.

79.    On behalf of himself and the Class, Plaintiff seeks: (I) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:**    Defendant admits Plaintiff, on behalf of himself and a putative class of individuals similarly situated, purports to seek the declaratory, legal, and statutory relief as alleged in Paragraph No. 79, but denies Plaintiff and the putative class are entitled to such relief, or to any relief whatsoever.

## SECOND CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed
### Written Consent and Release Before Obtaining Biometric Identifiers or Information

80.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**    Defendant incorporates the foregoing answers as if fully set forth herein.

81.    BIPA requires companies to obtain informed written consent from individuals before collecting, capturing, or otherwise obtaining their biometric data. Specifically, BIPA makes

it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] *first:* (1) informs the subject...in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject...in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information..." 740 ILCS 14/15(b) (emphasis added).

**ANSWER:**    Defendant admits Section 15(b) of BIPA (*see* 740 ILCS 14/15(b)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 81 fully and accurately recites or characterizes Section 15(b), and further denies Section 15(b) is applicable.

82.    Defendant fails to comply with these BIPA mandates.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 82.

83.    Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant admits it is a corporation registered to conduct business in Illinois, but denies BIPA is applicable.

84.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections II and III, *supra. See* 740 ILCS 14/10.

**ANSWER:**    Defendant admits Plaintiff and the putative class purport to be individuals similarly situated alleging violations of BIPA as set forth in Sections II and III of the Complaint, but denies certification of the class is appropriate, denies Defendant violated BIPA, and denies the allegations of Paragraph No. 84.

85.    Plaintiff's and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 85.

86.    Defendant systematically and automatically collected, used and stored Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

**ANSWER:**    Defendant denies Section 15(b)(3) of BIPA is applicable, and further denies the allegations of Paragraph No. 86.

87.    Defendant never informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated nor did Defendant inform Plaintiff and the Class members in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

**ANSWER:**    Defendant denies Section 15(b)(1)-(2) of BIPA is applicable, and further denies the allegations of Paragraph No. 87.

88.    By collecting, capturing, obtaining, storing, using and/or disseminating Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Defendant violated their rights to privacy in their biometric identifiers or biometric information, as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

**ANSWER:**    Defendant denies BIPA is applicable, and further denies the allegations of Paragraph No. 88.

89.    On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of

biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless 'violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:**    Defendant admits Plaintiff, on behalf of himself and a putative class of individuals similarly situated, purports to seek the declaratory, legal, and statutory relief as alleged in Paragraph No. 89, but denies Plaintiff and the putative class are entitled to such relief, or to any relief whatsoever.

**THIRD CAUSE OF ACTION**
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

90.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

**ANSWER:**    Defendant incorporates the foregoing answers as if fully set forth herein.

91.    BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

**ANSWER:**    Defendant admits Section 15(d)(1) of BIPA (*see* 740 ILCS 14/15(d)(1)) sets forth certain regulations relating to "biometric identifiers" and "biometric information," as those terms are defined in Section 14/10 of the Statute (*see* 740 ILCS 14/10), but denies Paragraph No. 91 fully and accurately recites or characterizes Section 15(d)(1), and further denies Section 15(d)(1) is applicable.

92.    Defendant fails to comply with this BIPA mandate.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 92.

93.    Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant admits it is a corporation registered to conduct business in Illinois, but denies BIPA is applicable.

94.    Plaintiff and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections 11 and III, *supra. See* 740 ILCS 14/10.

**ANSWER:**    Defendant denies the allegations of Paragraph No. 94.

95.    Plaintiff's and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

**ANSWER:**    Defendant denies BIPA is applicable, and further denies the allegations of Paragraph No. 95.

96.    Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiff's and the Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

**ANSWER:**    Defendant denies Section 15(d)(1) of BIPA is applicable, and further denies the allegations of Paragraph No. 96.

97.    By disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class members' biometric identifiers and biometric information as described herein, Defendant violated their rights to privacy in their biometric identifiers or biometric information, as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

**ANSWER:**    Defendant denies BIPA is applicable, and further denies the allegations of Paragraph No. 97.

98.    On behalf of himself and the Class; Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ICS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**ANSWER:**    Defendant admits Plaintiff, on behalf of himself and a putative class of individuals similarly situated, purports to seek the declaratory, legal, and statutory relief as alleged in Paragraph No. 98, but denies Plaintiff and the putative class are entitled to such relief, or to any relief whatsoever.

## DEFENDANT PAYCOR, INC.'S ADDITIONAL DEFENSES

### First Additional Defense
### (Lack of Standing)

Plaintiff's Class Action Complaint is barred because Plaintiff and the putative class members lack standing to bring their claims, as neither Plaintiff nor putative class members have suffered the type of concrete and particularized injury or harm required by Illinois law.

### Second Additional Defense
### (Statute of Limitations)

Plaintiff's Class Action Complaint is barred, in whole or in part, to the extent time barred by the applicable statute of limitations, including, but not limited to, the one-year statute of limitations for publication of matter violating a privacy rights (725 ILCS 5/13-201), two year statute of limitations to recover damages to a person for a statutory penalty (735 ILCS 5/13/202)

and/or the five year statute of limitations for civil actions not otherwise subject to a limitations period (735 ILCS 5/13-205).

## Third Additional Defense
### (Estoppel, Waiver, Ratification, and Acquiescence)

Plaintiff's Class Action Complaint is barred in whole or in part by operation of the doctrines of estoppel, waiver, ratification, and/or acquiescence.  Plaintiff and the putative class members actually or impliedly/constructively consented and voluntarily agreed to use the timekeeping devices utilized by their employers, including the provision of any alleged biometric identifiers or biometric information, without threat, coercion, or compulsion.

## Fourth Additional Defense
### (Laches)

Plaintiff's Class Action Complaint is barred, in whole or in part, by operation of the doctrine of laches to the extent Plaintiff and the putative class members unreasonably delayed before asserting their purported rights under the BIPA statute and thereby caused undue prejudice to Paycor.

## Fifth Additional Defense
### (Unenforceable Penalty)

The relief sought by Plaintiff on his own behalf and on behalf of the putative class pursuant to Plaintiff's Class Action Complaint—statutory damages of $5,000 for each alleged willful or reckless violation of BIPA and $1,000 for each alleged negligent violation thereof, is inappropriate and unenforceable because Plaintiff has not suffered any injury or incurred any harm to merit this relief, which is not based on a reasonable estimate of actual damages, but would instead amount to an unjust penalty similar to punitive damages for strict liability.

## Sixth Additional Defense
### (Constitutionality)

The BIPA statute violates the United States Constitution generally and as applied because it creates an undue burden on interstate commerce.

**Seventh Additional Defense**
**(BIPA's Inapplicability to Defendant)**

Plaintiff's Class Action Complaint is barred because Defendant does not capture, collect, possess, purchase, transmit, receive in any manner, or profit from Plaintiff's biometric identifiers or Plaintiff's biometric information as defined in the BIPA statute, as alleged by Plaintiff.

**Eighth Additional Defense**
**(BIPA's Inapplicability to Plaintiff)**

Plaintiff's Class Action Complaint is barred because the BIPA statute does not apply to Plaintiff.

**Ninth Additional Defense**
**(Barred by Excessive Fines and Due Process Clauses)**

Plaintiff's Class Action Complaint is barred, in whole or in part, by the Excessive Fines Clause and/or Due Process Clause of the United States Constitution.

Dated:  July 22, 2020                              Respectfully submitted,

                                                   */s/ Michael B. Galibois*

                                                   Michael B. Galibois
                                                   REED SMITH LLP
                                                   10 S. Wacker Drive, 40th Floor
                                                   Chicago, Illinois 60606
                                                   (312) 207-1000
                                                   mgalibois@reedsmith.com

                                                   *Attorneys for Defendant Paycor, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **DEFENDANT PAYCOR, INC.'S ANSWER AND ADDITIONAL DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT** was served electronic mail on July 22, 2020, on the following counsel of record:

*/s/ Michael B. Galibois*