## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KELLIN JOHNS and JUAN BARRON,**
individually and on behalf of all others
similarly situated,

       *Plaintiffs,*

v.

**PAYCOR, INC.,**

       *Defendant*.

Case No. 3:20-cv-00264-DWD
Judge David W. Dugan

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kellin Johns ("Johns") and Juan Barron ("Barron") (together, "Plaintiffs"), by and through their attorneys, bring this First Amended Class Action Complaint ("FAC") individually and on behalf of all others similarly situated (the "Class") pursuant to Rule 23 of the Federal Rules of Civil Procedure against Defendant Paycor, Inc. ("Paycor" or "Defendant") to redress and curtail Defendant's unlawful collection, use, storage, and disclosure of Plaintiffs' and the proposed Class' sensitive and proprietary biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### NATURE OF THE ACTION

1.    Defendant Paycor, Inc. designs and manufactures fully-integrated time and attendance products and services for businesses ranging from small service companies to global corporations.

2.    Chief among the products Defendant manufactures are biometric solutions such as biometric time keeping devices, which feature fingerprint readers, hand geometry readers, and

other similar devices (collectively referred to as "Biometric Time Clocks"), which require scans of users' biometric data[1] in order for those users to clock in and out of work.

3.      Defendant's systems and software require users to scan their biometric identifiers, namely their fingerprints or hand geometry, when using Biometric Time Clocks as an authorization method to track their time worked. The Biometric Time Clock scans the worker's fingerprints or hand geometry to clock in and out of work shifts and meal breaks. Upon information and belief, once a user has registered his or her fingerprint or hand geometry with a Biometric Time Clock, that biometric identifier and related biometric information is enrolled and stored in Defendant's database(s).

4.      While there are benefits to using biometric time clocks in the workplace, there are also serious risks. Unlike key fobs or identification cards—which can be changed or replaced if stolen or compromised—fingerprints and handprints are unique, permanent biometric identifiers associated with the individual. This exposes individuals who use Paycor's Biometric Time Clocks to serious and irreversible privacy risks. For example, if a database containing fingerprints, hand geometry, or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed – like in the recent Equifax, Facebook/Cambridge Analytica, and Suprema data breaches or misuses – individuals have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

5.      Biometrics are not relegated to esoteric corners of commerce. Many businesses and financial institutions have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

---

[1]  The term "biometric data" collectively refers to and encompasses biometric identifiers and biometric information as defined in 740 ILCS 14/10.

6.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

7.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and facial photographs – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

8.      In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available  at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

9.      In August 2019, it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. Josh Taylor, *Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms*, The Guardian (Aug. 14, 2019), *available    at* https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

10.     In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/.

11.     This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

12.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, specifically to regulate companies that collect and store Illinois citizens' biometrics, such as fingerprints.

13.     Notwithstanding the clear and unequivocal requirements of the law, Paycor disregards Biometric Time Clock users' statutorily protected privacy rights and unlawfully collects, captures, otherwise obtains, stores, maintains, and uses their biometric data in violation of BIPA. Specifically, Paycor has violated and continues to violate BIPA because it did not and continues not to:

  a.     Properly inform Plaintiffs and others similarly situated in writing of the specific purpose and length of time for which their biometric data was being collected, captured, otherwise obtained, stored, maintained and used, as required by BIPA;

b. Receive a written release from Plaintiffs and others similarly situated to collect, capture, otherwise obtain, store, or use their biometric data, as required by BIPA;

c. Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data, as required by BIPA; and

d. Obtain consent from Plaintiffs and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric data to a third party, as required by BIPA.

14. Upon information and belief, Defendant improperly discloses its Biometric Time Clock users' fingerprint and hand geometry data to other, currently unknown, third parties, including but not limited to Defendant's clients and/or other third parties that host biometric data in their data center(s).

15. Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and other similarly-situated individuals' biometric data and has not and will not destroy their biometric data, as required by BIPA.

16. Biometric Time Clock users have a proprietary right to control their biometric identifiers and information. In failing to comply with the requirements of BIPA, Defendant intentionally interferes with each user's right of possession and control over their valuable, unique, and permanent biometric data.

17. Defendant is directly liable for, and had actual knowledge of, the BIPA violations alleged herein.

18. Accordingly, Plaintiffs seek an Order: (1) declaring that Defendant's conduct violates BIPA; (2) requiring Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiffs and the proposed Class.

## PARTIES

19.     Plaintiff Kellin Johns is a natural person and a citizen of the State of Illinois.

20.     Plaintiff Juan Barron is a natural person and a citizen of the State of Illinois.

21.     Defendant Paycor, Inc. is a Delaware corporation that is registered to do business in Illinois.

## JURISDICTION AND VENUE

22.     This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), (d)(5)(B) because the proposed class has 100 or more members, the amount in controversy exceeds $5,000,000.00, and the parties are minimally diverse.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims occurred in this judicial district.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

24.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated, technology. *See* 740 ILCS 14/5.

25.     In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now

be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

27.     Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.     Informs the subject in writing that a biometric identifier or biometric information is being collected or stored;

    b.     Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.     Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS 14/15(b).

29.     BIPA specifically applies to individuals who work or reside in the State of Illinois.

30.     Biometric identifiers include retina and iris scans, voiceprints, scans of face geometry, and – most importantly here – scans of fingerprints and hand geometry. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id.*

31.     BIPA also establishes standards for how entities must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

32.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 14/15(c)) and requires companies to develop and comply with a written, publicly-available policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied, or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometric data. BIPA also protects individuals' rights to know the precise nature for which their biometric identifiers and information are being obtained and used, how they are being stored and ultimately destroyed, allowing individuals to make a truly informed choice. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiffs, like the Illinois legislature, recognize how imperative it is to keep biometric identifiers and biometric information secure. Biometric data, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendant Violates the Biometric Information Privacy Act.

36.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

37.     However, Defendant failed to take note of the shift in Illinois law governing the collection, obtainment, storage, use and dissemination of biometric data. As a result, Defendant continues to collect, obtain, store, use and disseminate Illinois citizens' biometric data in violation of BIPA.

38.     Specifically, when individuals first use Defendant's Biometric Time Clock, they are required to have their fingerprint or hand geometry scanned in order to enroll them in the Paycor database(s).

39.     Unfortunately, Defendant fails to inform these individuals that they are collecting, capturing, obtaining, storing or using their sensitive biometric data, the extent of the purposes for which they do so, or to whom the data is disclosed, if at all.

40.     Defendant fails to maintain a written, publicly available policy identifying its retention schedule and guidelines for permanently destroying individuals' biometric identifiers and information when the initial purpose for collecting, capturing or obtaining their biometric data is no longer relevant, as required by BIPA.

41.     In addition, Defendant profits from the use of individuals' biometric data. For instance, Paycor markets its Biometric Time Clocks to employers as superior options to traditional time clocks, which can be deceived by "buddy punching" – where one employee punches in to or out of a time clock for another (absent) employee.[2] By marketing its clocks in this manner, Defendant obtains a competitive advantage over other biometric time clock companies and secure profits from their use of biometric data, all while failing to comply with the minimum requirements for handling users' biometric data established by BIPA.

42.     The Pay By Touch bankruptcy that catalyzed the passage of BIPA highlights why such conduct – where individuals are aware that they are providing biometric data but not aware to whom or for what purposes they are doing so – is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as fingerprints and hand geometry, who exactly is collecting or obtaining their biometric data, where it will be transmitted and for what purposes, and for how long. Defendant disregards these obligations and these individuals' statutory rights, and instead unlawfully collects, captures, obtains, stores, uses and disseminates their biometric identifiers and information, without ever receiving the individual's informed written consent required by BIPA.

---

[2] Paycor, *Don't Fall Victim to Time Theft*, available at https://www.paycor.com/resource-center/dont-fall-victim-to-time-theft (listing "biometric time clocks that read employee fingerprints or handprints to prevent buddy punching" as a way to minimize time theft).

43.     Remarkably, Defendant has created the same situation that Pay By Touch did by assembling a database of biometric data through broadly deployed fingerprint and hand geometry readers, but failed to comply with the law specifically designed to protect individuals whose biometrics are collected in these circumstances. Defendant disregards these obligations and Illinois citizens' statutory rights and instead unlawfully collects, captures, obtains, stores, uses, and disseminates individuals' biometric identifiers and information without ever receiving the individual's informed written consent as required by BIPA.

44.     Plaintiffs and others similarly situated are not told what might happen to their biometric data if and when Defendant merges with another company or worse, if and when Defendant's business folds, or when any other third-party entity, that has received their biometric data, folds.

45.     Because Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection or obtainment of biometric data, individuals are left in the dark regarding the extent to which Defendant stores, uses, sells, discloses, re-discloses, or otherwise disseminates their biometric data to whom and when. Moreover, Plaintiffs and others similarly situated are not told to whom Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

46.     These violations have raised a material risk that Plaintiffs' and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

47.     By and through the actions detailed above, Defendant disregarded Plaintiffs' and other similarly-situated individuals' legal rights in violation of BIPA.

III.    **Plaintiffs' Experiences**

48.    Plaintiff Kellin Johns worked for Club Fitness, Inc. from 2013 to 2017 in six Illinois locations: Alton, Wood River, Granite City, Collinsville, Fairview Heights, and Belleville.

49.    Plaintiff Juan Barron worked for Club Fitness, Inc. from 2013 to 2020 in five Illinois locations: O'Fallon, Granite City, Collinsville, Fairview Heights, and Belleville.

50.    From approximately September 2015 through April of 2016, Paycor provided Club Fitness with time and attendance hardware and software, including Biometric Time Clocks.  As part of its services, Paycor collected and managed the biometric data of Mr. Johns, Mr. Barron, and other Club Fitness employees.

51.    Plaintiffs were required to scan their fingerprints on Paycor's Biometric Time Clock at Club Fitness so they could be used as an authentication method to track their time worked.

52.    Defendant subsequently stored Plaintiffs' fingerprint biometric data in its databases.

53.    Plaintiffs have never been informed of the specific limited purposes or length of time for which Defendant collects, captures, obtains, stores, and/or uses their biometric data.

54.    Plaintiffs have never been informed of any written, publicly available biometric data retention policy developed by Defendant, nor have they ever been informed of whether Defendant will ever permanently delete their biometric data.

55.    Plaintiffs have never been provided with, nor ever signed, a written release allowing Defendant to collect, capture, obtain, store, use and/or disseminate their biometric data.

56.    Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

57.     No amount of time or money can compensate Plaintiffs if their biometric data is compromised by the lax procedures through which Defendant collected, captured, obtained, stored, and/or used their and other similarly-situated individuals' biometrics. Moreover, Plaintiffs would not have provided their biometric data to Defendant if they had known that Defendant would retain such information for an indefinite period of time without their consent.

58.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

59.     Nonetheless, Plaintiffs are aggrieved because they suffered an injury-in-fact based on Defendant's violations of their legal rights. Defendant has intentionally interfered with Plaintiffs' right to possess and control their own sensitive biometric data. Additionally, Plaintiffs suffered an invasion of a legally protected interest when Defendant secured their personal and private biometric data at a time when it had no right to do so, a gross invasion of their rights to privacy. BIPA protects individuals like Plaintiffs from this precise conduct. Defendant had no lawful right to obtain this data or share it with third parties absent a specific legislative license to do so.

60.     As Plaintiffs are not required to allege or prove actual damages in order to state a claim under BIPA, they seek statutory damages under BIPA as compensation for the injuries caused by Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

**CLASS ALLEGATIONS**

61.     Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiffs

bring claims on their own behalf and as a representative of all other similarly situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

62.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it ***first*** (1) informs the individual in writing that a biometric identifier or biometric information is being collected, obtained or stored; (2) informs the individual in writing of the specific purpose and length of time for which a biometric identifier or biometric information is being collected, obtained, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

63.     Plaintiffs seek class certification for the following class of similarly situated individuals:

> All in individuals working in the State of Illinois who had their fingerprints, hand geometry, or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant during the applicable statutory period.

64.     This action is properly maintained as a class action under Rule 23 because:

A.     The class is so numerous that joinder of all members is impracticable;

B.     There are questions of law or fact that are common to the class;

C.     Plaintiffs' claims are typical of the claims of the class; and,

D.     Plaintiffs will fairly and adequately protect the interests of the class.

**<u>Numerosity</u>**

65.     The total number of putative class members exceeds 100 individuals. The exact number of class members may easily be determined from Defendant's records.

## **Commonality**

66.    There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiffs and all members of the Class have been harmed by Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

A.    Whether Defendant collected, captured, maintained, stored or otherwise obtained Plaintiffs' and the putative Class members' biometric identifiers or biometric information;

B.    Whether Defendant properly informed Plaintiffs and the Class members of its purposes for collecting, using and storing their biometric identifiers or biometric information;

C.    Whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use and store Plaintiffs' and the putative Class members' biometric identifiers or biometric information;

D.    Whether Defendant has disclosed or re-disclosed Plaintiffs' and the putative Class members' biometric identifiers or biometric information;

E.    Whether Defendant has sold, leased, traded, or otherwise profited from Plaintiffs' and the putative Class members' biometric identifiers or biometric information;

F.    Whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

G.    Whether Defendant complies with any such written policy;

H.    Whether Defendant's violations of BIPA have raised a material risk that Plaintiffs' and the putative Class members' biometric data will be unlawfully accessed by third parties;

I.    Whether Defendant used Plaintiffs' and the putative Class members' fingerprints and hand geometry to identify them; and

J.    Whether Defendant's violations of BIPA were committed negligently; and

K.      Whether Defendant's violations of BIPA were committed intentionally or recklessly.

67.     Plaintiffs anticipate that Defendant will raise defenses that are common to the class.

**Adequacy**

68.     Plaintiffs will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiffs and class members. Plaintiffs, moreover, have retained experienced counsel that are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

**Typicality**

69.     The claims asserted by Plaintiffs are typical of the class members they seek to represent. The Plaintiffs have the same interests and suffer from the same unlawful practices as the class members.

70.     Upon information and belief, there are no other class members who have an interest in individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

**Predominance and Superiority**

71.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously,

16

efficiently, and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

72.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to, fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule

73.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

74.     BIPA mandates that companies that collect, capture or otherwise obtain biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

75.     Defendant fails to comply with these BIPA mandates.

76.    Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

77.    Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

78.    Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

79.    Defendant failed to implement and maintain a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information, as specified by BIPA. *See* 740 ILCS 14/15(a).

80.    Upon information and belief, Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' and the Class members' biometric data, and have not and will not destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of an individual's last interaction with the company.

81.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

82.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

83.     BIPA requires companies to obtain informed written consent from individuals before collecting, capturing, or otherwise obtaining their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] *first*: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

84.     Defendant fails to comply with these BIPA mandates.

85.     Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

86.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

87.     Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

88.     Defendant systematically and automatically collected, used and stored Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

89.     Defendant never informed Plaintiffs and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, used, and disseminated nor did Defendant inform Plaintiffs and the Class members in writing of the specific purpose(s) and length of term for which their biometric identifiers and/or biometric information were being collected, stored, and used as required by 740 ILCS 14/15(b)(1)-(2).

90.     By collecting, capturing, obtaining, storing, using and/or disseminating Plaintiffs' and the Class members' biometric identifiers and biometric information as described herein, Defendant violated their rights to privacy in their biometric identifiers or biometric information, as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

91.     On behalf of himself and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA  pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

### THIRD CAUSE OF ACTION
**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent**

92.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

93.     BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

94.     Defendant fails to comply with this BIPA mandate.

95.     Defendant Paycor, Inc. is a corporation registered to conduct business in Illinois and, therefore, qualifies as a "private entity" under BIPA. *See* 740 ILCS 14/10.

96.     Plaintiffs and the Class are individuals who have had their "biometric identifiers" collected by Defendant (in the form of their fingerprints or hand geometry), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

97.     Plaintiffs' and the Class members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

98.     Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1).

99.     By disclosing, redisclosing, or otherwise disseminating Plaintiffs' and the Class members' biometric identifiers and biometric information as described herein, Defendant violated their rights to privacy in their biometric identifiers or biometric information, as set forth in BIPA. *See* 740 ILCS 14/1, *et seq.*

100.    On behalf of themselves and the Class, Plaintiffs seek: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs Kellin Johns and Juan Barron respectfully request that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs Kellin Johns and Juan Barron as Class Representatives, and appointing Stephan Zouras, LLP, as Class Counsel;

B.    Declaring that Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D.    Declaring that Defendant's actions, as forth out above, were intentional and/or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class, including an Order requiring Defendant to collect, store and use biometric identifiers or biometric information in compliance with BIPA;

F.    Awarding Plaintiffs and the Class their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3);

G.    Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

H.    Awarding such other and further relief as equity and justice may require.

Date:  October 29, 2020                 Respectfully Submitted,

By: */s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Megan E. Shannon
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*

rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
mshannon@stephanzouras.com

Brandon M. Wise
**PEIFFER WOLF CARR & KANE, APLC**
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
314-833-4825
bwise@pwcklegal.com

**ATTORNEYS FOR PLAINTIFFS
AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on October 29, 2020, I filed the attached with the Clerk

of the Court using the ECF system, which will send such filing to all attorneys of record.

  /s/ Ryan F. Stephan