**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KELLIN JOHNS and JUAN BARRON,
individually and on behalf of all others similarly
situated,

                Plaintiff,

      v.

PAYCOR, INC.,

                Defendant.

Case No.  3:20-cv-00264-DWD

Hon. David W. Dugan

**PAYCOR, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**

Melissa A. Siebert (IL Bar No. 6210154)
Matthew C. Wolfe (IL Bar No. 6307345)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL  60606
Telephone:  312.704.7700
Facsimile:  312.558.1195
masiebert@shb.com
mwolfe@shb.com

*Attorneys for Defendant Paycor, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 2

    A.    The Biometric Information Privacy Act ........................................................ 2

    B.    First Amended Complaint ............................................................................. 3

LEGAL STANDARD ......................................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.      PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER BIPA ............................. 4

    A.    Plaintiffs' claims under Section 15(b) should be dismissed. ................... 4

        1.    Plaintiffs have not adequately alleged Paycor made an affirmative act to collect their biometrics. ..................................................... 4

        2.    Paycor is not Plaintiffs' employer, so Section 15(b)'s notice and consent provisions do not apply ................................................ 8

    B.    Plaintiffs fail to state a claim under Sections 15(a) or 15(d). ............... 9

        1.    Plaintiffs fail to allege that Paycor possessed their data. ........... 9

        2.    Plaintiffs do not adequately allege disclosure to a third party. ... 11

II.    PLAINTIFFS DO NOT PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT, AND THEREFORE FAIL TO STATE A CLAIM. ....................... 13

III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY SEEK DUPLICATIVE RECOVERY ...................................................................... 15

IV.   PLAINTIFFS CLAIMS SHOULD BE DISMISSED BECAUSE THEY REPRESENT AN IMPROPER EXTRATERRITORIAL APPLICATION OF BIPA. ........................................................................................................ 17

CONCLUSION ................................................................................................................. 18

## **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  835 N.E.2d 801 (Ill. 2005) ................................................................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................3

*Bernal v. ADP, LLC*,
  No. 2017-CH-12364, 2019 WL 5028609 (Cir. Ct. Cook Cty. Aug. 23, 2019) ...................4, 7

*Brooks v. Ross*,
  578 F.3d 574 (7th Cir. 2009) .........................................................................3, 12

*Dana Tank Container, Inc. v. Human Rights Comm'n*,
  687 N.E.2d 102 (Ill. App. Ct. 1997) ...................................................................5

*Figueroa v. Kronos Inc.*,
  No. 19 C 1306, 2020 WL 1848206 (N.D. Ill. Apr. 13, 2020).............................4, 7

*Griffin v. Oceanic Contractors, Inc.*,
  458 U.S. 564 (1982).............................................................................................6

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020) ........................................................ *passim*

*In re D.W.*,
  827 N.E.2d 466 (Ill. 2005) ..................................................................................5

*In re Hernandez*,
  918 F.3d 563 (7th Cir. 2019) ..............................................................................9

*In re Marriage of Goesel*,
  102 N.E.3d 230 (Ill. 2017)...................................................................................9

*Johns v. Club Fitness of Alton, LLC*,
  Case No. 2018 L 000080 (Madison Cnty. Ill. Cir. Ct.).....................................10

*Kloss v. Acuant, Inc.*,
  No. 19 C 6353, 2020 WL 2571901 (N.D. Ill. May 21, 2020) ......................7, 10, 11

*Lumen Constr., Inc. v. Brant Constr. Co., Inc.*,
  780 F.2d 691 (7th Cir. 1985) ............................................................................16

*McGoveran v. Amazon Web Servs., Inc.*,
    No. 3:20-CV-31-NJR, 2020 WL 5602819 (S.D. Ill. Sept. 18, 2020) ........................................7

*Monroy v. Shutterfly*,
    2017 WL 4099846 (N.D. Ill. Sept. 15, 2017) ..........................................................................17

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 279 (N.D. Ill. 2019) .................................................................................. *passim*

*People v. Hanna*,
    800 N.E.2d 1201 (Ill. 2003) ...................................................................................................9

*People v. Trainor*,
    752 N.E.2d 1055 (Ill. 2011) .................................................................................................13

*People v. Ward*,
    215 Ill. 2d 317 (Ill. 2005)......................................................................................................9

*Pooh-Bah Enter., Inc. v. Cnty. of Cook*,
    905 N.E.2d 781 (Ill. 2009) ....................................................................................................6

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..............................................................................13, 17

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) ...................................................................................13

*Rosenbach v. Six Flags Entm't Corp.*,
    2019 IL 123186.................................................................................................................5, 9

*Taha v. Int'l Bhd. of Teamsters, Local 781*,
    947 F.3d 464 (7th Cir. 2020) ...............................................................................................11

*Texaco, Inc. v. Short*,
    454 U.S. 516 (1982)............................................................................................................14

*White v. Keely*,
    814 F.3d 883 (7th Cir. 2016) ...............................................................................................10

**Statutes**

Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*...................... *passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................................................10

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014)...........................................................................................6

*Merriam-Webster* (2018) ...............................................................................................................6

iv

## INTRODUCTION

Plaintiffs Kellin Johns and Juan Barron claim that Defendant Paycor, Inc. ("Paycor") violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*., during the course of their employment at various fitness clubs in Illinois. According to Plaintiffs, those fitness clubs—not Paycor—required them to scan their fingerprints[1] on Paycor's "Biometric Time Clocks" so their identities could be verified and to track their time worked. The First Amended Class Action Complaint (the "First Amended Complaint" and "FAC") never suggests why Paycor, who neither employed Plaintiffs nor operated the devices, should be liable for what was done with them after they were sold. Indeed, the First Amended Complaint lacks any allegations even hinting that Paycor had input on the policies and procedures of Plaintiffs' employers, or otherwise controlled the devices. Instead, Plaintiffs' claims primarily consist of bare-bones regurgitations of BIPA's statutory language. Further, Plaintiffs' claims are at odds with Plaintiff Johns' claims in his separately filed BIPA class actions against Plaintiffs' employers—a class action suit that has already been settled, and in which Plaintiffs both recovered for the identical claims they raise here.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the First Amended Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted for four separate reasons, each of which provides a sufficient, independent basis for dismissal. *First*, Plaintiffs fail to state a claim as to any of the alleged violations of BIPA. *Second*, Plaintiffs fail to plead the culpability that BIPA requires. *Third*, Plaintiffs have already recovered under BIPA for

---

[1] Paycor disputes Plaintiffs' assertion that Paycor devices scanned their "fingerprints." Paycor denies that its devices collect fingerprints, biometric identifiers, or biometric information, as those terms are defined by BIPA. 740 ILCS 14/10. For the purposes of this Motion, Plaintiffs' allegations must be taken as pled. The use of the term "biometric" or "biometric data" in this memorandum is not a concession that any of the data is actually covered by BIPA. Paycor reserves all arguments regarding the nature of the finger scans at issue in this suit.

these same claims in a separate lawsuit brought against the fitness clubs who actually owned and operated the time clocks. *Fourth*, Plaintiffs' claims should be dismissed because they seek to apply BIPA extraterritorially. For each of these independent reasons, the First Amended Complaint should be dismissed.

**BACKGROUND**

**A.     The Biometric Information Privacy Act**

BIPA was enacted in 2008 in an effort to manage the "promise" of biometric technology for Illinois residents. *See* 740 ILCS 14/5(a) ("The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings."). BIPA sought to encourage the development and use of biometric technology by imposing requirements on private entities that collect and possess biometric information. *See id.* Only possessors and collectors of biometric data are regulated by BIPA.

BIPA imposes distinct obligations on possessors and collectors of biometric data. Entities that are "in possession" of biometric data must develop publicly available, written retention schedules and destruction deadlines. *Id.* § 15(c)-(d). Possessors must also exercise reasonable care in storing and transmitting the data, and when protecting the data from disclosure. *Id.* § 15(e).

On the other hand, BIPA requires something more of collectors, which are entities that actively "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . . biometric information." *Id.* § 15(b). Specifically, collectors of data must provide written notice that their biometric data is being collected, for what purpose it is being collected, and how long it will be stored. *Id.* In the employment context, collectors must also obtain prior consent for said collection through a written release between the employer and the employee. *Id.* § 10. By imposing notice and consent obligations solely on collectors, BIPA places possession at its outer

2

regulatory limit. Through this structure, BIPA avoids placing duplicative or impractical compliance requirements on entities that do not actively collect data. BIPA also limits potentially sprawling liability that would threaten the technology's future—a future BIPA was specifically designed to protect.

### B.     First Amended Complaint

While Plaintiffs allege that their data was collected during the course of their employment at multiple fitness clubs across Illinois (FAC ¶¶ 48-49), in this suit Plaintiffs bring BIPA claims only against Paycor. They allege that, as a condition of employment at those locations, Plaintiffs were required by their employers (not Paycor) "to scan their fingerprints" so that they "could be used as an authentication method to track their time worked." *Id.* ¶ 51. The remainder of the Complaint amounts to little more than a recitation of BIPA's statutory language. Plaintiffs claim that Paycor violated Sections 15(a), (b), and (d), and they seek "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA . . . or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA . . . ." *Id.* ¶¶ 81, 91, 100.

### LEGAL STANDARD

To satisfy his pleading burden, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the allegations must raise the possibility of relief above the 'speculative level." *Id.* at 555. Crucially, a plaintiff cannot satisfy *Twombly* by "merely parrot[ing] statutory language of the claims that they are pleading . . . rather than providing some specific facts to ground those legal claims." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## ARGUMENT

### I.       PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER BIPA.

Sections 15(a) through (e) of BIPA set forth five different requirements for private entities. *See* 740 ILCS 14/15. Plaintiffs purport to bring claims that Paycor violated only Sections 15(a), (b), and (d). Section 15(a) requires entities in possession of biometric information—possessors—to develop a written retention schedule for that information. 740 ILCS 14/15. Section 15(b) requires *collectors* of biometric information to provide notice and obtain consent in the form of a written release. *Id.* Section 15(d) imposes consent requirements on possessors that disclose biometric information. *Id.* Plaintiffs' claims are fatally flawed because Plaintiffs fail to plead that Paycor actually "collected" their biometric information, dooming their Section 15(b) claims, and fail to allege that Paycor was ever in "possession" of that data, which is a prerequisite for any claims under Sections 15(a) and (d).

### A.       Plaintiffs' claims under Section 15(b) should be dismissed.

#### 1.       Plaintiffs have not adequately alleged Paycor made an affirmative act to collect their biometrics.

Section 15(b) covers only those entities making an "affirmative act" to "collect, capture, purchase, receive through trade, or otherwise obtain a person's . . .[biometrics]." *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020); 740 ILCS 14/15(b). In contrast, entities merely "in possession" of an individual's biometrics owe no Section 15(b) duty to procure informed consent at the point of collection. *Heard*, 440 F. Supp. 3d at 965 (noting "ample support in the case law, for this conclusion") (citing *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 279, 286 (N.D. Ill. 2019); *Bernal v. ADP, LLC*, No. 2017-CH-12364, 2019 WL 5028609, at *1 (Cir. Ct. Cook Cty. Aug. 23, 2019)); *but see Figueroa v. Kronos Inc.*, No. 19 C 1306, 2020 WL 1848206, at *5 (N.D. Ill. Apr. 13, 2020).  To be subject to Section 15(b), an entity must, "at

a minimum, take an active step to 'collect, capture, purchase, receive through trade, or otherwise obtain' biometric data." *Heard*, 440 F. Supp. 3d at 966. The statute's text, purpose, and structure all compel this reading.

First, in drafting Section 15, the legislature included "possession" in four of its five subsections, the sole outlier being Section 15(b). Section 15(b) omits the term "in possession" and imposes notice and consent provisions only on entities that "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's [biometrics]." 740 ILCS 14/15(b). "Where the legislature uses certain words in one instance and different words in another, it intended different results." *Dana Tank Container, Inc. v. Human Rights Comm'n*, 687 N.E.2d 102, 104 (Ill. App. Ct. 1997).

Section 15(b)'s four verbs—"collect, capture, purchase, [or] receive through trade"— contemplate affirmative action to acquire an individual's biometrics. "Collect" and "capture" refer to the initial collection of biometric data from an individual, such as when a company enrolls its employees in a biometric timekeeping system. "Purchase" and "receive through trade" refer to subsequent transactions whereby the biometric data changes hands. "[T]o express or include one thing implies the exclusion of the other." *In re D.W.*, 827 N.E.2d 466, 479 (Ill. 2005). As such, this Court should not read "possession" into Section 15(b), which clearly enumerates its triggers while omitting "possession." *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 24 (When interpreting BIPA, courts "may not depart from the law's terms by reading into it exceptions, limitations, or conditions the legislature did not express, nor . . . add provisions not found in the law."). Mere "possession," then, does not suffice to trigger Section 15(b).

The phrase "or otherwise obtain" does not alter this result. To "obtain" is "[t]o *bring into* one's own possession; to procure, *esp. through effort*," *Black's Law Dictionary* (10th ed. 2014) (emphasis added), or "to gain or attain usually by planned action or effort." *Merriam-Webster* (2018). "[W]hen a statutory clause specifically describes several classes of persons or things and then includes 'other persons or things,' the word 'other' is interpreted to mean 'other such like.'" *Pooh-Bah Enter., Inc. v. Cnty. of Cook*, 905 N.E.2d 781, 799 (Ill. 2009). Thus, Section 15(b)'s fifth trigger, "or otherwise obtain," must be interpreted to align with the first four— contemplating the *active acquisition* of biometric data. "[O]therwise obtain" does not, then, broaden Section 15(b)'s scope to include "possession." Only those entities that actively "collect" and "capture" a person's biometrics are subject to Section 15(b). Paycor is not such an entity.

Second, construing Section 15(b) more broadly to include entities like Paycor would yield patently absurd results. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Extending Section 15(b) beyond active "collectors"—in direct contravention of its text—would give rise to an absurd compliance landscape.

For example, to avoid being named in BIPA suits, Paycor would need to procure informed consent from any employee of a Paycor client whose biometric information was collected by the client and stored in that client's database. In the context of a company like Paycor that provides payroll technology and services, a single client may have dozens, hundreds, or even thousands of employees. Importantly, Paycor has no way of knowing how many employees the client may have when it sells the client a time clock, much less knowing who those employees are and being able to obtain a written release from them. Under Plaintiffs'

6

theory of Section 15(b) liability extending beyond active collectors, every time that Paycor sold a new device, it would be required to procure consent from each of the client's employees, and somehow ensure that every subsequent employee granted access would also give her consent. This would give rise to an expansive web of potential liability and compliance costs, threatening BIPA's ultimate aim: realizing the "promise" of biometric technologies. *See* 740 ILCS 14/5. To avoid this absurd result, Section 15(b) must, as multiple courts have recognized, only be applied to active collectors. *Heard*, 440 F. Supp. 3d at 965 (noting "ample support in the case law for this conclusion") (citing *Namuwonge*, 418 F. Supp. at 286; *Bernal*, 2019 WL 5028609, at *1); *but see Figueroa v. Kronos Inc.*, No. 19 C 1306, 2020 WL 1848206, at *5 (N.D. Ill. Apr. 13, 2020).

Plaintiffs here have alleged nothing to indicate that Paycor took any affirmative action so as to be considered an active collector of biometric data. Merely repeating the word "collect" is insufficient to plead a Section 15(b) claim. Plaintiffs do little more than that here. Indeed, Plaintiffs' references of "collection" simply recite BIPA's statutory language. This is insufficient. *See Heard*, 440 F. Supp. 3d at 966 (dismissing Section 15(b) claims that "merely parrot" BIPA's statutory language and "do not provide any specific facts to ground [plaintiff's] legal claims"); *see also McGoveran v. Amazon Web Servs., Inc.*, No. 3:20-CV-31-NJR, 2020 WL 5602819, at *3 (S.D. Ill. Sept. 18, 2020) (a BIPA plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements" of a claim); *Kloss v. Acuant, Inc.*, No. 19 C 6353, 2020 WL 2571901, at *3 (N.D. Ill. May 21, 2020) ("barebone factual support and recitation of statutory language" does not state a claim under BIPA).

Put simply, Plaintiffs do not allege that Paycor, rather than the individual fitness clubs, ever collected or possessed their biometric data. Plaintiffs merely allege that Paycor provided Plaintiffs' employers with "Biometric Time Clocks" and that "[a]s part of its services, Paycor

7

collected and managed the biometric data of [Plaintiffs]." FAC ¶ 50. However, this conclusory "rank speculation" is insufficient to establish collection. *Heard*, 440 F. Supp. 3d at 968. Importantly, there are no allegations explaining how Paycor "collected and managed" Plaintiffs' data, or even what Plaintiffs think those terms mean. Indeed, Plaintiffs' allegations suggest that if anybody collected Plaintiffs' data, it was Plaintiffs' employers, because the alleged collection took place as a condition of Plaintiffs' employment and on the "Biometric Time Clocks" that were provided to, owned, and controlled by Plaintiffs' employers. FAC ¶¶ 50-51.

In short, Plaintiffs do not plausibly allege that Paycor took "an active step to 'collect capture, purchase, receive through trade, or otherwise obtain' biometric data" or "how the data made its way to [Paycor's] systems." *Heard*, 440 F. Supp. 3d at 967. Accordingly, they have failed to allege that Paycor collected their biometric information and their Section 15(b) claims must fail.

### 2. Paycor is not Plaintiffs' employer, so Section 15(b)'s notice and consent provisions do not apply.

Additionally, Plaintiffs' claims fail because they have not established that Paycor had a duty to comply with Section 15(b)'s requirements. Plaintiffs allege that they were required to scan their finger at their place of employment to track their time worked. FAC ¶ 51. Plaintiffs worked for various fitness club locations, FAC ¶¶ 48-49, and those employers, not Paycor, required Plaintiffs to scan their fingers. FAC ¶ 51. BIPA's text shows that, in the employment context alleged here, employers are responsible for procuring a subject's informed consent to collection of biometric data. Specifically, collectors of biometric data must make certain disclosures and "receive a written release executed by the subject." 740 ILCS 14/15(b). In turn, "'[w]ritten release' means . . . in the <u>context of employment</u>, a release executed by an employee as a condition of employment." *Id*. § 10 (emphasis added).

It would be illogical to require Paycor to procure a written release from Plaintiffs as a condition of employment. Plaintiffs do not allege they were ever Paycor's employees (*see* FAC ¶¶ 48-49 (listing the various fitness clubs Plaintiffs worked at)), and Paycor therefore could never procure from them—nor could they provide Paycor with—anything as a condition of employment.

Courts must "presume the legislature did not intend absurd, inconvenient, or unjust consequences." *In re Marriage of Goesel*, 102 N.E.3d 230, 235 (Ill. 2017); *see also People v. Hanna*, 800 N.E.2d 1201, 1208-09 (Ill. 2003) (rejecting statutory construction leading to "absurd result" that regulated entity would be unable to comply with the statute's requirements).[2] "Compliance [with Section 15(b)] should not be difficult." *Rosenbach*, 2019 IL 123186, ¶ 37. Simply put, Paycor is not Plaintiffs' employer and Section 15(b) therefore does not apply to Paycor in this context. As such, Plaintiffs' Section 15(b) claims should be dismissed.

**B.      Plaintiffs fail to state a claim under Sections 15(a) or 15(d).**

Plaintiffs also fail to allege that Paycor has ever taken possession of their purported biometric data, as contemplated and required by Sections 15(a) and (d).

**1.      Plaintiffs fail to allege that Paycor possessed their data.**

Sections 15(a) and (d) apply to entities "in possession of" biometric data, but the statute does not define "possession." *See* 740 ILCS 14/10. The Illinois Supreme Court has defined "possession" as occurring "when a person has or takes control of the subject property or holds the property at her disposal." *People v. Ward*, 215 Ill. 2d 317, 325 (Ill. 2005). Courts interpreting BIPA have adopted this definition and dismissed Section 15(a) and (d) claims when plaintiffs fail

---

[2] Federal courts "apply Illinois's rules of statutory construction when interpreting an Illinois statute." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019).

to allege that a defendant exercised any form of control over the plaintiffs' data. *See Heard*, 440

F. Supp. 3d at 968; *Namuwonge*, 418 F. Supp. 3d at 284; *Kloss*, 2020 WL 2471901, at *3.

Plaintiffs' First Amended Complaint does not contain allegations that adequately plead

Paycor ever exercised *any* dominion or control over Plaintiffs' data. Aside from the bare

recitation of BIPA's statutory language, Plaintiffs merely allege that "Defendant subsequently

stored Plaintiffs' fingerprint biometric data in its databases." FAC ¶ 52. Plaintiffs completely fail

to allege how, or even when, this "fingerprint biometric data" is stored in Paycor's databases.

Indeed, they do not even allege how timekeeping devices owned and operated by their employers

come to provide this data to Paycor.

Additionally, in Plaintiff Johns' separate BIPA class action lawsuit against Plaintiffs'

employers, Johns pleads that Paycor does <u>not</u> possess Plaintiffs' data. Plaintiff Johns pleads that

the database where Plaintiffs' data is stored belongs to Club Fitness.[3] His complaint states that

when Club Fitness "hires an employee, he or she is enrolled in an employee database" that Club

Fitness uses "to monitor the time worked by each if its employees[.]" *See* Ex. A (Plaintiff Johns'

Second Amended Class Action Complaint in *Johns v. Club Fitness of Alton, LLC,* Case No. 2018

L 000080 (Madison Cnty. Ill. Cir. Ct.), ¶ 2. Further, Plaintiff Johns alleges that "as a condition of

his employment, Plaintiff was required to scan his fingerprint so [Club Fitness] could use it as an

authentication method to track his time" and that "[Club Fitness] stored Plaintiff's fingerprint

data in [Club Fitness's] ADP and Paycor employee databases." *See* Ex. A, ¶¶ 50, 57. Plaintiffs

cannot have it both ways. They cannot claim that their employers collected and possessed their

biometric data by requiring them to scan their fingers as a condition of employment, but at the

---

[3] This Court "may take judicial notice of public records, including public court documents, in ruling on a
motion to dismiss under Rule 12(b)(6)." *White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016).

same time claim that the exact same action—the scan by their employers—magically transforms Paycor into a collector and possessor of their data in a different lawsuit.

Particularly in light of the conflicting allegations from Plaintiff Johns' separate BIPA lawsuit, the virtually non-existent and wholly unsupported allegations Plaintiffs make here are insufficient to plead that Paycor was in possession of Plaintiffs' data. Therefore, as other courts have done with similar allegations, the Court should dismiss Plaintiffs' 15(a) and 15(d) claims. *See Heard*, 440 F. Supp. 3d at 968; *Namuwonge*, 418 F. Supp. 3d at 284; *Kloss*, 2020 WL 2471901, at *3.

### 2.    Plaintiffs do not adequately allege disclosure to a third party.

Plaintiffs' Section 15(d) disclosure claims must be dismissed for a separate reason:  they do not adequately allege disclosure to a third party. A BIPA plaintiff must allege a factual basis that supports an allegation of disclosure. *Heard*, 440 F. Supp. 3d at 969. Specifically, allegations merely speculating "on information and belief" are insufficient. *Id.*; *see also Namuwonge*, 418 F. Supp. 3d at 286 (N.D. Ill. 2019) (dismissing Section 15(d) claims because "[t]he Court cannot allow [plaintiff] to proceed on such speculative allegations"); *Kloss*, 2020 WL 2471901 (same). The court is not required to credit rank speculation. *Heard*, 440 F. Supp. 3d at 969 (citing *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020)).

Plaintiffs' allegations here fall well short of this standard. Without any factual support, Plaintiffs allege that "[u]pon information and belief, Defendant improperly discloses its Biometric Time Clock users' fingerprint and hand geometry data to other, currently unknown, third parties, including but not limited to Defendant's clients and/or other third parties that host biometric data in their data center(s)." FAC ¶ 14.

Not only is this clearly the "rank speculation" that the Court is not required to credit, but Plaintiffs also contradict themselves later in the Complaint. *See* FAC ¶ 45 ("Because Defendant

11

neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection or obtainment of biometric data, individuals are left in the dark regarding the extent to which Defendant stores, uses, sells, discloses, re-discloses, or otherwise disseminates their biometric data to whom and when.").

Again, this conclusory regurgitation of BIPA's statutory text also directly contradicts what Plaintiff Johns has alleged in his separate BIPA lawsuit against Plaintiffs' employers. Plaintiffs here claim that Paycor improperly discloses Plaintiffs' data to Paycor's clients—Plaintiffs' employers. FAC ¶ 14. In the separate BIPA class action against Plaintiffs' employers, Johns alleges that their employers directly collected and possessed Plaintiffs' biometric data. Ex. A, ¶¶ 2, 50, 57, 105 ("[Club Fitness] systematically and automatically collected, used, stored, and disseminated Plaintiff's and the Class' biometric identifiers and/or biometric information"). Here, as noted above, Plaintiffs do not adequately allege that Paycor ever even "possessed" Plaintiffs' data—an obvious prerequisite for disclosure of said data—but they also fail to explain *why* Paycor would disclose Plaintiffs' data to Plaintiffs' employers when they allegedly already collected it themselves.

Rather than alleging any facts that could alleviate these problems and support an inference that Paycor disclosed Plaintiffs' data, Plaintiffs here, like elsewhere, merely parrot BIPA's statutory language and call it a day. "Plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims . . . must do more." *Brooks*, 578 F.3d at 581. Because Plaintiffs have done nothing more than parrot BIPA's statutory language, their Section 15(d) claims (along with their other claims) must be dismissed.

## II.   PLAINTIFFS DO NOT PLEAD NEGLIGENCE, RECKLESSNESS, OR INTENT, AND THEREFORE FAIL TO STATE A CLAIM.

Even setting aside the foregoing, Plaintiffs' claims would still fail. BIPA "only subjects violators to statutory damages if there is negligence or willfulness." *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017). Plaintiffs have not alleged the requisite state of mind. As such, they fail to state a claim.

Specifically, BIPA's statutory damages provision provides:

> A prevailing party may recover for each violation . . . against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater; against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater.

740 ILCS 14/20(1)-(2). Under BIPA's terms, not every violation is actionable. A statute's words "cannot be read in a fashion that would render other words or phrases meaningless, redundant, or superfluous." *People v. Trainor*, 752 N.E.2d 1055, 1063 (Ill. 2011). Concluding that merely alleging a BIPA violation sufficed would render the terms "negligently," "intentionally," and "recklessly" superfluous. Put differently, there exists a space between a violation and an actionable violation. Absent an adequate pleading of culpability, Plaintiffs' claims fall within that space and therefore fail.

Recognizing that allegations of culpability are an essential element of a claim under BIPA, multiple courts have dismissed similar BIPA claims seeking heightened statutory damages for intentional or reckless violations of BIPA when the complaint failed to plead any facts to support an inference of that mental state. *See Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) (dismissing claim for intentional and reckless BIPA claims because a "conclusory statement" of intent was "insufficient to allow [the court] to determine that [defendant] acted intentionally or recklessly"); *Namuwonge*, 418 F. Supp. 3d at 286 (the

13

BIPA complaint's "abstract statements regarding damages are insufficient for the Court to infer that [defendant] acted recklessly or intentionally").

The First Amended Complaint lacks even a single allegation sufficient to support an inference of recklessness or intent. Plaintiffs merely state that Paycor "fails to comply with . . . BIPA mandates" (FAC ¶¶ 75, 84, 94), and summarily seeks "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA[.]" *Id*. ¶¶ 81, 91, 100. Absent any supporting factual allegations, Plaintiffs' claims for reckless or intentional violations of BIPA must be dismissed.

Likewise, Plaintiffs fail to allege that Paycor acted negligently, yet ask the Court, in the alternative, to grant "statutory damages of $1,000 for each negligent violation" (*Id*. ¶¶ 81, 91, 100). BIPA's negligence standard requires entities that possess biometric data to employ a "reasonable standard of care within the private entity's industry." 740 ILCS 14/15(e). Plaintiffs fail to allege even a single fact to suggest that Paycor's conduct deviated from any reasonable employer standard in any industry.

Even if Plaintiffs had attempted to plead negligence, they would have failed. When enacting laws that impact companies like Paycor, the Illinois legislature is obligated to "afford [Paycor] a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, Inc. v. Short*, 454 U.S. 516, 532 (1982). Here, an out of state company like Paycor that takes reasonable care to ascertain Illinois law governing the types of employment relationships in which Paycor's products and services are meant to be employed would have no reason to be aware of BIPA's existence and purported obligations. Laws specifically designed to govern the fundamental relationship at issue in the facts of this case—that of employee and employer—are listed in the logically titled "Employment" section, Chapter 820 of the Illinois Code. Similarly,

14

laws that specifically govern the relationship between a business like Paycor and its customers, which are also businesses, can be found in the likewise logically-titled "Business Transactions" section, Chapter 815. However, BIPA instead appears under "Civil Liabilities" in Chapter 740 of the Illinois Code. Plaintiffs fail to allege how being unaware of a little-known statute buried in the "Civil Liabilities" section of the Illinois Code is unreasonable for an out of state company like Paycor.

Simply put, Plaintiffs completely fail to allege any facts that suggest an inference of any of the culpability levels required for a recoverable BIPA violation. Nor do Plaintiffs suggest which violations (if any) were committed with which levels of culpability. Indeed, Plaintiffs appear to be entirely content to let the Court sort out that question on its own. Accordingly, Plaintiffs fall well short of their pleading burden and their claims must be dismissed.

## III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY SEEK DUPLICATIVE RECOVERY.

Plaintiffs' claims also should be dismissed for a third, independent reason—Plaintiffs have already recovered for these claims. Plaintiff Johns was the named Plaintiff in a separate BIPA lawsuit that was filed against Plaintiffs' employer, Club Fitness. *See* Ex. A. Johns' case against Club Fitness asserted, in allegations strikingly similar to those put forth here, that his former employer, the same Club Fitness locations listed in the First Amended Complaint, violated the same BIPA provisions that are at issue in this case.

Plaintiff Johns' allegations in *Club Fitness* centered on, and stem from, the identical events that are described in the First Amended Complaint:  Plaintiff's use of a time clock at his various places of employment. *Compare* Ex. A ¶ 50 ("As a condition of his employment, Plaintiff was required to scan his fingerprint so each Defendant could use it as an authentication method to track his time."), *and* Ex. A ¶ 57 ("Each Defendant stored Plaintiff's fingerprint data

15

in its . . . employee databases.") *with* FAC ¶ 51 (during their employment with Club Fitness

"Plaintiffs were required to scan their fingerprints on Paycor's Biometric Time Clock at Club

Fitness so they could be used as an authentication method to track their time worked.), *and* FAC

¶ 52 ("Defendant subsequently stored Plaintiffs' fingerprint biometric data in its databases.").

Plaintiff brought these claims, like here, on behalf of a class of similarly situated individuals. Ex.

A ¶¶ 66-77.

On October 14, 2020, Johns' case against Club Fitness received final approval for a class

action settlement. *See* Ex. B, Final Approval Order. The settlement included a payment of

$1,266.89, less expenses and attorneys' fees, to each member of the following class:

> All individuals who worked or are currently working for any
> Defendant in the State of Illinois who had their fingerprint data
> and/or any other biometric identifier collected, captured, received,
> stored or otherwise obtained, retained, disseminated, or disclosed
> by any Defendant at any time within the five-year period preceding
> the date the Complaint was filed to the date of Preliminary
> Approval and who do not timely opt-out of the settlement.

Ex. C, Motion for Final Approval at p. 5. Plaintiffs Johns and Barron are both members of this

class—Johns as the named plaintiff, and Barron as an unnamed individual who, per his

allegations in this case, worked at some of the Club Fitness locations during the relevant time.

FAC ¶ 49. Consequently, each has already recovered for the alleged BIPA violations that they

now purport to bring.

"[D]uplicative suits that are the product of gamesmanship"—as this one—"or that result

in conflicting adjudications"—as this one may—"endanger the legitimacy of the court system . .

. and fairness to the individual litigants." *Lumen Constr., Inc. v. Brant Constr. Co.*, *Inc.*, 780 F.2d

691, 694 (7th Cir. 1985). Put simply, Plaintiffs cannot have it both ways. They cannot claim, and

recover for claims, that their employers improperly collected their biometrics through the use of

the time clocks in question here, while simultaneously arguing that the same actions magically

resulted in Paycor committing the same violations—especially on the extremely thin allegations of the FAC. To the extent that Plaintiffs' claims have any merit—they do not—Plaintiffs have already recovered for these claims and they should be dismissed.

**IV.   PLAINTIFFS CLAIMS SHOULD BE DISMISSED BECAUSE THEY REPRESENT AN IMPROPER EXTRATERRITORIAL APPLICATION OF BIPA.**

The Illinois Supreme Court has stated that a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005).   In accordance with *Avery*, other Illinois federal courts have consistently held that BIPA has no extraterritorial effect.  *See Monroy v. Shutterfly*, 2017 WL 4099846, at *5 (N.D. Ill. Sept. 15, 2017) ("none of BIPA's express provisions indicates that the statute was intended to have extraterritorial effect"); *Rivera*, 238 F. Supp. 3d at 1104 (BIPA "was not intended to and does not have extraterritorial application").  If BIPA was not intended to have extraterritorial application to Google, it likewise cannot have extraterritorial application to an out-of-state company like Paycor who is not alleged to have taken any affirmative action relevant to the case in Illinois.

Paycor is a Delaware corporation that is headquartered in Cincinnati, Ohio. *See* FAC ¶ 21. In Plaintiffs' separate case against their employers, Plaintiffs admit that Club Fitness, Inc.—Paycor's client—is a Missouri corporation. *See* Ex. A, ¶ 18. As discussed above, Plaintiffs fail to allege that Paycor actively collected, possessed, or disclosed Plaintiffs' data anywhere—much less in Illinois. The closest that Plaintiffs get to alleging that Paycor actually did anything is their allegation that "Paycor provided Club Fitness with time and attendance hardware and software, including Biometric Time Clocks." FAC ¶ 50. Therefore, when Plaintiffs' claims are stripped of their conclusory statements and parroting of BIPA's statutory text, Plaintiffs are exclusively seeking to use BIPA to regulate out-of-state conduct between two out-of-state companies.

17

Importantly, Plaintiffs do not make any factual allegations of Paycor conduct within Illinois that violated BIPA. Thus, any application of BIPA to Paycor based on this pleading would necessarily be extraterritorial and should not be allowed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Dated: November 12, 2020

Respectfully submitted,

**PAYCOR, INC.**

By: */s/ Matthew C. Wolfe*
     One of Its Attorneys

Melissa A. Siebert (IL Bar No. 6210154)
Matthew C. Wolfe (IL Bar No. 6307345)
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Telephone: 312.704.7700
Facsimile: 312.558.1195
masiebert@shb.com
mwolfe@shb.com

***Attorneys for Defendant Paycor, Inc.***

18

## CERTIFICATE OF SERVICE

I, Matthew C. Wolfe, an attorney, hereby certify that on **November 12, 2020**, I caused a true and complete copy of the foregoing **PAYCOR, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT** to be electronically filed.  Notice of this filing will be sent to all parties registered on this Court's CM/ECF system.  Parties may access this filing through the Court's system.

*/s/ Matthew C. Wolfe*