# EXHIBIT C

***EFILED***
Case Number 2018L 000080
Date: 9/25/2020 10:04 PM
Mark Von Nida
Clerk of Circuit Court
Third Judicial Circuit, Madison County Illinois

**IN THE CIRCUIT COURT FOR THE THIRD JUDICIAL CIRCUIT**
**MADISON COUNTY, ILLINOIS**

| | |
|---|---|
| KELLIN JOHNS, individually, and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>CLUB FITNESS OF ALTON, LLC, CLUB FITNESS OF COLLINSVILLE, LLC, CLUB FITNESS OF FAIRVIEW HEIGHTS, LLC, CLUB FITNESS OF GRANITE CITY, LLC, CLUB FITNESS OF WOOD RIVER, LLC, CUST SERV CF, LLC and CLUB FITNESS, INC. )<br><br>Defendants. ) | Case No. 2018 L 000080 |

**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Named Plaintiff Kellin Johns ("Plaintiff" or "Johns"), individually and on behalf of a class of individuals certified for settlement purposes ("Plaintiffs"), by and through counsel, move for final approval of the Parties' settlement of Plaintiffs' claims that Defendants Club Fitness of Alton, LLC, Club Fitness of Collinsville, LLC, Club Fitness of Fairview Heights, LLC, Club Fitness of Granite City, LLC, Club Fitness of Wood River, LLC, Cust Serv CF, LLC, and Club Fitness, Inc. (collectively, "Defendants" or "Club Fitness") violated the Illinois Biometric Information Privacy Act ("BIPA"), 720 ILCS 14/1, *et seq.* by: (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing

of the specific purpose and length of time for which biometric data is captured; and (4) failing to develop and adhere to a publicly available retention schedule and guidelines for permanently destroying biometric data. The Parties' settlement of this action is fair, reasonable, and adequate under the governing legal standards and satisfies all of the criteria for final approval. The Parties respectfully request the Court: (1) grant final approval of the proposed Class Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1, including the releases of claims as set forth in the Settlement Agreement, and, (2) enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit 2.

On July 8, 2020, the Court took the first step in the settlement approval process by preliminarily approving the Parties' Settlement Agreement; certifying the Settlement Class pursuant to Section 2-801 of the Illinois Code of Civil Procedure; appointing the attorneys from Stephan Zouras, LLP as Class Counsel; appointing Named Plaintiff Kellin Johns as Class Representative; appointing Rust Consulting ("Rust"), as Settlement Administrator; directing that Notice be mailed to the Class Members; and setting a date for the Final Approval Hearing. *See* Preliminary Approval Order, attached hereto as Exhibit 3.

Class Members have been notified of the terms of the settlement, including the monetary relief, the allocation, and their right to object to or opt out of the settlement. Exhibit 4 (Declaration of Chris Pikus ("Pikus Decl.") ¶ 8; *see also* Pikus Decl. Ex. A (Class Notice). Zero class members excluded themselves from the settlement. *Id.* ¶ 11. No Class Members objected to the settlement. *Id.* ¶ 12. With such overwhelming support for the settlement and for the reasons stated below, the Court should grant final approval.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

As set forth in greater detail in Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion"), Named Plaintiff Kellin Johns brought a putative class action on January 24, 2018, against Defendant Club Fitness of Alton, LLC,   asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.* Plaintiff filed a First Amended Class Action Complaint against all Defendants on July 10, 2019, and a Second Amended Class Action Complaint against all Defendants on February 26, 2020, alleging that Defendants utilized biometric timekeeping devices at its facilities in Illinois and require its employees to use the devices when clocking in and out of work. Plaintiff further alleged that Defendants disseminated employees' biometric data to at least one third party without his consent. Plaintiff alleged that Defendants failed to comply with BIPA by (1) failing to inform individuals in writing that they will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data.

Defendants moved to dismiss the First Amended Complaint, attaching the affidavit of Club Fitness' CEO, Eric Schreimann. Plaintiff moved for discovery under Illinois Supreme Court Rule 191(b) and deposed Mr. Schreimann on December 5, 2019. Following Mr. Schreimann's deposition, Plaintiff moved for leave to file the Second Amended Class Action Complaint against all Defendants. The Court granted Plaintiff's motion for leave to file the operative Second Amended Class Action Complaint ("Second Amended Complaint") on February 26, 2020. The

Parties fully briefed Defendants' Section 2-619.1 Motion to Dismiss Plaintiff's Second Amended Complaint, which remains pending. In an effort to reach a resolution of this matter, Counsel for the Parties engaged in significant informal settlement discussions via phone and email throughout the spring of 2020. After significant negotiation, the Parties were able to agree on the terms of the final Settlement Agreement, attached as <u>Exhibit 1</u>.

On June 18, 2020, Plaintiff filed his Unopposed Motion for Preliminary Approval of Class Action Settlement requesting, among other relief, that the Court grant preliminary approval of the Settlement Agreement and certify the classes for settlement purposes. The Court granted the Preliminary Approval Motion on July 8, 2020. *See* <u>Exhibit 3</u>.

## II.    SUMMARY OF SETTLEMENT TERMS

The terms of the settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendants.

### A.    The Settlement Amount and Allocation.

The Settlement Agreement provides that Defendant will pay the gross amount of $750,000.00 as consideration for Class Members' promises and releases in the Settlement Agreement. <u>Exhibit 1</u>, ¶¶ 34, 41(a). The Settlement Fund shall be allocated on a *pro rata* basis as follows: $1,266.89 per Class Member, less Administrative Expenses paid to the Settlement Administrator, a Fee Award to Class Counsel, and a Service Award to the Class Representative. *Id*. ¶¶ 41–42. Settlement Class Members will receive their shares of the Settlement Fund without having to submit a claim form or otherwise "opt in" to the Settlement Class. *Id*. ¶ 43. Checks to the Settlement Class Members shall remain valid and negotiable for one hundred twenty (120) days from the date of their issuance and may thereafter automatically be cancelled if not cashed within that time period. *Id*. ¶ 47(d). Within seventy-five (75) days of issuance of settlement checks,

the Settlement Administrator shall provide a list of any settlement checks that are not cashed/negotiated within sixty (60) days of issuance to Counsel for the Parties. *Id*. Within ten (10) days thereafter, the Settlement Administrator shall attempt to obtain valid mailing addresses and send a reminder post-card to affected class members. *Id*. Additionally, at the conclusion of the 120-day period, the Settlement Administrator shall provide a list of any settlement checks that are not then cashed/negotiated to counsel for the Parties. *Id*. Any unclaimed or undistributed amounts from the Settlement Fund (including checks disbursed to participating Settlement Class Members that are uncashed after 120 days, for any reason) will be distributed in equal amounts to Prairie State Legal Services and to the United Way of Madison County – COVID-19 Relief Fund as a *cy pres*. *Id*. ¶ 44.

### B. Eligible Class Members.

The proposed Settlement would establish a Settlement Class defined as follows:

> All individuals who worked or are currently working for any Defendant in the State of Illinois who had their fingerprint data and/or any other biometric identifier collected, captured, received, stored or otherwise obtained, retained, disseminated, or disclosed by any Defendant at any time within the five-year period preceding the date the Complaint was filed to the date of Preliminary Approval and who do not timely opt-out of the settlement ("Settlement Class").

Exhibit 1, ¶ 37. The Class size is 597 total members. Pikus Decl. ¶ 6.

### C. Releases.

The Settlement Agreement provides that Settlement Class Members who do not exclude themselves will provide Releasees a release of all claims arising out of, related to, or connected with the alleged capture, collection, storage, possession, transmission, conversion, disclosure, and/or other use of any finger scan, fingerprint and/or other biometric data, including biometric identifiers and/or biometric information as defined by BIPA in connection with the Timekeeping System, as set forth in detail in the parties' settlement agreement. Exhibit 1, Sec. VII.

**D.    Service Payment to Named Plaintiff, Attorneys' Fees, and Litigation and Administration Costs.**

Contemporaneous with this Motion, Plaintiff will apply for Court approval, and Defendants will not oppose, distribution of a Service Payment to the Named Plaintiff, paid out of the Settlement Amount, of $10,000.00, less applicable withholdings and deductions. Exhibit 1, ¶ 70. In addition, Class Counsel will petition for Court, unopposed, for approval of an award of attorneys' fees of $249,750.00 and litigation costs not to exceed $3,000.00. Exhibit 1, ¶ 67. The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

**E.    Settlement Administration.**

The Parties retained Rust, an experienced class action claims administrator, to administer the settlement. Exhibit 1, ¶ 33; Pikus Decl. ¶ 3. The Settlement Administrator's fees for administration and distribution of the settlement award will be paid from the Settlement Amount. Exhibit 1, ¶ 41(d). On July 31, 2020 Class Notices were mailed to 597 Class Members contained in the Class List via First Class mail. The Class Notice advised Class Members that they could submit an exclusion and/or objection postmarked by September 14, 2020. Pikus Decl. ¶ 8.

Rust performed 147 address traces on Class Notices returned as undeliverable for the first time as of September 14, 2020. The address trace utilizes the Class Member's name, previous address and Social Security Number for locating a current address. Of the 147 traces performed, 62 more current addresses were obtained and Class Notices were promptly re-mailed to those Class Members via First Class mail. Of the 147 traces performed, Rust did not obtain updated addresses for 85 undeliverable Class Notices. Of the 62 Class Notices mailed to a more current address identified from trace, six (6) Class Notices were returned to Rust as undeliverable a second time.

As of this date, 91 Class Notices remain undeliverable. *Id.* ¶ 9. As of this date, four (4) Class Notices were returned by the Post Office with forwarding addresses attached as of September 14, 2020. Rust promptly re-mailed Class Notices to those Class Members via First Class mail. *Id.* ¶ 10.

### F.    Objections and Opt-Outs.

The deadline to object or opt out of the settlement was September 14, 2020. Pikus Decl. ¶ 8. That deadline has now passed. Zero Class Members requested exclusion from the settlement, and no Class Member objected to the settlement. *Id.* ¶¶ 11-12.

## III.    THE PROPOSED SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS A FAIR, REASONABLE AND ADEQUATE RESOLUTION OF A BONA FIDE DISPUTE OVER PLAINTIFFS' BIPA CLAIMS.

Under Section 2-806 of the Illinois Code of Civil Procedure, class claims may be settled only with court approval. 735 ILCS 5/2-806. The purpose of the court's approval is to ensure that the proposed settlement agreement is "fair, reasonable, and in the best interest of the class." *Steinberg v. Sys. Software Associates, Inc.*, 306 Ill. App. 3d 157, 169 (1st Dist. 1999). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. Manual for Complex Litigation § 30.41 (3d ed. 2000).

The second and final step of the approval process follows a hearing at which time any objections by class members may be considered. The Court then determines whether the settlement is "fair and reasonable and in the best interest of all those who will be affected by it." *GMAC Mortgage Corp. of PA v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992). "In a class action, the court is the guardian of the interests of the absent class members." *Waters v. City of Chicago*, 95 Ill. App. 3d 919, 924 (1st Dist. 1981).

Courts favor the settlement of class action litigation. Herbert B. Newberg & Alba Conte,

*Newberg on Class Actions* (*"Newberg"*), § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976) *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).[1] Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.*

In determining whether the settlement is fair, reasonable, and adequate, courts examine several factors, including: (1) the strength of the plaintiff's case compared with the terms of the proposed settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and, (8) the stage of proceedings and the amount of discovery completed. *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1st Dist. 1990). All of these factors weigh in favor of final approval of the Settlement Agreement.

**A.    The Settlement Amount Is Substantial Given the Strengths of Plaintiff's Claims and Attendant Risks.**

Defendants have agreed to settle this case on behalf of individuals who were employed by Club Fitness for $750,000.00 for a class of 597 Class Members, with net individual payments of approximately $795.00. In addition, the Settlement Amount covers: (1) all attorneys' fees and costs approved by the Court in connection with all of Class Counsel's representation of Named Plaintiff and the Class Members; (2) all fees and costs of the settlement administration activities by the

---

[1] Section 2-801 of the Illinois Code of Civil Procedure is modeled after Rule 23 of the Federal Rules of Civil Procedure. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125 (2005) (citations omitted). Because of the association between these two provisions, federal decisions interpreting Rule 23 are persuasive authority regarding issues of class certification in Illinois. *Id.* (citations omitted).

Settlement Administrator; and (3) any Court-approved service payment to the Named Plaintiff. For each check not cashed/negotiated within 120 days after issuance, funds will be distributed in equal amounts to Prairie State Legal Services and to the United Way of Madison County – COVID-19 Relief Fund as a *cy pres*. Exhibit 1, ¶ 44.

**B.    Defendant's Ability to Pay.**

Defendant's ability to pay a judgment or a settlement was not a factor in the Parties' settlement.

**C.    Litigation Through Trial Would Be Complex, Costly, and Long.**

By reaching a favorable settlement prior to class certification briefing or trial, Plaintiff seeks to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believes Plaintiff's case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). Here, further litigation would certainly result in fully briefed motions for class certification and summary judgment and would prolong the risk, time, and expense associated with a complex trial for damages. Any judgment would likely be appealed, further extending the litigation. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. The proposed settlement, on the other hand, provides immediate benefits.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of final approval.

### D.    There Is No Opposition to the Settlement.

The absence of objections by Class Members is significant in determining whether the proposed settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F. Supp. 1130, 1166, 1169 (N.D. Ill. 1997) ("the court may approve a fair settlement over objections by some or even many Class Members"); *Mangone v. First USA Bank*, 206 F.R.D. 222, 226-27 (S.D. Ill. 2001) (same). Here, no Class Member has requested exclusion from the settlement. Pikus Decl. ¶ 11. No Class Members objected to the settlement. *Id*. ¶ 12. Thus, this factor also favors approval of the settlement.

### E.    The Settlement Is the Result of Arm's-Length Negotiations, Without Any Hint of Collusion.

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after months of negotiation between experienced BIPA counsel. As a distinguished commentator on class actions has noted, there is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval. *Newberg* §11.41 at 11-88. In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation, analysis, and motion practice.  Therefore, as there was no deceit or collusion, this factor supports final approval of the settlement.

F.    **Competent Counsel for All Parties Endorse this Agreement.**

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980)). Class Counsel are competent and experienced in class actions, particularly employment class actions, and are familiar with the strengths and weaknesses of the claims and defenses. *See* Exhibit 5, Aff. of Ryan F. Stephan and Stephan Zouras, LLP Firm Resume. Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well informed judgments about the value of the claims, the time, costs and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement reached. Defendants' counsel also endorse this settlement. This factor therefore weighs in favor of final approval.

G.    **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.**

This class action was resolved in principle approximately two years after it was filed. Though the Parties did not engage in formal discovery, Plaintiff did take the deposition of Club Fitness' CEO, Eric Schreimann. Additionally, this period involved extensive research, analysis, investigation, and exchange of information regarding the scope of the class and Defendants' biometric timekeeping policies and practices. The stage of litigation has advanced to a state that Class Counsel could fairly and fully evaluate the value of the settlement – indeed, class certification, further dispositive motion practice, and trial preparation were the immediate tasks at hand. Given the significant amount of time and resources spent by the Parties advancing the lawsuit, this factor favors final approval.

## IV.    CONCLUSION

For the reasons set forth above and because all relevant factors weigh in favor of final approval of the settlement, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Final Approval of Class Action Settlement and enter the Proposed Final Approval Order and Final Judgment, attached hereto as Exhibit 2.

Date:    September 25, 2020

Respectfully Submitted,

*/s/ Haley R. Jenkins*
Ryan F. Stephan
Haley R. Jenkins
STEPHAN ZOURAS, LLP
100 N. Riverside Plaza
Suite 2150
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
Firm ID: 43734
rstephan@stephanzouras.com
hjenkins@stephanzouras.com

CLASS COUNSEL