# EXHIBIT A

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3

 4   KELSEY HIRMER,                        )  Docket No. 22 C 1018
                                           )
 5                    Plaintiff,           )
                                           )
 6              vs.                        )
                                           )
 7   ESO SOLUTIONS, INC.,                  )  Chicago, Illinois
                                           )  July 13, 2022
 8                    Defendant.           )  8:55 o'clock a.m.

 9
                      TRANSCRIPT OF PROCEEDINGS
10              BEFORE THE HONORABLE MATTHEW F. KENNELLY

11
     APPEARANCES:
12

13   For the Plaintiff:    KEOGH LAW, LTD
                           BY:  MR. GREGG M. BARBAKOFF
14                         55 W. Monroe St, Suite 3390
                           Chicago, IL 60603
15                         (312) 726-1092

16

17
     For the Defendant:    JACKSON LEWIS P.C. (CHICAGO)
18                         BY:  MS. JODY KAHN MASON
                           150 N. Michigan Avenue, Suite 2500
19                         Chicago, IL 60601
                           (312) 803-2535

20

21

22

23
     Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 2102
25                         Chicago, Illinois  60604
                           (312) 435-5639
```

1   (The following proceedings were had telephonically:)
2   THE CLERK:  Case 22 C 1018, Hirmer v. ESO solutions.
3   THE COURT:  Can plaintiff's counsel give your name
4   for the record.
5   MR. BARBAKOFF:  Good morning, your Honor.  Gregg
6   Barbakoff with Keogh Law on behalf of plaintiff.
7   THE COURT:  Okay.  So that kind of sounded like you
8   had the microphone right kind of on your lips, so step back
9   from the mic and try that again.  I couldn't tell what you
10  were saying.
11  MR. BARBAKOFF:  Okay.  Good morning, your Honor.
12  This is Gregg Barbakoff with Keogh Law on behalf of plaintiff.
13  THE COURT:  Thanks.
14  Defense counsel.
15  MS. MASON:  Yes, your Honor.  This is Jody Mason for
16  defendant.
17  THE COURT:  Okay.  The primary thing that's before me
18  right now is a motion under Colorado River to stay pending a
19  case that the plaintiffs filed against the employer in state
20  court.  It's BIPA, B-I-P-A all capitals.  I have a couple of
21  questions.
22  Has the state court judge ruled on the motion to
23  dismiss yet or indicated when he or she is going to rule?
24  MR. BARBAKOFF:  No, your Honor.
25  THE COURT:  Have you gotten any kind of indication of

1  a ruling date?

2  MR. BARBAKOFF:  No, we don't have a ruling date, your
3  Honor.  The case is set for oral argument on August 5th.

4  THE COURT:  Got it.

5  MR. BARBAKOFF:  But there's no indication that --

6  THE COURT:  Okay.

7  MR. BARBAKOFF:  But --

8  THE COURT:  Stop.  It won't be before August 5th in
9  all likelihood.

10  Question for the defendant.  On footnote 2 on your
11  motion, the second sentence I'm going to read carries over
12  from pages 1 to 2.  It says, "Because this motion requests a
13  stay of this litigation, ESO respectfully submits that the
14  Court should rule on this motion before ruling on defendant's
15  motion to dismiss."

16  The next sentence is the one I'm going to ask you
17  about.  It says, "In addition, although defendant has
18  requested a stay, it is cognizant that this Court has the
19  discretion to dismiss the matter rather than stay it as a
20  result of the parallel proceedings."

21  You put that in there presumably for a reason, and I
22  took it as, well, Judge, you might want to think about
23  dismissing it rather than staying it.  Is that what you
24  intended?

25  MS. MASON:  Yes, your Honor.  You certainly have --

1     THE COURT:  When you say in the reply, "we're not
2  asking for a dismissal," does that mean you changed your mind
3  between the opening brief and the reply?
4     MS. MASON:  We believe that certainly a stay is
5  appropriate, but if your Honor believes that dismissal is, you
6  know, appropriate, we would certainly request that, and you
7  have the discretion to make that ruling as well.  So --
8     THE COURT:  You said there's a sentence that appears
9  not in a footnote but in the text of a reply on page 13 that
10 says, "Particular argument by the plaintiff, 'failed because
11 ESO has moved to stay this case' -- emphasize stay -- 'rather
12 than dismiss it outright which is sufficient to protect her
13 claims.'"  That looks to me like an outright flip flop.  It's
14 a 180.  Don't worry about the plaintiff's argument because
15 we're not asking for a dismissal even though you kind of just
16 told me you did.
17    MS. MASON:  We believe you have the discretion to
18 dismiss, your Honor, if you believe --
19    THE COURT:  Like I say, I got about 20 cases up this
20 morning.  This is not one of those Sunday morning talk shows
21 where the politician gives whatever their talking point is
22 irrespective of what the question is.  It's a court.  You
23 actually have to answer.  I know I have the discretion.
24 You've now told me that three times.
25    MS. MASON:  We're asking for a stay.

1      THE COURT:  Okay.  Thanks.  See how easy that was.
2 You could have done that three minutes ago, and we're never
3 going to get those three minutes back.
4      Okay.  My next question -- one second here.
5      Okay.  So I get that there are a significant number
6 of overlapping what I'll call legal issues between the state
7 court case and the federal court case.  I'm not as confident
8 that there are as many overlapping factual issues, and I
9 wanted to ask a couple of questions about that.  And I'm
10 hoping really from the defense for maybe a little bit simpler
11 explanation than you gave me in the brief of the following
12 statement, which is kind of the general point.  I'm looking at
13 page 302 of the reply:
14      "Because the litigation of the Elite matter" -- the
15 state court case -- "will resolve issues that could dispose of
16 Hirmer's claims against ESO or remove a foundational building
17 block from her claims in this case, ESO's liability in this
18 case is, in fact, derivative."
19      So I'm having a hard time getting what the
20 potentially dispositive ruling in the state court case is as
21 it relates to this case.  Can you kind of hit me between the
22 eyes on that.
23      MS. MASON:  I think the biggest factual issue that
24 will be resolved in the state court case is the consent that
25 Ms. Hirmer signed which explicitly references the employer's

1  vendor, which would include ESO, and ESO and the time clock at
2  issue is referenced explicitly in the consent, and if the
3  state court finds that that consent is valid and that it
4  covers at least the vendor, then that certainly could dispose
5  of the claims here.  That's one of the issues.
6      The second is the state court case is likely to
7  involve discovery on issues about the circumstances of the
8  collection, how the information was allegedly collected, who
9  collected the information.  All of those things are directly
10 relevant to the plaintiff's claims against ESO here.
11     THE COURT:  It's pretty likely, though, that if I
12 stay this case that the discovery in the state court case is
13 still likely to reach the defendant in this case.  In other
14 words, if I'm a plaintiff litigating a BIPA case against the
15 employer and I know that there's others out there, it would be
16 pretty routine in one of those cases to ask to subpoena the
17 vendor to get, you know, their relevant records relating to
18 the collection and the storage and the dissemination, if any,
19 of the data.
20     MS. MASON:  Yes, your Honor.  And I think the
21 converse is also --
22     THE COURT:  No, you've answered.  That's fine.  I get
23 it.  I just wanted to ask that question.
24     So here's my -- here's my main question for the
25 plaintiff.  It's a question that's raised by the defendant in

1  the reply.  So this has to do with the discussion back and
2  forth about, hey, wait a second, so the defendant could have
3  figured out that this other lawsuit was out there and that the
4  (audio disruption) it's not all that easy, but they then pose
5  a question in the reply on page 15.  I'm just going to read
6  the sentence:  "Although Hirmer implies that she did include
7  ESO in Elite" -- I think it should say did not.  "Although
8  Hirmer implies that she did not include ESO in Elite because
9  she did not know about ESO, in light of the fact that Elite
10 was stayed prior to the filing of this lawsuit, it is unclear
11 when and how Hirmer supposedly learned of ESO's existence."
12         That's my question for you.  How and when did you
13 learn about ESO being out there?
14         MR. BARBAKOFF:  A motion to transfer.  The long and
15 short of it is the defendant filed a motion seeking to
16 transfer the case from Cook County to Will County under the
17 doctrine of form non-convenience, and one of the issues they
18 argued was the potential ability to get relevant witnesses.
19 So we had extremely limited discovery that was pretty much
20 akin to what you see in 26(a)(1) disclosures where we asked,
21 Okay, if you're talking about the availability of witnesses,
22 who has relevant information?  Your Honor, at this point in
23 time, we had no idea that there was a vendor that was even
24 storing biometric data, and what they stated was that the
25 vendor of the time clock, which they named as ESO and eCore,

```
 1  would have relevant information.  So from that, we were
 2  able --
 3            THE COURT:  Does that have something to do with the
 4  Will County thing?
 5            MR. BARBAKOFF:  Yes, they were located in Texas.  So
 6  we pointed out, Cook County is actually going to be --
 7  basically, what we pointed out was the Will County court and
 8  Cook County court are going to have the same ability to help
 9  us with the subpoena process that we'd have to issue through
10  the IDAA, and in reality, it's going to be more convenient for
11  somebody coming in from Texas to testify in Cook County than
12  it would be for them to travel all the way out to Will County.
13  It was just --
14            THE COURT:  Unless they travel through --
15            MR. BARBAKOFF:  I suppose if somebody's flying
16  Southwest, but, you know, we had our argument to make.
17            THE COURT:  Okay.
18            MR. BARBAKOFF:  But the bottom line --
19            THE COURT:  Yeah, I get it.  Thanks.
20            All right.  So I actually think this is a pretty
21  close question.  So the first question -- I'm going to make an
22  oral ruling on this.
23            The first question under Colorado River is whether
24  the cases are parallel.  They're a little bit less parallel
25  than you would typically see in this situation because the
```

1  most typical kind of situation is one in which a defendant is
2  in both the state and the federal cases.  That's not the case
3  here.  The state court case is a BIPA case against the
4  plaintiff's employer; the federal court case is against the
5  vendor of the allegedly offending license or software.
6         I think they're parallel enough because they are
7  overlapping cases.  They both involve the same underlying
8  activity, namely, the scanning and collection and storage of
9  the plaintiff's biometric data as it relates to her
10 employment.
11        It's true that there is a request in the current
12 case, the one in front of me, in other words, for a broader
13 class.  It doesn't just involve employees of -- I think it's
14 called Elite, but the case hasn't been certified as a class
15 action yet.  So as of right now, they're I think parallel
16 enough to get you past the threshold issue under Colorado
17 River.
18        And then you get into assessment of these multiple
19 factors that are discussed in the case law.  There's a bunch
20 of them.  I think, you know, depending upon which case you
21 look at, sometimes it's more than ten, sometimes it's less
22 than ten, sometimes it's ten, so I'm going to go with the ten
23 that are discussed in the memoranda.
24        So just to kind of walk through those, the first
25 factor is whether the state has assumed jurisdiction over

1  property isn't a factor in this case because there was no
2  property.
3         Inconvenience of the federal forum.  It's not
4  inconvenient because, as is pointed out, they're about three
5  and a half blocks away from each other.
6         Desirability of avoiding piecemeal litigation is a
7  significant factor in this case, and I think it tilts for the
8  reasons described in favor of a stay because there is a
9  potentially dispositive issue relating to the consents.  And
10 it's true that what the state court finds on that would not be
11 binding as a matter of the collateral estoppel or res judicata
12 or whatever, but it would at least be an official, and that's
13 what piecemeal litigation -- that factor doesn't require that
14 it be some sort of estoppel.
15        The next factor is the order in which jurisdiction
16 was obtained.  I will tell you that I think in cases with
17 different defendants, I don't think that's really a
18 significant factor.  That's more of a factor in a case in
19 which you got the same defendant in both cases.
20        Source of governing law is state law.  That holds
21 slightly in favor of a stay.
22        The adequacy of the state court action to protect the
23 federal plaintiff's rights.  It's not.  It's not adequate to
24 protect the federal plaintiff's rights because the claims are
25 not entirely co-extensive, they are overlapping, and so, you

1  know, a judgment in favor of the plaintiff, for or against the
2  plaintiff, wouldn't necessarily dispose of the -- in state
3  court I mean, not necessarily dispose of the federal court
4  case.
5          Relative progress.  They're in pretty much the same
6  spot.  This case was filed way later, but the other one was
7  stayed for an extended period, and the only reason right now
8  that the state court case is further along than the federal
9  court case, and it isn't much further along, the only reason
10 it's further along at all is because the defendant filed a
11 motion to stay.  If that hadn't happened, the motion to
12 dismiss by now would have been fully briefed, and I would be
13 having argument on August the 4th.  Maybe I'll just go over to
14 the Daley Center and listen to the arguments over there.  I'm
15 saying that facetiously.
16         Presence or absence of concurrent jurisdiction.  Both
17 courts have jurisdiction.  That's a factor slightly in favor
18 of abstention.
19         Availability of removal.  Not a factor because the
20 state court case has proceeded too long for it to be removed.
21         Vexatious or contrived nature of the federal claim.
22 It's not a vexatious or contrived claim.  The plaintiff had a
23 legitimate basis to file it as a separate lawsuit partly
24 because the classes are broader and partly because of the
25 concern about ruling up to the other case.  The only reason

1  this case isn't probably assigned to the same judge in state
2  court as the other one, which likely would have happened, in
3  other words, under a normal consolidation that happens down at
4  the Daley Center is that the defendant removed it to federal
5  court.
6         So there are factors going both ways.  I think the
7  main factor in this case is the desirability of avoiding
8  piecemeal litigation.  So for that reason and the others I
9  discussed, the motion to stay is granted.
10         I'm going to set this -- I'm going to terminate the
11  motion to dismiss without prejudice.  Just without prejudice
12  to refile it, so it's not sitting around on the docket.
13         I'm going to ask for a status report to be filed in
14  this case in 90 days.  90 days would be the -- I'm just going
15  to say the end of September or October.  Let's say the 31st of
16  October.  I'm going to set it for a status about a week after
17  that which is the 7th of November at 9:00 in the morning by
18  phone.
19         If the status -- depending on the status report, I
20  may kick that to a later date.
21         Thanks.  Take care.
22         MS. MASON:  Thank you, Judge.
23         MR. BARBAKOFF:  Thank you, your Honor.
24    (Which were all the proceedings had in the above-entitled
25  cause on the day and date aforesaid.)

```
1    I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
2

3   Carolyn R. Cox                          Date
    Official Court Reporter
4   Northern District of Illinois
    /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR
5
```