IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLIN JOHNS, individually and on behalf of all others similarly situated, and JUAN BARRON,<br><br>    Plaintiffs,<br><br>vs.<br><br>PAYCOR, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:20-cv-264-DWD<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM & ORDER</u>

**DUGAN, District Judge:**

Before the Court is Defendant's Motion for Continued Stay ("Motion"). (Doc. 83). Plaintiffs filed a Response in Opposition, and Defendant filed a Reply in Support, of the Motion. (Docs. 92 & 98). As stated below, the Motion is **DENIED** and the stay is **LIFTED**.

### I. BACKGROUND

On October 29, 2020, Plaintiffs filed a First Amended Class Action Complaint (Doc. 40), alleging violations of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Plaintiffs were employees of Club Fitness, Inc., who worked at various of its fitness centers in the St. Louis Metro east region. (Doc. 40, pg. 12). The proposed class includes "[a]ll…individuals working in the State of Illinois who had their fingerprints, hand geometry, or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant during the applicable statutory period." (Doc. 40, pg. 14).

Defendant designs and manufactures "Biometric Time Clocks," utilized by Club Fitness, Inc., "that require scans of users' biometric data in order for those users to clock

1

in and out of work." (Doc. 40, pgs. 1-2, 12). Notwithstanding BIPA's requirements, Defendant allegedly "disregards [the] Biometric Time Clock users' statutorily protected privacy rights and unlawfully collects, captures, otherwise obtains, stores, maintains, and uses their biometric data in violation of BIPA." (Doc. 40, pgs. 4, 9). Specifically, Plaintiff alleges three causes of action under 740 ILCS 14/15 related to Defendant's alleged failure to: (1) inform Plaintiffs, in writing, of the specific purpose for and length of time that their biometric data was collected, captured, otherwise obtained, stored, maintained, and used; (2) obtain a written release from Plaintiffs to collect, capture, otherwise obtain, store, or use their biometric data; (3) provide a publicly available retention schedule and guidelines for the permanent destruction of Plaintiffs' biometric data; and (4) obtain consent from Plaintiffs to disclose, redisclose, or otherwise disseminate their biometric data to third parties. (Doc. 40, pgs. 4-5, 9-12, 17-21). Plaintiffs seek, *inter alia*, certification of a class, declaratory relief, injunctive relief, and statutory damages. (Doc. 40, pgs. 5, 22).

On November 12, 2020, Defendant filed a Motion to Dismiss the First Amended Class Action Complaint under Federal Rule of Civil Procedure 12(b)(6). (Docs. 44 & 45). However, after the Motion to Dismiss was fully briefed and while it was still under advisement, Defendant filed a Motion to Stay all proceedings pending the resolution of certain appeals in the Seventh Circuit and Illinois Appellate Court. (Doc. 55).

On May 11, 2021, the Court granted Defendant's Motion to Stay, reasoning the appeals pending in the Seventh Circuit and the Illinois Appellate Court could control and play a significant part in determining the rights of the parties in this litigation. (Doc. 65, pgs. 3-5). The Court also recognized, with Defendant's Motion to Dismiss and Plaintiff's

Motion for Class Certification under Federal Rule of Civil Procedure 23 (Doc. 61) pending before the Court, the case had reached a point in development where significant effort and resources could be unnecessarily wasted in the absence of a stay. (Doc. 65, pg. 4). As such, the case was stayed and the parties were ordered to file a status report within 14 days of each decision from the Seventh Circuit or the Illinois Appellate Court. (Doc. 65, pg. 5). Defendant's Motion to Dismiss and Plaintiff's Motion for Class Certification were denied, without prejudice, and with leave to refile after the stay. (Doc. 65, pg. 5).

On August 28, 2023, the Court was informed by the parties in a Joint Status Report that the last appeal contemplated by the Order Staying Case had been resolved. (Docs. 65 & 80). However, the parties disagreed about whether the Court should lift the instant stay, despite the fact that the initial basis for the stay no longer existed. (Doc. 80, pg. 2). As a result, on August 30, 2023, the Court entered the following Order:

> ORDER regarding the parties' Joint Status Report (Doc. 80)....On the one hand, Plaintiffs request that the stay be lifted. Plaintiffs seek to file another Joint Status Report on Discovery, a proposed schedule for the completion of discovery, and a Renewed Motion for Class Certification. On the other hand, Defendant acknowledges that the purpose for the present stay has been fulfilled. However, Defendant argues an independent basis for a continued stay exists under the *Colorado River* Doctrine. *See Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). Defendant states "[t]wo earlier-filed actions that are now consolidated...are currently pending in the Circuit Court of Cook County, Illinois, addressing identical issues raised in this case against Defendant. Therefore, Defendant requests that the Court set a briefing schedule for a motion to stay based on the *Colorado River* Doctrine. Now, the Court **FINDS** it would be prudent for the parties to brief the Defendant's claim with respect to the *Colorado River* Doctrine before the present stay is lifted. It would be improvident to lift that stay only to later find that an independent basis for the stay remains. *See Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 497-98 (7th Cir. 2011) ("The [*Colorado River*] abstention doctrine...permits federal courts to defer to a 'concurrent state proceeding' as a matter of 'wise judicial administration.' [Citation].

> The doctrine comes into play when parallel state court and federal court lawsuits are pending between the same parties."). Accordingly, the case **REMAINS STAYED**.

(Doc. 82).

The Court set a briefing schedule for a Motion for Continued Stay Under the *Colorado River* Doctrine. (Doc. 82). The parties have now complied with that briefing schedule. Below, the Court addresses the arguments on the propriety of a continued stay.

## II. ANALYSIS

Federal courts "have a 'virtually unflagging obligation' to exercise [the] jurisdiction" afforded by Congress. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)); *accord TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). However, under the *Colorado River* doctrine, a federal court may, in exceptional circumstances, abstain from exercising jurisdiction due to a parallel proceeding in a state court. *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) (quoting *Deb v. SIRVA, Inc.*, 832 F.3d 800, 814 (7th Cir. 2016)); *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). When doing so, the federal court "promote[s] 'wise judicial administration' " by conserving judicial resources and allowing for a comprehensive disposition of the case without inconsistent results. *Baek*, 886 F.3d at 663 (quoting *Colorado River*, 424 U.S. at 817-18); *Freed*, 756 F.3d at 1018 (citing *Day v. Union Mines*, 862 F.2d 652, 657 (7th Cir. 1988); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 694 (7th Cir. 1985)). The Court stresses, though, "the task of the district court 'is not to find some substantial reason for the *exercise* of federal jurisdiction' but instead 'to ascertain whether there exist "exceptional" circumstances, the

4

"clearest of justifications,"…to justify the *surrender* of that jurisdiction.' " *Huon*, 657 F.3d at 645-46 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (Emphasis in original); *TruServ Corp.*, 419 F.3d at 591 (same).

For federal and state proceedings to be parallel, "there must be 'a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.' " *Freed*, 756 F.3d at 1018 (quoting *Lumen*, 780 F.2d at 695). The federal and state proceedings need not be identical, but the Court "must examine whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.' " *Id.* at 1018-19 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988)); *accord Huon*, 657 F.3d at 646. The Court also assesses whether the federal and state proceedings assert the same legal allegations or arise from the same set of facts. *Freed*, 756 F.3d at 1019 (citing *Tyrer v. City of South Beloit, Illinois*, 456 F.3d 744, 752 (7th Cir. 2006)). The presence of additional parties or issues in the federal or state proceedings does not necessarily preclude a finding that the proceedings are parallel. *AAR Int'l, Inc. v. Nimelias Enter. S.A.*, 250 F.3d 510, 520 (7th Cir. 2001) (citing *Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 701 (7th Cir. 1992); *Lumen*, 780 F.2d at 695). All doubts about the parallel nature of the federal and state proceedings are resolved in favor of an exercise of jurisdiction. *Freed*, 756 F.3d at 1019 (quoting *AAR Int'l, Inc.*, 250 F.3d at 520; *see also Huon*, 657 F.3d at 646 ("There is a presumption against abstention…and if there is any 'substantial doubt' that the concurrent state proceeding will be ' "an adequate vehicle for the complete and prompt resolution of the issues

between the parties," ' a stay would be a ' "serious abuse of discretion." ' "); *TruServ Corp.*, 419 F.3d at 591 (same, and emphasizing the "remarkably difficult" standard).

If the proceedings in the federal and state courts are parallel, then the Court weighs ten non-exclusive factors for determining the propriety of abstention under the *Colorado River* doctrine, including: (1) whether the state assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of the governing law; (6) the adequacy of the state proceeding to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; (8) the existence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claims. *Baek*, 886 F.3d at 663; *accord Freed*, 756 F.3d at 1018. No single factor is determinative; however, the Court must carefully weigh its obligation to exercise jurisdiction against the factors counselling against such an exercise of jurisdiction. *Baek*, 886 F.3d at 663 (quoting *Colorado River*, 424 U.S. at 818-19).

In this case, Defendant notes "well prior to the time that th[is]…lawsuit was filed, there were two substantially identical lawsuits, asserting nearly identical claims on behalf of interchangeable classes, which were already pending in the state circuit court in Cook County." *See Ragsdale v. Paycor, Inc.*, No. 17-CH-13911 (Cir. Ct. Cook County); *Bolds v. Arro Corp. and Paycor, Inc.*, No. 18-CH-1811 (Cir. Ct. Cook County); (Doc. 84, pg. 4). The plaintiffs in those cases, which were subsequently consolidated, are asserting claims under § 15 based on the use of Defendant's "Biometric Time Clocks" at work. (Docs. 84, pgs. 4-5; 92, pg. 2). Like this case, the proposed classes in the consolidated cases include

individuals whose biometric data was collected, captured, stored, transmitted, disseminated, or used by or on behalf of Defendant within Illinois at any time within the applicable limitations period. (Doc. 84, pgs. 4-5). Since Plaintiffs in this case fit within those classes, Defendant argues there is a substantial likelihood that the state proceedings will dispose of the claims in this case. (Doc. 84, pgs. 5-6). In other words, Defendant asserts this case and the state proceedings are parallel. (Doc. 84, pgs. 5-6).

In light of the parallel nature of the cases, Defendant next argues the relevant factors weigh in favor of *Colorado River* abstention. (Doc. 84, pg. 6). It asserts: (1) the convenience-of-forum factor is neutral, though Plaintiff Johns initially filed this case in state court; (2) abstention would avoid piecemeal litigation because the state court is litigating the same claims under § 15 on behalf of the same proposed classes, the actions will each require costly and time-consuming class certification and summary judgment briefing, and there is "potentially a significant risk" of inconsistent outcomes; (3) the state court was vested with jurisdiction before this Court; (4) BIPA is a state law "that has been extensively interpreted by" the Illinois courts; (5) the state action has been "heavily litigation" with multiple motions to dismiss, written discovery and depositions, discovery disputes, multiple requests for summary judgment, ongoing summary judgment discovery, and a pending motion for summary judgment on the viability of the § 15 claims, indicating a decision in the state proceedings could be dispositive and avoid the costly next steps in this case; (6) there is concurrent jurisdiction, which weighs in favor of a stay due to the efficiencies associated with allowing the state court to preside over the claims; (7) the state proceedings cannot be removed to federal court; and (8) the

7

nature of the federal claims weighs in favor of abstention because, again, this case was removed after Plaintiff initially filed the claims in state court. (Doc. 84, pgs. 6-8). For these reasons, Defendant argues abstention under *Colorado River* is warranted. (Doc. 84, pg. 2).

In Response, Plaintiff argues Defendant makes a "cursory attempt" to satisfy the prerequisites for abstention under *Colorado River*. (Doc. 92, pg. 1). On the question of whether the cases are parallel, Plaintiff argues the state proceedings "involve[] a Paycor timekeeping solution that is much different than the one at issue here." (Doc. 92, pgs. 1, 3, 5). This case purportedly involves Defendant's "own proprietary timekeeping solution," Perform Time and Perform Time biometric timeclocks, while the state proceedings involve biometric timeclocks that are "white labeled" and sold by Defendant for a third-party partner. (Doc. 92, pgs. 4-7). Defendant allegedly hosts, stores, and manages the biometric information generated from its Perform Time biometric timeclocks, but it does not host or have access to the software or data collected through the third-party partner's timeclocks. (Doc. 92, pgs. 4-7). In fact, the plaintiffs in the state proceedings allegedly "explicitly represented" that their case "will not intersect with the Paycor solution at issue here." (Doc. 92, pgs. 1, 5). Also, Plaintiffs submit that the state proceedings do not involve plaintiffs who used Defendant's Perform Time biometric timeclock or who, by extension, had their biometrics collected due to that use. (Doc. 92, pg. 7). Therefore, Plaintiff argues there is no basis to find the state proceedings are parallel to this case, such that they will dispose of the claims in this case. (Doc. 92, pgs. 1-2, 7).

In addition to arguing the proceedings are not parallel, Plaintiff argues the relevant factors "weigh heavily against abstention." (Doc. 92, pgs. 2). More specifically,

8

Plaintiff argues: (1) Defendant chose this forum after Plaintiff initially filed suit in the Circuit Court of Madison County, and Defendant could have, but did not, seek to consolidate that case with the proceedings in the Circuit Court of Cook County; (2) there is no risk of piecemeal litigation, as the state proceedings will not protect Plaintiff's rights, they do not involve plaintiffs who were subject to Defendant's Perform Time biometric timeclocks, the plaintiffs have represented that fact, a judgment will not affect the Plaintiffs in this case, and Defendant's liability is much clearer here; (3) even though the state proceedings were initiated earlier, Plaintiff Johns was the first to file a claim based on Defendant's Perform Time biometric timeclocks; (4) the fact that BIPA is an Illinois state law is irrelevant when the cases are not parallel; (5) this case has been litigated extensively and is more advanced than the state proceedings, as shown by Plaintiff's prior Motion for Class Certification, Defendant's Motion to Dismiss, and the significant discovery on both class and merits issues; (6) concurrent jurisdiction exists but, again, Defendant chose this forum after removing the case from the Circuit Court of Madison County; (7) Defendant took the opposite approach to the state proceedings since it did not remove the case(s) to federal court; and (8) Defendant does not argue Plaintiff's claims are frivolous or contrived. (Doc. 92, pgs. 7-8, 10-12). For these reasons, Plaintiff argues the Court has an obligation to exercise jurisdiction rather than to abstain. (Doc. 92, pg. 2).

In Reply, Defendant notes neither the First Amended Class Action Complaint nor the prior Motion for Class Certification under Rule 23 distinguished between the types of timeclocks. (Doc. 98, pg. 2). The class proposed in the First Amended Class Action Complaint allegedly included "all who 'had their fingerprints, hand geometry or other

9

biometric data collected' regardless of type of clock." (Doc. 98, pg. 2). Likewise, the Motion for Class Certification allegedly covered Defendant's Perform Time biometric timeclocks and the timeclocks of its third-party partner. (Doc. 98, pg. 2). Finally, Defendant states "[n]either the complaint in the state court class action nor in this class action *currently* contain class definitions that distinguish among clock users." (Doc. 98, pg. 3) (Emphasis in original). Defendant contends Plaintiffs should not now be permitted to pare their claims or to limit the proposed class to avoid a stay. (Doc. 98, pg. 3).

Here, the Court **FINDS** this case is not parallel to the state proceedings. In the First Amended Class Action Complaint filed in this case, Plaintiffs allege violations of § 15(a), (b), and (d) of BIPA. (Doc. 40, pgs. 17-21). They reference fingerprint and hand geometry scans, as well as the biometric data from such scans, when using Defendant's biometric timekeeping devices. (Doc. 40, generally). However, Plaintiffs specifically allege an experience requiring scans of only "their fingerprints on Paycor's Biometric Time Clock at Club Fitness so they could be used as an authentication method to track their time worked." (Doc. 40, pg. 12). It was the fingerprint biometric data that was allegedly stored by Defendant. (Doc. 40, pg. 12). Nevertheless, Plaintiffs' proposed class includes: "[a]ll…individuals working in the State of Illinois who had their fingerprints, hand geometry, or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant during the applicable statutory period." (Doc. 40, pg. 14).

As noted above, *Bolds* and *Ragsdale* were eventually consolidated in the Circuit Court of Cook County. On June 3, 2022, plaintiffs Bolds and Ragsdale, together with a third plaintiff, plaintiff Cully, filed a Consolidated Amended Class Action Complaint for

10

violations of § 15(a), (b), (c), and (d) of BIPA. (Doc. 85-4, pgs. 13-19). Plaintiffs Bolds and Ragsdale clarified that their claims were based on allegations that, during their employment with Defendant's clients, they were required to scan their biometric identifiers, *i.e.*, their hand geometry, into Defendant's biometric timeclock when clocking in and out of work. (Doc. 85-4, pgs. 6, 8). In contrast, plaintiff Cully, like Plaintiffs in the instant case, was required to scan his biometric identifiers, i.e., his fingerprints, into Defendant's biometric timeclock when clocking in and out of work. (Doc. 85-4, pg. 9). Plaintiffs Bolds, Ragsdale, and Cully proposed the following class: "[a]ll individuals whose biometric identifiers or biometric information was collected, captured, stored, transmitted, disseminated, or otherwise used by or on behalf of Defendant within the state of Illinois any time within the applicable limitations period." (Doc. 85-4, pg. 11).

Crucially, on November 6, 2023, the plaintiffs in the state proceedings filed a Motion for Leave to File a Second Consolidated Amended Complaint, stating as follows:

> 26.   Following further investigation, Plaintiffs seek leave to file the Second Consolidated Amended Class Action Complaint in order to remove Plaintiff Cully as a named plaintiff in this matter. Paycor's Motion for Summary Judgment contends that Plaintiff Cully lacks standing to pursue claims against Defendant, and Plaintiffs do not intend to oppose that assertion. As discussed in Paycor's Motion, Plaintiffs Ragsdale and Bolds were subject to different timekeeping technology than Plaintiff Cully, whose employer…used Paycor's "Perform Time" service [citations], and Plaintiffs wish to limit the claims at issue in this case to Paycor's technology used by Plaintiffs Ragsdale and Bolds—which was not related to Paycor's "Perform Time" service. Thus, Plaintiffs also seek to limit the putative class in this matter to only those individuals who – like Plaintiffs Ragsdale and Bolds – had their biometrics used by Paycor through its "Time on Demand" service. [Citation].
>
> 27.   Accordingly, removing Plaintiff Cully as a named plaintiff will not only streamline the discovery authorized by the Court's September

11

>   13, 2023 Order, and permit Plaintiffs to focus their discovery efforts on the arguments and assertions raised in Paycor's Motion that Plaintiffs intend to contest, but also streamline any further class discovery in this case.
>
>   28. Further, Plaintiffs' proposed amendment presents no risk of prejudice or surprise to Paycor. Plaintiffs are not seeking to add any additional claims or substantive allegations, and the allegations in the Second Consolidated Amended Complaint concerning Plaintiffs Bolds and Ragsdale that Paycor challenges in its Motion for Summary Judgment are identical to their allegations in the operative Consolidated Amended Complaint. Thus, Paycor will not need to refile its pending Motion. In fact, removing Plaintiff Cully from this case provides Paycor with the exact relief its Motion for Summary Judgment seeks.
>
>   29. Finally, Plaintiffs' proposed amendment is timely. Plaintiffs seek leave to file their Second Consolidated Amended Complaint now, many weeks in advance of the deadline to complete the discovery authorized by the Court's September 13, 2023 Order, in order to streamline the discovery and permit the timely completion of such discovery. Indeed, Plaintiffs' proposed amendment seeks to limit, rather than expand, the scope of that discovery.
>
>   30. Moreover, Plaintiffs' proposed Consolidated Amended Complaint would increase efficiency and preserve judicial resources going forward by limiting the arguments and named plaintiffs the Court will need to address in connection with Paycor's Motion for Summary Judgment.

(Doc. 96, pgs. 6-8).

On November 15, 2023, the Circuit Court of Cook County denied the Motion for Leave to File a Second Consolidated Amended Complaint. (Doc. 96, pg. 131). However, the plaintiffs' oral motion to dismiss plaintiff Cully was granted. (Doc. 96, pg. 131). He was dismissed from the case with prejudice. (Doc. 96, pg. 131).

Based on the posture of each case, it is clear to the Court there is not a substantial likelihood that the state proceedings will dispose of all the claims presented in this federal case. *See Freed*, 756 F.3d at 1018. Notably, when arguing to the contrary, it appears

Defendant views the issue through the wrong lens. It takes issue with Plaintiffs allegedly attempting to avoid a stay by paring their claims to a single biometric timeclock despite not pleading or seeking relief for such a limited class. (Doc. 98, pgs. 2-3). But the question is not whether this case could dispose of the claims in the state proceedings. Just the opposite. The Court assesses whether there is a substantial likelihood that the state proceedings will resolve the claims in this federal case. *See Freed*, 756 F.3d at 1018.

Here, it is apparent that the plaintiffs, legal issues, and factual circumstances in the state proceedings materially differ from those in this federal case. *See id.* at 1018-19; *Huon*, 657 F.3d at 646. Again, in this case, the First Amended Class Action Complaint alleges Plaintiffs were required to scan only their fingerprints, not their hand geometry, with a biometric timeclock to authenticate and track time worked. (Doc. 40, pg. 12). Plaintiffs Bolds and Ragsdale, in their Consolidated Amended Class Action Complaint without plaintiff Cully, who was similarly positioned to Plaintiffs, allege that, during their employment, they were required to scan their hand geometry, not their fingerprints, with a different biometric timeclock. (Doc. 85-4, pgs. 6, 8). In light of the differing allegations between the two cases, as well as the reasoning quoted above for the dismissal of plaintiff Cully in the Motion for Leave to File a Second Consolidated Amended Complaint, the Court is persuaded by the argument that the state proceedings may not dispose of the claims in this case because Plaintiffs were subjected to a different biometric timeclock that is no longer directly at issue in the Circuit Court of Cook County. (Doc. 92, pgs. 1, 3-9).

In doing so, the Court stresses its understanding that the Motion for Leave to File a Second Consolidated Amended Complaint was ultimately denied, even though the

13

plaintiffs were allowed to dismiss plaintiff Cully, and a class has not yet been certified in either this or the state case. The Circuit Court of Cook County could narrow the proposed class after discovery, consistent with the plaintiffs' representations, without an amended complaint. *See* 735 ILCS 5/2-802(a) ("As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. This order may be conditional and may be amended before a decision on the merits."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 125-26 (2005) ("Decisions regarding class certification are within the sound discretion of the trial court and should be overturned only where the court clearly abused its discretion or applied impermissible legal criteria."); *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 45 ("The authority to amend a previous certification exists because it may be beneficial to the orderly administration of justice to set aside an earlier determination of a suitable class action if clearly changed circumstances or more complete discovery warrant it."); *Cohen v. Blockbuster Ent.*, 376 Ill. App. 3d 588, 598 (2007) ("[T]he trial court has an independent obligation to ensure that a class action is indeed appropriate…[and] a continuing obligation to take cognizance of a change in factual circumstances and to modify class certification rulings when necessary."). Therefore, resolving all doubts in favor of exercising jurisdiction, the Court cannot find this federal case is parallel to the state proceedings. *See Freed*, 756 F.3d at 1019.

Even if this case were parallel to the state proceedings, though, the factors relevant to the *Colorado River* abstention analysis do not reveal exceptional circumstances counseling in favor of the Court relinquishing its " 'virtually unflagging obligation' to

exercise jurisdiction" in this case. *See Huon*, 657 F.3d at 645; *TruServ Corp.*, 419 F.3d at 591; *Baek*, 886 F.3d at 663; *Freed*, 756 F.3d at 1018-19. The federal forum is clearly convenient to Defendant, as it chose to remove the case from the Circuit Court of Madison County. The Court can also avoid piecemeal litigation because this federal case and the state proceedings involve named plaintiffs who were subjected to different biometric timeclocks, and the plaintiffs in the state proceedings have represented that they intend to define their proposed class and limit discovery in a manner that excludes the Plaintiffs in this federal case. For these same reasons, the Court cannot find the state proceedings will adequately protect Plaintiffs' rights, and it is of lesser consequence that the state proceedings are more advanced. Further, while *Bolds* and *Ragsdale* were initiated in the Circuit Court of Cook County prior to the removal of this case from the Circuit Court of Madison County, it appears this Court first acquired jurisdiction over the claims involving the Perform Time biometric timeclocks. And, as noted above, the claims of the remaining named plaintiffs in the state proceedings no longer directly implicate that biometric timeclock and they indicated an intent to limit discovery and their proposed class. Also, even though BIPA is a state law, that factor is of lesser importance in light of the finding that this federal case, over which the Court retains diversity jurisdiction, is not parallel to the state proceedings. Finally, Plaintiffs' claims are not contrived or vexatious, and Defendant does not so argue. Therefore, upon weighing its obligation to exercise jurisdiction against the factors implicated by the *Colorado River* doctrine, the Court **FINDS** it could not abstain from an exercise of jurisdiction even if this case were parallel to the state proceedings. *See Baek*, 886 F.3d at 663; *Freed*, 756 F.3d at 1018.

## III. CONCLUSION

As explained above, the Motion is **DENIED** and the stay is **LIFTED**. Within 21 days of this date, the parties are **DIRECTED** to meet, confer, and then file a Joint Status Report on the appropriate next steps in this case. The Joint Status Report, at a minimum, shall cover the state of discovery, a proposed scheduling and discovery order, and a proposed briefing schedule for the previously filed Motion to Dismiss (Docs. 44 & 45) and Motion for Class Certification under Rule 23 (Doc. 61).

**SO ORDERED.**

Dated: May 8, 2024.

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge