**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Kellin Johns and Juan Barron, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) Case No. 3:20-cv-00264-DWD |
| *Plaintiffs*, | ) ) |
| v. | ) Judge David W. Dugan ) |
| Paycor, Inc., | ) ) |
| *Defendant.* | ) |

**DEFENDANT PAYCOR, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**AMENDED 12(b)(6) MOTION TO DISMISS WITH PREJUDICE**

Melissa Siebert
Cozen O'Connor
123 N. Wacker Dr. Suite 1800
Chicago, IL 60606
Telephone: 312-474-4491
Fax: 312-382-8910
msiebert@cozen.com
***Attorney for Defendant Paycor, Inc.***

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

      A.    First Amended Complaint ........................................................................... 2

      B.    Procedural History ..................................................................................... 2

LEGAL STANDARD ............................................................................................................... 3

ARGUMENT ............................................................................................................................ 3

I.    PLAINTIFFS FAIL TO PLEAD A CLAIM UNDER BIPA ............................................ 3

      A.    Plaintiffs Fail to Plead a Claim Under BIPA Section 15(b) .................................. 3

          1.    Plaintiffs fail to allege that Paycor took any active step to collect, capture, or otherwise obtain their biometric information ........................................ 3

          2.    Tech providers can comply with BIPA through their customers ................ 7

      B.    Plaintiffs fail to state a claim under BIPA Sections 15(a) or 15(d) ........................ 8

          1.    Plaintiffs fail to allege that Paycor possessed their data ........................... 8

          2.    Plaintiffs admit that Paycor had a biometric information privacy policy, so their Section 15(a) claim fails .................................................... 10

          3.    Plaintiffs have not alleged that Paycor "disclosed," "redisclosed," or "transmitted" Plaintiffs' data in violation of BIPA §15(d) ...................... 11

          4.    Plaintiffs' Section 15(d) claim should be dismissed because any alleged disclosure, if it occurred, completed an authorized financial transaction. 13

II.    PLAINTIFFS FAIL TO ALLEGE THAT THEY ARE ENTITLED TO STATUTORY DAMAGES ............................................................................................................ 14

      A.    Plaintiff Has Failed to Allege Intentional/Reckless Conduct ............................. 14

      B.    Plaintiff Has Failed to Allege Negligent Conduct ............................................. 15

III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY SEEK DUPLICATIVE RECOVERY.........................................................................................15

IV.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE THEY REPRESENT AN IMPROPER EXTRATERRITORIAL APPLICATION OF BIPA............................17

V.    PLAINTIFFS SHOULD NOT BE PERMITTED TO RECOVER ON BEHALF OF INDIVIDUALS OUTSIDE OF THE PUTATIVE CLASS.............................................18

CONCLUSION.....................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
    742 F.3d 720 (7th Cir. 2014) ...............................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................3

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005)................................................................................17

*Baylay v. Etihad Airways P.J.S.C.*,
    222 F. Supp. 3d 698 (N.D. Ill. 2016) ................................................................5

*Brooks v. Ross*,
    578 F.3d 574 (7th Cir. 2009) .............................................................................12

*Cothron v. White Castle Systems, Inc.*,
    216 N.E.3d 918, *as modified on denial of reh'g* (Ill. July 18, 2023)......................14

*Eberle v. Brenner*,
    505 N.E.2d 691 (Ill. App. Ct. 1987) .................................................................15

*Figueroa v. Kronos*,
    454 F. Supp. 3d 772 (N.D. Ill. 2020) .............................................................4, 7

*Fleury v. Union Pac. R.R. Co.*,
    No. 20 C 390, 2023 WL 4549668 (N.D. Ill. July 14, 2023) ..............................17

*Fox v. Dakkota Integrated Sys., LLC*,
    980 F.3d 1146 (7th Cir. 2020) ..........................................................................10

*Griffin v. Oceanic Contractors, Inc.*,
    458 U.S. 564 (1982)............................................................................................5

*Guszkiewiecz v. Samsara*,
    Case No. 2021L001248 (Cir. Ct. DuPage Cty). (Exhibit 2, 11/2/22 Report of
    Proceedings)........................................................................................................7

*Heard v. Becton, Dickinson & Co.*,
    524 F. Supp. 3d 831 (N.D. Ill. 2021) .........................................................3, 4, 9

*Heard v. Becton, Dickson & Co.*,
    440 F. Supp. 3d 960 (N.D. Ill. 2020) ....................................................5, 8, 9, 11

*Hernandez v. Omnitracs, LLC*,
    No. 22-0109, 2024 WL 1376352 (N.D. Ill. Mar. 31, 2024) (Chang, J)....................................17

*Jacobs v. Hanwha Techwin Am., Inc.*,
    No. 21 C 866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ...............................3, 5, 6, 8, 9, 11

*Jones v. Microsoft Corp.*,
    649 F. Supp. 3d 679 (N.D. Ill. 2023) ...............................................................................4, 6, 9

*Kirk v. Michael Reese Hosp. & Med. Ctr.*,
    513 N.E.2d 387 (Ill. 1987) .......................................................................................................14

*Klier v. Siegel*,
    558 N.E.2d 583 (Ill. App. Ct. 1990) .......................................................................................15

*Kukovec v. Estee Lauder Companies, Inc.*,
    No. 22 CV 1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022)...............................................14

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ..................................................................................11, 4

*Popoca v. Paylocity Corp.*,
    2020-CH-06817 (Cir. Ct. Cook County December 20, 2023)....................................................4

*Price v. Philip Morris, Inc.*,
    219 Ill. 2d 182 (2005) ..............................................................................................................10

*Resolution Tr. Corp. v. Franz*,
    909 F. Supp. 1128 (N.D. Ill. 1995) .........................................................................................14

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................................................17

*Robinson v. Toyota Motor Credit Corp.*,
    774 N.E.2d 951 (Ill. 2002).......................................................................................................15

*Rogers v. BNSF Railway Co.*,
    No. 19-cv-3083, 2022 WL 4465737 (N.D. Ill. Sept. 26, 2022)..................................................4

*Rogers v. CSX Intermodal Terminals, Inc.*,
    409 F. Supp. 3d 612 (N.D. Ill. 2019) ......................................................................................14

*Ronquillo v. Doctor's Assocs., LLC*,
    No. 21 C 4903, 2022 WL 1016600 (N.D. Ill. Apr. 4, 2022)......................................................7

*Vance v. Amazon.com Inc.*,
    525 F. Supp. 3d 1301 (W.D. Wash. 2021)................................................................................4

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)................................................................................................18

*White v. Keely*,
   814 F.3d 883 (7th Cir. 2016) ........................................................................5,

*Wilk v. Brainshark, Inc.*,
   631 F. Supp. 3d 522 (N.D. Ill. 2022) .........................................................17

**Statutes**

740 ILCS 14/5 ...............................................................................................5

740 ILCS 14/10 .............................................................................................1

740 ILCS 14/15(a) .....................................................................................7, 9

740 ILCS 14/15(d)(1) ...................................................................................10

740 ILCS 14/15(e)(1)....................................................................................14

740 ILCS 14/20 ............................................................................................13

740 ILCS 14/20(1)-(2)..................................................................................13

740 ILCS § 14/15(d) .....................................................................................12

740 ILCS § 14/15(d)(1), (2)..........................................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6)..............................................................................2, 4

**Other Authorities**

*Merriam-Webster* (Online ed)........................................................................9

v

**INTRODUCTION**

Plaintiffs' First Amended Class Action Complaint ("Amended Complaint" or "Am. Compl.") is just as deficient now as when it was first filed four years ago, a fact made glaringly obvious by Plaintiffs' recently-filed class certification motion. The Amended Complaint, which claims that Paycor violated the Biometric Information Privacy Act ("BIPA"), does not even allege that Paycor collected, possessed, disseminated, or otherwise obtained Plaintiffs' purported biometric information in Illinois, perquisites for any BIPA liability. In fact, the class certification motion admits that Paycor did nothing more than simply receive data on its servers in Ohio.

Yet Plaintiffs claim that Paycor – who merely sells timeclocks to customers who then use them to keep track of employee time – had an independent obligation to receive consent from all of the approximately 14,000 users of its timeclocks in Illinois. This is, of course, impossible, and is an absurd interpretation of BIPA that has never been recognized by any court anywhere. Plaintiffs never explain why Paycor, who neither employed them nor operated the timekeeping devices they supposedly used, should be liable for what was done with those devices after they were sold. Indeed, the Amended Complaint does not even hint that Paycor had input on the policies and procedures of Plaintiffs' employer or even had access to their timekeeping devices.

The Amended Complaint is woefully deficient and should be dismissed with prejudice for four separate reasons. *First*, Plaintiffs do not (and cannot) allege that Paycor violated BIPA. *Second*, Plaintiffs do not allege that they are entitled to damages. *Third*, Plaintiffs have already recovered under BIPA for these same claims in a separate lawsuit brought against the fitness clubs that actually owned and operated the time clocks. *Fourth*, Plaintiffs improperly attempt to apply BIPA extraterritorially.

1

## BACKGROUND

### A.        First Amended Complaint

Plaintiffs were employed by Club Fitness, Inc. at various locations in Illinois. (Dkt. 1 ¶¶ 48-49). It was during this employment, they claim, that their biometric information was purportedly collected. (*Id.* ¶ 51). Plaintiffs allege that, as a condition of employment, they were required by Club Fitness (not Paycor) "to scan their fingerprints[1]" so that they "could be used as an authentication method to track their time worked." (*Id).*

Even though Club Fitness owned and operated the "biometric timeclocks" that supposedly collected their fingerprints, Club Fitness is not named as a defendant. Only Paycor is, even though it simply sold the timekeeping system to Club Fitness. (*Id.* at ¶ 50).

Outside of these allegations, the Amended Complaint merely recites BIPA's statutory language and includes the typical allegations found in template BIPA complaints. Plaintiffs claim that Paycor violated Sections 15(a), (b), and (d) of BIPA and seek "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA…or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA…." (*Id.* at ¶¶ 81, 91, 100).

### B.        Procedural History

On March 11, 2020, this case was removed from state court. (Dkt. 1). On October 29, 2020, Plaintiffs filed their First Amended Complaint (Dkt. 40), which is the operative complaint and the pleading this Motion seeks to dismiss. On November 12, 2020, Paycor filed a motion to dismiss. (Dkt. 44). On March 17, 2021, before this Court had ruled on that motion, Paycor filed a motion

---

[1] Paycor disputes Plaintiffs' assertion that Paycor devices scanned their "fingerprints." Paycor denies that its devices collect fingerprints, biometric identifiers, or biometric information, as those terms are defined by BIPA. 740 ILCS 14/10. For the purposes of this Motion, Plaintiffs' allegations must be taken as pled. The use of the term "biometric" or "biometric data" in this memorandum is not a concession that any of the data is actually covered by BIPA. Paycor reserves all arguments regarding the nature of the finger scans at issue in this suit.

to stay this matter pending the resolution of several BIPA cases before the Illinois Supreme Court.

(Dkt. 55). On May 11, 2021 this Court granted that motion (Dkt. 65), and this matter remained

stayed until May 8, 2024. (Dkt. 99). On June 18, 2024, this Court gave Plaintiffs leave to file a

renewed motion for class certification, which they did on July 3, 2024 (Dkt. 103), and also gave

Paycor leave to file a renewed motion to dismiss. (Dkt. 102).

## LEGAL STANDARD

Paycor moves this Court to dismiss the Amended Complaint pursuant to Fed. R. Civ. P.

12(b)(6). Under Rule 12(b)(6), dismissal is proper where a complaint fails to state a claim upon

which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a 12(b)(6) motion, a complaint

must contain "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory

statements, do not suffice." *Id.; Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

Dismissal is appropriate where, *inter alia*, a plaintiff failed to plead possession, collection, and

dissemination under BIPA § 15(a), (b), and (d). *See, e.g., Heard v. Becton, Dickinson & Co.*, 524

F. Supp. 3d 831 (N.D. Ill. 2021).

## ARGUMENT

**I.      Plaintiffs Fail to Plead a Claim Under BIPA**

**A.      Plaintiffs Fail to Plead a Claim Under BIPA Section 15(b)**

**1.      *Plaintiffs fail to allege that Paycor took any active step to collect, capture, or otherwise obtain their biometric information***

Section 15(b) does not apply to entities who are merely "in possession" of biometric

information. *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *2 (N.D.

Ill. July 27, 2021) ("mere possession of biometric data is insufficient to trigger Section 15(b)'s

requirements."). Instead, "an entity must, at a minimum, take an active step to collect, capture, purchase, or otherwise obtain biometric data." *Id.*; *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023) ("Although BIPA does not say the words 'active step,' this concept simply describes the unifying characteristic among the verbs in the statute.").

Only those entities that actively "collect" and "capture" a person's biometrics are subject to Section 15(b). Courts have defined "collect" as meaning "'to bring together into one body or place' [or] 'to gather or exact from a number of persons or sources'" and "capture" as meaning "'to record in a permanent file (as in a computer).'" (Exhibit 1, *Popoca v. Paylocity Corp.*, 2020-CH-06817 (Cir. Ct. Cook County December 20, 2023) at p. 4). As the court explained in *Jones*, prior cases, including *Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831 (N.D. Ill. 2021) ("*Heard II*"), *Figueroa v. Kronos*, 454 F. Supp. 3d 772 (N.D. Ill. 2020), and *Rogers v. BNSF Railway Co.*, No. 19-cv-3083, 2022 WL 4465737 (N.D. Ill. Sept. 26, 2022), all require a BIPA defendant to play an active role or to "do something" to actually collect the data. *See Jones*, 649 F. Supp. 3d at 684 (collecting cases). And other courts have interpreted the term "otherwise obtain" as meaning "to get, acquire, or secure." *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1312 (W.D. Wash. 2021) (internal quotation marks and citations omitted).

In *Jones*, the court dismissed BIPA Section 15(b) claims because those plaintiffs failed to allege the BIPA defendant (Microsoft) actively collected the alleged biometric data. *Id.* at 685. Instead, they asserted that other entities provided the technology for collection of biometric data, performed the collection of biometric data, and sent the data for storage. *Id*. The sum of these allegations established that a third party (not Microsoft) created the system and collected the data. *Id.*

4

Plaintiffs here have alleged nothing to indicate that Paycor took any affirmative action to actively collect biometric data. All they can muster is the conclusory, speculative assertion that "[a]s part of its services, Paycor collected and managed the biometric data of [Plaintiffs]." (Dkt. 40 ¶ 50). Such "rank speculation" and conclusory allegations are insufficient to establish collection. *Heard*, 440 F. Supp. 3d at 968; *Jacobs*, 2021 WL 3172967 at *3 (finding the complaint's allegations that that the defendant "collected" his biometric data insufficient because it did not contain allegations explaining "how, when, or any other factual detail.").

In fact, Plaintiffs' class certification motion[2] ("Class Cert.") makes it clear that Paycor played no part in the purported collection of their finger scans, which was done entirely by their employer. (Dkt. 103 at 4). According to that motion, before Plaintiffs could start using the timekeeping device, "they needed to be physically present at the timekeeping device with a supervisor or someone authorized to enroll users." (*Id*). That person needed to validate themselves on the clock and then enroll the new user. (*Id*). After the purported fingerprint or hand geometry was allegedly scanned, it was then stored on the device and also transmitted back to Paycor through Paycor's network and software. (*Id.* at p. 5). Each time a user clocks in and out, the information is transmitted back to Paycor's data centers in Cincinnati "for storage on Paycor's networks and software databases." (*Id.* at p. 6). At no point in this process is Paycor actively collecting any purported biometric information. Agents of the employer are enrolling, registering, and scanning the new user's fingers and then that data is being passively transmitted back to Paycor's out-of-state data centers.

---

[2] This Court may take judicial notice of the class action complaint because it is a public court document filed in this matter, specifically concessions made in the motion in support of Paycor's arguments herein. *See White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016) (noting that a court "may take judicial notice of public records, including public court documents, in ruling on a motion to dismiss under Rule 12(b)(6)." *Baylay v. Etihad Airways P.J.S.C.*, 222 F. Supp. 3d 698, 703 (N.D. Ill. 2016) (finding that a court may take judicial notice of "concessions made by the plaintiff….").

Moreover, construing Section 15(b) more broadly to include entities like Paycor would yield absurd results. "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). Extending Section 15(b) beyond active "collectors" – in direct contravention of its text – would give rise to an absurd compliance landscape.

For example, to avoid being named in BIPA suits, Paycor would need to procure informed consent from any employee of a Paycor client whose biometric information was collected by the client and stored in that client's database. For a company like Paycor that provides payroll technology and services, a single client may have dozens, hundreds, or even thousands of employees. Paycor has no way of knowing how many employees the client may have when it sells the client a timeclock, much less knowing who those employees are and being able to obtain a written release from them.

Under Plaintiffs' theory, every time that Paycor sold a new device it would be required to obtain consent from each of the client's employees, and somehow ensure that every subsequent employee granted access would also give their consent. This is not practical and would give rise to an absurd web of potential liability and compliance costs, threatening BIPA's ultimate aim: realizing the "promise" of biometric technologies. *See* 740 ILCS 14/5. To avoid this, Section 15(b) must only be applied to active collectors, as multiple courts have recognized. *See, e.g, Jones*, 649 F. Supp. 3d at 684(a violation of Section 15(b) requires "an active step to collect, capture, purchase, or otherwise obtain biometric data."); *Jacobs*, No. 21 C 866, 2021 WL 3172967, at *2 (holding that collection requires "something more" than mere possession).

Finding that Paycor violated Section 15(b), even though it is not an active collector, would set a dangerous precedent that would make it virtually impossible for any company to sell finger scan timeclocks. To avoid this, this Court must dismiss Plaintiffs' Section 15(b) claim.

### 2.    *Tech providers can comply with BIPA through their customers*

Both federal and state courts have held that a third-party technology provider can comply with BIPA through its customers and have dismissed lawsuits that attempt to claim otherwise. *See, e.g., Guszkiewiecz v. Samsara*, Case No. 2021L001248 (Cir. Ct. DuPage Cty). (Exhibit 2, 11/2/22 Report of Proceedings). The *Guszkiewiecz* court noted that the only practical way for a third party technology vendor to obtain consent from its customers' employees, with whom it lacks any relationship, was through the customers themselves, noting "I don't know how else they [technology provider] can comply. You're [plaintiff] putting them in an impossible situation, and I don't think that's the intent of the statute, to put people in the trick bag…." (*Id.* at pp. 17-19). Dismissing the plaintiff's lawsuit outright, the *Guszkiewiecz* court held that the defendant satisfied the third party vendor's "obligation under the statute" to comply with BIPA through its customers. (*Id*. at p. 19). Other courts have similarly concluded that a third-party technology vendor can comply with BIPA through its customers' own compliance. *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783 (N.D. Ill. 2020) (third-party timekeeping technology provider could comply with BIPA through its customers); *accord Ronquillo v. Doctor's Assocs., LLC*, No. 21 C 4903, 2022 WL 1016600, at *3 (N.D. Ill. Apr. 4, 2022) (finding that point-of-sale software supplier could comply with BIPA Section 15(b) through requiring clients to collect employees' consent).

7

So too, here. Plaintiffs never allege that their employer failed to obtain the consent and release required by BIPA Section 15(b).[3] They have therefore failed to state a Section 15(b) claim against Paycor.

**B.      Plaintiffs fail to state a claim under BIPA Sections 15(a) or 15(d)**

*1.      Plaintiffs fail to allege that Paycor possessed their data*

An entity can only be held liable under BIPA Sections 15(a) and (d) if it is in possession of biometric information. *See* 740 ILCS 14/15(a) (requiring entities in "possession" of biometric information to develop a retention schedule and destruction policy for the data and to timely destroy the data); 15(d) ("No private entity *in possession* of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information….") (emphasis added). Plaintiffs must therefore plausibly assert that Paycor *possessed* their purported biometric information. *See Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at \*3 (N.D. Ill. July 27, 2021) (dismissing BIPA §§ 15(a) and (d) claims where the plaintiff failed to allege "whether defendant could freely access the data, or even how defendant allegedly received it"); *Heard,* 440 F. Supp. 3d at 968 (similar). In *Barnett v. Apple*, the court held that "possession" under Section 15(a) means "the act of having or taking control" and dismissed the 15(a) claim where the plaintiff pled that the technology users themselves created and collected purported biometric data and showed that the defendant did not control the process. 2022 IL App (1st) 220187 at ¶¶ 41-42.

Plaintiffs have not pled anything suggesting that Paycor possessed their biometric data. Plaintiffs merely allege that "Defendant subsequently stored Plaintiffs' fingerprint biometric data in its databases." (Dkt. 40 ¶ 52). This is not "possession" under BIPA. Courts have repeatedly

---

[3] In fact, in the deposition transcript attached as Exhibit A to the class certification motion, Paycor's 30(b)(6) representative stated that the company "obtain[s] consent from a customer."

found that such passive storage like this is insufficient to meet the "possession" requirement. *Heard*, 440 F. Supp. 3d at 968 ("Only one paragraph of the Complaint provides more detail: it states that…BD subsequently stored [Heard's] fingerprint data in their systems. This allegation does not plead that BD exercised any form of control over the data or that it held the data at [its] disposal."); *Jones*, 649 F. Supp. 3d at 684 (merely providing a "cloud computing storage platform" did "not constitute an active step or affirmative act"); *Jacobs*, No. 21 C 866, 2021 WL 3172967 at *3 (dismissing Section 15(b) claim where the defendant was not the "active collector" but rather "merely provided the cameras" that another entity allegedly used to collect biometric data).

This is particularly true where, as here, Plaintiffs have not alleged "whether defendant could freely access the data." *Jacobs,* 2021 WL 3172967 at *3. There are no allegations in the Amended Complaint, and nothing in the class certification motion, which even suggests that Paycor could access or use the data on its servers.

The only party who potentially used the data was Club Fitness, who did so for timekeeping purposes. *Id.* ¶ 11. This sort of passive storage does not equate to Paycor having control of the purported biometric information or holding it at its disposal because it did not do anything with that information. *Compare*, *Heard v. Becton, Dickson & Co.,* 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) (finding allegations that defendant stored biometric information on its servers did not allege possession because it did not show that defendant "exercised any form of control over the data or that it held the data at its disposal" (internal quotation marks and citations omitted)) *with Heard v. Becton, Dickson & Co.,* 524 F. Supp. 3d 831, 840 (N.D. Ill. 2021) (finding amended allegations that "users' biometric data flows back to [defendant's] servers (and potentially third-party data centers …) for analysis and support services" was sufficient to plead "possession" under BIPA). *Cf. Ward,* 215 Ill. 2d at 326. As such, the undisputed facts show that Paycor never "possessed"

9

Plaintiffs' biometric data as required by BIPA §§ 15(a) and (d), which requires dismissal of those claims.

### 2. *Plaintiffs admit that Paycor had a biometric information privacy policy, so their Section 15(a) claim fails*

In Paragraph 79 of the Amended Complaint, Plaintiffs allege that Paycor violated Section 15(a) because it supposedly "failed to implement and maintain a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information…." Yet in their class certification motion, they admit that Paycor posted a BIPA policy to its website in 2017. (Dkt. 103 at 7) ("Defendant failed to even acknowledge BIPA until the summer of 2017, when Paycor first posted a BIPA policy to its website.")). This policy, which they attach to their motion as Exhibits D and E, contains everything required by Section 15(a) – a biometric information retention schedule detailing the length of time for which biometrics are stored, guidelines for permanently destroying biometric identifiers and information, and the company's policy on storage and disclosure of biometric data, among other things.

BIPA Section 15(a) only requires that a biometric information privacy policy be "available to the public." 740 ILCS 14/15(a). It does not require an entity to "provide" the policy to anyone who has not asked for it. *See id.* When a statutory term is undefined, courts construe the term according to its plain and ordinary meaning, often using the dictionary definition. *See*, *Price v. Philip Morris, Inc.,* 219 Ill. 2d 182, 243 (2005). The definition of "available" is "accessible or obtainable," and the definition of "public" is "accessible to or shared by all members of the community." *Merriam-Webster* (Online ed).. Thus, the plain meaning of the phrase "available to the public" is simply "accessible" to the public. *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154 (7th Cir. 2020) ("the duty to disclose [data-retention policies] under section 15(a) is

10

owed to the public generally, not to particular persons whose biometric information the entity collects.") (citation omitted).

Paycor's policy, available on its website, clearly was accessible to the public, and thus Plaintiffs' Section 15(a) claim fails.

### 3. Plaintiffs have not alleged that Paycor "disclosed," "redisclosed," or "transmitted" Plaintiffs' data in violation of BIPA §15(d)

Plaintiffs' Section 15(d) claim also fails because it is premised solely on the conclusory allegation that "Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1)." (Dkt. 40 ¶ 98). This allegation is devoid of any "details" or "specifics" and must be dismissed. *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (finding allegations that "[e]ach Defendant systematically and automatically collected, used, stored and disseminated [her]…biometric identifiers" as too speculative to state a Section 15(d) claim).

Plaintiffs must allege that Paycor disclosed – meaning actually "revealed" or "exposed" (*Merriam-Webster* (2018)) – their data to a third party. It is insufficient to allege that Paycor "allowed" biometric information to be sent to "vendors for timekeeping, data storage, and payroll purposes" because these are "form[s] of mere transmission" that fall under the ambit of section 15(e), not section 15(d). *See*, *Jacobs v. Hanwha Techwin Am., Inc.,* No. 21 C 866, 2021 WL 3172967, at *4 (N.D. Ill. July 27, 2021) (dismissing a Section 15(d) claim because plaintiff had not presented "any legitimate reason to suspect that defendant disclosed his biometric data"); *Heard v. Becton, Dickinson & Co.,* 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020) (dismissing a Section 15(d) claim in part because the plaintiff had alleged no facts to suggest there was "any basis to even *suspect* that [defendant] disseminated the biometric data at issue.").

11

Plaintiffs' allegations here fall well short of this standard. Without any factual support, Plaintiffs allege that "[u]pon information and belief, Defendant improperly discloses its Biometric Time Clock users' fingerprint and hand geometry data to other, currently unknown, third parties, including but not limited to Defendant's clients and/or other third parties that host biometric data in their data center(s)." (Dkt. 40 ¶ 14).

Not only is this clearly the "rank speculation" that the Court is not required to credit, but Plaintiffs also contradict themselves later in the Complaint. *See* Dkt. 40 ¶ 45 ("Because Defendant neither publishes a BIPA-mandated data retention policy nor discloses the purposes for its collection or obtainment of biometric data, individuals are left in the dark regarding the extent to which Defendant stores, uses, sells, discloses, re-discloses, or otherwise disseminates their biometric data to whom and when.").

Plaintiffs do not adequately allege that Paycor ever even "possessed" their data – an obvious prerequisite for disclosure of that data – but they also fail to explain *why* Paycor would disclose Plaintiffs' data to Plaintiffs' employers when they allegedly already collected it themselves.

Rather than alleging facts that could alleviate these problems and support an inference that Paycor disclosed Plaintiffs' data, Plaintiffs merely parrot BIPA's statutory language and call it a day.[4] "Plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims…must do more." *Brooks v. Ross*, 578

---

[4] As discussed above, in their class certification motion, Plaintiffs provide no evidence that Paycor did anything other than passively store data on its servers. There is nothing suggesting that it disclosed Plaintiffs', or anyone else's, data to anyone.

F.3d 574, 581 (7th Cir. 2009). Because Plaintiffs have done nothing more than parrot BIPA's statutory language, their Section 15(d) claims (along with their other claims) must be dismissed.

### 4. Plaintiffs' Section 15(d) claim should be dismissed because any alleged disclosure, if it occurred, completed an authorized financial transaction

Even if the passive transmission of Plaintiffs' data from Club Fitness' timekeeping device to Paycor's servers in Cincinnati somehow constituted a disclosure – and there is no authority which suggests that this is a disclosure under Section 15(d) – by consenting to the use of their finger scan data as part of their employer's timekeeping process, Plaintiffs waived any claim to recover under BIPA Section 15(d). Section 15(d) permits the disclosure of a person's biometric data with consent, which does not have to be in writing. *See* 740 ILCS § 14/15(d). Section 15(d) states that a private entity may disclose biometric data when an individual otherwise "consents to the disclosure or redisclosure" or when "the disclosure completes a financial transaction requested or authorized by the subject.…" 740 ILCS § 14/15(d)(1), (2). Both 15(d)(1) and (2) apply here.

Plaintiffs consented to the disclosure of their finger scans to authenticate their time worked. (Dkt. 103 at 4). They implicitly consented by enrolling their finger scan in Paycor's timekeeping device at the beginning of their employment. (Dkt. 103 at 5). This consent means that any disclosure of their data as part of Paycor's timekeeping process was permitted by BIPA Section 15(d)(1).

Any disclosure of Plaintiffs' biometric information was also permitted by BIPA Section 15(d)(2), which permits the disclosure of biometric information as part of a consented-to financial transaction. Plaintiffs consented to the use of their finger-scan data as part of the timekeeping process so that Club Fitness could accurately pay them. (Dkt. 103 at 4-5). There is no more essential "financial transaction" between an employee and an employer than payment for hours worked. If there were any disclosure of biometric information related to Plaintiffs' finger scans it

13

would have been for the sole purpose of the financial transaction of paying Plaintiffs for their time. Section 15(d)(2) states that such a disclosure is not a BIPA violation.

## II. Plaintiffs Fail to Allege that They Are Entitled to Statutory Damages

Under BIPA an individual may recover liquidated damages of up to $1,000 for negligent violations of the statute, or up to $5,000 for reckless or intentional violations. 740 ILCS 14/20(1)-(2). BIPA is not a strict liability statute and claims for damages are proper only upon a showing of a negligent, reckless or intentional violation. *See generally* 740 ILCS 14/20 (describing statutory damages that "a prevailing party *may* recover for each violation" of BIPA (emphasis added)); *Cothron v. White Castle Systems, Inc.*, 216 N.E.3d 918, 926, *as modified on denial of reh'g* (Ill. July 18, 2023) (finding damages under BIPA are discretionary, based on language of 740 ILCS 14/20). Where BIPA plaintiffs have failed to allege intentional, reckless, or negligent conduct, courts have stricken claims for statutory damages. *See, e.g., Kukovec v. Estee Lauder Companies, Inc.,* No. 22 CV 1988, 2022 WL 16744196, at *8 (N.D. Ill. Nov. 7, 2022) ("I agree with defendant that plaintiff hasn't adequately alleged recklessness or intent."); *Namuwonge,* 418 F. Supp. 3d at 286 ("Namuwonge's abstract statements regarding damages are insufficient for the Court to infer that Kronos acted recklessly or intentionally. Thus, Namuwonge's claim for damages based on intentional and reckless conduct is dismissed.").

### A. Plaintiff Has Failed to Allege Intentional/Reckless Conduct

Intentional conduct "is conduct performed with a desire to cause consequences or at least a substantially certain belief that the consequences will result." *See Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 618-19 (N.D. Ill. 2019). Recklessness "denotes a course of action which shows an utter indifference to or a conscious disregard." *Id.* at 618 (citing *Resolution Tr. Corp. v. Franz*, 909 F. Supp. 1128, 1141 (N.D. Ill. 1995)). Plaintiffs' do not allege that Paycor engaged in any such conduct.

14

**B.      Plaintiff Has Failed to Allege Negligent Conduct**

In order to plead negligence, a plaintiff must plead "the existence of duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 395-96 (Ill. 1987). Plaintiffs do not come close to meeting this standard. They do not allege that Paycor owed any duty to them, let alone that it somehow breached this duty. There are no allegations that Paycor failed to meet any applicable standard of care. BIPA requires entities "in possession of biometric identifiers" and "biometric information" to employ a "reasonable standard of care within the private entity's industry" and store or use the information "in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *See* 740 ILCS 14/15(e)(1). Yet, the Complaint contains no allegations that Paycor's conduct deviated from the reasonable standard of care met by other companies in any industry.

Because of these pleading deficiencies, this Court should strike Plaintiffs' request for statutory damages.

**III.      Plaintiffs' Claims Should be Dismissed Because They Seek Duplicative Recovery**

A plaintiff cannot recover twice for the same injury. *See, e.g., Robinson v. Toyota Motor Credit Corp.,* 774 N.E.2d 951, 963 (Ill. 2002) ("It is well established that for one injury there should only be one recovery irrespective of the availability of multiple remedies and actions"); *Klier v. Siegel,* 558 N.E.2d 583, 587-88 (Ill. App. Ct. 1990) ("Illinois has a strong public policy against a plaintiff's double recovery for the same injury"); *Eberle v. Brenner*, 505 N.E.2d 691, 693 (Ill. App. Ct. 1987) ("An injured person is entitled to one full compensation for his injuries, and a double recovery for the same injury is against public policy").

Yet that is what Plaintiffs are attempting to do here. Plaintiff Johns was the named plaintiff in a separate BIPA lawsuit that was filed against Club Fitness. (*See* Exhibit 3). Johns' case against Club Fitness asserted, in allegations strikingly similar to those put forth here, that his former employer, the same Club Fitness locations listed in the Amended Complaint, violated the same BIPA provisions that are at issue in this case.

Plaintiff Johns' allegations in *Club Fitness* centered on, and stem from, the identical events that are described in here:  Plaintiffs' use of a timeclock at his various places of employment. *Compare* Ex. 3 ¶ 50 ("As a condition of his employment, Plaintiff was required to scan his fingerprint so each Defendant could use it as an authentication method to track his time."), *and* Ex. 3 ¶ 57 ("Each Defendant stored Plaintiff's fingerprint data in its…employee databases.") *with* Dkt. 40 ¶ 51 (during their employment with Club Fitness "Plaintiffs were required to scan their fingerprints on Paycor's Biometric Time Clock at Club Fitness so they could be used as an authentication method to track their time worked) *and* Dkt. 40 ¶ 52 ("Defendant subsequently stored Plaintiffs' fingerprint biometric data in its databases."). Plaintiff brought these claims, like here, on behalf of a class of similarly situated individuals. (Ex. 3 ¶¶ 66-77).

On October 14, 2020, Johns' case against Club Fitness received final approval for a class action settlement. (Exhibit 4, Final Approval Order). The settlement included a payment of $1,266.89, less expenses and attorneys' fees, to each member of the following class:

> All individuals who worked or are currently working for any Defendant in the State of Illinois who had their fingerprint data and/or any other biometric identifier collected, captured, received, stored or otherwise obtained, retained, disseminated, or disclosed by any Defendant at any time within the five-year period preceding the date the Complaint was filed to the date of Preliminary Approval and who do not timely opt-out of the settlement.

(Exhibit 5, Motion for Final Approval at p. 5). Both Plaintiffs are members of this class – Johns as the named plaintiff, and Barron as an unnamed individual who, per his allegations in this case,

16

worked at some of the Club Fitness locations during the relevant time. (Dkt. 40 ¶ 49). Consequently, each has already recovered for the alleged BIPA violations that they now purport to bring.

Plaintiffs cannot have it both ways. They cannot claim, and recover for claims, that their employers improperly collected their biometrics through the use of the timeclocks in question here, while simultaneously arguing that the same actions magically resulted in Paycor committing the same violations – especially on the extremely thin allegations of the Amended Complaint. To the extent that Plaintiffs' claims have any merit – they do not – Plaintiffs have already recovered for these claims and they should be dismissed.

## IV.    Plaintiffs' Claims Should Be Dismissed Because They Represent an Improper Extraterritorial Application of BIPA

"BIPA does not apply extraterritorially." *Hernandez v. Omnitracs, LLC*, No. 22-0109, 2024 WL 1376352, at *6 (N.D. Ill. Mar. 31, 2024) (Chang, J). (citation omitted). Under Illinois law, a statute is without extraterritorial effect "unless a clear intent in this respect appears from the express provisions of the statute." *Id.* (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005)).

BIPA lacks such clear intent. *e.g., Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1104 (N.D. Ill. 2017) (BIPA "was not intended to and does not have extraterritorial application"); *Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2023 WL 4549668, at *3 (N.D. Ill. July 14, 2023) ("There is no indication that [BIPA] was intended to have extra-territorial application."); *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 527 (N.D. Ill. 2022) ("BIPA does not include language to suggest that the Illinois legislature intended for it to have an extraterritorial effect."). If BIPA was not intended to have extraterritorial application to Google, it cannot have extraterritorial application to an out-of-state company like Paycor who is not alleged to have taken any affirmative action relevant to

17

the case in Illinois.

Indeed, Plaintiffs are attempting to regulate Paycor's extraterritorial actions. As noted above, their class certification motion admits that Paycor merely stored their data on its servers in Cincinnati. (Dkt. 103 at 5). They did not possess, collect, obtain, or do anything with that data in Illinois or do anything that violated BIPA within the State. Under this theory, a plaintiff in Illinois could conceivably recover for any BIPA violation committed anywhere in the world. Not only is that absurd, it runs afoul of BIPA's purpose and is an unlawful extraterritorial application of Illinois law.

## V. Plaintiffs Should Not Be Permitted to Recover on Behalf of Individuals Outside of the Putative Class

Plaintiffs' Amended Complaint attempts to recover on behalf of individuals outside of the class that it seeks to certify. This is improper, and the allegations in the Amended Complaint attempting to recover on behalf of those outside of the class or who did not use the Perform Time timekeeping system should be stricken. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011).

Here is Plaintiffs' proposed class definition in its class certification motion:

> All individuals working in the State of Illinois who had their fingerprints, hand geometry or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant's Perform Time biometric timekeeping system during the applicable statutory period.

Yet the Amended Complaint seeks to recover on behalf of not only those who used the Perform Time system, but anyone who used any Paycor timekeeping system. (Dkt. 40 ¶ 63). Users of

18

Paycor's two other timekeeping systems[5] should not be included in the class, and any allegations in the Amended Complaint seeking to recover on their behalf should be stricken.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

Dated: July 17, 2024

Respectfully submitted,

By:    /s/*Melissa A. Siebert*
        One of Defendant's Attorneys

Melissa Siebert
Cozen O'Connor
123 N. Wacker Dr. Suite 1800
Chicago, IL 60606
Telephone: 312-382-3119
msiebert@cozen.com
**Attorney for Defendant**

---

[5] Plaintiffs' class certification motion describes how Paycor sells three timekeeping systems and notes that Plaintiffs only used the Perform Time system, which "is the only one of the three Paycor systems at issue in this case." (Dkt. 103 at pp. 1, 3).