**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KELLIN JOHNS and JUAN BARRON, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 3:20-cv-00264-DWD |
| v. | Hon. David W. Dugan |
| PAYCOR, INC., | |
| Defendant. | |

**DEFENDANT PAYCOR, INC.'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Melissa A. Siebert
Christopher S. Hennessy
COZEN O'CONNOR
123 N. Wacker Drive, Suite 1800
Chicago, Illinois 60606
(312) 474-7900
msiebert@cozen.com
chennessy@cozen.com

*Attorneys for Defendant*

**Table of Contents**

Page

INTRODUCTION ........................................................................................................ 1

Factual Background ................................................................................................... 2

    A.   Paycor's Timekeeping Solutions ................................................................... 2

    B.   Club Fitness's Paycor Relationship ............................................................. 3

    C.   Plaintiffs' Use of Paycor Timekeeping Devices ......................................... 4

    D.   Plaintiff Johns Sues, and Settles with, Club Fitness ................................... 4

APPLICABLE STANDARDS ..................................................................................... 5

ARGUMENT ............................................................................................................... 6

I.    Plaintiffs Cannot Meet Rule 23(a)'s Threshold Requirements. ............................... 6

    A.   Plaintiffs Are Neither Typical nor Adequate Class Representatives. ................. 6

        i.    Plaintiff Johns Never Used Paycor Technology in Illinois, and Therefore Has No
Claim. ................................................................................................................. 7

        ii.    Plaintiffs Lack Article III Standing as to Their 15(a) Claims. ........................ 8

        iii.    Plaintiffs Have Already Resolved and Recovered on Their BIPA Claims. .............. 10

    B.   Plaintiffs Render Themselves Atypical and Inadequate Class Representatives by Seeking
to Represent Class Members Without BIPA Claims. ............................................. 12

        i.    Plaintiffs Are Atypical of and Cannot Adequately Represent Class Members Who
Received Notice or Provided Consent. ................................................................. 12

        ii.    Plaintiffs Are Atypical of and Cannot Adequately Represent Class Members Who Are
Union Members. ................................................................................................. 14

    C.   No Question of Liability Is Common to the Class, Preventing Certification. ................. 15

II.    Rule 23(b)(3)'s Requirements Cannot be Met, and No Damages Class Can Be Certified... 19

    A.   Individual Issues Necessarily Predominate, as Paycor Customer-Employer Practices Vary
in Material Ways. ..................................................................................................... 19

B.    Given These Differences Among Class Members, the Class Action Device Is Not the
Best Mechanism to Resolve Class Claims.............................................................................. 22

CONCLUSION................................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al Haj v. Pfizer Inc.*,
   2020 WL 1330367 (N.D. Ill. Mar. 23, 2020)...........................................................................7

*Alpha Tech Pet Inc. v. LaGasse, LLC*,
   2017 WL 5069946 (N.D. Ill. Nov. 3, 2017) ........................................................................20

*Am. Honda Motor Co. v. Allen*,
   600 F.3d 813 (7th Cir. 2010) ..............................................................................................6

*Arreola v. Choudry*,
   No. 03-2854, 2007 WL 9776652 (N.D. Ill. Jan. 30, 2007), *aff'd and remanded
   sub nom. Arreola v. Godinez,* 546 F.3d 788 (7th Cir. 2008) .................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005).................................................................................................8

*Barnett v. Apple Inc.*,
   2022 IL App (1st) 220187.................................................................................................17

*Barton v. Swan Surfaces, LLC*,
   No. 20-0499, 2021 WL 793983 (S.D. Ill. Mar. 2, 2021) .....................................................14

*Blanchard v. EdgeMark Fin. Corp.*,
   175 F.R.D. 293 (N.D. Ill. 1997).........................................................................................10

*Bryant v. Compass Grp. USA, Inc.*,
   958 F.3d 617 (7th Cir. 2020) .............................................................................................9

*Carmean v. Bozzuto Mgmt. Co.*,
   No. 20 C 5294, 2021 WL 2433649 (N.D. Ill. June 15, 2021), *dismissed*, No.
   21-2295, 2021 WL 6426072 (7th Cir. Oct. 7, 2021) ..................................................14, 15, 21

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................................7, 11, 12, 14

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949)........................................................................................................10

*Cothron v. White Castle Sys., Inc.*,
   467 F. Supp. 3d 604 (N.D. Ill. 2020) ...............................................................................9, 22

*Dancel v. Groupon, Inc.*,
  949 F.3d 999 (7th Cir. 2019) ........................................................................19, 20

*David v. Ridgely-Farmers Safe Deposit Co.*,
  95 N.E.2d 725 (Ill. App. Ct. 1950) ......................................................................17

*Davis v. Ball Mem'l Hosp. Ass'n, Inc.*,
  753 F.2d 1410 (7th Cir. 1985) ......................................................................10, 11

*Espejo v. Santander Consumer, Inc.*,
  No. 11-8987, 2016 WL 6037625 (N.D. Ill. 2016) ................................................23

*In re Facebook Biometric Info. Privacy Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018)..........................................................................19

*Fernandez v. Kerry, Inc.*,
  14 F.4th 644 (7th Cir. 2021) ...............................................................14, 20, 21

*Figueroa v. Kronos Inc.*,
  454 F. Supp. 3d 772 (N.D. Ill. 2020) ....................................................................13

*Fischer v. Instant Checkmate LLC*,
  No. 19-4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ....................................23

*Fox v. Dakkota Integrated Sys., LLC*,
  980 F.3d 1146 (7th Cir. 2020) ...............................................................................9

*G.T. v. Samsung Elecs. Am. Inc.*,
  No. 21-4976, 2024 WL 3520026 (N.D. Ill. July 24, 2024) ....................................17

*Gray v. Univ. of Chicago Med. Ctr., Inc.*,
  No. 19-04229, 2020 WL 1445608 (N.D. Ill. Mar. 25, 2020) .................................14

*Greene v. Mizuho Bank, Ltd.*,
  327 F.R.D. 190 (N.D. Ill. 2018)..............................................................................7

*Guszkiewiecz v. Samsara, Inc.*,
  No. 2021-L-001248 (Ill. Cir. Ct. DuPage Cty. Nov. 2, 2022) ................................13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014)................................................................................................5

*Hensiek v. Bd. of Directors of Casino Queen Holding Co.*,
  No. 20-0377, 2024 WL 773633 (S.D. Ill. Feb. 26, 2024) (Dugan, J.)................5, 18

*Hernandez v. Midland Credit Mgmt., Inc.*,
  236 F.R.D. 406 (N.D. Ill. 2006)..............................................................................6

*Hernandez v. Omnitracs, LLC*,
No. 22-0109, 2024 WL 1376352 (N.D. Ill. Mar. 31, 2024) ..................................................8

*Hicks v. Evergreen Living & Rehab Ctr., LLC*,
No. 20-4032, 2021 WL 4440315 (N.D. Ill. Mar. 8, 2021) ...................................................14

*Howard v. Cook Cnty. Sheriff's Off.*,
989 F.3d 587 (7th Cir. 2021) ....................................................................................15, 16, 19

*Howland v. First Am. Title Ins. Co.*,
672 F.3d 525 (7th Cir. 2012) ...................................................................................................5

*J.H. Cohn & Co. v. American Appraisal Associates, Inc.*,
628 F.2d 994 (7th Cir.1980) ....................................................................................................6

*Johns v. Club Fitness of Alton, LLC*,
No. 2018-L-000080 ...................................................................................................4, 5, 11, 14

*Kimbro v. Pepsico, Inc.*,
215 F.3d 723 (7th Cir. 2000) .................................................................................................15

*Kleen Prod. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) .................................................................................................19

*Koos v. First Nat'l Bank*,
496 F.2d 1162 (7th Cir.1974) ..................................................................................1, 6, 12, 20

*Lyons v. Harri (US), LLC*,
No. 2022 CH 03207 (Ill. Cir. Ct. Cook Cty. Sept. 28, 2023) ..........................................13, 20

*McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*,
2006 WL 681054 (N.D. Ill. Mar. 13, 2006).......................................................................6, 8, 11

*McNichols v. Loeb Rhoades & Co.*,
97 F.R.D. 331 (N.D. Ill. 1982)..............................................................................................6, 7

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ..............................................................................................5, 20

*Meyers v. Nicolet Rest. of De Pere, LLC*,
843 F.3d 724 (7th Cir. 2016) ...................................................................................................9

*Miller v. Sw. Airlines Co.*,
926 F.3d 898 (7th Cir. 2019) ..................................................................................14, 15, 20, 21

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) .................................................................................................22

*Murphy v. Pro. Transp., Inc.*,
    No. 14-0378, 2017 WL 5665901 (S.D. Ill. Nov. 27, 2017) .................................................... 7

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
    332 F.R.D. 202 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate
    Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019) ...................................... 6

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ........................................................................................................ 9

*Paper Sys. Inc. v. Mitsubishi Corp.*,
    193 F.R.D. 601 (E.D. Wis. 2000) ................................................................................. 7

*Patterson v. Respondus, Inc.*,
    593 F. Supp. 3d 783 (N.D. Ill. 2022) ........................................................................... 9

*Peatry v. Bimbo Bakeries USA, Inc.*,
    No. 19-2942, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020) ..................................... 14

*Priddy v. Health Care Serv. Corp.*,
    870 F.3d 657 (7th Cir. 2017) ...................................................................................... 5

*Radmanovich v. Combined Ins. Co.*,
    216 F.R.D. 424 (N.D. Ill. 2003) ................................................................................ 22

*Ragsdale v. Paycor, Inc.*,
    No. 2017 CH 13911 (Ill. Cir. Ct., Cook Cnty. Sept. 5, 2024) ........................... 12, 13, 17, 21

*Ramirez v. Palisades Collection LLC*,
    250 F.R.D. 366 (N.D. Ill. 2008) ................................................................................ 23

*Retired Chi. Police Ass'n v. City of Chi.*,
    7 F.3d 584 (7th Cir. 1993) .......................................................................................... 6

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ....................................................................... 8

*Rogers v. BNSF Ry. Co.*,
    No. 19-3083, 2022 WL 854348 (N.D. Ill. Mar. 22, 2022) ..................................... 19

*Ronquillo v. Doctor's Assocs., LLC*,
    597 F. Supp. 3d 1227 (N.D. Ill. 2022) ..................................................................... 13

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) .................................................................................. 15

*Smith-Brown v. Ulta Beauty, Inc.*,
    335 F.R.D. 521 (N.D. Ill. 2020) ................................................................................ 19

*Svoboda v. Amazon.com, Inc.*,
   21 C 5336, 2024 WL 1363718 (N.D. Ill. Mar. 30, 2024) ......................................................18

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) .....................................................................................................5

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)................................................................................................................21

*Vance v. Google, LLC*,
   No. 20-4696, 2024 WL 1141007 (N.D. Cal. Mar. 15, 2024) ..................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................................................5, 16, 18

*Walton v. Roosevelt University*,
   2023 IL 128338 ................................................................................................................14, 21

*Williams v. Jackson Park SLF, LLC*,
   No. 19-8198, 2020 WL 5702294 (N.D. Ill. Sept. 24, 2020) ..................................................14

**Statutes**

740 ILCS 14/15...................................................................................................... *passim*

## INTRODUCTION

Plaintiffs Kellin Johns and Juan Barron ("Plaintiffs") contend that, by providing timeclocks to customers who then use them to track their employees' time, Defendant Paycor, Inc. ("Paycor") violated the Biometric Information Privacy Act ("BIPA"). They make these accusations with disregard to the practices of Paycor's customers, and despite the fact that Paycor has never collected, possessed, or disseminated Plaintiffs' or any putative class member's biometric data.[1]

Nonetheless, Plaintiffs ask this Court to certify a class of approximately 14,000 disparate individuals who were employed by different Paycor customers, each of whom have different policies, practices, and relationships to their employees. Plaintiffs argue that certification is appropriate because Paycor purportedly "treated all Perform Time Users identically" and "putative class members were uniformly subjected to [Paycor's] standardized data policies and practices." (Doc. 103 at p. 9). Plaintiffs, however, ignore fundamental differences between and among them and the class members they seek to represent—differences resulting from their decision to target the provider of timekeeping technology instead of the employers implementing its use and best positioned to comply with BIPA's provision. As a result, Plaintiffs' Renewed Motion for Rule 23 Class Certification ("Motion") (Doc. 103) must be denied for at least five overarching reasons.

*First*, Plaintiffs are atypical of and inadequate to represent the putative class. Plaintiff Johns never used Paycor's timekeeping solution in Illinois, and Plaintiffs' data was timely deleted. Further, Plaintiffs have already recovered on their claims from their direct employer, Club Fitness, Inc., at a minimum putting their interests in conflict with those of other class members.

*Second*, there is no homogenous class, further rendering Plaintiffs atypical and inadequate representatives. In focusing on Paycor's direct interactions with employee users, Plaintiffs

---

[1] This reality is addressed more fully in Paycor's Motion for Summary Judgment and supporting papers, which are being filed contemporaneously with this Memorandum.

overlook the multitude of putative class members who have received the requisite notice and
provided the requisite consent—including through their employer or union rep.

*Third*, there is no common issue to be resolved class wide. Despite Plaintiffs' assertions to
the contrary, the record confirms differences in the way Paycor customers used Paycor devices to
be BIPA-claim determinative—including whether Paycor even "possessed" certain employee data.

*Fourth*, Plaintiffs ignore numerous, material differences among class members that must
be resolved at the individual level before liability can be determined. These include, but are not
limited to, issues of: (a) employer-level consent; (b) union membership; (c) system configurations
impacting treatment of and access to data; and (d) timing of use and record deletion. Plainly, these
individual issues—each of which Paycor has a due process right to test—predominate.

*Fifth*, Plaintiffs have offered no mechanism through which this Court can try their claims
on a class wide basis—particularly given the above individualized issues. Without such a plan,
this Court cannot find Rule 23(b)(3)'s superiority prong satisfied.

Plaintiffs have sought to present a uniform, homogenous class by ignoring one simple
reality—each class member interacted with Paycor through unique employment relationships with
third parties. Once these divergent relationships are unpacked, class certification—and indeed
class litigation—becomes impossible. Respectfully, class certification should therefore be denied.

## FACTUAL BACKGROUND

### A.    Paycor's Timekeeping Solutions

Paycor provides payroll and HR services to clients. This includes its "Perform Time"
solution, which is a collection of features developed by Paycor to track time worked by its
customers' employees. (Dahdaly Dep., Ex. A, 31:11–13). The Perform Time solution utilizes
different models of timeclocks, including models that can scan fingers. (*Id.*, 31:14–21). The
models and technology available have changed over time. (*Id.*, 70:4–71:12).

2

Paycor customers configure the timeclock to best serve their business needs. (*Id.*, 49:10–13). Customers choose where to install devices, whether and how to connect devices to the internet, whether to use proximity badges and/or fingers to clock in an out, and the method of identity validation (e.g., one-to-one or -many). (*Id.*, 46:1–5, 48:13–17, 62:18–63:1). Finger identification requires an employee to first generate a "template" associated with that employee's badge ID number. (*Id.*, 50:20-53:6, 93:18-94:23). Employees cannot generate a template without a badge ID number. (*Id.*, 50:13-51:10). The template is stored locally on the timeclock and in the tenant-segregated database. (*Id.*, 20:18-24, 55:15-20).

Database storage of templates is always within the customer's control. The tenant-segregated storage is akin to a "safety deposit box that a bank would provide to a customer," where the customer is "in complete control" of their employees' data. (*Id.*, 92:16-22). If a timeclock is replaced, or if a customer chooses to operate multiple timeclocks, the customer may choose to replicate template data from their "safety deposit box" rather than re-enroll employees on the new timeclock. (*Id.*, 91:19-92:22; Goodwin Decl., Ex. B, ¶¶ 24-25). While Paycor could theoretically access certain employee templates (but does not do so), such access is only upon the customer's election and on their direction. (Dahdaly Dep., Ex. A, 55:1-20, 57:14–18).

### B.    Club Fitness's Paycor Relationship

In 2015, Paycor contracted with Club Fitness entities in Illinois and Missouri to provide payroll and related services. (Goodwin Decl., Ex. B ¶ 6). Each location operated independently, and employees were paid only by the location where they worked. (*Id.* ¶¶ 7-8; Dahdaly Dep., Ex. A, 134:17-135:13). Each location had its own dedicated timeclock, and if an employee switched location, they needed to reenroll to use the timeclock at that location. (Goodwin Decl., Ex. B, ¶¶ 7, 10, 16; Dahdaly Dep., Ex. A, 134:17-135:13, 136:13-19).

On June 1, 2016, Club Fitness became a "lost" customer, i.e., the contractual relationship between Club Fitness and Paycor ended. (Goodwin Decl., Ex. B, ¶¶ 5-6, 31). At no time did Paycor ever view or access Club Fitness's employee template data on the tenant-segregated database. (*Id.* ¶¶ 22-23). And at no time did Paycor disseminate template files for Club Fitness employees to any other party. (Goodwin Decl., Ex. B, ¶¶ 25-26).

### C.    Plaintiffs' Use of Paycor Timekeeping Devices

Plaintiff Johns never used a Paycor timeclock in Illinois. (Goodwin Decl., Ex. B, ¶ 13; Dahdaly Dep., Ex. A, 134:8-16, 135:2-13, 136:2-12). Rather, between October 2, 2015 and April 26, 2016, Plaintiff Johns punched in and out using a Paycor timeclock at a Club Fitness located in Missouri. (Goodwin Decl., Ex. B, ¶¶ 8, 12). Johns only and ever punched using a Paycor timeclock at that Missouri location. (*Id.* ¶¶ 8, 12, 16; Dahdaly Dep., Ex. A, 134:8-16). Plaintiff Barron first punched in and out with a timeclock provided by Paycor at a Club Fitness location in Illinois on October 2, 2015. (Goodwin Decl., Ex. B, ¶ 14). His last "punch" was April 30, 2016. (*Id.*).

Effective August 22, 2018, a triggering command was executed whereby all clients marked "Lost"—i.e., contract terminated—in Paycor's systems had any employee templates automatically and permanently deleted from the client's dedicated environment. (*Id.* ¶ 31; Dahdaly Dep., Ex. A, 132:15-20). And any data on leased timeclocks is wiped on return to Paycor. (Goodwin Decl., Ex. B, ¶ 31). Thus, any Club Fitness templates, including Plaintiffs', were deleted no later than August 22, 2018. (*Id.* ¶ 32). Paycor does not retain this information in any form, in any location. (*Id.*).

### D.    Plaintiff Johns Sues, and Settles with, Club Fitness

On January 24, 2018, Plaintiff Johns filed a putative class action complaint against Club Fitness entities in the Circuit Court for Madison County, Illinois, captioned *Johns v. Club Fitness of Alton, LLC*, No. 2018-L-000080 ("*Club Fitness*"). (*See* Docket, *Club Fitness*, Ex. C). As here, Plaintiff Johns asserted BIPA claims related to his use of Paycor's Perform Time solution while

employed by Club Fitness. (*See generally* Sec. Am. Compl., *Club Fitness*, Ex. D). On May 5, 2020, the court marked the *Club Fitness* action settled, and final approval and judgment was entered October 14, 2020. (*See* Docket, *Club Fitness*, Ex. C.  The settlement provided for Plaintiff Johns to receive a $10,000 service award, and all class members received over $1,200. *Id.* ¶ 41.

## APPLICABLE STANDARDS

Plaintiffs "bear the burden of proving, by a preponderance of the evidence, that their proposed class satisfies the requirements of Rule 23." *Hensiek v. Bd. of Directors of Casino Queen Holding Co.*, No. 20-0377, 2024 WL 773633, at *6 (S.D. Ill. Feb. 26, 2024) (Dugan, J.); *accord Priddy v. Health Care Serv. Corp.,* 870 F.3d 657, 660 (7th Cir. 2017). A plaintiff must affirmatively demonstrate that each of Rule 23(a)'s threshold requirements are met and at least one subsection of Rule 23(b) is satisfied. *Howland v. First Am. Title Ins. Co.,* 672 F.3d 525, 528 (7th Cir. 2012). Where, as here, plaintiffs seek to certify a damages class, they must specifically satisfy Rule 23(b)(3)'s predominance and superiority requirements. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).

A plaintiff must "actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014); *see also Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (a court "may not simply assume the truth of the matters as asserted by the plaintiff"). The court, in turn, must exercise "caution in class certification," *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746 (7th Cir. 2008), and must be "satisfied, after a rigorous analysis," that these requirements are met. *Dukes*, 564 U.S. at 350-51. While courts do not consider the merits of a plaintiff's lawsuit at class certification, they "must make whatever factual and legal inquiries are necessary to ensure that requirements for class certification are satisfied before deciding whether a class should be

certified, even if those considerations overlap the merits of the case." *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

Plaintiffs have not and cannot match their burden under either Rule 23(a)'s threshold requirements—namely, its typicality, adequacy, or commonality prongs—or Rule 23(b)(3)'s predominance or superiority requirements. Their Motion must therefore be denied.

## **ARGUMENT**

## I.   **PLAINTIFFS CANNOT MEET RULE 23(A)'S THRESHOLD REQUIREMENTS.**

### A.   **Plaintiffs Are Neither Typical nor Adequate Class Representatives.**

Plaintiffs bear the burden of showing that their claims are "typical of the class" and that they will "adequately represent" class interests. *McFadden v. Bd. of Educ. for Ill. Sch. Dist. U-46*, 2006 WL 681054, at *3-5 (N.D. Ill. Mar. 13, 2006). While minor factual variations may not defeat typicality, the requirement is meant to ensure that the named representatives' claims "have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.,* 7 F.3d 584, 597 (7th Cir. 1993). Similarly, a class is not fairly and adequately represented if the named plaintiffs have "antagonistic or conflicting" claims or interests to the class members they purport to represent. *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 215 (N.D. Ill. 2019), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).

Applying this framework, the Seventh Circuit has long recognized that where a representative plaintiff is subject to unique defenses he cannot act as a class representative. *E.g. McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982) (citing *J.H. Cohn & Co. v. American Appraisal Associates, Inc.*, 628 F.2d 994, 998–99 (7th Cir.1980); *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164 (7th Cir.1974)); *accord Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 412–13 (N.D. Ill. 2006). Indeed, this rule is so exacting that the mere presence of "an arguable

6

defense" peculiar to the named plaintiff or a small subset of the class destroys the typicality of the class and renders the named plaintiff inadequate. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (noting the "rest of the class will suffer" should "the named plaintiff [] become distracted by the presence of a possible defense" unique to him). Hence, courts regularly deny class certification whenever the plaintiff is "subject to an arguable, substantial defense." *Al Haj v. Pfizer Inc.,* 2020 WL 1330367 (N.D. Ill. Mar. 23, 2020), at *2 (denying certification as unique defenses rendered plaintiff atypical or inadequate class representative).[2]

As set forth more fully in Paycor's Motion for Summary Judgment, each of Plaintiffs' claims fail, not least because Paycor's Perform Time solution does not and cannot collect, possess, or disseminate biometric data. While some of these failures of proof and law apply to the class as a whole, other defenses are unique to Plaintiffs. These include: (i) Plaintiff Johns never used Paycor technology in Illinois; (ii) Plaintiffs' information was timely deleted; (iii) Plaintiffs already recovered on their BIPA claims; (iv) unlike many putative class members, Plaintiffs' employer did not implement a BIPA notice or consent regime; and (v) unlike many putative class members, neither Plaintiff was a union member during the relevant period.

### i. *Plaintiff Johns Never Used Paycor Technology in Illinois, and Therefore Has No Claim.*

To be clear, even under Plaintiffs' incorrect understanding of Paycor's payroll solutions, **Plaintiff Kellin Johns never used the Perform Time solution in Illinois**. Johns did create a template while employed by Club Fitness **in Missouri**, but he never used the device in Illinois. (Goodwin Decl., Ex. B, ¶¶ 8, 12-13; Dahdaly Dep., Ex. A, 134:8–135:19). This is no minor

---

[2] *See also, e.g.*, *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190, 195 (N.D. Ill. 2018) (same); *Murphy v. Pro. Transp., Inc.*, No. 14-0378, 2017 WL 5665901, at *6 (S.D. Ill. Nov. 27, 2017); *Paper Sys. Inc. v. Mitsubishi Corp.*, 193 F.R.D. 601, 607 (E.D. Wis. 2000) (same) *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 334 (N.D. Ill. 1982) (same).

oversight. As Mr. Dahdaly explained, "the way that the Club Fitness relationship worked is each facility had its own separate contract with Paycor, and data is not shared between clients." (*Id.* at 134:17–135:1; *see also id.* at 136:13–17). Therefore, had Johns used the device in Illinois, Paycor would have needed to "enroll in the clock separately" and he "would have to have been assigned a badge" for the Illinois location. (*Id.* at 135:2–13). He was not, and therefore Paycor could never have collected, possessed, or disseminated his information ***in Illinois***. (*Id.* at 135:17–20; Goodwin Decl., Ex. B, ¶¶ 10-13).

"BIPA does not apply extraterritorially." *Hernandez v. Omnitracs, LLC*, No. 22-0109, 2024 WL 1376352, at *6 (N.D. Ill. Mar. 31, 2024). Under Illinois law, a statute is without extraterritorial effect "unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 852 (Ill. 2005). BIPA lacks such clear intent and therefore only applies to activity that occurs "primarily and substantially" in Illinois. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1100 (N.D. Ill. 2017). Where a plaintiff cannot allege that the defendant "did anything in Illinois," his BIPA claims must be dismissed. *Vance v. Google, LLC*, No. 20-4696, 2024 WL 1141007, at *3 (N.D. Cal. Mar. 15, 2024).

Here, ***no activity*** relevant to Johns occurred in Illinois. (*See* Dahdaly Dep., Ex. A, 20:10–17 (customer data hosted in Ohio or on servers "located in different parts of the country")). That Johns is subject to this defense quickly renders him atypical and inadequate as a class representative. *Cf. Rivera*, 238 F. Supp. 3d at 1101 (noting that, when assessing extraterritoriality, "[c]ircumstances will vary").

### ii.   *Plaintiffs Lack Article III Standing as to Their 15(a) Claims.*

A plaintiff is neither typical of a class nor an adequate class representative if he lacks Article III standing to assert his claim. *McFadden*, 2006 WL 681054, at *5 (denying certification for lack of standing: "named representatives of a putative class must 'show that they personally have been

injured, not that the injury has been suffered by other, unidentified members of the class.'"). Thus, a plaintiff must show they have—for each of their claims—suffered an injury in fact which is "concrete and particularized," not merely "hypothetical." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). If no named plaintiff purporting to represent a class can establish the requisite case or controversy, "none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974); *see also, e.g., Arreola v. Choudry,* No. 03-2854, 2007 WL 9776652, at *8 (N.D. Ill. Jan. 30, 2007), *aff'd and remanded sub nom. Arreola v. Godinez,* 546 F.3d 788 (7th Cir. 2008) ("In light of the Court's ruling that Arreola lacks standing to seek injunctive relief, his motion for certification of a Rule 23(b)(2) class is denied.").

As is now well settled, "the duty to disclose under section 15(a) is owed to the public generally, not to particular persons." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Hence, to maintain a Section 15(a) claim, a plaintiff must show that the defendant failed to **comply** with its retention and destruction obligations. *Fox v. Dakkota Integrated Sys., LLC,* 980 F.3d 1146, 1154–55 (7th Cir. 2020) (noting the "unlawful retention of biometric data" may inflict an injury). Thus, only if a defendant fails to timely delete a plaintiff's information—i.e., "within 3 years of the individual's last interaction with the private entity," 740 ILCS 14/15(a)—can a plaintiff possibly have standing to assert a claim under Section 15(a). *See Cothron v. White Castle Sys., Inc.,* 467 F. Supp. 3d 604, 612 (N.D. Ill. 2020) (finding no 15(a) injury as plaintiff "continues to work as a manager at White Castle and the purpose of the collection—facilitating management and access to paystubs—remains in effect"); *Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 814 (N.D. Ill. 2022) (remanding where "none of the Plaintiffs alleges . . . that Respondus otherwise retained their biometric data beyond the time limits set by section 15(a)").

9

Here, neither Plaintiff has standing to assert a claim under Section 15(a) because their templates were deleted within three years of their last interaction with Club Fitness or Paycor. Both Plaintiffs last used the Perform Time solution in April 2016. (Goodwin Decl., Ex. B, ¶¶ 8, 15). Club Fitness ended its relationship with Paycor on June 1, 2016. (*Id.* ¶¶ 5-6, 31). And, employee templates of such "Lost" clients were automatically and permanently deleted from the client's dedicated environment effective August 2018, 2018. (*Id.* ¶ 31); *see also* Dahdaly Dep., Ex. A, 110:14–17 (returned clocks "wiped and then destroyed"); *id.* at 132:15–18 (templates are "purged at the termination of the agreement with a client"). Plaintiffs' templates, therefore, were deleted within three years of last use. (Goodwin Decl., Ex. B, ¶¶ 8, 15). Plaintiffs have no standing to bring claims under Section 15(a), and they certainly cannot represent class members that do.

### iii. Plaintiffs Have Already Resolved and Recovered on Their BIPA Claims.

Class actions impose special duties on the class representative. *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 298 (N.D. Ill. 1997). The class representative "sues, not for himself alone, but as a representative of a class comprising all who are similarly situated" and are therefore subject to the highest "standards of responsibility, liability and accountability which [the U.S. Constitution] considers will protect the interests he elects himself to represent." *Id.* (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 549–50 (1949)). "Thus, a class representative, by assuming a representative role on behalf of the absent class members, voluntarily accepts a fiduciary obligation toward the class that may not be abandoned at will or by agreement with the defendant if prejudice to the absent class members would inhere or if the class representative has exploited the class action procedure for his own personal gain." *Id.*

A plaintiff cannot meet this definition where their claims have already been resolved. At a minimum, "the named plaintiff must be a member of the class at the time the class action is certified." *Davis v. Ball Mem'l Hosp. Ass'n, Inc.*, 753 F.2d 1410, 1420 (7th Cir. 1985). In *Davis*,

named plaintiffs sought to represent a statewide class of health care consumers. *Id.* at 1417-18. Named plaintiffs, however, had already settled with their hospital, thus obtaining relief for the very injury they sought to assert on behalf of the class. *Id.* As these plaintiffs had not been treated at any other facility, the Seventh Circuit affirmed decertification, holding these now-settled plaintiffs no longer possessed a "personal stake in the outcome of the controversy." *Id.* at 1417-18.

Here, as in *Davis*, Plaintiffs have already sought and personally obtained relief for their alleged BIPA violations. On October 14, 2020, Judge Smith granted final approval of the settlement in *Club Fitness*. (*See* Docket, *Club Fitness*, Ex. C). That Order released BIPA claims of Plaintiff Johns and similarly situated individuals—including Barron—related to their employment with Club Fitness in Illinois. (*See* Settlement, Ex. E, ¶¶ 29, 37, *Club Fitness*, Ex. D). In consideration, and to compensate for the alleged unlawful treatment of their biometric data while using Paycor devices, Plaintiff Johns received a $10,000 service award, and all class members received over $1,200. *Id.* ¶ 41. In short, Plaintiffs have already resolved any and all injury related to the claims they assert in this action, and therefore no longer have any "personal stake" it its outcome.

Plaintiffs' prior recovery and release places them in a unique posture vis-à-vis the rest of the class. While some other putative class members have litigated and resolved their Paycor-related BIPA claims—individually or through class representatives—this is a minority posture. A class cannot be certified where the putative representative's "claims and interests are, at the most, typical of portions of the class claims only." *McFadden*, 2006 WL 681054, at *5. Otherwise, the "rest of the class will suffer" as a result of the unique "possible defense" faced by this small contingent of already settled Club Fitness employees. *CE Design*, 637 F.3d at 726.

11

**B.    Plaintiffs Render Themselves Atypical and Inadequate Class Representatives by Seeking to Represent Class Members Without BIPA Claims.**

Plaintiffs' unique history renders them atypical and inadequate representatives of the class they seek to represent. But Plaintiffs also ignore the ways in which the diverse makeup of the class itself makes Plaintiffs atypical and inadequate. Most notably, a significant portion of the putative class: (a) has received notice or provided consent for the collection and/or dissemination of their biometric data; or (b) are union members. The BIPA claims of these class members are extinguished and cannot be brought in this action. To be clear, even an "arguable defense peculiar to . . . a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design*, 637 F.3d at 726. Here, the defense is not "arguable," but a matter of settled law.

### i.    *Plaintiffs Are Atypical of and Cannot Adequately Represent Class Members Who Received Notice or Provided Consent.*

Plaintiffs argue that certification is appropriate because **Paycor** did not take certain actions to "properly inform[]" or "reciev[e] a written release from Plaintiffs or putative class members." (Doc. 103 at 9). In support, Plaintiffs claim that **Paycor** "first posted a BIPA policy to its website" in 2017 and "has not attempted to obtain consent from any . . . Perform Time User." (*Id.* at 6–7). Plaintiffs fail to address, however, that certain putative class members did receive notice from and provide consent to Paycor during the class period. More importantly, Plaintiffs ignore that these same "Perform Time Users" received notice from and provided consent to their employers—notice and consent on which Paycor can rely. Either way, Plaintiffs cannot represent such diversity.

***First***, Paycor implemented a "BIPA policy" no later than 2017 (*id.*), shortening the class period for Section 15(a) claims by years. *See id.* at 7 (class includes "applicable statutory period"). Further, Paycor rolled out BIPA-compliant consent embedded on its Perform Time timeclocks between April and October 2021. (Goodwin Decl., Ex. B, ¶ 27, Ex. 8 (consent notice)). To the

extent that Plaintiffs intend their class definition to include "Perform Time Users" that used a

Perform Time timeclock on or after October 18, 2021, such class definition is massively overbroad.

***Second***, both federal and state courts have held that a third-party technology provider can

comply with BIPA through its customers. *See, e.g., Ronquillo v. Doctor's Assocs., LLC*, 597 F.

Supp. 3d 1227, 1233 (N.D. Ill.  2022) (finding point-of-sale software supplier could comply with

BIPA Section 15(b) by requiring clients to collect employees' consent); *Figueroa v. Kronos Inc.*,

454 F. Supp. 3d 772, 783 (N.D. Ill. 2020) (third-party timekeeping technology provider could

comply with BIPA through its customers); Order at *5, *Lyons v. Harri (US), LLC*, No. 2022 CH

03207 (Ill. Cir. Ct. Cook Cty. Sept. 28, 2023) (technology provider could rely on customer's

biometric information consent policy form signed by plaintiff), Ex. F.

Indeed, any other position would be ludicrous. A third-party technology vendor (such as

Paycor) often can only obtain consent from customers' employees, with whom it has no

relationship, through the customers. As one court observed: "I don't know how else [the

technology provider] can comply. You're putting them in an impossible situation, and I don't think

that's the intent of the statute, to put people in the trick bag." Report of Proceedings at 17–19,

*Guszkiewiecz v. Samsara, Inc.*, No. 2021-L-001248 (Ill. Cir. Ct. DuPage Cty. Nov. 2, 2022)

(dismissing action as defendant met its "obligation under the statute" through customers), Ex. G.

Plaintiffs claim that neither they nor any class member received or provided the requisite

notice or consent from or to ***Paycor***. They do not, however, make the same claim with regard to

***each class member's employer***. Nor can they. To cut off this type of meritless litigation, Paycor

implemented, effective October 18, 2021, BIPA-compliant consent. (Goodwin Decl., Ex. B, ¶ 27).

During rollout, Paycor customers advised Paycor that they, the customers, were already BIPA

compliant, and that some expressly included Paycor in their consents. (*Id.* ¶¶ 27-28, Ex. 6 (sample

client consent)). While such compliance may not be universal or consistent, that is the point: Paycor complied with BIPA vis-à-vis *these* consenting class members, who therefore lack claims. As Plaintiffs maintain they did not provide any consent to Club Fitness (*see* Settlement, *Club Fitness*, Ex. E), they cannot represent a putative class containing members whose claims have been extinguished by their employers' actions. *See CE Design*, 637 F.3d at 726.

### ii. Plaintiffs Are Atypical of and Cannot Adequately Represent Class Members Who Are Union Members.

Federal and state court precedent is clear: BIPA claims asserted by unionized workers are preempted by federal law and must be dismissed. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019); *Fernandez v. Kerry, Inc.*, 14 F.4th 644, 646 (7th Cir. 2021); *Walton v. Roosevelt University*, 2023 IL 128338. Indeed, where employees' relationship with an employer is controlled by a collective bargaining agreement ("CBA"), it is "not possible even in principle to litigate a dispute about how [an employer] acquires and uses [biometric] information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Miller*, 926 F.3d at 904; *see also Fernandez*, 14 F.4th at 646 (Courts "are not authorized to usurp the union's authority to decide whether a grievance with management needs an arbitrator's resolution (or, indeed, whether there is any grievance to resolve)."). Following *Miller*, courts have consistently held that union-represented employees cannot bring class action claims under BIPA.[3]

This is no mere wrinkle. "States cannot bypass the mechanisms of [federal labor law] and authorize direct negotiation or litigation between workers and management." *Miller*, 926 F.3d at

---

[3] *See, e.g., Carmean v. Bozzuto Mgmt. Co.*, No. 20 C 5294, 2021 WL 2433649 (N.D. Ill. June 15, 2021), *dismissed*, No. 21-2295, 2021 WL 6426072 (7th Cir. Oct. 7, 2021); *Williams v. Jackson Park SLF, LLC*, No. 19-8198, 2020 WL 5702294 (N.D. Ill. Sept. 24, 2020); *Gray v. Univ. of Chicago Med. Ctr., Inc.*, No. 19-04229, 2020 WL 1445608 (N.D. Ill. Mar. 25, 2020); *Peatry v. Bimbo Bakeries USA, Inc.*, No. 19-2942, 2020 WL 919202 (N.D. Ill. Feb. 26, 2020); *Hicks v. Evergreen Living & Rehab Ctr., LLC*, No. 20-4032, 2021 WL 4440315 (N.D. Ill. Mar. 8, 2021); *Barton v. Swan Surfaces, LLC*, No. 20-0499, 2021 WL 793983 (S.D. Ill. Mar. 2, 2021).

903. This includes whether employers "may use third parties to implement timekeeping and identification systems," as they "are topics for bargaining between unions and management." *Id.*; *see also, e.g., Kimbro v. Pepsico, Inc.*, 215 F.3d 723, 727 (7th Cir. 2000) ("The jurisdiction conferred by section 301 is, as we have said, exclusive not only against state-law suits based on such contracts but also against state-law suits to which the interpretation of such a contract is germane."). Hence, as soon as a CBA is identified, federal labor law "ends the [BIPA] litigation". *Carmean*, 2021 WL 2433649, at *2–3 (quoting *Miller*, 926 F.3d at 901).

Here, the claims of many putative class members are subject to CBA agreements. Paycor's records reveal that over 1,000 putative class members had pay records during the relevant time frame indicating that a pay deduction was applied pursuant to one of several, standardized union deduction codes. (Goodwin Decl., Ex. B, ¶ 29). This coding provides a conservative estimate of union membership, as many Paycor clients used custom deduction codes, or would not use any deduction codes, for their unionized employees. (*Id.*) Meanwhile, some Paycor customers have advised Paycor that they had CBAs that were applicable to their employees using Paycor timeclocks. (*Id.* ¶ 30, Ex. 7 (sample CBA of Paycor customer)).

Notably, ***Plaintiffs are not among this cohort***. Unlike Plaintiffs, these putative class members are ***preempted*** from asserting or litigating BIPA claims in this Court, either individually or on behalf of other. *Miller*, 926 F.3d at 901; *Carmean*, 2021 WL 2433649, at *2. As Plaintiffs cannot represent these class members, they are atypical and inadequate class representatives.

### C.    No Question of Liability Is Common to the Class, Preventing Certification.

Rule 23(a)(2) requires a plaintiff to present "questions of law or fact common to the class" before certification may be granted. While one common question is generally enough, "not just any question will do." *Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Superficial common questions like

whether each class member "suffered a violation of the same provision of law" do not suffice. *Dukes*, 564 U.S. at 349. Rather, the class claims "must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Dissimilarities within the proposed class that impede the generation of common answers require class certification to be denied. *Id.* at 350; *Howard*, 989 F.3d at 598.

Plaintiffs cannot meet this burden. Plaintiffs offer nine "common" questions which merely reassert the elements of their claims. (Doc. 103 at 12–13). Such superficial common questions are plainly insufficient. *See Dukes*, 564 U.S. at 349. Knowing this, Plaintiffs also offer that "Defendant treated all Perform Time Users . . . identically" and therefore "subjected each of the proposed class members to the exact same alleged violations of BIPA." (Doc. 103 at 13). But again, this assertion is belied by the facts developed in discovery, including testimony establishing the myriad and divergent ways customers can configure the Perform Time devices and solutions. For example:

- Customers—not Paycor—configure the devices to best serve their business needs, including whether or how employees use fingers to clock in an out (Dahdaly Dep., Ex. A, 48:13-17, 48:10-13);

- Customers—not Paycor—install and choose where to place the devices (*id.*, 46:1-2);

- Customers—not Paycor—choose whether and how devices are connected (*id.*, 46:3-5);

- Customers—not Paycor—may elect to give employees the ability to choose whether to use a proximity badge or finger to interact with the device (*id.*, 50:1-8);

- Only customers—not Paycor—may elect to allow Paycor access to templates hosted on the tenant-segregated database (*id.*, 57:14-18);

- Customers have used different devices at different times with different technologies (*id.*, 70:4-71:12); and

- Customers—not Paycor—may choose to replicate templates between devices, or whether templates will only be used with a single device (*id.*, 91:19-92:19, 134:17-135:13).

(*See also* Goodwin Decl., Ex. B, ¶¶ 7, 10-11, 16-17, 20-25). Ultimately, it is the customers—not Paycor—that determine how their data is created, stored, used, and deleted, with Paycor only providing a "safety deposit box." (*Id.*, 91:5-92:19).

These differences are material, as they impact the core of Plaintiffs' claims—namely, whether Paycor ever "possessed" individual class members' data. As discussed more deeply in Paycor's Motion for Summary Judgment, "the salient inquiry for determining possession . . . is whether the entity exercised control over the Biometrics, not whether it exercised control over the technology generating the Biometrics." *G.T. v. Samsung Elecs. Am. Inc.*, No. 21-4976, 2024 WL 3520026, at *5 (N.D. Ill. July 24, 2024); *accord Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 42. Here, the evidence is that: (a) the templates are created and stored in the Perform Time device possessed by each customer (Dahdaly Dep., Ex. A, 54:8–24); (b) templates are stored in the tenant-segregated database with the customer's dedicated environment (*id.*); where (c) "storage is no different than a safety deposit box that a bank would provide to a customer" (*id.* at 92:20–22; *see also* Goodwin Decl., ¶¶ 18-24). *Cf. David v. Ridgely-Farmers Safe Deposit Co.*, 95 N.E.2d 725, 734 (Ill. App. Ct. 1950) (bank does not have right to transfer title to property in a safety deposit box). Moreover, whether Paycor can even access a template—let alone did access such data—is left to the discretion of the customer-employer. (Goodwin Decl., ¶ 22; Dahdaly Dep., Ex. A, 57:14–18). Thus, to show Paycor "possessed" (i.e., controlled) their data—an element of every claim asserted—class members will need to show that their employer not only granted Paycor the right to access their data, but also that Paycor **did** access their data. *See Ragsdale v. Paycor, Inc.*, No. 2017 CH 13911, at *3–4 (Ill. Cir. Ct., Cook Cnty. Sept. 5, 2024) (finding Paycor did not possess templates as, despites having a legal right of access, the "possibility of possession" is not itself possession), Ex. H. This is not a "common" question subject to common proof.

This Court's ruling in *Hensiek v. Board of Directors of Casino Queen Holding Co.* is illustrative. In *Hensiek*, plaintiffs sought to assert ERISA claims on behalf of certain participants in the companies' stock ownership plan. No. 20-0377, 2024 WL 773633, at *5 (S.D. Ill. Feb. 26, 2024). Defendants argued that plaintiffs' proposed class did not meet the commonality requirement because class members' individual claims "necessarily rely on ERISA's fraud or concealment tolling provision." *Id.* at *9. This Court agreed, noting that "the Court is not convinced that answering any of the Defendant-specific common questions would resolve the litigation on a class wide basis." *Id.* at *10. Having found that "the testimony from class representatives show key factual variations in their own experiences," this Court concluded that no finding of fraud or concealment could be determined on a class basis. Put simply, "[c]ommonality does not exist when different employees received a different mix of various communications." *Id.* at *11.

Here too, the viability of Plaintiffs' core claims depend on a "different mix of various" configurations and actions. And as in *Hensiek*, such "dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* at *12 (quoting *Dukes*, 564 U.S. at 350). For this reason alone, certification must be denied.

Plaintiffs' citation to *Svoboda* (Doc. 103 at p. 13) confirms their misunderstanding of the problem they face. In *Svoboda,* the court found that variations in class members' use of Amazon's "virtual try on" technology—namely, whether to test lipstick or eyewear—were not "materially different" for determining whether BIPA was triggered. *Svoboda v. Amazon.com, Inc.*, 21 C 5336, 2024 WL 1363718, at *2 (N.D. Ill. Mar. 30, 2024). Therefore, answering questions "about the functionality of the . . . VTO software" could resolve issues that are central to the validity of each one of the claims in one stroke." *Id.* at *8. The same cannot be said here, where differences among

employers' use and configuration of the Perform Time solution is material to issues "central to the validity" of Plaintiffs' claims, including whether Paycor ever possessed any biometric data.

Plaintiffs' citations to *Rogers* and *Facebook* are even further off point. *Rogers* involved one company's use of a single technology in four locations, and BNSF did not even challenge commonality. *Rogers v. BNSF Ry. Co.*, No. 19-3083, 2022 WL 854348, at *1–2 (N.D. Ill. Mar. 22, 2022). Facebook, in turn, involved a single company's use of a single technology, without any claim or argument that variations in use impacted the commonality analysis. *See In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 545–47 (N.D. Cal. 2018) (commonality challenge focused on issues of standing and extraterritoriality). The same cannot be said here.

## II.    RULE 23(B)(3)'S REQUIREMENTS CANNOT BE MET, AND NO DAMAGES CLASS CAN BE CERTIFIED.

### A.    Individual Issues Necessarily Predominate, as Paycor Customer-Employer Practices Vary in Material Ways.

Plaintiffs not only fail to satisfy Rule 23(a)'s threshold issues, they also cannot seek class-wide damages. Before a court may certify a class seeking monetary damages, Rule 23 requires a plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members," i.e., that individual issues do not predominate. Fed. R. Civ. P. 23(b)(3); *see also Howard v. Cook Cnty, Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021). If the proposed class lacks the "requisite cohesiveness or unity of interest and their claims depend disproportionately on individual issues[,]" then certification is not warranted. *Smith-Brown v. Ulta Beauty, Inc.*, 335 F.R.D. 521, 534–35 (N.D. Ill. 2020).

Rule 23(b)(3)'s predominance inquiry is "demanding." *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 925 (7th Cir. 2016). Where liability determinations are individual and fact-intensive, such that evidence "varies from member to member," certification under Rule 23(b)(3) must be denied. *Dancel v. Groupon, Inc.,* 949 F.3d 999, 1004-05 (7th Cir. 2019). An "individualized

evidentiary burden" precludes a finding of predominance. *Dancel*, 949 F.3d at 1009–10; *Alpha Tech Pet Inc. v. LaGasse, LLC*, 2017 WL 5069946, at *5 (N.D. Ill. Nov. 3, 2017) (no predominance if case needs individualized checks of thousands of records to determine liability).

Here, Plaintiffs cannot overcome Rule 23(b)(3)'s predominance requirement for many of the reasons already discussed: ***First***, many Paycor clients have implemented BIPA consent protocols. *See* Part I.B.i. But, Paycor lacks control over whether or how its customers implement BIPA policies and therefore cannot assure consistency. Further, general BIPA-compliant practices do not guarantee that an individual employee actually signed a consent, or when. This reality raises a series of individualized questions that must be addressed for each class member, including:

- Did the class member's employer implement a BIPA protocol;

- Is that protocol BIPA compliant;

- Did the class member sign the requisite consent; and

- Did consent address the collection/dissemination covered by this litigation.

*See, e.g.*, *Lyons*, No. 2022 CH 03207, at *5 (dismissing 15(a) and (b) claims on finding "Plaintiff signed this consent form" that explained "how his biometric data would be used"), Ex. F.

***Second***, and similarly, many Paycor customers have a unionized workforce. *See* Part I.B.ii. This too raises significant individualized legal and factual inquiries. The predominance analysis begins with the elements of the underlying cause of action. *See Messner*, 669 F.3d at 815. BIPA expressly authorizes unions, as employees' "legally authorized representative," to receive notice and provide consent on employees' behalf. 740 ILCS 14/15(b)(3), (d)(1)–(2); *Miller*, 926 F.3d at 903-05; *Fernandez*, 14 F.4th at 645–46 ("the union is the workers' agent"). Thus, a decision maker must find for each class member that neither the individual nor his legally authorized representative provided the requisite consent. This cannot be done class wide.

20

More to the point, as soon as the viability of an employee's BIPA claim requires the interpretation of a CBA, federal labor law "ends the [BIPA] litigation." *Carmean*, 2021 WL 2433649, at *2–3 (quoting *Miller*, 926 F.3d at 901). For example, the Illinois Supreme Court has recognized that, "[w]here the CBA contained a broad management rights clause, we find [plaintiff's] Privacy Act claims are preempted by the LMRA." *Walton*, 2023 IL 128338, ¶ 31. The Seventh Circuit, in turn, has held that a court must defer to the grievance resolution procedures set forth or required by the CBA. *Fernandez*, 14 F.4th at 647 ("We are not authorized to usurp the union's authority to decide whether a grievance with management needs an arbitrator's resolution (or, indeed, whether there is any grievance to resolve)."). It is the specifics of the CBA that require preemption, specifics which, again, cannot be done class wide.

**Third**, differences among customers' use and configuration of the Perform Time solution must be evaluated to determine whether a BIPA violation occurred. *See* Part I.C. Again, the issue of "possession"—a core element of Plaintiffs' claims—presents the biggest hurdle to class certification. To "possess"—i.e., "exercise control over"—a class member's template, Plaintiffs must establish that that Paycor both had access to ***and did access*** the template. *See, e.g. Ragsdale*, No. 2017 CH 13911, at *3–4. This cannot be achieved by common proof, including because access is within the discretion of the particular class member's employer. Once again, establishing core elements of Plaintiffs' claims will require individualized inquiries into the treatment of each class members' data, which inquiries will quickly swamp any common question.

**Fourth**, every class member must have Article III standing to recover in this action. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). As with Plaintiffs, standing to assert claims under Section 15(a) is dependent (in part) on the gap between each class member's last use of the Perform Time solution and the deletion of their templates. *See* Part I.A.ii. For many, like

Plaintiffs, this gap will in turn depend on when their employer became a "lost" client. (Dahdaly Dep., Ex. A, 132:15–18 (templates "purged" at end of client relationship). For others, there is no gap because they still use Paycor's system. *See Cothron,* 467 F. Supp. 3d at 612. While Paycor maintains that no class member has standing, such a determination will require this Court to evaluate and compare each class member's employment and "punch" dates with, among other things, the contractual relationships between Paycor and its customers.

**B.    Given These Differences Among Class Members, the Class Action Device Is Not the Best Mechanism to Resolve Class Claims.**

Plaintiffs must establish that a class action is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). This requires an analysis of the "likely difficulties in managing a class action." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015).  Large numbers of necessary, member-by-member inquiries render a class action "totally unmanageable." *E.g. Radmanovich v. Combined Ins. Co.*, 216 F.R.D. 424, 439 (N.D. Ill. 2003).

Here, Plaintiffs seek to represent approximately 14,000 people who used the Paycor Perform Time solution. (Doc. 103 at pp. 5, 7). They claim this is appropriate because "all putative class members were uniformly subjected to Defendant's standardized biometric data policies and practices." (*Id.* at 9). But as discussed at length, whether Plaintiffs—let along the 14,000 individuals they hope to represent—can assert claims against Paycor under BIPA depends extensively on their individual relationship with their employer, not Paycor. The impossibility of teasing out these individual issues—including employer consent, union membership, and template access—through representative litigation completely undermines the value of the class action device.

Nor have Plaintiffs provided a workable solution. *See Mullins*, 795 F.3d at 664 ("If faced with what appear to be unusually difficult manageability problems at the certification stage, district courts have discretion to insist on details of the plaintiff's plan for . . . managing the action.").

Instead, they highlight irrelevant factors while ignoring topics central to their claims. (*See* Doc. 103 at p. 15 (claiming job type and employer location as irrelevant to "legal theory")).[4] Again, miss the point—absent a class-wide mechanism to determine class (or even subclass) membership, the class-action mechanism carries no benefit over individual litigation save to deprive absent litigants their day in court. *See, e.g.*, *Fischer v. Instant Checkmate LLC*, No. 19-4892, 2022 WL 971479, at *12 (N.D. Ill. Mar. 31, 2022) (denying certification where "it is impossible to discern who is" in the class); *Ramirez v. Palisades Collection LLC*, 250 F.R.D. 366, 370 (N.D. Ill. 2008) (membership must be identifiable through "ministerial review," not "arduous individual inquiry").

This is no minor issue. By ignoring the need to address individual issues of liability, Plaintiffs ensure that the resulting class will be overinclusive. Indeed, Plaintiff Johns has no claim, despite being a member of the class he seeks to certify. *See* Part I.A.i. Where, as here, the risk of overinclusion potentially translates into millions of dollars of unjustified statutory damages, the direct compensation and due process protections ensured through direct litigation renders individualized actions superior to the class action device. *See, e.g.*, *Espejo v. Santander Consumer, Inc.*, No. 11-8987, 2016 WL 6037625, at *12 (N.D. Ill. 2016) (finding superiority not met when weighing individual statutory remedies against difficulty of identifying viable class members).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that this Court deny class certification and grant such other and further relief that the Court deems just and equitable.

---

[4] Of course, job type and employer location are relevant to Plaintiffs' "legal theory" if they mean the employee never used a Paycor device in Illinois, as with Plaintiff Johns. *See* Part I.A.i.

Dated:  September 17, 2024                    Respectfully Submitted,

                                             PAYCOR, INC.

                                             By: _/s/Melissa A. Siebert_

                                             Melissa A. Siebert
                                             Christopher S. Hennessy
                                             COZEN O'CONNOR
                                             123 N. Wacker Dr., Suite 1800
                                             Chicago, IL 60606
                                             (312)-474-7900
                                             msiebert@cozen.com
                                             chennessy@cozen.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 17, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk via the Court's CM/ECF system, which will notify all counsel of record.


_/s/ Melissa A. Siebert_