# EXHIBIT E

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| Martin Ragsdale, Alea Bolds, and Dale Cully, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | Case No. 2017 CH 13911 Consolidated With 2018 CH 01811 |
| Plaintiffs, | ) ) | Motion for Summary Judgment |
| v. | ) ) | Calendar 1 |
| Paycor, Inc., | ) ) | Hon. Thaddeus L. Wilson Judge Presiding |
| Defendant. | ) | |

**ORDER**

THIS MATTER comes before the Court on Paycor Inc.'s Motion for Summary Judgment. The Court, having heard oral argument and having reviewed the pleadings and applicable law, finds as follows:

**I.     Factual Background**

Paycor offers its clients cloud-based recruiting, human resources, and payroll services. The three named Plaintiffs, Martin Ragsdale, Alea Bolds, and Dale Cully, allege that they worked for companies that are either former or current Paycor customers for whom Paycor provided payroll processing services. Plaintiff Martin Ragsdale alleges that he formerly worked at Paramount Oak Park Nursing and Rehabilitation Center. Plaintiff Alea Bolds alleges that she formerly worked at Arro Corporation, and Plaintiff Dale Cully alleges that he worked at PRS Group Inc.[1] Plaintiffs alleged that, during their time at their respective companies, they were required to scan their fingerprints for timekeeping purposes through Paycor-owned time clocks in violation of the Illinois Biometric Information Privacy Act. 740 ILCS 14/15, et seq.

---

[1] This Court dismissed Plaintiff Dale Cully's individual claims in its November 15, 2023 Order.

## II. Legal Standard

Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c). When evaluating a motion for summary judgment, a circuit court must view the record in the light most favorable to the nonmoving party. *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 315 (2004). "Summary judgment is a drastic means of disposing of litigation. .," *Berlin v. Sarah Bush Lincoln Health Center,* 179 Ill. 2d 1, 7 (1997), and, therefore, "should be granted only when the right of the moving party is clear and free from doubt." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011).

## III. Analysis

### A. Possession

Paycor argues for summary judgment on Plaintiffs' claims brought under Section 15(a), (c), and (d) of BIPA as Plaintiffs cannot establish that Paycor possessed any of their biometric identifiers or information. Paycor argues that template data is only stored locally on the physical time clock, which Paycor cannot access. Secondarily, the template data is also stored on Attendance on Demand's ("AOD") servers, which Paycor cannot and has not accessed. According to Plaintiff, the template data is untouched by Paycor's servers or networks, and as such, Plaintiffs cannot show that Paycor possessed or controlled Plaintiffs' biometric data.

In response, the Plaintiffs argue that Paycor maintained legal control over their biometric data and should be found liable under BIPA. According to Plaintiffs, although Paycor asserts it did not exclusively possess their biometric data, Paycor nonetheless maintained legal control over its customers' employees' biometric data sufficient to be held liable under BIPA. Plaintiffs argue that Paycor's contracts with its customers show that Paycor exerted control over Plaintiffs' Biometric Data.

For example, Plaintiffs point out that in Paycor's Client Service Agreement, "SERVICE PROVIDERS" is defined as Paycor and AOD together (Ex. A at PAYCOR 000032), and "CUSTOMER's Confidential Information" is defined as "any and all data and information relating to the business and employees of the CUSTOMER of which the SERVICE PROVIDERS become aware as a consequence of, or through, this agreement." (Ex. A, at PAYCOR 000034, § 9). Plaintiffs assert that this shows that Paycor maintained control over their biometric data.

Plaintiffs assert that Paycor maintained access to Plaintiffs' biometric data and therefore possessed it. According to Plaintiffs, when asked if Paycor technicians or anybody from Paycor can access templates from AOD's system, Mr. Deeds, an employee of AOD, answered in the affirmative. Further, when Mr. Deeds was asked again if Paycor has the ability to review the templates, he testified that Paycor can run biometric reports. Plaintiffs argue, at a minimum, that a genuine question of material fact exists as to whether Paycor exuded control over Plaintiffs' biometric data.

To be liable under Section 15(a), (c), or (d) of BIPA, one must be found to have had biometric data. *See* 740 ILCS 14/15(a), (c), (d). In defining "possession" under BIPA, the First District Appellate Court previously applied the ordinary and popular meaning of the word as found by the Illinois Supreme Court and found in a dictionary, which is to have control. *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 42.

While Plaintiffs would have the Court believe possession is broad and encompasses the possibility of possession, the Court declines to apply that broad definition. Plaintiff contends that in its contracts with AOD, Paycor maintained legal control over its customers' employees' biometric information. However, nothing in the contract shows that Paycor maintained actual

"control" of any of the Plaintiffs' biometric information. We are now at the summary judgment phase of the case. Plaintiffs are required to put forth evidence, not theories and potentialities.

The facts set forth by Plaintiffs are insufficient to establish that Paycor possessed Plaintiff's biometric information. The First District Appellate Court made clear that in the context of BIPA, possession means to have control. *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 42. Plaintiff asserts that AOD and Paycor maintained control over the biometric data and therefore should be liable. *People v. Schmalz*, 194 Ill. 2d 75, 82 (Ill. 2000) ("[I]f two or more persons share immediate and exclusive control or share the intention and *power to exercise control*, then each has possession."). However, their definition of possession is misguided, and even following their definition of possession as asserted by Plaintiffs, it is still insufficient to impute liability on Paycor upon these facts. Plaintiffs have not shown that Paycor, as opposed to AOD or the physical timeclock, possessed their biometric data. Accordingly, Plaintiffs cannot succeed on their claims under Section 15(a) (c) and (d) of BIPA as they cannot show that Paycor possessed their biometric data.

**B.     Section 15(b)**

Next, Paycor argues that they did not collect, use, or otherwise obtain the Plaintiffs' biometric data in violation of Section 15(b) of BIPA. According to Paycor, courts in interpreting section 15(b) of BIPA have included the requirement that an entity take an active step to collect, capture, purchase, or obtain biometric data. Paycor asserts that it is merely a third-party payroll provider with no relationship to any of the Plaintiffs and never collected, captured, possessed, retained, or disclosed the Plaintiffs' biometric data. According to Paycor, there is no evidence presented by the Plaintiffs to show that Paycor took an active step to collect biometric information in violation of 15(b) of BIPA.

In response, Plaintiffs argue that Paycor is the main player in the employer-customer relationship. Specifically, the Plaintiffs note that Paycor leases the biometric time clock to its customers, trains those customers on how to use the hardware and software, and upcharges the employer customers for their use of the time on-demand add-on. In support of their position, plaintiffs cite Judge Kennelly's decision in *Rogers v. BNSF Ry. Co.*, 19-cv-3083, 2022 WL 787955 (N.D. Ill. Mar. 15, 2022). In *BNSF*, truck drivers asserted BIPA claims against BNSF after having to submit biometric scans to enter BNSF railyards. Judge Kennelly denied BNSF's request for summary judgment on the Section 15(b) claims because there was "conflicting evidence regarding BNSF's role in operating the AGS [the biometric security system at issue]." Judge Kennelly determined that a jury could find that BNSF "violated BIPA, whether by collecting, capturing, receiving through trade, or otherwise obtaining the biometric information at issue," even if Remprex could technically also be found liable, and thus denied BNSF's request. *Id.* Like in *BNSF*, Plaintiffs argue that Paycor maintained a role in operating the biometric timeclocks leased to the companies and should be held liable.

Under Section 15(b) of BIPA:

> (b) No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information unless it first:(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative. 740 ILCS 14/15.

In *Barnett v. Apple Inc.*, the First District addressed a similar issue. In *Barnett* the plaintiffs argued that Apple collects and captures their biometric information, where plaintiffs utilized Apple software to collect and capture their fingerprints or facial images *Barnett v. Apple Inc.*, 2022 IL

App (1st) 220187, ¶ 47. The court in *Barnett* applied the definition they previously utilized in in *Mosby v. Ingalls Memorial Hospital,* 2022 IL App (1st) 200822,[2] at ¶¶ 49-50. Which said

> "The first definitions of 'collect' in the dictionary are 'to bring together into one body and place,' 'to gather or exact from a number of persons or sources,' and 'to gather an accumulation of.' Thus, after the capture of information from an individual, that information may be gathered or accumulated from a number of persons into one place." *Mosby*, 2022 IL App (1st) 200822, ¶ 59; *Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶ 49.

Plaintiffs have not shown that Paycor collected or captured their biometric data in this case. Some courts have read an active step requirement into Section 15(b). *Stauffier v. Innovative Heights Fairview Heights, LLC,* No. 20-cv-00046. 2022 WL 3139507 (S.D. Ill. Aug.5.2022) (requiring active step by defendant under §15(b)). Including the "active step" requirement, it is clear that Paycor did not actively seek out or collect the biometric data, and that the entire process was completed between the employer and AOD. However, this Court need not resolve the "active step" requirement question, as it would not change the results of this case. In this case, the facts show that the Plaintiffs' biometric data was transmitted directly to AOD for storage on out-of-state servers. Paycor is not involved in this process and doesn't receive any data from a customer other than template data which isn't biometric data.

Additionally, Plaintiffs' reference to *BNSF* is inapposite to the instant case. In *BNSF*, there was evidence that the defendant actively enrolled plaintiffs in purported biometric technology, collected their biometric data, and directed the technology provider on how to administer the system, ultimately "calling the shots" on how biometric data was collected. In this case, Plaintiffs cannot show a high level of control by Paycor over the biometric time clock to warrant denial of summary judgment.

---

[2] Mosby was overturned on other grounds by the Illinois Supreme Court in *Mosby v. Ingalls Memorial Hospital*, 2023 IL 129081.

C.   **Section 15(c)**

Paycor further argues that Plaintiffs cannot prove a violation of Section 15(c) of BIPA. According to Paycor, courts interpreting Section 15(c) have concluded that 15(c) only applies to direct transactions involving biometric information. Paycor asserts that Plaintiffs have proffered no proof that Paycor sold or exchanged any biometric information for profit. Paycor believes that Plaintiffs' theory that Paycor has violated Section 15(c) because they receive a benefit based upon how much payroll information it compiles is irreconcilable with Section 15(c).

In response, Plaintiffs assert that Paycor profited from Plaintiffs' biometrics by upselling AOD's back-end biometric storage system to its customers and charging those customers on a per-employee basis. According to Plaintiffs, Section 15(c) prohibits companies from otherwise profiting based upon a person's biometric data, and by up-charging on a per-employee basis, Paycor is violating Section 15(c).

Section 15(c) states: No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information. 740 ILCS 14/15. Notwithstanding the issue surrounding Paycor's purported possession of Plaintiffs' biometric information, Plaintiff's interpretation of Section 15(c) stretches the contours of "otherwise profit" too far. The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. " *People v. Latona,* 184 Ill. 2d 260, 269 (1998). "The most reliable indicator of legislative intent is the language of the statute itself." *Id.* In the absence of a statutory definition suggesting a different legislative intent, words are to be given their ordinary and commonly understood meaning. *People v. Hicks*, 164 Ill. 2d 218, 222 (1995). If the language is clear, the Court must give it effect and should not look to extrinsic aids for construction. *People v. Jefferies*, 311 Ill. App. 3d 1014, 1018-19 (5th Dist. 2000).

The time clock at issue can be used with or without the biometric feature, and use of the feature is determined and implemented by the customer. The Plaintiffs failed to establish a connection between Paycor charging on a per-employee basis and the Plaintiffs' biometric information. Further, the statute's plain language indicates that the legislature intended to control the direct transaction between companies who directly profit from biometric information. The Plaintiffs' argument that Paycor's profiting by upcharging is too far removed from Paycor's purported possession of the biometric information and does not establish a connection between the two. Especially for a device that can serve the same payroll processing functions without the end-use employer activating the biometric functionality. Other courts have found similar results in analogous situations. *See, Jones v. Microsoft Corp.,* No. 22-cv-3437, 2023 WL 130495, at * 4 (N.D. Ill. Jan. 9, 2023) (noting the distinction between receiving money in exchange for providing a service versus in exchange for biometric data).

### D.     Section 15(d)

Paycor additionally argues that the Plaintiffs have failed to establish a violation of Section 15(d) because they cannot show that Paycor disclosed the Plaintiffs' biometric information without their consent. Under Section 15(d):

> No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction. 740 ILCS 14/15(d).

Here, it is clear that Paycor did not possess or transmit any biometric data in violation of Section 15(d). The facts establish that Paycor has no involvement in transmitting Plaintiffs'

template data to AOD and that activity solely occurs between the employer companies and AOD. As such, Plaintiffs cannot sustain their burden as to their BIPA § 15(d) claim, and Paycor is entitled to summary judgment on this ground.

### E. Biometric Identifiers

Paycor also argues that the data they receive is not biometric information. According to Paycor, the only information given to Paycor is a payroll text file, i.e., the Plaintiffs' identification numbers and hours pay codes. Paycor believes that none of the Payroll Text File is biometric information as defined under BIPA. Under BIPA, biometric identifiers mean a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. 740 ILCS 14/10. Here, the Plaintiffs have not shown that Paycor collected biometric information as opposed to a payroll text file, which does not constitute biometric identifiers. Accordingly, all Plaintiffs' claims fail on this basis as well.

## IV. Conclusion

Based on the above discussion,

**IT IS HEREBY ORDERED**:

1. Paycor's Motion for Summary Judgment is **GRANTED**.
2. Judgment is entered in favor of Paycor on all counts of the operative complaint.
3. This matter is disposed.

**ENTERED:**

**ENTERED**
Judge Thaddeus L. Wilson – 1976
September 5, 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

_____
Hon. Thaddeus L. Wilson
Circuit Court of Cook County

Page **9** of **9**