IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLIN JOHNS, individually and on behalf of all others similarly situated, and JUAN BARRON,<br><br>    Plaintiffs,<br><br>vs.<br><br>PAYCOR, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:20-cv-264-DWD<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER REGARDING PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND PAPER DOCUMENTS

### ESI AND GENERAL DISCOVERY PROTOCOL

**1.** **PURPOSE**

Unless otherwise agreed to by the parties or ordered by the Court, this Stipulation and Order Regarding Production of Electronically Stored Information and Paper Documents (the "Order") will govern discovery of electronically stored information ("ESI") and paper documents in the litigation as a supplement to the Federal Rules of Civil Procedure, this Court's Local Rules, and any other applicable orders and rules. All productions made pursuant to this Order are subject to the Agreed Confidentiality and Protective Order ("Protective Order") previously entered in this litigation (Docs. 49 & 142), and any other protective orders or privilege orders entered in this litigation.

This Order does not address, limit, or determine the relevance, discoverability, agreement to produce, or admissibility of ESI. The parties are not waiving the right to

seek any discovery, and the parties are not waiving any objections to specific discovery requests.

### 2. COOPERATION

The parties agree that they will adhere to the principles of cooperation, transparency, reasonableness, and proportionality, as set forth in the Federal Rules of Civil Procedure and as interpreted by federal case law and in the Seventh Circuit Electronic Discovery Committee Principles Relating to the Discovery of Electronically Stored Information, as they conduct discovery in this litigation.

### 3. PRESERVATION

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI and paper documents will be reasonable and proportionate. Given the nature and complexity of this action, the parties agree to address methods to reduce the costs and burdens of preservation and to ensure proper ESI is preserved.

The parties will confer regarding a list of the types of ESI they believe should be preserved, including a description of systems, if any, that contain ESI not associated with individual custodians; and names of the custodians, and general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The list shall be retained by the parties separately. The parties shall add or remove custodians as reasonably necessary.

The parties further agree to provide descriptions of (1) data sources that are not reasonably accessible and that will not be reviewed for responsiveness or produced, but that will be preserved pursuant to Federal Rule of Civil Procedure 26(b)(2)(B) and (2) data sources that either party believe could contain relevant information but is not discoverable and should not be preserved, upon balancing the proportionality factors.

If a producing party asserts that certain categories of ESI that are reasonably likely to contain responsive information are inaccessible or otherwise unnecessary under the circumstances, or if the requesting party asserts that, following production, certain ESI is not reasonably usable, the parties shall meet and confer with their respective technology experts to discuss resolving such assertions. If the parties cannot resolve any such disputes or any disputes related to scope or manner of preservation after such a meet and confer has occurred, the issue shall be presented to the Court for resolution.

4.  **SEARCH AND REVIEW**

The parties will discuss the search methodology for ESI, including terms used to search for documents responsive to document requests, and the potential use of computer-assisted review or predictive coding techniques.

The parties will meet and confer, prior to the application of search terms to find documents responsive to party document requests and will review any search terms proposed and/or requested by the parties. The parties will continue to meet and confer regarding any search process issues as necessary and appropriate, including any supplemental requests to add additional search terms based on supplemental document productions by either party. If the Receiving Party has reason to believe that a production

is missing relevant ESI or contains substantial amounts of irrelevant ESI, the parties agree to promptly meet and confer regarding potential quality control methods that the Producing Party can implement.

This ESI protocol does not address or resolve any other objection to the scope of the parties' respective discovery requests.

### 5. PRODUCTION FORMATS

The parties will make a good faith effort to produce documents in accordance with the production format as set forth in the attached Appendix A. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents and will set forth any agreements on variances in writing. In accordance with Appendix A, the parties agree not to degrade the searchability and metadata of ESI and documents as part of the document production process.

### 6. PHASING

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI. The parties agree to meet and confer to discuss whether certain categories of information can be prioritized over other categories and, subject to any privilege objections, the sources of the parties' document productions and the identification of relevant custodians. Following the initial production, the parties will continue to prioritize the order of subsequent productions.

7.      **DOCUMENTS PROTECTED FROM DISCOVERY**

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

If a party determines that it inadvertently produced a document containing privileged information, the Producing Party shall notify the Receiving Party within a reasonable time period of the discovery of the production, provide an updated privilege log and image overlay production, and request in writing that the Receiving Party return or destroy that document. Upon receipt of such a request for return, the Party to whom the documents were produced must segregate the documents (and all copies thereof except that one copy may be retained only for purposes of challenging claw back claims) and return or destroy them within ten (10) days. All images of withheld privileged information and any notes or communications reflecting the content of such documents shall be destroyed at the same time as the document is returned or destroyed. This Provision shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

The return or destruction of a document over which the Producing Party has asserted a claim of privilege or protection as set forth above shall be without prejudice to the right of the Receiving Party to challenge any such designation, within five (5) business

days of any such claim by the Producing Party, provided, however, that mere production of the document or information in the course of this action shall not constitute grounds for asserting waiver of the privilege or protection.

The Producing Party may, within ten (10) business days of any such challenge, seek an order from the Court upholding the claimed privilege or protection and directing its return or destruction. Failure of the Producing Party to file such a motion within that period shall be deemed a withdrawal and waiver of its assertion of privilege. The parties may refer to the document in any motions to the Court concerning that document.

For document(s) withheld in its entirety or produced but redacted on the basis of privilege or work product protections, the party withholding the document(s) will produce privilege/redaction logs. For each category of document withheld in its entirety or produced but redacted, the producing party will produce categorical privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching. Communications involving counsel that post-date the filing of the initial complaint need not be placed on a privilege log. Unless otherwise agreed to by the parties, a privilege/redaction log shall be produced within 14 days of the production.

The parties agree on the following **Privilege Log Requirements**:

a. **Metadata Log:** To the extent applicable, each party's privilege log only needs to provide objective metadata (to the extent it is reasonably available and does not reflect privileged or protected information) and an indication of the privilege or protection being asserted. Objective metadata includes the following (as applicable to the document types as shown in Appendix A):

      i. A unique privilege log identifier
     ii. Custodian
    iii. File Name
    iv. Email Subject
     v. Author
    vi. From
   vii. To
  viii. CC
    ix. BCC
     x. Date Sent
    xi. Date Received
   xii. Date Created

b. In addition to the above, a party must include a field on its log titled "Attorney/Description of Privileged Material" if the basis for the privilege asserted is not apparent from the objective metadata (e.g., name of the attorney will be provided if not included in the objective metadata), a party must also manually populate on its privilege log an author and date for any withheld document where that information is not provided by the objective metadata.

c. A requesting party may request in good faith, for specific documents identified by unique privilege log identifier, additional information as follows: (1) the capacity of each individual from whom or to whom a document and any attachments were sent (including which persons are lawyers); (2) the type of document; (3) the Bates numbers of the documents, if the document identified on the privilege log was produced in part; (5) the nature of the privilege asserted; and (6) a description of the subject matter of the information contained in the document in sufficient detail to determine if legal advice was sought or received or if the document constitutes attorney work product.

   d. **Email chains**: A party asserting privilege over a chain of emails must produce a single redacted copy of such email chain to the extent some portions are only partially privileged.

   e. **Documents Redacted for Privilege:** Redacted emails need not be logged as long as the objective metadata (unless the privilege or protection is contained in these fields) is not redacted, and the reason for the redaction, including the nature of the privilege asserted, is noted on the face of the document. For redacted documents where the subject matter is not decipherable because of the redactions, a description of the contents that is sufficient to understand the subject matter of the document may be requested. Non-email documents need not be logged if the reason for the redaction is noted on the face of the document in the redacted area. After receipt of any such production, the requesting party may request in good faith that the producing party create a privilege log for specific redacted documents. Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompany data load file.

A requesting party may also identify, in writing, any document(s) that it believes require further explanation. The producing party shall endeavor to respond within 14 days. The parties agree to meet and confer to resolve any disputes involving privilege claims. If the parties cannot agree, the matter may be brought to the Court.

   8.   **LIMITED 28 U.S.C. § 1920 WAIVER**

In consideration of the parties' agreed upon Protocol, the Producing Party agrees not to seek the reimbursement of any or all of the Producing Party's costs relating to the

production, storage, and maintenance of its ESI. Nothing herein constitutes an acknowledgement (implicit or otherwise) by any party that ESI-related costs are taxable under 28 U.S.C. § 1920.

9.  **MODIFICATION**

This Order may be modified by stipulation of the parties or by the Court for good cause shown.

**SO ORDERED**.

Dated: November 4, 2024

*s/ David W. Dugan*
DAVID W. DUGAN
United States District Judge

## APPENDIX A

1. **GENERAL PRODUCTION FORMAT PROTOCOLS**

    a. **TIFFs:** Except for structured data, all production images will be provided as a black-and-white, single page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a producing party's vendor (i.e., portrait to portrait and landscape to landscape). Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the native file shall, to the extent reasonably practicable, also be imaged so that this information is captured on the produced image file. Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native form with a placeholder TIFF imaged stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF format. A producing party retains the option to produce ESI in alternative formats if so agreed by the requesting party, which may include native format, or a combination of native and TIFF formats.

    b. **Text Files:** Each ESI item produced under this order shall be accompanied by a text file as set out below. All text files shall be provided as a single document level text file for each item, not one text file per page. Each text file shall be named to use the Bates number of the first page of the corresponding production item.

        i. **OCR:** A producing party may OCR paper documents if it chooses. Where OCR is used, the parties will endeavor to generate accurate OCR and will utilize quality OCR processes and technology. OCR text files should indicate page breaks where possible. Even if OCR is used by a producing party, however, the parties acknowledge that due to poor quality of the originals, not all documents lend themselves to the generation of accurate OCR. In such instances, or if a producing party does not choose to use OCR at all, the producing party will make the paper documents available for inspection and copying in accordance with FED. R. CIV. P. 34.

        ii. **ESI:** Emails and other ESI will be accompanied by extracted text taken from the electronic file itself, where available.

    c.    **Production of Native Items:** The parties agree that ESI shall be produced as TIFFs with an accompanying load file, which will contain, among other data points, the ESI data points listed in Appendix 1 hereto. The exception to this rule shall be spreadsheet-application files (e.g., MS Excel), personal databases (e.g., MS Access), and multimedia audio/visual files such as voice and video recordings (e.g., .wav, .mpeg, and .avi), for which all ESI items shall be produced in native format upon reasonable request. In the case of personal database (e.g., MS Access) files containing confidential or privileged information, the parties shall meet and confer to determine the appropriate form of production. In addition to producing the above file types in native format, the producing party shall produce a single-page TIFF slip sheet indicating that a native item was produced. The corresponding load file shall include NativeFileLink information for each native file that is produced. Further, the parties agree to meet and confer prior to producing native file types other than MS Excel, and multimedia audio/visual file types such as .wav, .mpeg and .avi. Prior to processing non-standard native files for production, the producing party shall disclose the file type to, and meet and confer with, the requesting party on a reasonably useable production format. The parties agree to meet and confer to the extent that there is data in database application files, such as SQL and SAP, to determine the best reasonable form of production of usable data. Through the pendency of this litigation, the producing party shall exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

    d.    **Requests for Other Native Files:** Other than as specifically set forth above, a producing party need not produce documents in native format. If a party would like a particular document produced in native format, and this order does not require the production of that document in its native format, the party making such a request shall bear the burden of showing that good cause exists for the document to be produced in its native format. The requesting party will provide a specific Bates range for documents it wishes to be produced in native format. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields set forth in Appendix 1.

    e.    **Bates Numbering:**

        1.    All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0- padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a

    given document; and (5) identify the producing party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents.

2. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

3. The producing party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying image.

    **f.**    **Parent-Child Relationships:** Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. For example, if a party is producing a hard copy printout of an e-mail with its attachments, the attachments should be processed in order behind the e-mail to the extent reasonably practicable.

    **g.**    **Non-Responsive Attachments:** The parties agree that non-responsive parent documents must be produced if they contain a responsive attachment and are not withheld as privileged. The parties also agree that, as a general matter, attachments that are non-responsive will be produced with a parent that is responsive or with other children that are responsive if they are not withheld as privileged. Parties also need not produce attachments that are non-responsive because they do not hit on any agreed search terms. A bates numbered placeholder will be provided for any document withheld pursuant to this section and shall state that a non-responsive attachment has been withheld from production. The requesting party has the right to request the production of any attachment withheld solely on the basis of non-responsiveness that the requesting party believes in good faith is responsive. For such attachments, the requesting party shall provide a list of Bates numbers of any document produced that suggests that a responsive attachment was excluded from production as a non-responsive attachment, and of any such attachment the requesting party seeks to have produced and shall explain why it believes the attachment is responsive.

    **h.**    **Load Files:** All production items will be provided with a delimited data file or "load file," which will include both an image cross-reference load file (such as an Opticon file) as well as a metadata (.dat) file with the metadata fields identified below on the document level to the extent available. The load file must reference each TIFF in the corresponding production. The total number of documents referenced in a production's data load file

      should match the total number of designated document breaks in the Image Load files in the production.

- **i.** **Color:** Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings and it is necessary to see those markings in their original color to understand the meaning or content of the document, then the requesting party may, in good faith, request that the document or ESI item be produced in its original colors. For such documents, the requesting party shall provide a list of Bates numbers of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG format (300 DPI). All requirements for productions stated in this Stipulation and Order regarding productions in TIFF format would apply to any productions of documents and/or ESI in color made in such an alternative format. Requests that a document be produced in color for the reasons set forth in this section will not be unreasonably denied by the producing party. If a producing party wishes to object, it may do so by responding in writing and setting forth its objection(s) to the production of the requested document in color.

- **j.** **Confidentiality Designations:** If a particular paper document or ESI item qualifies for confidential treatment pursuant to any applicable federal, state, or common law, or to the terms of the Confidentiality Order entered by the Court in this litigation or a confidentiality stipulation entered into by the parties, the designation shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying image. To the extent reasonably possible, this designation also should be included in the appropriate data field in the load file. Failure to comply with the procedures set forth in this ESI Protocol, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment.

- **k.** **Production Media & Protocol:** A producing party may produce documents via email or via file-sharing service, including any network-based secure file transfer mechanism or FTP protocol. Any requesting party that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a producing party provide a copy of that production using Production Media, as described below in this section.

      A producing party may also produce documents on readily accessible computer or electronic media, including CD-ROM, DVD, or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted and the producing party will provide

a decryption key to the requesting party in a communication separate from the production itself. Each piece of Production Media will be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the material in that production. Where the Production Media used is a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, such production media must be sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of Production Media (or in the case of productions made via FTP link, each production transmittal letter) shall include: (1) case name, (2) the production date, and (3) the Bates number range of the materials contained on such production media item. Any replacement Production Media will cross-reference the original Production Media and clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

However produced, a producing party shall provide clear instructions for accessing the production, including any necessary passwords or encryption keys.

2. **PAPER DOCUMENT PRODUCTION PROTOCOLS**

   a. **Scanning:** A producing party may make paper documents available for inspection and copying in accordance with Fed. R. Civ. P. 34 or, additionally or alternatively, OCR paper documents if it chooses. Where OCR is used, the parties agree that the following Sections III. B-E shall apply.

   b. **Coding Fields:** The following information shall be produced in the load file accompanying production of paper documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian, (f) Confidentiality, and (g) Redacted (Y/N). Additionally, all Paper Documents will be produced with a coding field named "Paper Document" marked with a "Y."

   c. **Unitization of Paper Documents**: Paper documents should be logically unitized for production to the extent reasonably practicable. Therefore, when scanning Paper Documents for production, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records.

   d. **File/Binder Structures:**

      i. **Unitization:** Where the documents were organized into groups, such as folders, clipped bundles and binders, this structure shall be maintained

       and provided in the load file to the extent reasonably practicable. The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable. The parties will make their best efforts to unitize documents correctly.

      ii. **Identification:** Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

e. **Custodian Identification:** The parties will utilize best efforts to ensure that paper records for a particular document custodian are produced in consecutive Bates stamp order.

3. **ESI METADATA FORMAT AND PROCESSING ISSUES**

   a. **System Files:** ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as they exist at the time of de-NISTing. Other file types may be added to the list of excluded files by agreement of the parties.

   b. **Metadata Fields and Processing:**

      i. **Date and Time:** No party shall modify the date or time as contained in any original ESI.

      ii. **Time Zone:** To the extent reasonably practicable, ESI items shall be processed using a consistent time zone (*e.g.*, GMT), and the time zone used shall be disclosed to the requesting party.

      iii. **Auto Date/Time Stamps:** To the extent reasonably practicable, ESI items shall be processed so as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

      iv. Except as otherwise set forth in this Order, ESI files shall be produced with at least each of the data fields set forth in Appendix 1 that can reasonably be extracted from a document.

      v. The parties are not obligated to manually populate any of the fields in Appendix 1 if such fields cannot reasonably be extracted from the document using an automated process, with the exception of the following fields: (a) BegBates, (b) EndBates, (c) BegAttach,

(d) EndAttach, (e) Custodian, (f) Confidentiality, (g) Redacted (Y/N), and (h) NativeLink fields, which should be populated regardless of whether the fields can be populated pursuant to an automated process.

c. **Redaction:**

   i. The parties agree that where ESI items need to be redacted, they shall be produced solely in TIFF format with each redaction clearly indicated, except in the case of personal database files (*e.g.*, MS Access), which shall be governed by ¶ II(C), *supra*. Any metadata fields reasonably available and unnecessary to protect the privilege protected by the redaction shall be provided. In some cases, MS Excel documents that need to be redacted may be redacted in native format if reasonably practicable; otherwise they will be produced in TIFF format.

   ii. If the items redacted and partially withheld from production are Excel-type spreadsheets as addressed in ¶ II(C), *supra*, and the native items are also withheld, to the extent reasonably practicable, the entire ESI item must be produced in TIFF format, including all unprivileged pages, hidden fields and other information that does not print when opened as last saved by the custodian or end-user. For PowerPoint-type presentation decks, this shall include, but is not limited to, any speaker notes. For Excel-type spreadsheets, this shall include, but is not limited to, hidden rows and columns, all cell values, annotations and notes. The producing party shall also make reasonable efforts to ensure that any spreadsheets produced only as TIFF images are formatted so as to be legible. For example, column widths should be formatted so that the numbers in the column will display rather than "##########."

   iii. If the items redacted and partially withheld from production are audio/visual files, the producing party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the parties shall meet and confer to discuss the appropriate manner for the producing party to produce the unredacted portion of the content.

d. **Email Collection and Processing:**

   i. **Email Threading:** The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and

        produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting party to identify every custodian who had a copy of a produced document or email, or (b) remove from a production any unique branches and/or attachments contained within an email thread.

    **ii.**     **Email Domains:** Excluded from any ESI search process shall be uniquely identifiable categories of documents, such as emails from domains typically associated with junk email.

**e.**     **De-duplication:** A producing party may de-duplicate any file globally (*i.e.*, across document custodians) or horizontally at the "family" level. If a requesting party demonstrates a need for such information after receiving a production, the requesting party shall identify by Bates number the document for which such information is needed, and the producing party will make a reasonable effort to identify all custodians who were in possession of the de-duplicated document. Additionally, all BCC recipients whose names would have been included in the BCC metadata field, to the extent such metadata exists, but are excluded because of horizontal/global de-duplication, must be identified in the BCC metadata field specified in Appendix 1 to the extent such metadata exists. In the event of rolling productions of documents or ESI items, the producing party will, as needed, supplement the load files with updated CustodianAll or CustodianOther information, as well as BCC information to the extent such metadata exists.

    **i.**     Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical value are a duplicate group. The producing party shall produce only one document image or native file for duplicate ESI documents within the duplicate group to the extent practicable. The producing party is not obligated to extract or produce entirely duplicate ESI documents. Any other methodology for identification of duplicates, including email field selection for hash value creation, must be discussed with the requesting party and approved in writing before implementation.

    **ii.**     Duplicate messaging files shall be identified by a commercially accepted industry standard (e.g., MD5 hash values) for the email family, which include the parent and email attachments. Duplicate messaging materials will be identified at a family level, including message and attachments(s). Email families bearing an identical value are considered a duplicate group. The producing party shall

        produce only one document image or native file for duplicate emails within the duplicate group to the extent practicable.

f. **Zero-byte Files:** The Parties may filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names. If requesting party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the requesting party may request that producing party produce the zero-byte file. The requesting party may provide a Bates number to producing party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

g. **Microsoft "Auto" Feature:** To the extent reasonably practicable and technologically possible for a producing party's vendor, Microsoft Excel (.xls) and Microsoft PowerPoint (.ppt) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," "Auto File Path" formula used or similar words that describe the "auto" feature.

h. **Hidden text:** ESI items processed after the execution date of this Order shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments.

i. **Embedded Objects:** Microsoft Excel (.xls) spreadsheets embedded in Microsoft Word documents will be extracted as separate documents and treated like attachments to the document. The parties agree that other embedded objects, including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced by a producing party.

j. **Compressed Files:** Compression file types (i.e., .CAB, .GZ, .TAR, .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

k. **Password-Protected or Encrypted Files:** With respect to any ESI items that are password-protected or encrypted, the producing party will take reasonable steps based on industry standards to break the protection so that

the document can be reviewed and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the producing party shall advise the requesting party.

### APPENDIX 1: ESI METADATA AND CODING FIELDS

| Field Name[1] | Field Description |
| --- | --- |
| BegBates | Control Numbers. |
| EndBates | Control Numbers. |
| BegAttach | Control Numbers (First production bates number of the first document of the family). |
| EndAttach | Control Numbers (Last production bates number of the last document of the family). |
| Custodian | Custodian name (ex. John Doe). |
| CustodianOther | All custodians who were in possession of a de-duplicated document besides the individual identified in the "Custodian" field. |
| File Path | The file path from which the document was collected. |
| All Paths | Identification of all file paths for duplicate copies. |
| NativeFile | Native File Link. |
| Email Thread ID | Unique identification number that permits threading of email conversations. For instance, unique MS Outlook identification number ("PR_CONVERSATION_INDEX") is 22 bytes in length, followed by zero or more child blocks each 5 bytes in length, that facilitates use of email threading. |
| Thread Index | Message header identifier, distinct from "PR_Conversation_Index", that permits threading of email chains in review software. |
| EmailSubject | Subject line of email. |
| DateSent | Date email was sent. |
| DateMod | Date the document was modified. |
| TimeSent | Time email was sent. |
| TimeZoneUsed | Time zone used to process data during document collection and processing |
| ReceiveTime | Time email was received. |

---

[1]Field names can vary from system to system and even between different versions of systems. Thus, parties are to be guided by these Field Names and Descriptions when identifying the metadata fields to be produced for a given document pursuant to this stipulation.

| Field Name[1] | Field Description |
|---|---|
| To | All recipients that were included on the "To" line of the email. |
| From | The name and email address of the sender of the email. |
| CC | All recipients that were included on the "CC" line of the email. |
| BCC | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Date the document was created. |
| FileName | File name of the edoc or email. |
| Title | Any value populated in the Title field of the document properties. |
| Subject | Any value populated in the Subject field of the document properties. |
| Author | Any value populated in the Author field of the document properties. |
| DocExt | File extension of the document. |
| TextPath | Relative path to the document level text file specified in Paragraph I.C of this ESI Stipulation and Order. |
| Redacted | "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| Paper | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. |
| Confidentiality | Indicates if document has been designated as "Confidential" or "Highly Confidential" under the Protective Order. |
| Track Changes | Document has track changes (Y/N). |
| Hidden Content | Identifies documents with hidden content (*i.e.*, hidden rows, columns, sheets, or slides). |
| Pages | Total number of pages in the document. |
| File Size | The size of the file in bytes. |
| MD5 Hash | The MD5 hash value of a document. |
| SHA1 Hash | The SHA1 hash value of a document. |
| Has Comments | Indicates whether there are comments in the document. |
| Speaker Notes | Document has speaker notes (Y/N). |