IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KELLIN JOHNS and JUAN BARRON,
individually and on behalf of all others
similarly situated,

    *Plaintiffs,*

v.

PAYCOR, INC.,

    *Defendant*.

Case No. 3:20-cv-00264-DWD
Judge David W. Dugan

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR RULE 23 CLASS CERTIFICATION

Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
Justin M. Caparco
**STEPHAN ZOURAS, LLC**
222 W. Adams Street
Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
jcaparco@stephanzouras.com

Brandon M. Wise
**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
314-833-4825
bwise@peifferwolf.com

Brendan Duffner
**MCGUIRE LAW, P.C.**
55 W. Wacker Dr., 9th Fl.
Chicago, IL 60601
312.893.7002
bduffner@mcgpc.com

## INTRODUCTION

In their opening brief, Plaintiffs set forth a clear and concise basis for class certification, which is largely supported by Paycor's own documents and the testimony of its own Rule 30(b)(6) witness, Mitri Dahdaly. Namely, Plaintiffs have established that Paycor, through its Perform Time System ("PTS"), collected Plaintiffs' and other users' ("PTS Users") biometric data and stored it on Paycor's *own* network of cloud-hosted servers, all without establishing retention policies, providing adequate notice and obtaining informed consent as required by BIPA.

Paycor does not meaningfully contest these facts or its common scheme to collect and possess Plaintiffs' biometric templates in violation of BIPA. Nor can it, particularly after Paycor's newly disclosed witness and declarant, David Goodwin, testified that he worked under Dahdaly, reviewed his deposition transcript, and did not disagree with Dahdaly's testimony in any way.

Instead, Defendant challenges Plaintiffs' adequacy and typicality by arguing that third party consent forms and collective bargaining agreements (CBA) could conceivably limit the scope of the class. These arguments, however, ring hollow as: (1) Paycor has failed to produce, despite five years of litigation, a single signed consent form authorizing its collection of biometric data; and (2) Paycor is indisputably not a party to any CBA. Accordingly, for the reasons set forth below and in Plaintiffs' opening brief, Plaintiffs respectfully request that their Motion be granted.

## RELEVANT BACKGROUND

As set forth in Plaintiffs' opening brief, Paycor's documents and Dahdaly's testimony establish that through its own proprietary PTS, Paycor itself obtained and stored Plaintiffs' and other users' biometric templates on two of its servers: Paycor's cloud-hosted server in Cincinnati, Ohio and Paycor's cloud server hosted by Microsoft Azure. *See* Dkt. 103, Pltfs.' Mtn. Class Cert., at 8-12. Specifically, Dahdaly testified that each time a Perform Time User clocks in or out, the

Paycor device collects and obtains the PTS User's biometric data and transmits it for storage on Paycor's networks and software databases. *Id*. at 11. Dahdaly also testified that Paycor did not establish a publicly available retention policy until 2017 and never obtained consent for its use and storage of users' biometric data. *Id*. at 11-12.

In its Response, Defendant relies on a declaration from a current employee, David Goodwin, in an effort to undermine Dahdaly's testimony. In his declaration, Goodwin avers, amongst other things, that Paycor does not possess any biometric data and that only customers configure, control and maintain their own "segregated" databases that Paycor cannot access without express permission. However, when deposed on December 4, 2024, Goodwin contradicted these averments, confirmed he reported to Dahdaly for several years, reviewed Dahdaly's deposition transcript, and did not disagree with any of it, thus further confirming the facts supporting certification Plaintiffs set forth in their opening brief. *See* Exhibit A, Dec. 4, 2024, Dep. of David Goodwin ("Goodwin Tr."), at 108:10-18.

## ARGUMENT

**A.      Plaintiffs Satisfy the Numerosity Requirement of Rule 23(a)(1).**

Paycor does not dispute there are more than 14,000 putative class members. *See* Dkt. 103, at 16. Accordingly, Plaintiffs satisfy the numerosity requirement.

**B.      Plaintiffs Satisfy the Commonality Requirement of Rule 23(a)(2).**

In their opening brief, Plaintiffs set forth nine common questions of fact and liability that apply to all PTS Users in the exact same way, and that plainly support certification. *See* Dkt. 103, at 17-18. Paycor ignores all of them, instead attempting to shift the focus to its customers' conduct, contending that the Court must analyze how each customer configured Paycor's timeclocks and enrolled, used and stored each class member's data. *See* Dkt. 125, Def.'s Opp. at 24-25, 29. This

is because, as framed by Paycor, it merely provides clients with a "safety deposit box" it otherwise does not access or maintain. *See* Dkt. 125, Def.'s Opp. at 24-25, 29. Using Goodwin's newly unveiled declaration, which contradicts his deposition testimony, Paycor crafts a new defense that each customer has its own "segregated" databases for cloud storage controlled and maintained only by the customer and that Paycor cannot access without the customer's express permission. *See* Dkt. 125-2, Def.'s Ex. B, Goodwin Decl. ("Goodwin Decl.") at ¶ 18, 20, 22. Defendant's contentions are specious on the merits and, in any event, fully support certification.

First, this case has nothing to do with Paycor's customers. The record evidence obtained to date, and recently confirmed by Goodwin at deposition, demonstrates that with respect to Plaintiffs' and all PTS Users, Paycor <u>itself</u>—independently from any customer—collected, stored, maintained and accessed Plaintiffs' and other users' biometric data on its own servers and databases, and did so without complying with BIPA. At this certification stage, the Court must analyze only whether these questions ***about Paycor's actions (or inactions)*** would lead to common answers, using common proof, applied in the same way for all class members. And the answer is unequivocally yes.

At his December 4, 2024 deposition, Goodwin confirmed that a customer's "segregated" database is merely Paycor's client identification system for its Perform Suite Database[1] to differentiate customers on its own servers by a client ID. *See* Goodwin Tr., at 118-119. In other words, "client segregated database" is a misnomer at best. Indeed, it appears Paycor chose this term solely to try to shore up a flimsy theory of non-liability in this case involving its PTS. Goodwin also confirmed that biometric templates of all PTS Users are transmitted to Paycor's cloud servers and/or Paycor's Microsoft Azure servers. *Id*. He further testified that Paycor can

---

[1] Paycor's human resource database that is hosted in Paycor's cloud data center in Cincinnati, Ohio and on its Microsoft Azure cloud. Dkt. 103, at 10 (citing Dahdaly Tr. 19:1-20:13).

access, run reports, and/or delete any user data without any client's permission, and did so, for example, when Paycor purged all biometric templates of PTS Users of former customers in August 2018. *Id*. at 66:9-22; 81:22-82:7; 90-91 (testifying that Paycor accessed the Club Fitness database and deleted user data from it without obtaining permission).

Paycor's attempt to shift this Court's commonality and predominance focus to the "where and how" of each customer's PTS with respect to each class member's data to find individualized issues does nothing to undermine the overwhelming evidence on both issues. At this juncture, Plaintiffs have demonstrated that *Paycor itself* collected, obtained, stored, and disseminated Plaintiffs' and other PTS Users' biometric data on its *own* dedicated servers, without complying with BIPA. The questions of liability—namely, whether Paycor complied with BIPA's requirements—are common to Plaintiffs and class members and can be answered in the same way, making class certification appropriate here. If, at the merits stage, the Court determines that Paycor's evidence conclusively proves it never collected or stored PTS Users' biometrics, then the liability question (*i.e.*, whether Paycor violated Sections 15(a), (b), and (d)) will be answered in Paycor's favor for the entire putative class, further supporting why certification is warranted.

C.     **Plaintiffs Satisfy the Typicality and Adequacy Requirements of Rule 23(a)(3)-(4).**

Plaintiffs have established that their BIPA claims are typical of all other PTS Users because they arise from the same course of conduct **_by Paycor_**: its failure to comply with Sections 15(a), (b), and (d) when collecting, storing, using, and disclosing PTS Users' biometric data. Plaintiffs have also met the requirements for adequacy because there is no conflict of interest between their claims and those of the class members, and because they have demonstrated their commitment to protecting and representing the interests of the class. *See* Dkt. 103, at 19-22.[2] In response, Paycor

---

[2] Defendant does not challenge the adequacy of Plaintiffs' counsel to represent the class; therefore, this factor is met.

makes several irrelevant arguments and attempts to lower the standard of review to argue that these arguments should carry day. The standard is *not* mere "arguability" or the presence of a "possible defense." Dkt. 125, Def.'s Opp. at 6-7. The standard in the Seventh Circuit is that an individual defense must be *both* "arguable" *and* "substantial" to render a class representative inadequate. *See Beaton v. SpeedyPC Software,* 907 F.3d 1018, 1027 (7th Cir. 2018); *see also Al Haj v. Pfizer Inc.,* 17-cv-6730, 2020 WL 1330367, at *2 (N.D. Ill. Mar. 23, 2020) (applying *Beaton's* "arguable and substantial" standard). The *Beaton* standard echoes the Seventh Circuit's previous decision in *CE Design,* where it warned against allowing defendants to "derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative." *CE Design,* 637 F.3d at 728 (emphasis added).

      *i.*    *Named Plaintiff Juan Barron Indisputably Used Defendant's Perform Time System in Illinois.*

As an initial matter, Defendant claims that one of the Named Plaintiffs, Kellin Johns, did not use its PTS in Illinois. Kellin Johns worked at multiple Club Fitness locations along the border of Illinois and Missouri, and while it may be the case that Johns only enrolled on a PTS in Missouri, it is undisputed that the other Named Plaintiff, Juan Barron, enrolled and used Paycor's PTS in Illinois.[3] Thus, at the very least, Named Plaintiff Juan Barron is an adequate class representative.

      *ii.*   *Whether Paycor Complied with Section 15(a) is a Common Question Best Resolved on a Class-Wide Basis.*

Paycor argues that Plaintiffs are atypical and inadequate to represent the class because their biometric data was deleted within the timeframe contemplated by Section 15(a) and that Plaintiffs

---

[3] Tellingly, Defendant recently accessed data related to Club Fitness and determine when and where each Plaintiff's biometric data was collected <u>without obtaining permission</u> from Club Fitness. Goodwin Tr. 90:12-25. This contradicts Defendant's own arguments lodged in opposition to class certification. Clearly, when it suits Defendant's purposes and arguments, it can and does access the so-called "client segregated databases."

5

lack standing to assert a claim for violation of Section 15(a). Def.'s Opp. at 16-18. Specifically, Paycor contends that Plaintiffs stopped using a PTS in April 2016, and Paycor "purged" biometric templates of Club Fitness users in August 2018, thus deleting Plaintiffs' biometric data within three years of its last interaction with Paycor. *Id.* at 9-10 (citing Goodwin Decl. ¶¶ 8, 15, 31). Irrespective of its mass deletion, Paycor indisputably failed to timely institute any publicly available retention and destruction guidelines as mandated by Section 15(a). Further, Paycor's argument is an admission it collected and possessed Plaintiffs' biometric data and deleted it in the same way. Similarly, Paycor admitted it carried out a 2018 system-wide purge of all PTS User data of any "lost" (or former) client, further demonstrating that Paycor possesses and accesses all class members' biometric data and can delete it in exact same way. *See* Goodwin Tr. 85:8-89:16.

Notwithstanding Paycor's admissions, the issue of standing to bring a Section 15(a) claim goes to whether Paycor established and implemented publicly available retention and destruction guidelines for possession, use, and timely destruction of biometric data. The answer to this question is exactly the same across the board: it did not for the Named Plaintiffs and all putative class members. Paycor's own Rule 30(b)(6) witness, Mitry Dahdaly, unequivocally testified that Paycor did not have a biometric policy in place. *See* Dkt. 103-1, Pltfs.' Ex. A, Dep. of Mitri Dahdaly ("Dahdaly Tr."), at 99:11-14; 101:10-17; 127:20-128:1; 129:2-4; 132:15-20. Without any evidentiary support, Paycor asserts that it implemented a public policy "no later than 2017." Def.'s Opp. at 20. Even if true, then for at least several years of liability during the statutory period (and while Plaintiffs were PTS Users) Paycor was non-compliant with Section 15(a). BIPA defendants are liable for gaps in compliance. *Mora v. J&M Plating, Inc.,* 2022 IL App (2d) 210692, ¶ 43. (finding BIPA defendant liable for gap in compliance with Section 15(a).)

   *iii. Plaintiffs' Settlement with Nonparty Club Fitness Has No Bearing On Their Claims Against Paycor or Their Ability to Represent a Class.*

Paycor's argument that Plaintiffs resolved their BIPA claims against Club Fitness has no impact on Plaintiffs' BIPA claims against Paycor. Def.'s Opp. at 18-19. That is because BIPA's plain language requires *each* private entity collecting biometric data to establish a notice and consent regime. 740 ILCS 14/15(a)-(d). To ensure that entities comply, the Illinois legislature granted affected individuals a private cause of action against *each* private entity for *each* violation. 740 ILCS 20. This clearly establishes that each separate violation of BIPA is an independent and recoverable violation. The fact that Plaintiffs participated in a class-wide settlement with Club Fitness for violations of BIPA is irrelevant to their ability to represent a class asserting claims against Paycor for its own separate BIPA violations. Paycor was not a party to the Club Fitness settlement, did not contribute to it, and was excluded from its release. Dkt. 125-5 ¶ 30 ("For the avoidance of doubt, third-party vendors [i.e. Paycor] are not considered Released Parties).

The Illinois Courts that addressed this issue unanimously agree. *See* Exhibit B, *Quentere v. Cornfields, LLC*, Case No. 20-cv-7306, *2 (N.D. Ill. Dec. 7, 2021) (citing *Figueroa*, 454 F. Supp. 3d at 787); Exhibit C, *Johnson v. Thermoflex, et al.*, No. 20 CH 479 (Cir. Ct. Lake Cnty., Jan. 4, 2024) Hearing Transcript (35:1-9) ("Each entity is individually tasked with complying with BIPA… if an entity fails to do so, any damages arising from that entity's negligence or willful failure to comply with BIPA belongs to that entity alone."); *see also* Exhibit D, *Johnson v. Elite, et al.,* No. 18 CH 09011 (Cir. Ct. Cook Cnty., February 14, 2024) Hearing Transcript (27:24 – 28:1) ("So BIPA creates the scenario where each entity's violation gives rise to a claim.").

Paycor's sole reliance on *Davis v. Ball Mem'l Hosp. Asso*. is misplaced. Def.'s Opp. at 18. Unlike here, the *Davis* plaintiffs settled with the defendant hospital yet continued to seek class certification against that same defendant. 753 F.2d 1410, 1417 (7th Cir. 1985). Plaintiffs' involvement in a separate settlement with Club Fitness does not affect their ability to represent a

7

class pursuing BIPA claims against Paycor. Not only does such a conclusion contradict precedent it also defies the plain language of the statute.

      iv.    *Paycor Has Failed to Provide a Single Signed Consent Authorizing Paycor's Collection of Biometric Data.*

It is undisputed that neither Barron nor Johns signed any BIPA consent form. Further, Paycor's argument that some of its customers *may* have obtained consent from their employees, that also release Paycor, are not supported by a single signed consent. Def.'s Opp. at 21-22 (citing Goodwin Decl. ¶¶ 27-28; Dkt. 125-2 at 63, Goodwin's Ex. 6). Paycor's unsupported argument is nothing more than a red herring that must be rejected, as it is neither arguable nor substantial.

Paycor's argument that it took subsequent remedial measures to first comply with BIPA in 2021 by embedding a consent on PTS timeclocks is likewise not a basis to deny class certification, but rather a further admission of Paycor's common practice of collecting and storing putative class members' biometric data and Paycor's ultimate control over whether BIPA is ultimately complied with. At best, if the Court ultimately determines at the merits stage that Paycor's embedded consent was BIPA compliant, then the class would only include the time period before Paycor provided the requisite notice and obtained lawful consents (*i.e.*, January 29, 2015, through October 18, 2021, for Section 15(b) and (d) claims).

      v.    *Purported Collective Bargaining Agreements of Third-Party Employers, Not Paycor, Have No Impact Here.*

In another red-herring, Paycor contends that Plaintiffs cannot represent any class members who were unionized, pointing to a collective bargaining agreement ("CBA") of a purported Paycor customer. Def.'s Opp. at 22-23; Goodwin Decl. at Ex. 7. But Paycor—a third party technology provider—is indisputably not a party to any CBA governing the relationship between an employer and employee and therefore, no further analysis is required. *See Trio v. Turing Video, Inc.*, 2022

8

U.S. Dist. LEXIS 173465, at *25 (N.D. Ill. Sep. 26, 2022) (holding that a biometric vendor is not a party to a CBA, and thus "resolution" of the state law BIPA claim turns on whether the defendant complied with BIPA); *see also Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 413 (1988) (holding that courts need not interpret the CBA as a non-signatory is not a party to the agreement).

### D.     **Plaintiffs Satisfy the Requirements of Rule 23(b)(3).**

Plaintiffs have established that whether Paycor obtained and stored Plaintiffs' and other PTS Users' biometric data in violation of BIPA involve common questions of fact and liability that can be decided in one fell swoop for all, and that those common questions predominate. Dkt. 103, at 25-26. Paycor argues that certification must be denied because Plaintiffs fail to put forth any trial plan to address these individualized "Paycor customer" issues, and therefore cannot satisfy Rule 23(b)(3)'s superiority requirement. Def.'s Opp. at 30-31. As explained above, there are no individualized "Paycor customer" issues. More to the point, there is no requirement under Rule 23(b)(3) to formulate a "trial plan" at the certification stage and the case Defendant cites simply stands for the proposition that a district court can *request* one should it choose to. *Mullins v. Direct Digital, LLC,* 795 F.3d 654, 664 (7th Cir. 2015) (detailing this discretion). Plaintiffs will prepare their Pre-Trial Order in accordance with Local Rule and this Court's Orders. Indeed, considering the relatively uncomplicated liability issues, this case is a poster child for straightforward class action trial practice. None of the issues raised by Paycor, individually or collectively, present any persuasive reason to deny certification.

### CONCLUSION

For the reasons stated above, as well as in their opening brief, Named Plaintiffs respectfully request that this Honorable Court enter an Order granting Plaintiffs' Renewed Motion for Class Certification.

Date:   January 10, 2025                Respectfully Submitted,

                                        By: */s/ Ryan F. Stephan*
                                        **ONE OF PLAINTIFFS' ATTORNEYS**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on January 10, 2025, I filed the attached with the Clerk of the Court using the ECF system, which will send such filing to all attorneys of record.

                                        */s/ Ryan F. Stephan*