## IN THE UNITED STATES DISTRICT COURT
## FOR SOUTHERN DISTRICT OF ILLINOIS

KELLIN JOHNS, individually and on behalf of all others similarly situated, and JUAN BARRON,

        Plaintiffs,

vs.

PAYCOR, INC.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:20-cv-264-DWD

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

Before the Court are Defendant's Amended Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Docs. 106 & 107), Plaintiffs' Renewed Motion for Class Certification under Federal Rule of Civil Procedure 23 (Doc. 103), and Defendant's Motion to Strike New Arguments and Evidence from Plaintiffs' Reply in Support of Class Certification (Doc. 151; Sealed Doc. 152). The two former Motions are contested. (Docs. 116, 125, 148). The latter Motion is uncontested. For the reasons explained below, the Amended Motion to Dismiss is **DENIED**, the Renewed Motion for Class Certification is **GRANTED in part** and **DENIED in part**, and the Motion to Strike is **DENIED as moot**.

## I. BACKGROUND

On October 29, 2020, Plaintiffs filed a First Amended Class Action Complaint, alleging violations of the Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. (Doc. 40). Plaintiffs were employees at various fitness centers, owned by Club Fitness, Inc., in the St. Louis Metro east region. (Doc. 40, pg. 12). Defendant designs and

manufactures "Biometric Time Clocks," which were utilized by Club Fitness, Inc., "that require scans of users' biometric data in order for those users to clock in and out of work." (Doc. 40, pgs. 1-2, 12). Plaintiffs were allegedly required to scan their fingerprints, but not their hand geometry, "on Paycor's Biometric Time Clock at Club Fitness so [that] they could be used as an authentication method to track their time worked." (Doc. 40, pg. 12). Defendant allegedly "disregards Biometric Time Clock users' statutorily protected privacy rights and unlawfully collects, captures, otherwise obtains, stores, maintains, and uses their biometric data in violation of BIPA." (Doc. 40, pgs. 1-2, 4-5, 9-12).

Plaintiffs initiated this lawsuit alleging Defendant: (1) failed to institute, maintain, and adhere to a publicly available retention schedule under § 15(a) of BIPA (First Cause of Action); (2) failed to obtain an informed written consent and release before obtaining biometric identifiers or information under § 15(b) of BIPA (Second Cause of Action); and (3) disclosed biometric identifiers and information without consent under § 15(d) of BIPA. (Doc. 40, pgs. 4-5, 9-12, 17-21). They seek, *inter alia*, class certification, declaratory relief, injunctive relief, and statutory damages. (Doc. 40, pgs. 5, 22).[1]

## II. ANALYSIS

### A. Defendant's Amended Motion to Dismiss under Rule 12(b)(6)

Defendant's Amended Motion to Dismiss is filed under Rule 12(b)(6), which allows challenges to a pleading based upon the failure to state a claim for which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th

---

[1]The Court notes this case was stayed, pending the resolution of certain appeals by the Seventh Circuit and Illinois Appellate Court, between May 11, 2021, and May 8, 2024. (Docs. 65 & 99). During that time, this Court also resolved issues presented under the *Colorado River* Doctrine. (Docs. 82 & 99).

Cir. 2015) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). To survive a Rule 12(b)(6) motion, which tests the sufficiency of the pleading but not its merits, the plaintiff must allege enough facts for the claim to be facially plausible. *Kloss v. Acuant, Inc.*, 462 F. Supp. 3d 873, 876 (7th Cir. 2020) (quoting *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012)); *Fosnight v. Jones*, 41 F.4th 916, 921-22 (7th Cir. 2022) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This means plaintiff pled enough facts for the Court to draw reasonable inferences as to liability. *Fosnight*, 41 F.4th at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A pleading need not allege "detailed factual allegations," but it must lift the claim above the speculative level. *Kloss*, 462 F. Supp. 3d at 876 (citing *Twombly*, 550 U.S. at 555). "Threadbare recitals," supported by mere conclusions, do not suffice. *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628, 631 (N.D. Ill. 2022) (quoting *Iqbal*, 556 U.S. at 678). When ruling, the Court accepts all well-pled facts as true and draws all reasonable inferences for the pleader. *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)); *accord Kloss*, 462 F. Supp. 3d at 874-75.

In its Amended Motion to Dismiss, Defendant initially admits it sold a finger scan timeclock to its nonparty customer, Club Fitness; however, Defendant notes it did not have access to the policies or procedures governing Club Fitness's use of that timeclock. (Docs. 106, pg. 1; 107, pgs. 7-8, 12). Defendant also argues a dismissal is warranted on four independent grounds: (1) Plaintiffs do not adequately allege Defendant violated BIPA, as there is no allegation Defendant, as opposed to Club Fitness, actively collected, possessed, disseminated, otherwise obtained, or disclosed or disseminated biometric identifiers or information; (2) Plaintiffs do not adequately allege negligent, reckless, or

intentional misconduct by Defendant to support damages; (3) Plaintiffs already recovered for their BIPA claims in a separate class action lawsuit against Club Fitness; and (4) the extraterritoriality doctrine bars Plaintiffs' claims. (Docs. 106, pg. 2; 107, pgs. 7, 9-11, 14-16, 17-24). For these reasons, Defendant argues it is not liable to Plaintiffs, let alone to the 14,000 other users of the timeclock in Illinois, under BIPA. (Docs. 106, pg. 1).

Plaintiffs argue, despite the fact Defendant's arguments are "transparently disconnected from the significant discovery already conducted," they did more than enough to state facially plausible claims to relief under the liberal pleading standards at play with a Rule 12(b)(6) motion to dismiss. (Doc. 116, pg. 5). For example, Plaintiffs argue they adequately allege a violation of § 15(b) because Defendant failed to receive informed consent, before obtaining biometric identifiers or information, and there is no "active step" requirement. (Doc. 116, pgs. 8-11). Even if there is such a requirement, Plaintiffs argue it is satisfied here. (Doc. 116, pg. 10). Further, as to § 15(a) and (d), Plaintiffs note they allege Defendant possessed their biometric identifiers and information on its servers, failed to maintain a publicly available data retention policy, and failed to obtain informed consent before collecting and disclosing or disseminating biometric data. (Doc. 116, pgs. 11-14). Finally, Plaintiffs argue they did not have to plead mental state in order to support damages, they do not seek a duplicative recovery due to Defendant's "separate and independent BIPA violations," and the extraterritoriality doctrine is inapplicable at this stage of the case and more broadly as a matter of fact. (Doc. 116, pgs. 16-20).

Now, BIPA was enacted to regulate the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information. *Tims v. Black*

*Horse Carriers, Inc.*, 2023 IL 127801, ¶ 27 (quoting 740 ILCS 14/5(g)).[2] In this case, Plaintiffs

invoke § 15(a), (b), and (d) of BIPA, which collectively pertain to the retention, collection,

disclosure, and destruction of biometric identifiers and information.

Section 15(a) of BIPA provides as follows:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

A plaintiff cannot merely allege a procedural failure to publicly disclose a data

retention policy under § 15(a). *See Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1149

(7th Cir. 2020) (discussing *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617 (7th Cir. 2020)).

The duty to develop a publicly available written policy, establishing a retention schedule

and guidelines for destroying biometric identifiers or information, is owed to the public

rather than to particular persons whose biometric identifiers or information are collected

by a private entity. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1245 (7th Cir. 2021)

(discussing *Bryant*); *accord Patterson v. Respondus, Inc.*, 593 F. Supp. 3d 783, 802 (N.D. Ill.

2022). However, a plaintiff may allege an injury related to the invasion of privacy interests

---

[2]"Biometric identifier" means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," while "biometric information" includes any information "based on an individual's biometric identifier [that is] used to identify an individual." 740 ILCS 14/10.

by invoking "the full panoply" of § 15(a), *i.e.*, by invoking the duties to develop, publicly disclose, *and* comply with data retention and destruction policies. *Fox*, 980 F.3d at 1149, 1154-55; *accord Warmack-Stillwell v. Christian Dior, Inc.*, 655 F. Supp. 3d 742, 744-45 (N.D. Ill. 2023); *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 868-69 (N.D. Ill. 2022). Such violations may result in the retention of biometric identifiers or information for longer than is allowed by law. *Fox*, 980 F.3d at 1149, 1154-55; *accord Patterson*, 593 F. Supp. 3d at 802.

Further, § 15(b) of BIPA states:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b); *see also Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 23 (finding, in the context of § 15(b), "collect" means "to receive, gather, or exact from a number of persons or other sources," and "capture" means "to take, seize, or catch") (quoting Webster's Third New International Dictionary 334, 444 (1993)).

Since § 15(b) confers a right to receive certain information from a private entity that collects, stores, or uses biometric identifiers or information, the violation of that right,

by itself, provides an actionable grievance. *Bryant*, 958 F.3d at 621 (citing *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 33); *Patterson*, 593 F. Supp. 3d at 802. However, § 15(b) requires an "active step" by the defendant to "obtain" the plaintiff's biometric identifiers or information. *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 746 (N.D. Ill. 2023) (collecting cases); *accord Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023); *Patterson*, 593 F. Supp. 3d at 824. That requirement is based, in part, on the Illinois General Assembly's premising of § 15(a), (c), (d), and (e), but not § 15(b), on the mere "possession" of biometric identifiers or information. *Clark*, 688 F. Supp. at 746-47 (citing *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of the City of Chicago*, 2012 IL 112566, ¶ 24); *see also Jones*, 649 F. Supp. 3d at 683 (noting this decision and stating, "§ 15(b) does not penalize merely possessing biometric identifiers or information, unlike other BIPA sections"); *Patterson*, 593 F. Supp. 3d at 824 (stating, as to § 15(b), " 'there is a difference between *possessing* and *collecting* biometric information.' ") (Emphasis in original.). Also, "otherwise obtain" is "best construed as requiring something beyond passive possession or receipt" since it follows active verbs. *Clark*, 688 F. Supp. at 747 (citing *Pooh-Bah Enters., Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009)); *see also Jones*, 649 F. Supp. 3d at 683-84 ("[E]ven the catch-all phrase 'otherwise obtain' contemplates some type of affirmative effort."). "[T]he statutory construction offered above shows that, '[u]nder a commonsense reading,' 'the private entity must undertake some effort to collect or obtain biometric identifiers or information.' " *Clark*, 688 F. Supp. at 747; *see also Jones*, 649 F. Supp. 3d at 683-84 ("Although BIPA does not say the words 'active step,' this concept simply describes the unifying characteristic among the verbs in the statute.").

Finally, § 15(d) of BIPA provides:

(d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

 (1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

 (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

 (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

 (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

740 ILCS 14/15(d); *see also Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 731 (N.D. Ill. 2020) ("Like Section 15(b), an entity violates [§ 15(d)] the moment that, absent consent, it discloses or otherwise disseminates a person's biometric information to a third party. The injuries resulting from these violations do not need time to blossom or accumulate. Time may exacerbate them, but an injury occurs immediately upon violation.").

The Court emphasizes § 15(a) and (d), unlike § 15(b), requires the plaintiff to show the defendant was "in possession" of biometric identifiers or information. *See Clark*, 688 F. Supp. 3d at 749; *Patterson*, 593 F. Supp. 3d at 822. While "in possession" is not defined by BIPA, courts have required evidence that the defendant exercised "dominion or control" of the biometric identifiers or information. *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 530-31 (N.D. Ill. 2022) (citing *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020)). Such a requirement is consistent with the ordinary meaning of

8

"possession," "which is ' "the act or condition of having in or taking into one's control or holding at one's disposal." ' " *See Clark*, 688 F. Supp. 3d at 749 (quoting *People v. Ward*, 215 Ill. 2d 317 (2005); Webster's Third New International Dictionary 1770 (1986)); *Patterson*, 593 F. Supp. 3d at 822 (quoting *Rosenbach*, 2019 IL 123186, ¶ 29); *accord Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 653 (S.D. Ill. 2021). That definition does not contemplate exclusive control, and nothing indicates it is inapplicable to BIPA. *Patterson*, 593 F. Supp. 3d at 822-23 (quoting *Heard*, 440 F. Supp. 3d at 968); *accord Hazlitt*, 543 F. Supp. 3d at 653.

Here, while accepting all well-pled facts as true and drawing all reasonable inferences for Plaintiffs, the Court finds they pled enough facts to state facially plausible claims to relief, which is all that is required at this stage in the case. *See Kloss*, 462 F. Supp. 3d at 874-76; *Fosnight*, 41 F.4th at 921-22; *Trivedi*, 609 F. Supp. 3d at 631. In sum, Plaintiffs allege, as employees of Club Fitness, they were required to scan their fingerprints on Defendant's biometric timeclock in order to track their time worked. (Doc. 40, pgs. 2, 12). As a result of that experience, Defendant allegedly "collected" or "secured" Plaintiffs' biometric identifiers and information, without complying with BIPA, and then "managed," "enrolled," or "stored" that "fingerprint biometric data in its databases." (Doc. 40, pgs. 2, 4-5, 9-13, 17-21). According to Plaintiffs, they were never informed of the specific purpose or length of time for which Defendant would engage in that activity, any publicly available data retention policy of Defendant, or whether Defendant would ever delete their biometric data. (Doc. 40, pgs. 4-5, 9-12, 17-20). Likewise, Plaintiffs allege they were never provided with a written release by Defendant. (Doc. 40, pgs. 5, 12, 19-20). Finally, Plaintiffs allege, albeit on information and belief, that Defendant "systematically

and automatically" discloses, rediscloses, or otherwise disseminates "its Biometric Time Clock users' fingerprint…data to other, currently unknown, third parties, including but not limited to Defendant's clients and/or other third parties that host biometric data in their data center(s)," without the consent required under BIPA. (Doc. 40, pgs. 5, 10, 21).

From these allegations, it is reasonable to infer under § 15(a) and (d) that Defendant was "in possession" of Plaintiffs' biometric identifiers or information. *See Clark*, 688 F. Supp. 3d at 749; *Patterson*, 593 F. Supp. 3d at 822-23; *Hazlitt*, 543 F. Supp. 3d at 653. And, as to § 15(a), it is reasonable to infer from the above allegations that Defendant failed to develop, publicly disclose, *and* comply with a written data retention and destruction policy. *See* 740 ILCS 14/15(a); *Fox*, 980 F.3d at 1149, 1154-55; *Thornley*, 984 F.3d at 1245; *Patterson*, 593 F. Supp. 3d at 802; *Warmack-Stillwell*, 655 F. Supp. 3d at 744-45; *Sosa*, 600 F. Supp. 3d at 868-69. Further, Plaintiff adequately alleged Defendant "collected" or "captured," then "stored," their biometric information or identifiers without providing the written information or release described in § 15(b). *See* 740 ILCS 14/15(b); *Cothron*, 2023 IL 128004, ¶ 23. And, importantly, the Court can reasonably infer that Defendant took an "active step" to "obtain" Plaintiffs' biometric identifiers or information, *i.e.*, Defendant "managed," "enrolled," or "stored" Plaintiffs' biometric identifiers and information on its databases after that biometric data was "collected" or "secured" through the finger scan timeclock sold to and used by Club Fitness. *See Clark*, 688 F. Supp. 3d at 746; *Jones*, 649 F. Supp. 3d at 683; *Patterson*, 593 F. Supp. 3d at 824. Finally, although it appears Plaintiffs did the bare minimum with its allegations under § 15(d), the Court can reasonably infer from the factual circumstances that Defendant

disclosed or otherwise disseminated Plaintiffs' biometric identifiers or information, without consent or the application of the other exceptions contained in that statutory provision, to "clients and/or other third parties that host biometric data in their data center(s)," which could include, at a minimum, Club Fitness itself. *See* 740 ILCS 14/15(d). To be sure, Plaintiffs' allegations under § 15 will be the subject of rigorous merits arguments later in the case. For now, though, it suffices for the Court to conclude that the First Amended Class Action Complaint satisfies the liberal federal pleading standards.

As an aside, the Court notes certain arguments of Defendant would be more appropriately raised later in the proceedings. First, as to the argument Plaintiffs did not allege negligent, reckless, or intentional misconduct to support damages, the Court notes the "menu of remedies" contained in § 20 is not "a list of the necessary elements of a BIPA claim." *Brandenburg v. Meridian Senior Living, LLC*, 564 F. Supp. 3d 627, 634 (C.D. Ill. 2021); *see also* 740 ILCS 14/20; (Docs. 106, pg. 2; 107, pgs. 7, 20-21). In other words, a mental state is not an element of a violation of § 15 and, as noted by the Central District of Illinois, "any person 'aggrieved by a violation,' including under Section 14/15, 'shall have a right of action' in court without qualification." *Brandenburg*, 564 F. Supp. 3d at 634. Thereafter, mental state requirements for damages are relevant to the "remedies that '[a] prevailing party may recover for each violation.' " *Id*. (quoting 740 ILCS 14/20) (Emphasis in original omitted.). Therefore, the mental state requirements contained in § 20, and now invoked by Defendant, "are separate and apart from the elements of a BIPA violation," such that Plaintiffs were not required to plead facts that show Defendant's mental state in order to adequately allege a claim to relief under § 15. *Id*. at 634-35 (citing *Rosenbach*,

2019 IL 123186, ¶ 36; *Snider v. Heartland Beef, Inc.*, 479 F. Supp. 3d 762, 772-73 (C.D. Ill. 2020); *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 618 (N.D. Ill. 2020); *Burlinski v. Top Golf USA Inc.*, No. 19-cv-6700, 2020 WL 5253150, *8 (N.D. Ill. Sept. 3, 2020)).

Second, at this stage, the Court rejects the argument that Plaintiffs are seeking a duplicative recovery. (Doc. 107, pgs. 21-23). This is a legal argument that speaks to the availability of remedies rather than to the federal pleading standards or to Defendant's potential liability. *See Park Ridge Sports, Inc. v. Park Ridge Travel Falcons*, No. 20-cv-2244, 2020 WL 8409295, *2 (N.D. Ill. Aug. 26, 2020) (striking affirmative defense related to duplicative recoveries, with prejudice, as it was a "legal argument[] about the availability of remedies, not [a] defense[] to liability). And, clearly, based upon the allegations in the First Amended Class Action Complaint, Plaintiffs are correct that they seek to recover for the "separate and independent BIPA violations" of Defendant rather than for those of Club Fitness. (Doc. 116, pgs. 17-18). It remains to be seen whether Plaintiffs may do so. For now, though, it suffices to say that Plaintiffs pled facially plausible claims to relief.

Third and finally, the Court declines Defendant's invitation to apply the extraterritoriality doctrine at this stage of the case. (Docs. 106, pg. 2; 107, pgs. 7, 23-24). The Supreme Court of Illinois has recognized a "long-standing rule of construction in Illinois which holds that a 'statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.' " *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (quoting *Dur-Ite Co. v. Indus. Comm'n*, 394 Ill. 338, 350 (1946); *Graham v. Gen. U.S. Grant Post No. 2665, V.F.W.*, 43 Ill. 2d 1, 6 (1969); citing *Sale v. Haitian Ctrs. Council, Inc.*, 509 U.S. 155, 188 (1993); 73 Am. Jur. 2d *Statutes* § 250

(2001)). Since BIPA does not express such an intent, it does not apply extraterritorially. *See Sloan v. Anker Innovations Ltd*, 711 F. Supp. 3d 946, 959 (N.D. Ill. 2024) (quoting *Monroy v. Shutterfly, Inc.*, No. 16-cv-10984, 2017 WL 4099846, *5 (N.D. Ill. Sept. 15, 2017)); *accord Ronquillo v. Drs. Assocs., LLC*, 597 F. Supp. 3d 1227, 1233-34 (N.D. Ill. 2022); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1121 (N.D. Ill. 2022). As a result, "the circumstances that relate to the disputed transaction [must] occur primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187; *accord Sloan*, 711 F. Supp. 3d at 959 (stating this rule in the context of BIPA); *Ronquillo*, 597 F. Supp. 3d at 1234 (same).

However, there is not a single formula or bright-line test for determining whether a transaction primarily and substantially occurred in Illinois, meaning each case must be decided on its own facts. *Avery*, 216 Ill. 2d at 187; *accord Sloan*, 711 F. Supp. 3d at 959. And, importantly, a plaintiff is still only required to plead facially plausible claims to relief to defeat a Rule 12(b)(6) motion to dismiss. *See Ronquillo*, 597 F. Supp. 3d at 1234; *In re Clearview AI, Inc.*, 585 F. Supp. 3d at 1121-22. At a minimum, Plaintiffs have done so with respect to the extraterritoriality doctrine by alleging: (1) as employees of Club Fitness in Illinois, they were required to scan their fingerprints on a biometric timeclock that was sold by Defendant to an Illinois company, located in Illinois, and tracked their work in Illinois; and (2) Defendant "managed," "enrolled," or "stored" Plaintiffs' biometric data, which was "collected" or "secured" in Illinois, on its databases. *See Ronquillo*, 597 F. Supp. 3d at 1234 (finding, in the context of a Rule 12(b)(6) motion to dismiss, the plaintiff's allegations sufficed to suggest BIPA violations occurred primarily and substantially in Illinois, where the plaintiff alleged her fingerprints were scanned in Illinois and then

stored on hardware that was located and leased by a business in Illinois); *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d at 1091-92 (N.D. Ill. 2019) ("[I]n light of the fact that [the plaintiff] does not specify the location…[where] she worked, the Court is unable to reasonably infer from the complaint that her fingerprint was collected in Illinois. If plaintiff were able to so allege, then she would sufficiently allege facts indicating that the circumstances relating to the alleged transaction occurred primarily and substantially in Illinois; the transaction would allegedly involve an Illinois resident having her biometric information collected in Illinois by a private entity, without the entity's having provided the requisite disclosures and obtained the requisite consent there."); (Doc. 40, pgs. 2, 4-5, 9-13, 17-21). This is true even if, as Defendant suggests, its databases are not located in Illinois. *See Neals*, 419 F. Supp. 3d at 1091 (finding the defendant's argument that it was merely a nonresident corporation that offered point-of-sale technology to its customers, but not their employees, without holding property or storing data in Illinois, was unpersuasive, as the defendant's "physical location and property holdings, the location of its servers, and the identity of its customers [we]re not determinative" and "h[ad] little to do with the collection of the plaintiff's fingerprint through the defendant's customer's use of the defendant's system); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1276 (9th Cir. 2019) ("[I]t is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state."). In light of these allegations, the Court follows the principle that "the application of the extraterritoriality doctrine is a fact intensive inquiry that is best left for summary judgment once the parties have completed discovery." *In re Clearview AI,*

14

*Inc.*, 585 F. Supp. 3d at 1122 (citing *Rivera v. Google Inc.*, 238 F.Supp.3d 1088, 1101 (N.D. Ill. 2017); *Vance v. IBM*, No. 20-cv-577, 2020 WL 5530134, *3 (N.D. Ill. Sept. 2020)).

For these reasons, Defendant's Amended Motion to Dismiss is **DENIED**.

### B. Plaintiffs' Renewed Motion for Class Certification under Rule 23

The Renewed Motion for Class Certification seeks to certify the following class:

> All individuals working in the State of Illinois who had their fingerprints, hand geometry or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant's Perform Time biometric timekeeping system during the applicable statutory period.

(Doc. 103, pg. 12).[3]

Under Rule 23(a), members of a class may sue as representatives of the class only if: (1) the class is so numerous that the joinder of all members would be impracticable; (2) there are questions of law or fact that are common to the class; (3) the claims of the representatives are typical of the claims of the class; and (4) the representatives fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). If these requirements are satisfied, then a class action may be maintained if, as is relevant here, the Court finds the common questions of law or fact predominate over any questions affecting only individual members and a class action would be superior to the other available methods of fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

When considering a motion for class certification, the Court must go beyond the pleadings and, if necessary, receive evidence on any disputed material issues. *Beaton v.*

---

[3]This proposed class is more specific than that proposed in the First Amended Class Action Complaint, as Plaintiffs now request the certification of a class pertaining, specifically, to "Defendant's Perform Time biometric timekeeping system." *Compare* (Doc. 13, pg. 12), *with* (Doc. 40, pg. 14).

*SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018) (citing *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 675–76 (7th Cir. 2001)). While "the merits are not on the table," Plaintiffs have the burden of proving by a preponderance of the evidence that Rule 23 is satisfied. *Id.* (citing *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 810 (7th Cir. 2013); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)). The Court has broad discretion to decide whether class certification is proper. *Jacks v. DirectSat USA, LLC*, 118 F.4th 888, 894 (7th Cir. 2024) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 629 (7th Cir. 1997)). Finally, orders certifying class actions must appoint class counsel, define the class, and define the claims, issues, or defenses. Fed. R. Civ. P. 23(c)(1)(B), (g).

With these legal principles in mind, the Court resolves the arguments presented in relation to Plaintiffs' Renewed Motion for Class Certification.

### 1. Numerosity

As to the numerosity requirement contained in Rule 23(a)(1), the "class representative must show 'that it is extremely difficult or inconvenient to join all the members of the class.' " *Anderson v. Weinert Enter., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021) (quoting 7A C. Wright & A. Miller, Federal Practice & Procedure § 1762 (3d ed. 2011)). It is not enough to allege a class action would make litigation easier, as the proper focus is on the practicality of joinder rather than the mere number of class members. *Id.* For this reason, the Court evaluates the nature of the action, the size of the individual claims, and the location of the members of the class. *Id.* (quoting Wright & Miller, § 1762).

Here, Defendant does not contest Plaintiffs' assertion that the proposed class is sufficiently numerous. Its witness under Federal Rule of Civil Procedure 30(b)(6), Mitri Dahdaly, who is the director of product management, stated there were "approximately 14,000 total people over the course of a five-year period…who pay taxes in Illinois and also had a finger scan template" on its Perform Time product line. (Docs. 103, pg. 16; 103-1, pgs. 6-7). Plaintiffs assert "[f]urther review of Defendant's Perform Time user databases during the applicable statutory period is all that is needed to determine membership in the proposed class" and, "[o]nce Defendant's complete records are obtained, the Parties and the Court will know the precise number of persons affected." (Docs. 103, pg. 16; 103-1, pgs. 11-12). Due to the nature of this BIPA class action, the size of the individual claims, and the location of the members of the class in Illinois, the Court **FINDS** Plaintiffs have satisfied the numerosity requirement. Fed. R. Civ. P. 23(a)(1); *Anderson*, 986 F.3d at 777.

### 2. Commonality

As to the commonality requirement contained in Rule 23(a)(2), "[o]ne common question is enough, but not just any question will do." *Howard v. Cook Cnty Sheriff's Office*, 989 F.3d 587, 598 (7th Cir. 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012)). The class claims must depend upon a common contention that is capable of class-wide resolution; in other words, the determination of its truth or falsity must resolve an issue that is central to the validity of each claim in "one stroke." *Id.* (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350); citing Rubenstein, *Newberg on Class Actions* § 3:18); *accord Beaton*, 907 F.3d at 1026.

17

Plaintiffs suggest "[a]t the heart of this litigation are simple and straightforward legal questions that plainly lend themselves to class-wide resolution." (Doc. 103, pg. 17). Specifically, Plaintiffs assert the following questions are common to the proposed class:

> (1) whether Paycor collected, captured or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information; (2) whether Paycor properly informed Plaintiffs and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information; (3) whether Paycor obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiffs' and the Class's biometric identifiers or biometric information; (4) whether Paycor disclosed or re-disclosed Plaintiffs' and the Class's biometric identifiers or biometric information; (5) whether Paycor has sold, leased, traded, or otherwise profited from Plaintiffs' and the Class's biometric identifiers or biometric information; (6) whether Paycor developed a publicly-available written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first; (7) whether Paycor complies with any such written policy; (8) whether Paycor used Plaintiffs' and the Class's biometric data to identify them; and (9) whether Paycor's violations of BIPA were intentional, reckless, or negligent.

(Doc. 103, pgs. 17-18).

Plaintiffs argue "Defendant treated all Perform Time Users—the entire proposed class—identically to the extent they subjected each of the proposed class members to the exact same alleged violations of BIPA." (Doc. 103, pg. 18). Therefore, "once the Court determines whether Paycor's practices constituted violations of BIPA, liability for the claims of all class members will be determined in one stroke." (Doc. 103, pg. 18). Plaintiffs note "there may be slight, immaterial differences in the details of Plaintiffs' claims and those of other putative class members, [but] their claims are all based on the same legal theory" and will likely be subject to the same defenses of Defendant. (Doc. 103, pg. 19).

Defendant, for its part, asserts there is no common question at play in this case, as Plaintiffs "merely reassert[s] the elements of their claims" and the record confirms differences in the ways customers used its devices to be BIPA-claim determinative (*e.g.*, whether it possessed certain employee data). (Doc. 125, pgs. 10, 24). Defendant claims its customers, not itself, "configure the devices to best serve their business needs," "install and choose where to place the devices," "choose whether and how devices are connected," choose whether "to give employees the ability to…use a proximity badge or finger to interact with the device," choose whether "to allow Paycor access to templates hosted on the tenant-segregated database," choose between devices at different times and with different technologies, and "choose to replicate templates between devices" or to only use templates with a single device. (Docs. 125, pgs. 24-25; 125-1, pgs. 5-8, 10-11, 15). These are allegedly material differences that impact the core of Plaintiffs' claims because templates are created and stored in the Perform Time device possessed by each customer, templates are stored in the tenant-segregated database with the customer's dedicated environment, that storage is akin to a safety deposit box that a bank would provide to a customer, whether Defendant can access a template is left to the discretion of the customer, and whether Defendant can access a template is different from whether it actually did access a template. (Docs. 125, pg. 25; 125-1, pgs. 8, 11; 125-2, pgs. 6-8).

Here, it is true the nine common questions proposed by Plaintiffs track the language of §§ 15 and 20. However, Plaintiffs assert the same legal theory and shared characteristics of the entire proposed class, namely, that each individual was working in Illinois when their fingerprints, hand geometry, or other biometric data was collected,

19

captured, received, or otherwise obtained or disclosed by the Perform Time biometric timekeeping system. (Doc. 103, pgs. 12, 18-19). Even if Defendant's customers have options for configuring Perform Time devices, the record suggests those customers could, *inter alia*, allow connectivity for Defendant to collect, capture, receive, or otherwise obtain and store biometric data, possess biometric data, and replicate, transmit, or disclose biometric data to an associated third party all without § 15 compliance. *See*, *e.g.*, (Docs. 103-1, pgs. 7, 13-16, 25, 27-28, 32, 34-35, 37; 103-2, pgs. 22, 30, 61-62; 103-3, generally; 103-4, pg. 2). Therefore, while avoiding delving into the merits of Plaintiffs' claims, as it must, the Court agrees the nine proposed questions involve a common application of § 15 that will be determinative of liability to the entire proposed class. *See Flynn v. FCA US LLC*, 327 F.R.D. 206, 222-23 (S.D. Ill. 2018) ("Courts have generally described th[e] [commonality] requirement as a low hurdle to surmount, and it is satisfied when a common nucleus of operative facts exist. [Citation]. Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. [Citations]. Rather, Plaintiffs must demonstrate that they suffered the same injury and that their claims can be resolved on a class-wide basis…. What matters is the 'capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.' [Citation]. Courts have found that a sufficient common nucleus of operative fact exists where a defendant has engaged in standardized conduct toward members of the class.") (Emphasis in original omitted.). And, notably, individual questions related to the choices of Defendant's customers will be addressed further below

20

as a matter of predominance. For now, it suffices for the Court to find the commonality

requirement is satisfied in this case. *See Howard*, 989 F.3d at 598; *Beaton*, 907 F.3d at 1026.

### 3. Typicality and Adequacy of Representation

As to the typicality requirement contained in Rule 23(a)(3), the claims of the class

representatives must be based on the same legal theory and arise from the same event,

practice, or course of conduct as those of the other class members. *Howard*, 989 F.3d at 605

(quoting *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998)); *accord Beaton*, 907 F.3d at 1026.

This requirement ensures the class representatives' claims have the same essential

characteristics as those of the class. *Howard*, 989 F.3d at 605 (quoting *Lacy v. Cook Cnty.*,

897 F.3d 847, 866 (7th Cir. 2018)). Importantly, it is proper for individual claims to "feature

some factual variations" if they still maintain those essential characteristics. *Beaton*, 907

F.3d at 1026 (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006)). "The logic

behind the typicality requirement 'is that a class representative will adequately pursue

her own claims, and if those claims are "typical" of those of the rest of the class, then her

pursuit of her own interest will necessarily benefit the class as well.' " *Howard*, 989 F.3d

at 605 (quoting Rubenstein, *Newberg on Class Actions* § 3:28). In this way, the typicality

requirement, unlike the commonality requirement, focuses on the attributes of the class

representatives rather than the shared characteristics of the entire class. *Id.* at 606 (quoting

Rubenstein, *Newberg on Class Actions* § 3:31; citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350).

Further, as to the adequacy of representation requirement contained in Rule

23(a)(4), the Court must consider the adequacy of the proposed class counsel and, in light

of their "differing and separate interests" or injuries, the adequacy of the named plaintiffs

as representatives of the proposed class's "myriad of members." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir.1993); *Greisz v. Household Bank (Illinois), N.A.,* 176 F.3d 1012, 1013 (7th Cir.1999)). The adequacy of representation "inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent' " while "also screen[ing] for conflicts of interest among class members," as "the same representative parties cannot adequately represent class members with divergent interests." *Howard*, 989 F.3d at 609-10 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); citing *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 372 (7th Cir. 2012)). The Seventh Circuit has noted, though, "that 'the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses' does not prevent class certification.' " *Id*. at 610 (quoting *Abbott*, 725 F.3d at 813). The Court can certify subclasses, with separate representation, if and when the potential conflicts become real. *Id*. (quoting *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 680 (7th Cir. 2009)).

Similar to the discussion of commonality, Plaintiffs argue their BIPA claims are typical because they arise from the same course of conduct of Defendant, namely, its failure to comply with BIPA before collecting, obtaining, using, storing, or disclosing the biometric data of Perform Time users. (Doc. 103, pg. 19). They again state, while there may be "immaterial factual differences between claims of the Plaintiffs and those of other proposed class members—for example, different Paycor customer-employer[s]—their claims are nevertheless based on the same legal theory." (Doc. 103, pgs. 19-20). Plaintiffs explain, "regardless of Paycor customer or customer location, each Perform Time User is

required to enroll his or her biometric identifier on Paycor's timekeeping device by scanning it to create a template, which is used to create a time punch each time s/he clocked in and out for work." (Doc. 103, pg. 19). Defendant then allegedly "transmits and stores each Perform Time User's biometric data 'template' to their own data centers, or to their third-party hosting service, Microsoft Azure." (Doc. 103, pg. 19). Thus, Plaintiffs argue each proposed class member, regardless of their job or location, "was subject to the same uniform biometric data collection and timekeeping policies." (Doc. 103, pg. 19).

On the issue of the adequacy of representation, Plaintiffs argue they are members of, and will fairly represent, the proposed class. (Doc. 103, pg. 19). Like the proposed class members, they had to provide Defendant "with their biometric data in connection with their employment and [it] collected and managed their biometric data." (Doc. 103, pg. 21). Also, like other Perform Time users, Plaintiffs were allegedly required to enroll their biometric data in Defendant's databases at a time when it failed to comply with a publicly available retention and destruction policy or receive informed, written consent about the collection, capture, storage, use, and dissemination of biometric data. (Doc. 103, pg. 21). Finally, Plaintiffs note their "commitment to vigorous litigation" to this point in the case and the absence of "any interests antagonistic to the class." (Doc. 103, pg. 22).

Defendant responds that Plaintiffs are atypical and inadequate representatives of the proposed class. (Doc. 125, pgs. 9-10, 14-23). Those views are based on the following claims: (1) Plaintiff Johns did not use Perform Time in Illinois; (2) Plaintiffs' biometric data was timely deleted, resulting in a lack of standing; (3) Plaintiffs recovered from Defendant's customer, Club Fitness, so their claims conflict with those of the proposed

class; and (4) some class members received notice and/or provided consent under BIPA, including via an employer or union, so they have no claim. (Doc. 125, pgs. 9-10, 14-23).

Here, notwithstanding Defendants' arguments, the Court finds Plaintiffs have satisfied the typicality and adequacy of representation requirements. Similar to what was noted in relation to the commonality requirement, Plaintiffs' claims are based on the same legal theory and arise from the same practice or course of conduct of Defendant as the broader class. *See Howard*, 989 F.3d at 605; *Beaton*, 907 F.3d at 1026. Specifically, Plaintiffs' claims have the same essential characteristics as the claims of the entire class because, pursuant to uniform behavior stemming from its Perform Time biometric timekeeping system after a user's enrollment on that device, Defendant allegedly collected, captured, received, or otherwise obtained and stored biometric data, possessed biometric data, and replicated, transmitted, or disclosed biometric data to an associated third party all without § 15 compliance. *See Howard*, 989 F.3d at 605; (Docs. 103, pgs. 12; 103-1, pgs. 7, 13-16, 25, 27-28, 32, 34-35, 37; 103-2, pgs. 22, 30, 61-62; 103-3, generally; 103-4, pg. 2). For these reasons, the Court can conclude Plaintiffs will adequately pursue their claims against Defendant, which, in turn, will benefit the broader class. *See Howard*, 989 F.3d at 605-06.

Further, Defendant does not contest the adequacy of the proposed class counsel, who the Court now finds are satisfactory to represent the proposed class. *See Gomez*, 649 F.3d at 592; (Doc. 103, pgs. 22-25). Also, at this juncture, the Court finds Plaintiff Barron adequately represents the proposed class, despite Defendant's invocation of alleged "differing and separate interests" or injuries. *See Gomez*, 649 F.3d at 592; *Howard*, 989 F.3d

at 609-10.[4] As to both the typicality and adequacy of representation requirements, the Court stresses Defendant's conduct is at issue and, again, it is not fatal that there may be some factual variances among certain individual claims or the possibility for " 'a trivial level of intra-class conflict' " (*e.g.*, variances related to Defendant's customers or the requisite notice and consent under BIPA). *See Beaton*, 907 F.3d at 1026; *Howard*, 989 F.3d at 610. And, notably, this case is not presented on summary judgment, so it is not proper to delve into the merits of fact-intensive claims and defenses. This is especially true where the Court has already recognized an application of the extraterritoriality doctrine is best left for summary judgment after the completion of merits discovery, Plaintiff Barron enrolled in and used Perform Time in Illinois, a lack of standing as to just one claim should be pled and proved as an affirmative defense, and there is no apparent conflict between Plaintiffs and the proposed class since each claim is against only Defendant as an initial matter. *See City of Chicago v. DoorDash, Inc.*, 636 F. Supp. 3d 916, 921 (N.D. Ill. 2022) ("Courts are more likely to find that standing is properly listed as an affirmative defense where, as here, the case is a diversity action and Illinois law would have required defendants to include standing as an affirmative defense."); *Greer v. Illinois Hous. Dev. Auth.*, 122 Ill. 2d 462, 494 (1988) ("In Illinois, lack of standing is an affirmative defense.").

---

[4]As to Plaintiff Johns, Plaintiffs admits: "Defendant claims that one of the Named Plaintiffs, Kellin Johns, did not use its PTS in Illinois. Kellin Johns worked at multiple Club Fitness locations along the border of Illinois and Missouri, and while it may be the case that Johns only enrolled on a PTS in Missouri, it is undisputed that the other Named Plaintiff, Juan Barron, enrolled and used Paycor's PTS in Illinois." (Doc. 148, pg. 6). Based on this representation, the Court limits the class representation to Plaintiff Barron.

### 4. Predominance and Superiority

As to the predominance requirement contained in Rule 23(b)(3), which is akin to, but far more demanding than, the commonality requirement, the test is whether a proposed class is sufficiently cohesive to warrant an adjudication by representation. *Amchem Prods., Inc.*, 521 U.S. at 623-24 (citing 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1777, pgs. 518-19 (2d ed.1986)); *Howard*, 989 F.3d at 607. The Seventh Circuit has explained predominance as follows:

> Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question. Individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.
>
> Analysis of predominance under Rule 23(b)(3) begins, of course, with the elements of the underlying cause of action.

*Messner*, 669 F.3d at 815 (quoting Wright & Miller, § 1768; *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006); *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir.2005); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)) (cleaned up).

Moreover, under Rule 23(b)(3), the Court's findings as to predominance and superiority are guided by four factors: (A) the class members' interests in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation,

concerning the controversy, that was already begun by class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs maintain the issues related to class-wide liability predominate over any individualized issues of the proposed class members. (Doc. 103, pgs. 26-27). As argued by Plaintiffs and addressed by the Court elsewhere in this Memorandum & Order, Plaintiffs allege they and the "proposed class members were uniformly subject to the same scheme to collect, obtain, store, use and disseminate their biometric data without complying with BIPA." (Doc. 103, pgs. 26-27). For example, "[a]ny individualized questions as to which of Paycor's clients the Class Members worked for when using the devices would not preclude predominance, because the collection, enrollment, storage, and transmission of each Class Member's biometric data is the same irrespective of location or Paycor customer." (Doc. 103, pg. 27). Therefore, Plaintiffs argue whether Defendant violated BIPA can, and should, be decided for the class in a single action without consideration of individual issues. (Doc. 103, pgs. 26-27). Similarly, Plaintiffs state individual lawsuits by the proposed class members, as opposed to a class action, will lead to unfair, inefficient, duplicative, or inconsistent results. (Doc. 103, pgs. 27-28).

Defendant disagrees, arguing individualized questions predominate in this action for the four following reasons: (1) many of its customers implemented BIPA consent protocols, but it lacks control over whether or how they implemented and ensured compliance with those protocols; (2) many of its customers have a unionized workforce and collective bargaining agreement, which gives rise to issues of preemption and

whether a legally authorized representative received notice or provided consent for an
employee; (3) its customers had varied uses and configurations for the Perform Time
solution; and (4) each class member must have standing to recover in this action. (Doc.
125, pgs. 28-30). Further, as to the superiority requirement, Defendant argues a class
action is not the best mechanism for resolving the proposed class's claims because, as
previously argued, "whether Plaintiffs—let alon[e] the 14,000 individuals they hope to
represent—can assert claims against Paycor under BIPA depends extensively on their
individual relationship with their employer, not Paycor." (Doc. 125, pg. 30). Defendant
suggests "teasing out these individual issues—including employer consent, union
membership, and [biometric] template access—through representative litigation
completely undermines the value of the class action device. (Doc. 125, pgs. 30-31).

Here, the Court finds Plaintiffs satisfied the predominance and superiority
requirements. Keeping in mind that the predominance requirement is more demanding
than the commonality requirement, the Court is satisfied the class proposed by Plaintiffs
is sufficiently cohesive to warrant an adjudication of the claims against Defendant under
§ 15 (a), (b), and (d) by representation. *See Amchem Prods., Inc.*, 521 U.S. at 623-24; *Howard*,
989 F.3d at 607. To be sure, the individual questions identified by Defendant, related to
the characteristics and conduct of the customers using Perform Time, can fairly be said
to exist in this case. However, individual questions do not preclude class certification,
and are actually contemplated by Rule 23(b)(3), when the common questions still
predominate over the action. *See Messner*, 669 F.3d at 815. The nine common questions
presented by Plaintiffs represent a significant aspect of the case, *i.e.*, whether Defendant's

allegedly uniform practice or course of conduct toward the class violated § 15(a), (b), and (d), and can be efficiently answered based on a common nucleus of operative facts and issues for the entire class in this adjudication. *See id.*; *see also Beaton*, 907 F.3d at 1029 ("The guiding principle behind predominance is whether the proposed class's claims arise from a common nucleus of operative facts and issues. [Citation]. This requires more than a tally of common questions; the district court must consider their relative importance. [Citation]. On the other hand, not every issue must be amenable to common resolution; individual inquiries may be required after the class phase."); *Howard*, 989 F.3d at 607 (" 'There is no mathematical or mechanical test for evaluating predominance.' [Citation]. Efficiency is the animating principle. [Citation]. To gauge whether a class action would be more efficient than individual suits, '[t]he predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." ' "). Finally, the factors articulated in Rule 23(b)(3) support a finding of predominance and superiority because any interest of the class members in individually controlling the prosecution of separate actions does not outweigh the benefits of efficiency and consistency that are achieved by a class action, the Court is unaware of other litigation that concerns these particular claims and class members, the Southern District of Illinois is a desirable forum in which to concentrate these BIPA claims, and the management of the case will not be so difficult as to counsel against the certification of a class action. *See* Fed. R. Civ. P. 23(b)(3).

### C. Defendant's Motion to Strike New Arguments and Evidence from Plaintiffs' Reply in Support of Class Certification

Defendant takes issue with certain arguments and evidence in Plaintiffs' Reply in Support of their Renewed Motion for Class Certification. (Doc. 151; Sealed Doc. 152). However, when resolving the Renewed Motion for Class Certification, it was unnecessary for the Court to rely on the arguments or evidence arguably presented for the first time in the Reply. As such, Defendant's Motion to Strike is **DENIED as moot**.

## III. CONCLUSION

As explained above, the Amended Motion to Dismiss is **DENIED**, the Renewed Motion for Class Certification is **GRANTED in part** and **DENIED in part**, and the Motion to Strike is **DENIED as moot**. The Court **CERTIFIES** the following class in this case:

> All individuals working in the State of Illinois who had their fingerprints, hand geometry or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant's Perform Time biometric timekeeping system during the applicable statutory period.

The Court **APPOINTS** Plaintiff Juan Barron as class representative. The Court **APPOINTS** the law firms of Stephan Zouras, LLC, and Peiffer, Wolf, Carr, Kane, Conway & Wise, LLP, as class counsel. A Status Conference will be scheduled, approximately 30 days from the date of this Memorandum & Order, to discuss matters such as: (1) the need to enter a scheduling and discovery order for additional merits discovery in advance of the filing of dispositive motions; and (2) if necessary, other matters pertaining to the class.

**SO ORDERED.**

Dated: March 28, 2025.

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge