# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KELLIN JOHNS and JUAN BARRON,
individually and on behalf of all others
similarly situated,

                            Plaintiffs,

           v.

PAYCOR, INC.,

                         Defendant.

Case No. 3:20-cv-00264-DWD

Hon. David W. Dugan

## PAYCOR, INC.'S MOTION TO RECONSIDER THE COURT'S ORDER DENYING MOTION TO DISMISS AND GRANTING CLASS CERTIFICATION

Defendant, Paycor, Inc. ("Paycor"), by its undersigned counsel, and pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, hereby moves to reconsider the Court's March 28, 2025 Order granting class certification and denying Paycor's motion to dismiss. (Dkt. 155). In support of this Motion, Paycor states as follows:

## I.    Applicable Standard

A court may reconsider interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012). An order granting class certification is "inherently interlocutory" and "subject to revision in the District Court." *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 (2017) (citations omitted).

Motions to reconsider "serve the limited function of correcting manifest errors of law or fact." *Slick v. Portfolio Recovery Assocs., LLC*, 111 F. Supp. 3d 900, 902 (N.D. Ill. 2015) (citations omitted). A motion to reconsider may also be used to advise the court of "a significant change in

the law or facts." *Janusz v. City of Chicago*, 78 F. Supp. 3d 782, 787 (N.D. Ill. 2015); *see Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## II.    <u>The Court Should Reconsider its Granting of Class Certification</u>

### a.  *The Court Erred in Striking Paycor's Motion for Summary Judgment*

The Court justified its grant of class certification in part on the grounds that "this case is not presented on summary judgment, so it is not proper to delve into the merits of fact-intensive claims and defenses." (Dkt. 155, p. 25) (finding this to be "especially true where the Court has already recognized an application of the extraterritoriality doctrine is best left for summary judgment after the completion of merits discovery."). However, the Court's Order fails to point out that *Paycor filed a motion for summary judgment that raised multiple arguments that could defeat Plaintiffs' claims entirely, and the Court struck that motion deeming it "prematurely filed."* (Dkt. 139).

Paycor's motion for summary judgment raised multiple dispositive issues including, but not limited to, whether the timeclock technology even implicates BIPA, extraterritoriality as to Plaintiff Kellin Johns, lack of standing under BIPA § 15(a), and whether Paycor can be deemed to have "possessed," "collected," or "disseminated" biometric data under the undisputed facts. (Dkt. 126). It was error for the Court to strike Paycor's motion, and then subsequently use the fact that "this case is not presented on summary judgment" as a reason not to "delve into the merits of fact-intensive claims and defenses" in deciding class certification. (Dkt. 155, p. 25).

Contrary to the Court's finding that Paycor's motion for summary judgment was premature, a defendant in a class action proceeding has the right to have a motion for summary judgment heard before class certification. *See, e.g.*, *Hoffower v. Seamless Contacts Inc.*, 736 F. Supp. 3d 605, 616 (N.D. Ill. 2024) (granting summary judgment and holding that, "[b]ecause the

Court is granting summary judgment on the plaintiff's claim, it denies as moot her motion for class certification."); *Allen v. Aronson Furniture Co.*, 971 F. Supp. 1259, 1261 (N.D. Ill. 1997) ("[I]f the plaintiffs' claims are without merit, summary judgment may properly precede a ruling on the motion for class certification."); *Trull v. Lason Sys., Inc.*, 982 F. Supp. 600, 603 (N.D. Ill. 1997) ("[M]any authorities, including the Seventh Circuit, permit deciding summary judgment first 'if the plaintiffs' claims are without merit.' . . . Because we find below that Trull's claims are without merit, we conclude that deciding summary judgment before class certification is the appropriate procedure in this case."); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("The bank elected to move for summary judgment before the district judge decided whether to certify the suit as a class action. This is a recognized tactic."). In *Cowen*, the Court found an argument that "the claim of the named plaintiffs lacks merit ordinarily . . . disqualifies the named plaintiffs as the proper class representatives" and therefore "moot[s] the question whether to certify the suit as a class action." *Id.* at 941.

Here, Paycor had every right to move for summary judgment before class certification was decided in an effort to defeat Plaintiffs' claims at an early stage. As Paycor contended in its now-stricken motion for summary judgment, the "claim[s] of the named plaintiffs lack[] merit." *Id.* (*See* Dkt. 126, 139). Respectfully, the Court erred in taking that right away from Paycor, and compounded its error by declining on class certification to address the merits of Plaintiffs' claims on the grounds that this "case is not presented on summary judgment." (Dkt. 155, p. 25). The Court granted class certification and chose not to "delve into the merits of fact-intensive claims and defenses," when Paycor sought to have those very defenses adjudicated on summary judgment before class certification was decided. The Court erred in so ruling.

The Court should reconsider and vacate its ruling granting class certification, and instead allow Paycor to file a renewed motion for summary judgment that will be decided before class certification is addressed.

### b. The Court Erred by Disregarding the Abundance of Individual Issues Present when it Found "Predominance" Satisfied

In granting class certification, the Court recognized the existence of material, individual questions as to class members' ability to state BIPA claims, but found that those questions did not preclude class certification. (Dkt. 155, pp. 19-20). The Court's ruling declined to address the ample evidence presented by Paycor regarding these individual issues and instead granted class certification based only on class counsel's proposed "nine common questions" that merely parrot the statutory language of BIPA. Respectfully, this decision was an error of law.

Where "fundamental questions of class membership, liability, and damages are overwhelmingly individualized, certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies," and therefore "it is hard to see how common issues predominate or how a class action would be the superior means to adjudicate the claims." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). Where individual inquiries "need to be taken simply to assess whether any liability eventuated, even before one would move to the question of the amount of actual damages that might be recoverable," predominance is not satisfied. *Hamilton v. O'Connor Chevrolet, Inc.*, 02 C 1897, 2006 WL 1697171, at *8-9 (N.D. Ill. June 12, 2006) (denying class certification due to existence of individualized issues regarding liability and damages).

Particularly important to the resolution of this Motion is the Seventh Circuit's March 3, 2025 order in *Svoboda v. Amazon* ("*Svoboda*") in which the court agreed to hear a Rule 23(f) interlocutory appeal of an order granting class certification. (*See* Order granting Amazon's Rule

-4-

23(f) Petition to Appeal, Exhibit 1). The Seventh Circuit's order was issued months after briefing was completed on Plaintiffs' renewed motion for class certification and less than a month before this Court's March 28, 2025 order granting class certification. The issues in *Svoboda* are substantially similar to this case. There, Amazon petitioned for leave to appeal and presented the following questions that are also pertinent here:

> 2. Whether the absence of a common, reliable method for identifying whether an allegedly unlawful use of a [virtual try-on] feature for eyewear or lip products (frequently on a mobile device) occurred while the user was physically located in Illinois presents individualized issues that defeat predominance and superiority.

> 3. Whether the discretionary nature of statutory damages under BIPA and the inherent case-specific analysis of the equities that discretion entails present individualized issues that defeat predominance and superiority.

(Amazon's Rule 23(f) Petition, Exhibit 2, p. 1).

Amazon's petition argued that the Court "has never addressed how the requirements of [Rule 23] apply to claims under [BIPA]," particularly in cases where individual defenses exist as to the putative class members. (*Id.*, p. 2). In *Svoboda*, the plaintiff alleged that Amazon violated BIPA based on the use of a "virtual try-on" tool for beauty products. (*Id.*, p. 4). The data kept by Amazon did not track where a user was located when they used the tool, particularly when that user did not make a purchase. (*Id.*, pp. 5-6). In seeking leave to appeal, Amazon argued that individualized questions, including the location of each user when they used the tool, should have precluded class certification. (*Id.*, p. 11). Amazon pointed out that "individualized proof" would be necessary to establish each class member's claim. (*Id.*, p. 12; *see also* Amazon's Reply in Support of Rule 23(f) Petition, Exhibit 3, at p. 6 (noting that BIPA has no extraterritorial application and therefore the certified class "may be vastly *overinclusive*, sweeping in tens of thousands of individuals who used [the tool] outside Illinois and, therefore, do not have a BIPA claim at all.")).

LEGAL\76869183\1

Amazon also argued that it has a "unique defense" with respect to every single member of the class because of the Illinois Supreme Court's ruling in *Cothron v. White Castle Sys., Inc.* that damages are "discretionary rather than mandatory." (Exhibit 2, p. 14) (citing *Cothron*, 2023 IL 128004, ¶ 4) (holding that BIPA provides only that a prevailing party "may recover" damages and therefore the Court has the discretion to fashion an appropriate remedy); *id.* at p. 15 ("The intrinsic discretion afforded damages under BIPA and the wide variability of use among class members warrants individualized considerations to assess appropriate damages for each plaintiff. These considerations overwhelm common questions and defeat predominance."). In granting Amazon's petition, the Seventh Circuit recognized the prevalence of individual issues in BIPA litigation and will, for the first time, address the interplay between Rule 23's requirements and claims under BIPA. (*See* Exhibit 1).[1]

With that backdrop, it is apparent that the Court here did not adequately address the individual inquiries raised by Paycor regarding each class member's ability to state a claim under BIPA, and instead granted class certification based only on Plaintiffs' proposed "nine common questions" that did nothing more than restate the statutory language of BIPA. The Court first touched on the question of individual issues in finding that "commonality" was satisfied, despite acknowledging that Paycor asserted "allegedly material differences that impact the core of Plaintiffs' claims." (Dkt. 155, p. 19). Notwithstanding these material differences, the Court held that "while avoiding delving into the merits of Plaintiff's claims, as it must, the Court agrees the nine proposed questions involve a common application of § 15 that will be determinative of liability to the entire proposed class." (Dkt. 155, pp. 19-20). The Court made this finding despite recognizing that Plaintiffs' alleged "nine common questions" merely tracked the statutory

---

[1] Notably, in their renewed motion for class certification, Plaintiffs relied on the District Court's opinion in *Svoboda* granting class certification. (Dkt. 103, p. 13).

language of BIPA. (*Id.*, p. 19) ("[I]t is true the nine common questions proposed by Plaintiffs track the language of §§ 15 and 20."). The Court reasoned that "notably, individual questions related to the choices of Defendant's customers will be addressed further below as a matter of predominance." (*Id.*, p. 20).

But the Court did not address those individual questions in analyzing "predominance." The Court recognized that predominance is "akin to, but far more demanding than, the commonality requirement," but applied essentially the exact same analysis as it did to commonality. (Dkt. 155, p. 26). The Court recognized the existence of multiple material, individual questions, but held that: "Keeping in mind that the predominance requirement is far more demanding than the commonality requirement, the Court is satisfied the class proposed by Plaintiffs is sufficiently cohesive to warrant an adjudication of the claims against Defendants." (*Id.*, p. 28). The Court once again relied only on the "nine common questions" alleged by class counsel, reasoning that "[t]he nine common questions presented by Plaintiffs represent a significant aspect of the case, *i.e.*, whether Defendant's allegedly uniform practice or course of conduct toward the class violated § 15(a), (b), and (d), and can be efficiently answered based on a common nucleus of operative facts and issues for the entire class in this adjudication." (*Id.*, p. 29). In other words, the Court found that, not only was "commonality" satisfied based on the "nine common questions" presented by Plaintiffs' pleadings, but also that "predominance" – a "far more demanding" standard – was also met by these same bare bones allegations.

The Court erred and should reconsider and deny class certification. Just as in the above cases, and as demonstrated by the Seventh Circuit's decision to hear the appeal in *Svoboda*, individual questions cannot be glossed over in finding predominance, and must be considered in analyzing class certification. Critically, the Court must consider actual evidence regarding those

individual issues, not just the statements of class counsel that predominance is satisfied. *See, e.g.*, *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Mere assertion by class counsel that common issues predominate is not enough. That would be too facile. Certification would be virtually automatic. And so Rule 23 'does not set forth a mere pleading standard.' Rather, when factual disputes bear on issues vital to certification (that is, to whether the suit should be allowed to be litigated as a class action), such as predominance, the court must 'receive evidence ... and resolve the disputes before deciding whether to certify the case.'"). Here, Paycor provided the Court with ample evidence demonstrating that every single class member's claim will be subject to individualized proof, rendering the class action mechanism inferior and improper. The Court failed to consider any of that evidence.

First, Paycor provided the Court with evidence that a substantial percentage of the putative class received notice and executed BIPA consent forms from their employer that encompassed and included technology vendors such as Paycor. (Dkt. 151). Paycor's opposition to class certification and motion to strike (that the Court did not consider, which was also error as discussed below) put forth evidence of more than 40 executed BIPA consents, and made clear that the employer data was voluminous and that Paycor expected to turn over countless additional executed BIPA consents upon its outside vendor's completion of its document review. (*Id.*). Since filing its motion to strike, Paycor has produced ***1,339 signed consents and signed employer handbooks containing biometric privacy policies***. Contrary to the Court's ruling, the existence of signed consents is not a trivial issue that can simply be decided later – it needs to be analyzed for each class member and will determine whether that person has a claim under BIPA at all. The Court should have denied class certification on this basis alone, and should certainly do so now given that ***more than 1,300*** class members signed a form of biometric consent.

Second, Paycor presented evidence that *over 1,000* class members had pay records with deduction codes indicating that they were members of a union, confirmed by many of Paycor's customers being subject to collective bargaining agreements. (Dkt. 125, p. 15). As Paycor argued in its opposition to class certification, this is a conservative estimate of union membership because many Paycor clients used custom deduction codes or no deduction codes at all for their unionized employees. (Dkt. 125, p. 15). Any BIPA claims asserted by such class members with union membership are preempted and cannot be asserted. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019). The Court did not consider this individual, dispositive issue regarding *over 1,000* class members, instead finding that Plaintiffs' "nine common questions" were enough to establish predominance. (Dkt. 155, pp. 28-29). This was error.

Third, Paycor raised the issue of extraterritoriality, and presented evidence that one of the named-Plaintiffs, Kellin Johns, did not even use a timeclock in Illinois. (Dkt. 125, pp. 7-8). The Court acknowledged this and limited the class representation to Plaintiff Juan Barron, but still certified a class containing Mr. Johns when the undisputed facts establish that he never used a timeclock in Illinois. (Dkt. 155, p. 25). Given that Paycor had customers such as Club Fitness operating concurrently in Illinois and other states, it is probable that there are other class members like Mr. Johns who did not use a timeclock in Illinois. Rather than address this issue, the Court ruled that "the extraterritoriality doctrine is best left for summary judgment after the completion of merits discovery." (Dkt. 155, p. 25).

Similarly, the Court declined to address Paycor's standing argument under BIPA § 15(a) despite Paycor presenting undisputed evidence that Plaintiffs' templates were deleted within three years of their last interaction with Club Fitness or Paycor, finding that this also was an issue more appropriate for summary judgment. (Dkt. 125, p. 10; Dkt. 155, p. 25). This was error. *See Clark v.*

*Experian Info., Inc*., 233 F.R.D. 508, 512 (N.D. Ill. 2005) (denying class certification because "the defendants also have the right to assert affirmative defenses and these affirmative defenses will require a person-by-person evaluation of conduct to determine whether an individual potential class member's action precludes individual recovery."). Paycor had "the right to assert affirmative defenses" to be considered on class certification, but this Court required the parties to brief class certification and granted class certification ***before Paycor even answered the First Amended Complaint ("FAC") or had an opportunity to assert its affirmative defenses***, and while its Rule 12(b)(6) motion to dismiss was still pending.

Fourth, Paycor presented evidence of material differences among customers' use and configuration of the timeclocks. Paycor described the myriad of ways a customer can configure their timekeeping system, including whether their employees even use the finger scan function or instead use a proximity badge or alternative method, whether a particular customer requested that Paycor access templates hosted on tenant-segregated databases, whether a particular customer chose to replicate templates between devices, etc. (Dkt. 125, p. 16). These questions must be answered to determine whether the elements of BIPA can be satisfied as to the employees of any particular Paycor customer, *i.e.* whether Paycor exercised the requisite "actual control" over biometric data to have "possession," whether Paycor took an "active step" in "collecting" any such data, and whether Paycor "disclosed" any such data. The Court should not have glossed over these material factual issues that go to the heart of whether the class has any viable BIPA claims at all.

In granting class certification, the Court effectively ignored all of these individual questions that affect ***thousands*** of class members, and did not look at the merits at all, instead certifying the class based only on Plaintiffs' allegations. The Court found that "liability for the claims of class members will be determined in one stroke" because "their claims are based on the same legal

LEGAL\76869183\1

theory." (Dkt. 155, p. 18). However, this is not the standard, because if it were, every single class action lawsuit could simply be certified based on the pleadings alone. *See, e.g.*, *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014) ("Mere assertion by class counsel that common issues predominate is not enough. That would be too facile. Certification would be virtually automatic. And so Rule 23 'does not set forth a mere pleading standard.'"); *Elward v. Electrolux Home Products, Inc.*, 15-CV-09882, 2020 WL 2850982, at *6 (N.D. Ill. June 1, 2020) (holding that a court "may not simply assume the truth of the matters asserted by the plaintiffs," but "must receive evidence and resolve factual disputes," and denying class certification because "there are simply too many 'failure paths' that would require the court to make individualized determinations."). And here, liability certainly cannot be "determined in one stroke" for all of the reasons discussed above, as every single class member will require individualized proof to establish their respective claims and numerous "failure paths"  are probable.

Ample case law exists holding that the existence of material individual questions precludes class certification and that the Court must consider evidence and not merely rely on class counsel's representations as to the elements of Rule 23. The Court's Order, however, failed to "delve into the merits" and the evidence at all, instead finding all of the elements of Rule 23 satisfied merely because class counsel proposed "nine common questions" in their pleadings, each nothing more than a recitation of the language of BIPA. For these reasons, coupled with the Seventh Circuit's decision to hear the appeal in *Svoboda*, the Court should reconsider its ruling and deny class certification.

    *c.*   **The Court Erred in Disregarding Paycor's Motion to Strike**

The Court granted Plaintiffs leave to file a reply brief in support of their renewed motion for class certification to address evidentiary arguments raised in Paycor's opposition, and Plaintiffs

then filed a reply brief containing substantial new evidence. Paycor filed a motion to strike certain arguments and evidence that Plaintiffs raised for the first time in their reply. (Dkt. 151). The motion to strike was necessary because sur-replies are expressly prohibited under the Court's local rules. *See* Local Rule 7.1 ("Under no circumstances will sur-reply briefs be accepted."). The Court denied Paycor's motion to strike as moot, finding that it "was unnecessary for the Court to rely on the arguments or evidence arguably presented for the first time in the Reply." (Dkt. 155, p. 30). The Court's ruling was an error of law because the Court was required to consider the evidence raised by the parties in deciding predominance. *See Elward*, 2020 WL 2850982 at *6 (holding that a court "may not simply assume the truth of the matters asserted by the plaintiffs," but "must receive evidence and resolve factual disputes" when deciding a motion for class certification). The Court should reconsider its ruling, accept Paycor's motion to strike, and deny class certification.

Plaintiffs argued for the first time in their reply brief that "Paycor has failed to produce . . . a single signed consent form authorizing its collection of biometric data." (Dkt. 148, pp. 1, 8). In granting class certification, the Court chose not to consider any evidence of signed BIPA consents despite recognizing the existence of multiple material individual questions, finding that those issues were not so prevalent as to outweigh the "nine common questions" proposed by Plaintiffs. (Dkt 155, p. 29). Paycor's motion to strike would have proved otherwise. Paycor's motion to strike described and attached evidence of more than 40 BIPA consents and/or biometric privacy policies from its customers that were signed by employees of those customers and contained language that released Paycor from any BIPA liability. (Dkt. 151). Paycor's motion to strike made clear that those 40 BIPA consents were only the tip of the iceberg and that there are substantially more consents that would be produced when its outside vendor's review of the voluminous customer

LEGAL\76869183\1

data was completed. (*Id.*). Since filing its motion to strike, Paycor has produced ***1,339 signed consents and signed employer handbooks containing biometric privacy policies.***

The existence of signed BIPA consents for a substantial percentage of the class – ***more than 1,000*** class members – is not a "minor" issue that can be overlooked in deciding class certification. It is a dispositive issue because if a class member signed a consent, they have no claim under BIPA. The Court should have considered the evidence of signed BIPA consents offered by Paycor in its motion to strike that demonstrates the existence of material induvial questions that predominated over the putative class.

### d. Alternatively, the Court Should Vacate its Order Granting Class Certification and Stay this Action Pending the Seventh Circuit's Decision in Svoboda

Courts "have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Hall v. Meridian Senior Living, LLC*, 21-CV-55-SMY, 2021 WL 2661521, at *1 (S.D. Ill. June 29, 2021) (citations omitted). In deciding a motion to stay proceedings, the Court should consider whether the stay will: "(1) 'simplify the issues in question and streamline the trial,' (2) 'reduce the burden of litigation on the parties and on the court[,]' and (3) 'unduly prejudice or tactically disadvantage the nonmoving party[.]'" *Id.* (citations omitted). In *Hall*, the court granted a stay in a BIPA case because of "an interlocutory appeal pending before the Seventh Circuit" that "will affect whether the plaintiff has some or no timely claims." *Id.* at *3.

Here, if the Court declines to reconsider its ruling and deny class certification, the Court should vacate its Order granting class certification and stay this action pending a decision by the Seventh Circuit in *Svoboda*. The Seventh Circuit in *Svoboda* will decide whether a class action mechanism is superior and appropriate where there are individual defenses such that class member status cannot accurately be determined without individualized inquiries into each putative class

member. The same issues exist here. As discussed above, Paycor has raised a multitude of individual questions that should have been addressed before class certification was granted, including whether class members signed a BIPA consent and release, whether they are in a union, whether they were in Illinois when they used a timeclock, etc. As such, if the Seventh Circuit rules in favor of Amazon and finds that class certification is improper where such individualized questions exist, the Seventh Circuit's ruling will be binding on this Court and will mandate that the proposed class not be certified.

Because *Svoboda* will determine whether class certification is appropriate in a case such as this one, staying this case pending the Seventh Circuit's decision will greatly simplify the issues and reduce the burden of litigation, and will not unduly prejudice Plaintiffs. A stay would prevent the parties from unnecessarily incurring time and expense on a case that may be materially changed by the ruling in *Svoboda*. Accordingly, if the Court does not reconsider its ruling and deny class certification, the Court should stay this case pending a decision by the Seventh Circuit in *Svoboda*.

## III.    The Court Should Reconsider its Denial of Paycor's Motion to Dismiss

### a.    *The Court Erred in Denying Paycor's Motion to Dismiss Plaintiffs' §§ 15(a) and 15(d) Claims Because Plaintiffs' Allegations of Passive "Storage" Do Not Equate to "Possession" of Plaintiffs' Biometric Data*

While the Court recognized that "possession" requires that a defendant exercise "dominion or control" of biometric data, the Court failed to apply that definition to Plaintiffs' allegations. (Dkt. 155, p. 8). Rather, the Court ruled that Plaintiffs adequately pled possession merely because they alleged that Club Fitness employees "were required to scan their fingerprints on Defendant's biometric timeclock in order to track their time worked" and that Paycor "'managed,' 'enrolled,' or 'stored' that 'fingerprint biometric data in its databases.'" (*Id.*, p. 9). The Court should reconsider its ruling because Plaintiffs' own allegations belie a finding of possession.

-14-

Possession in the context of BIPA refers to the act of "having or taking control." *Barnett v. Apple*, 2022 IL App (1st) 220187, ¶¶ 41-42. In *Ragsdale, et al. v. Paycor, Inc.,* the Court found that the hosting of biometric data on a separate server, without a showing that the technology provider "exerted control" or accessed the data, is insufficient to establish possession. *Ragsdale*, attached as Exhibit 4, pp. 3-4 (holding that testimony that the defendant "maintained access to Plaintiffs' biometric data" through its ownership of the timeclocks was insufficient to establish possession because the defendant did not maintain "actual 'control'" over biometric data).

Importantly, courts have regularly dismissed BIPA claims on the grounds that mere hosting or storage of biometric data on a separate server does not establish possession. S*ee Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 968 (N.D. Ill. 2020) ("[The plaintiff alleges] BD subsequently stored [Heard's] fingerprint data in their systems. This allegation does not plead that BD exercised any form of control over the data or that it held the data at [its] disposal."); *Jacobs v. Hanwha Techwin America, Inc.*, 2021 WL 3172967, at *2 (N.D. Ill. July 27, 2021) (dismissing Section 15(a) and (d) claims where the plaintiff failed to allege "whether defendant could freely access the data, or even how defendant allegedly received it.").

Contrary to the Court's ruling, there are no allegations in the FAC or reasonable inferences to be drawn therefrom that Paycor maintained "actual control" over biometric data. Instead, the allegations establish just the opposite. Plaintiffs allege that Paycor provided *Club Fitness* with the timeclocks, and that *Club Fitness* "required [Plaintiffs] to scan their fingerprints on Paycor's Biometric Time Clock at Club Fitness so they could be used as an authentication method to track their time worked." (Dkt. 40, ¶¶ 50-51). Plaintiffs' sole relevant allegation directed at Paycor is that it "subsequently stored Plaintiffs' fingerprint biometric data in its databases." (*Id.*, ¶ 52). These allegations do not come close to establishing possession.

The allegation that Plaintiffs were required to use timeclocks located at and controlled by Club Fitness says nothing about Paycor having "actual control" or the ability to "freely access" Plaintiffs' biometric data. *See Ragsdale*, Exhibit 4, at pp. 3-4 (holding that "legal control" over timeclocks does not translate to "actual control" over the templates stored on the timeclocks). Plaintiffs' barren allegation of "storage" fares no better, as Courts have consistently held that passive storage on a separate server does not establish possession because it does not equate to having "control" over that data. *Heard*, 440 F. Supp. 3d at 968; *Jacobs*, 2021 WL 3172967 at *2; *Ragsdale*, Exhibit 4, at pp. 3-4. The Court should reconsider its ruling and find that Plaintiffs have failed to sufficiently allege "possession" under BIPA §§ 15(a) and 15(d).

### b.    The Court Erred in Denying Paycor's Motion to Dismiss Plaintiffs' § 15(b) Claim Because the Court's Analysis Added Language to BIPA that is Not in the Statute

In addressing Plaintiffs' BIPA § 15(b) claim, the Court incorrectly stated that § 15(b) applies to a private entity that "collects, ***stores***, or uses" biometric data, and then held that Plaintiffs adequately stated a claim because Paycor "***managed***," "***enrolled***," or "***stored***" Plaintiffs' biometric data.  (Dkt. 155, pp. 6, 10) (emphasis added). However, BIPA § 15(b) does not use the words "store," "enroll," or "manage," and therefore it was error for this Court to find that those purported actions were sufficient to establish "collection" under § 15(b).

"Collection" of biometric data under BIPA means "gather[ing] or "accumulate[ing] information "from a number of persons into one place." *See Mosby v. Ingalls Memorial Hospital*, 2022 IL App (1st) 200822, ¶¶ 49-50. BIPA § 15(b) requires more than mere "possession," as the legislature did not use that term but instead drafted § 15(b) to consist of verbs (collect, capture, obtain) that, to apply, would require a defendant to take some active step or "do something." Courts have held that "an entity must, at a minimum, take an *active* step to collect, capture, purchase, or otherwise obtain biometric data." *Jacobs v. Hanwha Techwin America, Inc.*, 2021 WL 3172967,

at *2 (N.D. Ill. July 27, 2021); *see also G.T. v. Samsung Elecs. Am. Inc*., 21 CV 4976, 2024 WL 3520026, at *5 (N.D. Ill. July 24, 2024) ("Collectively, all these verbs 'mean to gain control' of Biometrics. This requires the defendant to make an affirmative effort—to take an 'active step'— towards receiving the Biometrics."); *Jones v. Microsoft Corp*., 649 F. Supp. 3d 679, 683 (N.D. Ill. 2023) ("[E]ven the catch-all phrase 'otherwise obtain' contemplates some type of affirmative effort. . . when a statutory clause specifically describes several classes of things and then includes 'other persons or things,'—or in this case, the analogous phrase 'otherwise obtain'—the word 'other' should be interpreted to mean 'other such like.' ***Thus, the Court interprets the phrase 'otherwise obtained' in line with 'collect,' 'capture,' 'purchase' and 'receive through trade'— all of which denote some affirmative act taken in furtherance of collection.***") (emphasis added).

Plaintiffs' allegations fail to describe any "active step." Again, as to collection, Plaintiffs merely allege that they were required by Club Fitness to scan their fingers on the timeclocks, and that Paycor "subsequently stored Plaintiffs' fingerprint biometric data in its databases." (Dkt. 40, ¶¶ 51-52). Plaintiffs do not allege (nor could they in good faith) that Paycor had any active involvement in the collection of their biometric data, as Plaintiffs have expressly alleged that Club Fitness, not Paycor, scanned their fingerprints using timeclocks located at Club Fitness. (*Id.*); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) ("Brookdale collected the fingerprints using a system that Kronos supplied to Brookdale. Together, these allegations do not plausibly allege that Kronos collected, captured, or otherwise obtained Namuwonge's biometric information.").

It was error for the Court to determine that Plaintiffs satisfied the "active step" requirement by alleging that Paycor "stored," "managed," or "enrolled" their biometric data, because BIPA does not mention "storage," "management," or "enrollment" under § 15(b). Furthermore, courts

have held that allegations of storage and management are passive acts that are insufficient to plead collection. *See, e.g.*, *Ragsdale*, Exhibit 4, p. 6 (finding that hosting of biometric data on a separate server after collection by a technology vendor's customer does not satisfy the "active step" requirement because the vendor "did not actively seek out or collect the biometric data."); *Jones*, 649 F. Supp. 3d at 685 (dismissing BIPA § 15(b) claims where plaintiffs failed to allege that Microsoft actively collected the alleged biometric data, but instead asserted that other entities provided the technology for collection of biometric data, performed the collection of biometric data, and sent the data for storage); *Jacobs*, 2021 WL 3172967 at *3 (finding the complaint's allegations that that the defendant "collected" his biometric data insufficient because it did not contain allegations explaining "how, when, or any other factual detail."). Passive acts such as "storage" and "management" are simply not "affirmative act[s] taken in furtherance of collection," and therefore cannot constitute the requisite "active step." *Jones*, 649 F. Supp. 3d at 683. Plaintiffs' allegation of "enrollment" fares no better, as Plaintiff expressly alleged that Club Fitness, not Paycor, "required [Plaintiffs] to have their fingerprint or hand geometry scanned in order to enroll them in the Paycor database." (Dkt. 40, ¶¶ 38, 51). By Plaintiffs' own allegations, Paycor had no *active* involvement in "enrollment," and passive acts cannot constitute collection under BIPA.

Plaintiffs have utterly failed to plead a § 15(b) claim, and the Court should not have read passive words into the statute to satisfy Plaintiffs' burden. No "active step" has been pled. The Court should reconsider its ruling and dismiss Plaintiffs' § 15(b) claim.

### c.   *The Court Erred in Denying Paycor's Motion to Dismiss Plaintiffs' BIPA § 15(d) Claim Because the Court Did Not Apply Precedent Holding that Conclusory Allegations of "Disclosure" are Insufficient to State a Claim*

The Court recognized that Plaintiffs "did the bare minimum with its allegations under § 15(d)," but found that Plaintiffs adequately stated a claim because the Court "can reasonably infer

from the factual circumstances that Defendant disclosed or otherwise disseminated Plaintiffs' biometric [data] . . . to 'clients and/or other third parties that host biometric data in their data center(s),' which could include, at a minimum, Club Fitness itself." (Dkt. 155, pp. 10-11). Respectfully, the Court's ruling was in error.

Plaintiffs must allege that Paycor disclosed – meaning actually "revealed" or "exposed" (*Merriam-Webster* (2018)) – their biometric data to a third party. *See Cothron*, 2023 IL 128004 at ¶ 28 ("[W]e conclude that the plain language of section 15(d) applies to every transmission ***to a third party***.") (emphasis added). It is insufficient to allege that Paycor allowed biometric information to be sent "for timekeeping, data storage, and payroll purposes." *Namuwonge*, 418 F. Supp. 3d at 285.

Plaintiffs' sole allegation in support of their § 15(d) claim is that "Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the consent required by 740 ILCS 14/15(d)(1)," which is nothing more than a copy and paste of the statute. (Dkt. 40, ¶ 98). Courts have held this exact allegation insufficient to support a § 15(d) claim. *See, e.g.*, *Namuwonge*, 418 F. Supp. 3d at 285 (finding allegations that "[e]ach Defendant systematically and automatically collected, used, stored and disseminated [her]…biometric identifiers" as too speculative to state a § 15(d) claim). Nor should the Court have attempted to fill in the blanks for Plaintiffs. *Heard*, 440 F. Supp. 3d at 969 ("If Heard has a legitimate reason to suspect that BD disclosed his biometric data or that of the putative class members, he surely possesses information of some kind that triggered his suspicion—such as reports that BD has unlawfully disseminated biometric data in the past, or indications that Heard or the putative class members experienced identify theft after they used their employers' Pyxis systems . . . In its current

LEGAL\76869183\1

form, Heard's Complaint contains no allegations of fact which, if true, suggest there is any basis to even *suspect* that BD disseminated the biometric data at issue. The court is not required to credit rank speculation."). Plaintiffs must allege an actual disclosure, and they did not.

Moreover, the Court's reliance on a potential disclosure to "Club Fitness itself" was also error. (Dkt. 155, p. 11). First, there is no allegation of any disclosure to Club Fitness. But even if there was, Paycor could not have "disclosed" Plaintiffs' biometric data to Club Fitness because Club Fitness, their then-employer, is the entity that collected and possessed that data in the first instance. *Cothron*, 2023 IL 128004 at ¶ 28 (holding that dissemination must be to "a third party"). Given that Plaintiffs allege Club Fitness required them to use the timeclocks in the first place, and therefore Club Fitness already collected and possessed Plaintiffs' biometric data, Club Fitness is hardly a "third party" to any alleged interaction between Plaintiff and Paycor. The Court should reconsider its ruling and dismiss Plaintiffs' BIPA § 15(d) claim.[2]

**WHEREFORE**, for the forgoing reasons, Defendant, Paycor, Inc., respectfully requests that the Court grant its Motion and enter an Order (i) reversing its granting of Plaintiffs' renewed motion for class certification, or in the alternative, staying this action pending a decision by the Seventh Circuit in *Svoboda*; (ii) reversing its denial of Paycor's motion to dismiss, and (iii) granting Paycor such other and further relief that the Court deems equitable and just.

Dated:  April 11, 2025

---

[2] The Court notes that "Plaintiffs' allegations under § 15 will be the subject of rigorous merits arguments later in the case." (Dkt. 155, p. 11). As noted above, Paycor filed a motion for summary judgment that raised the same arguments regarding Plaintiffs' ability to satisfy the elements of each of their BIPA claims. However, the Court struck Paycor's motion for summary judgment as premature. (Dkt. 139).

LEGAL\76869183\1

Respectfully Submitted,

**PAYCOR, INC.**

*/s/ Corey T. Hickman*

Melissa A. Siebert
Corey T. Hickman
COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, IL 60606
(312)-474-7900
msiebert@cozen.com
chickman@cozen.com

*Attorneys for Defendant Paycor, Inc.*

LEGAL\76869183\1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk via the Court's CM/ECF system, which will notify all counsel of record.

<i>/s/ Corey T. Hickman</i>      