IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KELLIN JOHNS and JUAN BARRON, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>PAYCOR, INC.,<br><br>      Defendant. | Case No. 3:20-cv-00264-DWD<br><br>Hon. David W. Dugan |

**PAYCOR, INC.'S RESPONSE IN OPPOSITION TO JUAN BARRON'S
MOTION FOR COURT APPROVAL OF CLASS NOTICE AND NOTICE PLAN**

Defendant Paycor, Inc. ("Paycor"), by its undersigned counsel, hereby opposes Plaintiff Juan Barron's Motion for Court Approval of Class Notice and Notice Plan (Dkt. 181).

**INTRODUCTION**

Class notice is intended to provide the "**best notice** that is practicable" to actual class members, concisely setting forth, among other things, the class definition; the class claims, issues and defenses; and the class members' rights to participate in, or request exclusion from, the class. Fed. R. Civ. P. 23(c)(2)(B). Courts have the discretion and responsibility to ensure that these key notice requirements are accurately and correctly implemented.

It is thus the norm, not the exception, for courts to exercise discretion and hold off on issuing notice where, as here, a party has chosen to seek further review of a certification decision. *See Newberg and Rubenstein on Class Actions* § 8:11 (stating "courts sensibly delay sending notice of class certification" where a party is appealing the certification decision). Class members' ability to understand the proceedings and to assess whether they wish to appear or opt out is significantly impaired when they receive confusing renotifications following an appeal or a substantial change

-1-

in the class definition. *See Fernandez v. RentGrow, Inc.*, No. JKB-19-1190, 2022 WL 1782641, at *4 (D. Md. June 1, 2022) (stating that "proceeding to issue class notice at this time risks confusing class members" and that the "burden of issuing a curative notice, a proposal that [plaintiff] raises in response to this concern, is simply too high . . . [to] somehow be the more efficient option").

Discretion warrants denial of Plaintiff Barron's class notice and notice plan here, too. Plaintiff seeks rushed approval of a class notice and notice plan while numerous legal issues related to the class definition remain outstanding. Notably, these issues are not defenses; these issues relate to whether class members can even state claims under BIPA in the first place. Making matters worse, Plaintiffs ask the Court to give Paycor *only seven days* to compile and produce a class list—a process that Paycor has already estimated will take at least two and a half months, which requires customer consents, and which is already proving to be much more complex than anticipated. (Dkt. 178; Ex. 1, Supp. Decl. of David Goodwin).

The class definition in Plaintiff's Proposed notice is:

> All individuals working in the State of Illinois who had their fingerprints, hand geometry or other biometric data collected, captured, received, or otherwise obtained or disclosed by Defendant's Perform Time biometric timekeeping system at any time since January 29, 2015.

(Dkt. 181-1 at 2; Dkt. 155 at 30 (certifying this class "during the applicable statutory period.")). As explained more fully below and in the accompanying Motion to Alter/Amend Class Definition, the class that would be noticed under this definition is plainly overbroad and contravenes this Court's prior rulings. It would be an appropriate exercise of discretion for the Court not to approve the sweeping class notice and rushed notice plan that Plaintiff Barron proposes, which will almost certainly require curative notices and cause rampant confusion.

In order to resolve class notice issues, including the class definition issues, Paycor's counsel communicated multiple concerns about the class definition to counsel, and the Parties met

-2-

on June 12 to discuss them. (*See* Ex. 2, 6/6/25 correspondence). However, counsel for Plaintiff was unwilling to discuss these issues in detail or discuss Paycor's revisions to the proposed notice until after Paycor filed the instant brief.

As to class membership, the class size is much smaller than originally anticipated based on the use of a database, ▮▮▮▮▮, and a recently-identified dataset within ▮▮▮▮▮ ▮▮▮▮▮. (Ex. 1, Supp. Decl. of David Goodwin, ¶¶ 12-13). Using this dataset, along with data from a series of complex tables, databases and datasets described in more detail in the attached Supplemental Declaration of David Goodwin, Paycor was able to create an updated class list. (*Id.* at ¶¶ 4-5, 7-14). The updated class list contains 2,968 unique employee identification numbers, or "▮▮▮▮▮" of customers' employees, where those individuals' employers had: (1) a Perform Time timeclock and the individual had an Illinois tax code during the timeframe January 15, 2015 to October 18, 2021, and ▮▮▮▮▮ ▮▮▮▮▮. (*Id.* at ¶ 14). Paycor is now attempting to confirm that this list is as accurate as possible, and will next contact customers with ▮▮▮▮▮ on this list to request permission to connect ▮▮▮▮▮ to actual customer employee names, and where possible, to addresses and personal email addresses, should that information exist.

There is no basis to impose Plaintiff Barron's unreasonable time limits on Paycor's production of the class list. As Paycor explained in its recent status report (Dkt.178), and explains in more detail in Exhibit 1 (the Supplemental Declaration of David Goodwin), preparing the class list is a complicated and time-consuming process of analyzing and connecting very complex databases, tables and datasets, using data that is not organized in a manner that lends itself to the creation of a class list. (Ex. 1 at ¶¶ 5, 7, 12-13). Compiling the class list also requires the assistance

of customers, who have the right to control access and use of their employees' information (*id*. at ¶ 6), and who are still being identified as Paycor continues to attempt to provide the most accurate class list possible, given that Paycor ultimately cannot determine exactly which customers' employees' time clock punches actually occurred in Illinois, using a Perform Time timeclock and a finger-scan template, during the relevant period. Paycor requests that the Court deny Plaintiff Barron's motion as premature, or hold it in abeyance while these key issues are resolved.

Additionally, Paycor has made clear that it will be filing a notice of appeal under Fed. R. Civ. P. 23(f), which it arguably must do by June 18, 2025. Since the Court has not yet issued its written opinion denying Paycor's motion to reconsider, and has not yet considered Paycor's request to alter/amend the class definition pursuant to Fed. R. Civ. P. 23(c)(1)(C), direction from the Court on all of these issues is essential, both to provide much needed clarity, and so that Paycor can determine what grounds (if any) remain for appeal. Finally, the Notice itself is deficient in several respects and cannot be approved and sent to class members as drafted, particularly when the Parties themselves are still working through these issues.

## ARGUMENT

### A.  Plaintiff's Motion Is Premature

The class definition is overbroad several times over. First, it includes people whom the Court has already excluded from the case. Second, it encompasses people who consented to the collection and disclosure of their data. Third, it covers double the time period that it should because it is undisputed that Paycor fully implemented BIPA-compliant consent by October 18, 2021. And lastly, it includes class members who released any claims against Paycor in BIPA settlements with their employers.  These are not defenses. The collection of biometric data with a consent in place is not a violation of BIPA. Therefore, these and the other issues raised by Paycor are threshold issues that determine if class members can even state claims under BIPA.

Aside from those obvious legal problems with the class definition, the Court should decline to approve class notice and a notice plan (at least) until the class list for notice is complete, and any related litigation is resolved.

### 1.  Individuals Whose Hand Geometry or Other Biometric Data Was Allegedly Collected Cannot Receive Class Notice

Plaintiff Barron seeks to send notice to people whose "hand geometry or other biometric data" was collected (Dkt. 181-1 at 2), even though the Court already ruled that this case is limited to Perform Time clock users only—those people who "were required to scan only their fingerprints, not their hand geometry." (Dkt. 99 at 13). This ruling played a role in the Court's decision to deny Paycor's motion to stay this case under the *Colorado River* doctrine due to an identical case with an overlapping class definition already pending in Cook County. (Dkt. 80, ¶ 5).

The Court ordered briefing on whether the case should be stayed under the *Colorado River* doctrine, recognizing that it would be "prudent" for the Parties to brief whether the *Colorado River* doctrine applied, and that it would be "improvident" to lift the stay "only to later find that an independent basis for the stay remains." (Dkt. 82). Paycor then moved to stay the case based on a substantially identical proceeding in Illinois state court, the "*Ragsdale/Bolds* lawsuit." (Dkt. 83 & 84). Paycor's motion cited numerous cases where BIPA class actions pending in federal court had been stayed when there were parallel state court class actions. (Dkt. 84 at 2).

To defeat Paycor's motion, Plaintiffs disavowed representing any class other than those using the Perform Time finger-scan timeclock. (Dkt. 92 at 1, 6).  Plaintiffs further claimed that the state court Plaintiffs were not adequate class representatives because they had used hand-scan AOD clocks, not finger-scan Perform Time timeclocks, "like Plaintiffs [Johns and Barron] here." (*Id*. at 8). Plaintiffs further asserted that the *Ragsdale/Bolds* lawsuit "did not intend for any putative or certified class in their case to include users of Paycor's Perform Time service." (*Id*. at 3). And

-5-

lastly, Plaintiffs repeatedly emphasized the fact that the "Perform Time timeclocks at issue here store fingerprints, while the [*Ragsdale/Bolds* lawsuit] timeclocks store handprints." (*Id*. at 7; *see also id.* at 4). The Court agreed with Plaintiffs, ruling as follows:

> Here, it is apparent that the plaintiffs, legal issues, and factual circumstances in the state proceedings materially differ from those in this federal case. Again, ***in this case, the First Amended Class Action Complaint alleges Plaintiffs were required to scan only their fingerprints, not their hand geometry***, with a biometric timeclock to authenticate and track time worked. ***Plaintiffs Bolds and Ragsdale, in their Consolidated Amended Class Action Complaint*** without plaintiff Cully, who was similarly positioned to Plaintiffs, ***allege that, during their employment, they were required to scan their hand geometry, not their fingerprints***, **with a different biometric timeclock**. In light of the differing allegations between the two cases, . . . the Court is persuaded by the argument that the state proceedings may not dispose of the claims in this case[.]

(Dkt. 99 at 13) (emphasis added).

Plaintiffs cannot now be permitted to represent and send notice to people who they have conceded they do not represent, cannot adequately represent, and who are not similarly-situated to them or even included in their lawsuit, by their own admission, and by the Court's own ruling. *See supra*. In fact, Plaintiffs are judicially estopped from seeking to represent hand geometry or "other biometric" Plaintiffs at this juncture. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (parties may not "prevail[] in one phase of a case on an argument and then rely[] on a contradictory argument to prevail in another phase"); *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013).

There is no confusion on the scope of Plaintiff Barron's class, as made clear by his proposed Notice of Class Action Lawsuit (Dkt. 181-1), which states that Plaintiff's claims, and the class he seeks to notice, are limited to Perform Time timekeeping users. Section 2 of the Proposed Notice asserts that the lawsuit is about Plaintiff Barron's claims that "Paycor captured, collected, received or otherwise collected your fingerprints . . . **when you used a Perform Time timekeeping system** while working in Illinois." (Dkt. 181-1, p. 2 of 4) (emphasis added).

LEGAL\78403857\1

The purpose of notice is to provide the "best notice that is practicable" under the circumstances. Fed. R. Civ. P. 23(c)(2)(B). When it is *undisputed* that the Perform Time clock is capable *only* of finger scans, it is certainly not the "best notice" to use a class definition that includes "hand geometry" or "other biometric data." This issue was raised in the June 12, 2025 meet and confer, and class counsel inexplicably would not agree to ask the Court to remove those terms from the class definition or from the class notice. The result of this would be confusion and false claims by individuals who did not use a finger-scan Perform Time clock but may have used one of the many other models or brands of timeclocks Paycor offers. Class counsel intends to send notice to all potential class members and host a class website accessible to all potential claimants. The inclusion of "hand geometry" or "other biometric data" in that notice serves no purpose other than to increase the number of false claims.

Any notice sent to non-Perform Time clock users in this case runs afoul of the *Colorado River* doctrine, Plaintiff's pleadings, and the Court's prior orders. Most importantly, Paycor won summary judgment with respect to the AOD timeclock users in state court—those using the hand-scan or "hand geometry" timeclocks—because the *Ragsdale/Bolds* plaintiffs failed to prove that Paycor collected or possessed those plaintiffs' hand scan data or violated BIPA in any manner. (Ex. 3, *Ragsdale/Bolds* Summary Judgment Op. & Denial of Mot. to Reconsider). That ruling is now on appeal, and simply cannot be the subject of class notice here.

### 2. Those Who Consented to Using Paycor's Finger-Scan Timeclocks Cannot Receive Class Notice

BIPA does *not* outlaw the collection or use of biometric data. Instead, the "heart of BIPA" is an "informed-consent regime," *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020), "vest[ing] in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent,"

*Rosenbach v. Six Flags Entm't Corp.*, 129 N.E.3d 1197, 1206 (Ill. 2019). Simply put, no one who consented to the collection and use of their finger-scan data belongs in the class.

Plaintiffs themselves recognize this limitation, as again, their Proposed Notice states that their claims include only those who used a Perform Time timekeeping system that allegedly collected their finger-scans "but did so without first providing you with legally-required written disclosures and obtaining your informed written consent." (Dkt. 181-1, Section 2). This is not a defense – if a consent was signed, there can be no BIPA violation in the first instance. It has never been disputed that "Paycor implemented BIPA-compliant embedded consent on its Perform Time timeclocks beginning in April 2021, and fully completed the process as of October 18, 2021." (Ex. 4, Original Decl. of David Goodwin, ¶ 27, Ex. 8). That consent, reprinted below, provides:



As a result, the class has a hard cut-off date of October 18, 2021, when it is undisputed that Paycor fully implemented this BIPA-complaint consent. (Ex. 4, Orig. Decl. of David Goodwin, ¶ 27). No one who signed a consent embedded in the Paycor timeclock screen before first using the timeclock is included in Plaintiff's lawsuit, and none of these individuals have ever been "counted" as part of the class.

Providing notice to anyone who ever used a Perform Time clock—which is precisely what Plaintiff's class definition in the proposed notice purports to do—would sweep in an extremely

overbroad class and cause rampant confusion when curative notices are inevitably sent, or the class definition altered/amended based on Paycor's contemporaneously-filed motion.

### 3. Those Who Expressly Released Claims Against Paycor Cannot Receive Class Notice

Paycor is reviewing state and federal court filings to determine how many of Paycor's customers' employees also signed or agreed to settlements/releases of any BIPA claims against their employers that also included a release of Paycor. Those individuals' claims against Paycor have been released as a matter of law, and they cannot be included within the class or receive class notice. *See Osborne v. WeWork Companies, Inc.*, No. 1:19-cv-08374, 2022 WL 972320, at *4-5 (N.D. Ill. Mar. 31, 2022). To date, Paycor has identified one settlement agreement between a Paycor customer and its employees that contains an express release of Paycor, and which proceeded to final approval and judgment. A copy of this agreement is attached as Ex. 5, and can be judicially recognized. *Id*. Paycor anticipates that additional such settlement agreements exist and it is working diligently to locate all such agreements.

### 4. Those Who Did not Work in Illinois and Who Did not Have Finger-Scan Data Collected Cannot Receive Class Notice

As stated above, Paycor continues to undertake significant efforts to create the class list. *See*, *supra* at pp. 3-4. Earlier, for mediation purposes, Paycor estimated the class size by counting the number of employees by ▮▮▮▮ where the employee had an Illinois tax deduction on their paystub, and that individual employee had punches via a Perform Time timeclock during the relevant timeframe. (Ex. 1, ¶¶ 7-8). The employee count did not indicate whether these employees actually used finger-scans as part of the timekeeping process, or ever enrolled the finger-scan template necessary to use finger-scan timekeeping. With the new dataset, Paycor was able to generate a more precise list of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and has used that data, combined with other data, to create a

list of 2,968 ████████ ████████████████████████████████████████████. (*Id*. at ¶¶ 12-14).

The time Paycor has spent and continues to spend on this analysis is an important step in providing the best practicable notice to class members, because if an individual did not have a finger-scan template enrolled in a Perform Time timeclock, they cannot have had their "fingerprints . . . collected, captured, received, or otherwise obtained or disclosed by [Paycor]'s Perform Time biometric timekeeping system" (Dkt. 181-1 at 2). They are not within the class, and should not receive notice.

Given the overbreadth of the class definition, the need to further refine and reach out to only those customers' whose employees fit the actual class definition, and the outstanding related legal issues, the Court should not approve Plaintiff's class notice and notice plan now. Paycor is working diligently to prepare the class list, but doing so will take time. It is unreasonable for Plaintiff Barron to expect Paycor to complete in just seven days a process that it estimated will take at least two and a half months, and which continues to advance, after extensive data analysis. . (Dkt. 178; Ex. 1).

Class scope is no trifling issue. Just last week, Justice Kavanaugh emphasized that the "consequences of overbroad and incorrectly certified damages class actions can be widespread and significant." *Laboratory Corp. of America Holdings v. Davis*, No. 24-304, 605 U.S. __, 2025 WL 1583302, at *3 (U.S. June 5, 2025) (Kavanaugh, J., dissenting from the dismissal of the writ of certiorari as improvidently granted). He explained:

> Classes that are overinflated . . . raise the stakes for businesses that are the targets of class actions. Overbroad and incorrectly certified classes threaten massive liability —here, with potential damages up to about $500 million per year. That reality in turn can coerce businesses into costly settlements that they sometimes must

> reluctantly swallow rather than betting the company on the uncertainties of trial.
> . . .
> Importantly, the coerced settlements substantially raise the costs of doing business. And companies in turn pass on those costs to consumers in the form of higher prices; to retirement account holders in the form of lower returns; and to workers in the form of lower salaries and lesser benefits. So overbroad and incorrectly certified classes can ultimately harm consumers, retirees, and workers, among others. Simply put, the consequences of overbroad and incorrectly certified damages class actions can be widespread and significant.

*Id.* at 3. Against this backdrop, the benefit of refining the class definition before sending out notice is overwhelming compared to the negligible (if any) drawback of holding off for now.

### B. Paycor's Rule 23(f) Petition Weighs Against Proceeding with Class Notice

As Paycor has already informed the Court, it intends to file a Rule 23(f) petition asking the Seventh Circuit for permission to appeal the certification decision. In such situations, "the district court should ordinarily stay the dissemination of class notice to avoid the confusion and the substantial expense of renotification that may result from appellate reversal or modification after notice dissemination." *Manual for Complex Litigation* § 21.28 (4th ed.). To be clear, what Plaintiffs are asking the Court to do—*i.e.*, proceed with class notice in the face of a party exercising their right to seek further review—is "rare[ly]" done. *See Newberg and Rubenstein on Class Actions* § 8:11. When a party has indicated that it will exercise its right to appeal a certification decision, "courts sensibly delay sending notice of class certification" because "[n]otifying the class in those circumstances could then require re-sending notice if the appellate court reverses, a situation that is likely to cause confusion." *See id*. The Court should follow that standard practice here, too.

BIPA litigation is still fairly young,[1] but the emerging pattern in how to best balance the class list and notice process on the one hand with the defendant's right to seek further review of a certification decision on the other aligns with the general rule in the treatises above. Consider two recent examples from the Northern District of Illinois: *Svoboda v. Amazon.com, Inc.*, No. 21-cv-05336, and *Tapia-Rendon v. United Tape & Finishing Co.*, No. 21-cv-3400. In *Svoboda*, the Court certified a class on March 30, 2024, yet the plaintiffs did not file a motion to approve class notice until January 9, 2025. (Dkt. 291, 366). Recognizing the inevitable inefficiencies of jumping the gun on class notice, the Court "defer[red] setting a deadline for Plaintiffs to file a motion to approve class notice until resolution of the pending motion for reconsideration and any Rule 23(f) petition." (Dkt. 304). Although the Court ordered Amazon to produce class data, the parties agreed that Amazon should have **two months** from the entry of the order to do so. (Dkt. 316). Similarly, in *Tapia-Rendon*, the Court certified a class on August 15, 2023, and although the plaintiffs moved for notice approval about a month later, the Court did not approve the class notice until February 28, 2024. (Dkt. 167, 171, 198). Even then, the Court stayed "further proceedings regarding the identification of class members and the sending of notice . . . pending the Seventh Circuit's ruling on" the defendant's Rule 23(f) petition. (Dkt. 198).

It should come as no surprise that both judges in these cases wanted to hold off on sending out class notice until the defendant's motion for reconsideration of class certification and any resulting Rule 23(f) petition were resolved. After all, the last thing anyone wants to do is create widespread confusion (by sending out curative notices) or unnecessarily compromise "individuals' privacy who may not ultimately belong to the class." *See, e.g.*, *Brown v. Wal-Mart Stores, Inc.*,

---

[1] Megan L. Brown, et al., *A Bad Match: Illinois and The Biometric Information Privacy Act*, Inst. for Legal Reform, https://instituteforlegalreform.com/research/ilr-briefly-a-bad-match-illinois-and-the-biometric-information-privacy-act/ (observing that "hardly any lawsuits were filed under BIPA until 2016" and that "BIPA lawsuits . . . became a flood in 2019").

No. 5:09-CV-03339-EJD, 2012 WL 5818300, at *4 (N.D. Cal. Nov. 15, 2012) (stating that a "curative notice would not be sufficient to stem the confusion that would arise in the event of a change to the class definition or decertification of the class altogether" and that "[d]isclosing [class members'] sensitive personal information . . . unnecessarily risks the intrusion of individuals' privacy who may not ultimately belong to the class, if any class remains"); *Fernandez v. RentGrow, Inc.*, No. JKB-19-1190, 2022 WL 1782641, at *4 (D. Md. June 1, 2022) (stating that "proceeding to issue class notice at this time risks confusing class members" and that the "burden of issuing a curative notice, a proposal that [plaintiff] raises in response to this concern, is simply too high . . . [to] somehow be the more efficient option").

### C. Class Notice As Proposed Is Deficient and Must Be Corrected

Finally, the Class Notice itself is deficient and cannot be approved as drafted. Plaintiff's counsel did not discuss the proposed Class Notice contents with Paycor's counsel prior to filing their Motion as is customary when seeking court approval of class notice. (Dkt. 181, 181-1). Nevertheless, prior to filing this Opposition, Paycor met and conferred with Plaintiff's counsel on June 12, 2025, to discuss edits to the Class Notice, including the class notice definition, to exclude "hand geometry or other biometric data" from the class definition for notice purposes, and to incorporate the consent and release principles set forth above. Plaintiff's counsel would not discuss those issues until after this response was filed.

Prior to the June 12 meet and confer, Paycor's counsel provided Plaintiffs with proposed revisions to the proposed Class Notice, a redlined version of which is attached as Ex. 6. Among other items, the revised Class Notice:

- Proposes the changes outlined above to the class definition for purposes of class notice;

- More fully states Paycor's defenses and the current procedural posture of the case, including Paycor's intended Rule 23(f) appeal;

- Corrects or eliminates statements regarding attorneys' fees and damages, as unnecessary, inaccurate and premature for the purposes of Rule 23(c)(2)(B) notice;

- Properly directs questions and exclusions to the Notice Administrator proposed in Plaintiff's notice motion.

(*See*, Ex. 6). All of the above changes and additional revisions are intended to meet the requirements of Fed. R. Civ. P. 23(c)(2)(B). The current notice exceeds or does not conform with these requirements, and the Parties intend to meet and confer after the filing of this response so that any agreed-upon revisions can be presented to the Court, and any disputed provisions highlighted. While this process is ongoing, Class Notice cannot issue.

Additionally, Plaintiff's notice motion indicates that a third-party Notice Administrator will be used to send any Class Notice and to address exclusion requests and correspondence. (Dkt. 181, ¶ 11). Plaintiffs' counsel had previously advised the Court during the April 30, 2025 status conference that the any class list would be sent directly to the Notice Administrator, not to Class Counsel. Paycor submits that this process should be adhered to given the confidential nature of the information contained on the class list, and the fact that class members may choose to exclude themselves and not be represented by Class Counsel. Finally, the notice motion assumes the existence and use of personal email addresses, which Paycor has already advised the Court are unlikely to exist. Any Order should indicate that personal email addresses will be provided and used where available.

Plaintiff's notice motion further misstates the provisions regarding client consent to providing employee contact information, claiming that Paycor's contractual obligations can be overcome by a Court order requiring Paycor to extract and provide customer's employees' names, addresses and emails without client consent. As Paycor's status report makes clear, that is not

-14-

true. *See,* Dkt. 178. Plaintiffs cite to no language stating that a Court order would permit it to share its clients' employee information. In any event, as the Court acknowledged during the June 4 status hearing, even if the Court issued such an order, Paycor would still need to advise its customers whose employees are on the class list, and provide them with an opportunity to object to providing the information, or more likely, to insist that the information be provided directly to a Notice Administrator, and subject to protective order provisions setting forth confidentiality protections and limitations on use of the information to this lawsuit only.

And finally, Paycor reiterates its objections to the timing of production of any class list in seven days, and sets forth its continuing attempts to refine the class list and the challenges it faces in doing so, in Ex. 1, the Supplemental Declaration of David Goodwin. These good faith efforts should be permitted to continue without rushing the production of inaccurate class list information., while the issues Paycor has raised about the class are addressed.

## CONCLUSION

For the reasons set forth herein and in the accompanying motion to alter/amend the class definition, Paycor respectfully requests that the Court either deny without prejudice Plaintiff Juan Barron's motion for approval of class notice and notice plan or hold the motion in abeyance pending resolution of these issues and Paycor's forthcoming Rule 23(f) petition.

Dated:  June 12, 2025                                             Respectfully Submitted,

                                                                         **PAYCOR, INC.**

                                                                 */s/ Melissa A. Siebert*

                                                                  Melissa A. Siebert
                                                                  Corey T. Hickman
                                                                  COZEN O'CONNOR
                                                                  123 N. Wacker Dr., Suite 1800
                                                                  Chicago, IL 60606

LEGAL\78403857\1

                                                             (312)-474-7900
                                                           msiebert@cozen.com
                                                           chickman@cozen.com

                                                           *Attorneys for Defendant Paycor, Inc.*

LEGAL\78403857\1

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk via the Court's CM/ECF system, which will notify all counsel of record.Payc

*/s/ Melissa A. Siebert*

LEGAL\78403857\1