```
                    IN THE UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF ILLINOIS


KELLIN JOHNS, et al,       )
                           )
          Plaintiffs,      )
                           )
v.                         )  No. 20-cv-00264
                           )  East St. Louis, Illinois
PAYCOR, Inc.,              )
                           )  STATUS HEARING
          Defendant.       )



                        TRANSCRIPT OF PROCEEDINGS
                 BEFORE THE HONORABLE DAVID W. DUGAN

                             June 4, 2025


APPEARANCES:

FOR THE PLAINTIFF:    MS. CATHERINE MITCHELL DUFFY


FOR THE DEFENDANT:    MS. MELISSA A. SIEBERT
                      MR. COREY THOMAS HICKMAN
```

Erikia Schuster, RPR
IL CSR #084-00
750 Missouri Avenue
East St. Louis, IL  62201
618-482-9226
Erikia_Schuster@ilsd.uscourts.gov

*Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription.*

```
 1                (The hearing commenced at 3:05 p.m.)
 2                COURTROOM DEPUTY:  We're now on the record in Case
 3    No. 20-CV-264, Johns, et al, versus Paycor, for a status
 4    conference.  Will the parties please identify themselves for
 5    the record?
 6                MS. DUFFY:  Good afternoon, Your Honor.  Catherine
 7    Duffy on behalf of the Plaintiffs.
 8                THE COURT:  Good afternoon.
 9                MS. SIEBERT:  Good afternoon, Your Honor.  Melissa
10    Siebert and Corey Hickman on behalf of Paycor.
11                THE COURT:  Good to see all of you again.  I'm
12    following up here on my text order of April 30, 2025.  At that
13    time, I ordered a couple of things.  One is report
14    contemplating merits.  We'll get to that, but more important
15    than anything is if you made any headway on the possibility of
16    mediation.  Have you made any headway in that regard?
17                MS. DUFFY:  Your Honor, I can field that first.  I
18    believe Defense counsel had raised that possibility at our
19    last status hearing.  We have not heard from them about it at
20    all since.  Obviously, Plaintiffs are always ready, willing
21    and able to discuss potential mediation or settlement.  I do
22    think we need to resolve the class notice situation and issues
23    first.  The parties had mediated this case in the past.  I
24    think we would be willing and open to revisiting that with our
25    previous mediator at the appropriate time, but I think our
```

```
 1  position at least for today is that we probably need to
 2  resolve the class notice issue first before we go to mediation
 3  or discuss settlement at this point.
 4            THE COURT:  Ms. Siebert, what are your thoughts?
 5            MS. SIEBERT:  We would like to do a settlement
 6  conference.  I think it is pretty clear that we are not -- I
 7  think we would benefit from that which is why we requested it,
 8  and it is probably on me.  I've had two college graduations in
 9  the last month.
10            THE COURT:  Congratulations.
11            MS. SIEBERT:  Thank you.  They've successfully
12  somewhat launched, and it's just been a crazy personal month
13  for me, but our intent is still to try to do a settlement
14  conference this summer.  I think we've -- we are not
15  interested in going back to a private mediator.  We really
16  think that a court settlement conference might be more
17  appropriate here given how far apart we were last time.
18            THE COURT:  I'm looking at Document 171, which is my
19  text order.  It says the parties are further directed to meet
20  and confer on the timeline potentially within six to eight
21  weeks presenting the case to a magistrate judge for a
22  settlement conference.  So I assume that meet and confer did
23  not take place?
24            MS. SIEBERT:  It hasn't happened yet.  Obviously, it
25  should happen, and that is on me, and again, I am not hearing
```

1     that that is going to be successful, but we're happy to get --
2            THE COURT:  I don't know that it is on you because
3     the parties -- that means both sides -- are directed to do
4     this.  I'm just a little bit flabbergasted that we're just
5     disregarding these orders that I write.  That is a concern of
6     mine, but if it is not going to do any good to go to
7     mediation, that is fine.  The only reason I ordered that is
8     because I thought the parties, both parties, even though it
9     may have been brought about by Defense counsel, but both
10    parties, had an interest in doing this.
11            And so, you know, it doesn't happen very often when I
12    go to the trouble of writing something up that people just
13    ignore it.  That, I'm not fond of.
14            MS. SIEBERT:  I appreciate that, Your Honor, and I
15    apologize.  We have been very focused on the other part of
16    your order and our communications with the client, which is
17    the class list.
18            THE COURT:  Where are we on that?
19            MS. SIEBERT:  We've made significant progress on
20    that.
21            THE COURT:  That is a bit amorphous.  Tell me what
22    you mean by significant.
23            MS. SIEBERT:  Exactly.  What I'm about to say, some
24    of the numbers that I'm going to be talking about are in the
25    sealed report that we sent to you and so we'll probably -- I

1  don't see anyone on this call that is not a court member or
2  us, but we may want to seal the transcript depending on what
3  we're talking about. I'm going to talk about some of that
4  information now.
5              THE COURT: You don't need to reiterate the report.
6  I've got that.
7              MS. SIEBERT: We have some different numbers, and we
8  want to talk to you about what we've done so far.
9              THE COURT: Very good.
10             MS. SIEBERT: We have made significant progress in
11 identifying unique employee IDs, which would be connected then
12 with people and their names and addresses, where we can narrow
13 down that they worked in Illinois at a client that had
14 purchased or leased a finger scan time clock. We don't
15 have -- our systems, the reporting systems, are set up for
16 payroll so we don't have a record that we can easily run of
17 this person on this, during the time frame of the class,
18 actually used the finger scan attachment. We don't have any
19 records of that.
20             What we have done is go back person by person and see
21 if we have worked in tax code for Illinois. That means that
22 they actually worked in Illinois at a customer that had a
23 finger scan time clock, whether or not they were using the
24 finger scan attachment or not. We have narrowed down the
25 class then from 15,178 people potential class to 11,620 just

```
 1   by focusing on this detailed tax code person by person as to
 2   whether they ever worked in Illinois.  Why is that the case?
 3   Because we might have a customer in Illinois with an Illinois
 4   billing address, but they don't have actual people using those
 5   time clocks in Illinois, and so we went back to tax codes and
 6   we're trying to narrow down that class.  That also narrowed
 7   down our customer base from 256 to 212, which is important
 8   here because as we've told you we don't think we can take the
 9   next step of gathering employee name and address without
10   customer permission.
11          We've also clarified current and former customers.
12   Why are we doing that?  Because for current customers we can
13   look in our systems based on unique employee ID, not look at
14   any templates, and just see if we have a template for an
15   employee ID, just to see if there's an indication.  Templates
16   are what is at issue here.  It is the conversion of a finger
17   scan into something that is in a time clock.  And so we have
18   begun the process of looking through our active customers, of
19   which there are 93, person by person to see if we have a
20   template.  That's our best indicator as to whether a customer,
21   even an active customer, actually used the finger scan
22   attachment.
23          For former customers, we're going to have to start
24   reaching out to the 113 lost clients for two pieces of
25   information.  Number one, did they activate the finger scan?
```

1  Because you're only in the class if your purported biometric
2  information was collected, used or stored.  And what period of
3  time did they use it?  We know for a fact from our
4  representation of other timekeeping technology companies and
5  Paycor that many customers in Illinois turned off finger
6  scanning or did not enable it during COVID.  Employees did not
7  want to touch it and customers didn't want to get involved in
8  it.  So we now have to go back and narrow down that timeframe.
9              THE COURT:  Have you passed all of this information
10 along to Ms. Duffy or Mr. Hickman?
11             MS. SIEBERT:  Well, Mr. Hickman is on the defense.
12             THE COURT:  I'm sorry.  I'm just looking at names
13 across the top.  Ms. Duffy's firm, I should say.
14             MS. DUFFY:  No, your Honor.  We haven't received any
15 of this information.
16             MS. SIEBERT:  No, Your Honor.  Because we are still
17 doing these processes.  We have nothing to report yet until we
18 reach out to the customers.  We are separately going through
19 the 212 customers to look through any BIPA class action
20 settlements to see if we are specifically released in those
21 class action settlements because clearly employees of
22 customers who released any BIPA claims as to us are not
23 properly included in this class.  And finally, we've started
24 to go unique employee ID by consent.  Remember, we produced
25 over 3,000 documents, many of them were consents, BIPA

```
 1  compliant consents, that include us in that consent.
 2          Again, there is an issue here that goes back to the
 3  class definition, meaning you're not in a class, a BIPA class,
 4  with an actual claim simply because you used a finger scan
 5  time clock.  BIPA doesn't prohibit that.  It just prohibits or
 6  regulates --
 7          THE COURT:  Let me tell you what my initial reaction
 8  is, I think you're playing with fire here.  You're making
 9  these judgments on the front end as to not just class
10  membership but defenses and excluding people based upon
11  defenses, and I have a concern, a genuine concern for you, Ms.
12  Siebert, that this is a problem.
13          Ms. Duffy, I don't want to over speak, but maybe that
14  is the Plaintiff's lawyer in me that is still left that that
15  is a concern of mine, but Ms. Duffy, I want to hear from you
16  what your concerns are.
17          MS. DUFFY:  Yes, Your Honor.  As I said, this is the
18  first time we're hearing this.  We were under the impression
19  that this class size was solid.  We've been working for many
20  years under the impression that we had over 14,000 people.
21  We're not sure now why or how that number has changed so
22  drastically but we agree with Your Honor.  I feel like this is
23  an attempt to cut down the class size arbitrarily without any
24  basis to do so.
25          The class that has been certified is any individual
```

1  who used this particular timekeeping system.  It has nothing
2  to do with potential, valid or invalid consents, settlement
3  agreements or anything like that.  So we do think that these
4  are improper bases that she's trying to apply to limit or
5  narrow the class size here.
6           MS. SIEBERT:  Your Honor, if I may.  The drop from
7  15,000 to 11,620, is because those are the only employees who
8  actually used a time clock in Illinois, actually punched.
9  We've looked.  We can see they punched to a department in
10 Illinois.  The remaining difference never did so.  They just
11 worked for an Illinois-based company.  They are not valid
12 class members.  That is not a defense.  That's by the
13 definition of the class; all individuals working in the state
14 of Illinois.
15          We went to the worked in tax and there were 4,000
16 people that did not work in Illinois, and there were 44
17 clients who did not have anyone working in Illinois.  They
18 cannot possibly be within the class definition, and we are
19 entitled to determine that because we want to give accurate
20 notice.  There is no reason why --
21          THE COURT:  I'm not sure if you're entitled to make
22 that determination.  I think that is probably the Court's job
23 eventually to make that determination, and that is my fear for
24 you.  You're taking my role on to determine individuals who
25 are included in the class and who are not potentially included

1  in this class, and my worry, quite frankly, is that if you're
2  wrong -- well, it is significant.  I've never seen it handled
3  quite this way to include or exclude potential class members.
4  It is not to say it's never been done before.  I've never seen
5  it done quite this way up front on the front end.
6          So maybe, maybe the best way -- I have had the threat
7  of appeal shot across my bow.  You're not the first, don't
8  worry about it.  My inclination is to simply -- I can tell you
9  that my inclination is to deny your motion to reconsider, but
10 my second inclination is to enter an order soon.  You can
11 appeal if you want, but I'm going to put an order in place
12 about my concern about nondisclosure of these individuals.
13         A major concern of mine is the speed or the lack of
14 speed at which this is going forward.  Originally, it was two
15 and a half months.  Now we're still digging deeper and deeper
16 into the muck of, gee, we can't do this and we can do that,
17 and you're still worried about breaching agreements, and I can
18 enter an order telling you to do it.  I've done this before,
19 entered an order telling you to produce it and then give you
20 time to notify the vendors or your customers and if they want
21 to come and enter an appearance and take up the flag for the
22 privacy rights, if they can, of their employees then they can
23 do that.  And if they don't in a given period of time then
24 you're going to turn the documents over.  I've seen this done
25 before.  That is not something I think has been done in this

```
 1   case.  Am I right in that, Ms. Siebert?
 2              MS. SIEBERT:  That's correct.
 3              THE COURT:  Is there a reason why you wouldn't do
 4   that?  At least it takes you off the hook to a certain degree
 5   if you tender to them the opportunity to step in and defend on
 6   their employees' behalf their rights to privacy, if any, to
 7   simple things like names and addresses.  Is there any reason
 8   at all?
 9              MS. SIEBERT:  There's not, but I want to be clear,
10   the class definition as of right now, forget any defenses, is
11   all individuals working in the state of Illinois.  We have
12   established that there are only 11,620 people who meet that
13   definition, that may not -- that is just a fact.  And if we
14   need to put into how we got to our count and report that back
15   to the Court.  We are not inclined to put people who never
16   worked in Illinois who are not then in this class definition
17   in the class, and we still have to respond to Plaintiffs'
18   notice plan.  We have a response right.  One of the things --
19              THE COURT:  Another thing that I see happening in
20   these cases is because it is a process, not an event, when you
21   disclose or at least uncover the names of these individuals is
22   to disclose what you do have with the caveat that you're still
23   investigating other potential members of the class.  Instead
24   of waiting for all of it to come in and then give it in one
25   mass amount to Plaintiffs, that -- I'm not sure why it hasn't
```

```
 1   been done in this case either.  I've seen it done that way
 2   where it is given as they discover names and with the caveat
 3   that there may be more coming, but what I'm hearing is that
 4   now you're telling us how many names that you have but you
 5   haven't done anything with those names.
 6           MS. SIEBERT:  I don't have any names.
 7           THE COURT:  Identifiers.
 8           MS. SIEBERT:  I have unique identifiers that can
 9   easily be converted into a name and an address, less likely to
10   an e-mail.  I appreciate that, Your Honor, but I also would
11   like a little more time to respond to the class notice plan.
12   We're supposed to be responding tomorrow.  We wanted to hear
13   what your thoughts were about that.  Obviously, our position
14   is we should not get into class actually issuing notice, which
15   is different than the class list -- I appreciate that -- until
16   the issue of class certification and our summary judgment
17   motion and the timing of that are resolved.  And as you've
18   said, you're likely to deny that motion and as we've said
19   we're likely to appeal it, and we have -- -
20           THE COURT:  No offense, but if every time I had that
21   threat made to me I wouldn't get anything done.
22           MS. SIEBERT:  I hear you, Your Honor, but the answer
23   is some of this is the order --
24           THE COURT:  Why didn't you not just appeal it when I
25   issued the order?  If you're that convinced of it you should
```

```
 1   have done it then and we wouldn't be here dealing with this.
 2              MS. SIEBERT:  Because we would prefer working with
 3   you to have you reconsider the decision to terminate the
 4   summary judgment motion and delay or vacate the class
 5   certification order until these key issues about who is
 6   actually in this class as a matter of law are decided.
 7              THE COURT:  Yeah.  Well, I tell you what I'm going to
 8   do -- Ms. Duffy, did you want to add anything?  I don't want
 9   to exclude you.
10              MS. DUFFY:  No, I appreciate that, Your Honor.  I
11   don't have anything to add.
12              THE COURT:  Well, this is not going the way I had
13   hoped initially.  I thought my order would be complied with,
14   that there would be some discussion about what the defense
15   brought up in this case.  My inclination is this; I think I'm
16   going to issue an order denying the motion to reconsider.  Ms.
17   Siebert, you can take it to the Seventh Circuit.  When you
18   come back, we will be waiting to see what they in their wisdom
19   say.  We'll just see how that plays out, all right?
20              Any other thing we can discuss while we're here
21   together now?
22              MS. SIEBERT:  Your Honor, would you like us to
23   respond to the motion for Court approval of the class notice
24   in the notice plan because we would appreciate another seven
25   days to do that based on what you're saying here.  We were
```

1   waiting to see if we had an opinion from you on the motion to
2   reconsider.  I'm not surprised by your decision.
3            THE COURT:  Ma'am, you know motion to reconsiders
4   don't get high priority.  We've already spent and invested a
5   lot of time and resources in making a decision the first time.
6   In motions to reconsider, unless there is something that is
7   appropriately brought up, and as you know motions to
8   reconsider are not favored, not just by me but those good
9   folks in the Seventh Circuit, we don't give them a lot of
10  priority unless there is something done because we have other
11  matters.  So I'm not going to redouble our efforts in this.
12  So if you want to file a response by tomorrow, you can file a
13  response.  It doesn't matter.  I'm going to give you the
14  option to do whatever you want to do, but I'm going to go
15  ahead and enter an order on the denial as soon as we get it
16  together and then you can do what you need to do.
17           MS. SIEBERT:  May we have an additional seven days
18  for our response on the class notice plan?
19           THE COURT:  That is fine.  Seven days, you got it.
20           MS. SIEBERT:  Thank you.  I appreciate that.
21           THE COURT:  Anything else?
22           MS. DUFFY:  Not from Plaintiffs, Your Honor.  Thank
23  you.
24           THE COURT:  All right.  Have a good day.
25           (The hearing was adjourned at 3:26 p.m.)

```
 1                    REPORTER'S CERTIFICATE

 2                   *   *   *   *   *   *   *

 3     I, Erikia T. Schuster, RPR, Official Court Reporter for the

 4  U.S. District Court, Southern District of Illinois, do hereby

 5  certify that I reported with mechanical stenography the

 6  proceedings contained in pages 1-15 and that the same is a

 7  full, true, correct and complete transcript from the record of

 8  proceedings in the above-entitled matter.

 9

10  /S/ Erikia T. Schuster                    6/13/2025
    IL CSR, RPR
```