**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KELLIN JOHNS and JUAN BARRON,** individually and on behalf of all others similarly situated, *Plaintiffs,* v. **PAYCOR, INC.,** *Defendant.* | Case No. 3:20-cv-00264-DWD Judge David W. Dugan |

**PLAINTIFF JUAN BARRON'S MOTION TO COMPEL**

## I.      INTRODUCTION

1.      On November 7, 2025, the Parties submitted their Joint Written Discovery Report ("JDR"). (Dkt. No. 234)

2.      On November 13, 2025, the Court found that the Parties' JDR complied with the Court's Case Management Order and directed the Parties to continue to meet and confer in good faith with an eye towards resolving all discovery disputes without the Court's involvement. (Dkt. No. 235) The Court also granted the Parties leave, if necessary, to file a motion to compel. (*Id.*)

3.      Thereafter, the Parties exchanged dozens of emails and met and conferred on November 13, 2025.  Catherine Mitchell, Ryan Stephan, James Zouras, Justin Caparco and Brendan Duffner appeared for the Plaintiffs and Melissa Siebert, Max Kaplan and Brian Browne appeared for Paycor.

4.      Due to these efforts, the Parties were able to resolve several outstanding disputes.

5.      However, the Parties were unable to resolve others.  For the reasons that follow, this Court should compel Defendant to produce the following three categories of responsive

1

information and documents, all of which call for highly relevant, non-privileged information at no undue burden or expense, within 14 days:

    a. The name(s), description and documents related to all software programs used in connection with the biometric devices during the relevant time period.

    b. Discovery, including documents, related to the servers, databases and/or cloud systems where Paycor has stored Plaintiff's and class members biometric identifiers and biometric information; and

    c. The protocols, policies, procedures and/or processes followed by Paycor to delete and/or purge Plaintiff's and class members' biometric identifiers and biometric information.

## II.    <u>RELEVANT BACKGROUND</u>

6. This case was filed on January 29, 2020. Plaintiff issued written discovery on October 9, 2020. In its initial interrogatory responses submitted on November 20, 2020, Paycor denied that its time clocks collected, captured, obtained, received or otherwise use biometric information. *See* Dkt. No. 234-2, at November 2020 Answer to Interrogatory No. 7.[1] Thereafter, on January 14, 2021, Plaintiff deposed Defendant's Director of Product Development, Mitri Dahdaly. Dahdaly testified, in direct contradiction to Defendant's discovery responses, that Paycor not only had biometric clocks that scanned users' fingerprints, but also that the users' biometric templates are stored on the devices themselves and also "transmitted back to Paycor" through Paycor's network and corresponding device software via a network or internet connection. (Ex. A Dahdaly Tr. at 54:9-24; 55:15-20). Dahdaly further testified that Paycor hosts class

---

[1] Tellingly, Paycor failed to verify its Answer's to Plaintiff's Interrogatories, as required by Federal Rule of Civil Procedure 33(d), until October 31, 2025.

members' biometric data on its own databases, and/or on its third-party cloud-hosting vendor, Microsoft's Azure databases. *Id.*[2]

7.    Paycor is continuing to withhold relevant and responsive documents and information. Only after its own witnesses testified that Paycor's interrogatory answers were wrong and after Plaintiff's counsel engaged in extensive Rule 37 efforts, did Paycor first start to begrudgingly produce information and documents that should have been produced years earlier. For example, on October 31, 2025—more than five years into this case—in its Supplemental Answer to Interrogatory 7, Paycor for the first time formally identified its Paycor Time Software and referenced seven pages of network diagrams. *See* Dkt. No. 234-7, at p. 16, 10/31/25 Supplemental Answer to Interrogatory No. 7.  A week later, in Paycor's first ESI custodial production of November 6, 2025, Plaintiff discovered the specifications manual for the Perform Time Clock Service software as well as newly produced network diagrams. (Ex. C JOHNS-PAYCOR00031648 to JOHNS-PAYCOR00031775).  Alarmingly, these documents are *non-custodial* documents that should have been searched for and produced at the outset and in response to Plaintiff's written discovery requests; yet, Paycor withheld these documents for more than five years, and despite the glaring fact that they specifically provide that biometric templates (both fingerprint and facial) are sent to and from the Perform Time devices and Paycor's databases.[3]

---

[2] On December 14, 2024, Plaintiff deposed Defendant's witness, David Goodwin, regarding his declaration submitting with Paycor's opposition to class certification. Goodwin further confirmed that biometric templates of all PTS Users are transmitted to Paycor's cloud servers and/or Paycor's Microsoft Azure servers. *See* Ex. B, Goodwin Tr., at 118-119.  He also testified that Paycor can access, run reports, and/or delete any user data without any client's permission, and did so, for example, when Paycor purged all biometric templates of PTS Users of former customers in August 2018. *Id.* at 66:9-22; 81:22-82:7; 90-91 (testifying that Paycor accessed the Club Fitness database and deleted user data from it without permission).

[3] These software specifications and network diagrams are remarkable not only to show that Paycor collects biometric templates, but also that Paycor tracks the timekeeping devices provided to its customers; the Perform Time System provides two-way connectivity for biometric information to be sent from the devices to the cloud and vice versa; and that Paycor uses third parties, including Microsoft and others to send and store users' biometric information.

## III.    ARGUMENT

8.      As an initial matter, Defendant should be compelled to produce the name(s), description and documents related to all software programs used in connection with the biometric devices during the relevant time period.  Specifically, in Interrogatory No. 7, Plaintiff asked Paycor to Identify and Describe any and all software programs used in connection with any Biometric Device during the Relevant Time Period, including the manufacturer of any such software.[4]  *See* Dkt. No. 234-7, at p. 15.  However, and for example, the Perform Time Clock Service software specification guide seemingly dates back to May 2020, and there is no indication of any dates on the network diagrams.  As such, Paycor's responses to these requests are incomplete as it failed to provide any responsive information or documents for the entire applicable statutory period, namely from January 29, 2015 to May 1, 2020.  As part of the Parties' Rule 37 correspondence, defense counsel indicated that it has been unable to locate any similar specifications or other documents before May 2020.  When asked whether there were earlier versions of the Perform Time Clock Service Specifications (Ex. C) or documents that supported, explained or were related to Paycor's network architectural diagrams (Ex. D JOHNS-PAYCOR00000535 or Ex. E JOHNS-PAYCOR00031011), defense counsel's only response was they have been unable to locate them.[5]  This is troubling in light of the fact that clearly none of these documents were located as part of

---

[4] Plaintiff also requested this information in its Requests for Production Nos.  8 and 20 and Defendant just provided its supplemental response on December 2, 2025. (Ex. F Defendant's First Supplemental Responses and Objections to Plaintiff's First Set of Requests for Production of Documents).  Just like it's Answers to Interrogatories, Defendant failed to provide responsive information for the period of time from January 2015 to May 2020.  Additionally, it should be noted that despite its representations to this Court that it would supplement its November 2020 Responses to Plaintiff's First Set of Requests for Production by October 31, 2025 and later by November 14, 2025, Defendant did not do so until December 2, 2025.

[5] Similarly, when asked how Paycor's Perform Time software performed before May 1, 2020, without a single document, defense counsel refused to provide an answer.  This is more remarkable when you consider David Goodwin's testimony that Paycor first created and rolled out its Perform Time System around 2014. Ex. B at 16-27.

4

Paycor's non-custodial search and production, as well as the implication that no software was in place or existed prior to May 2020, which is an impossibility.  Notably, during the Parties' Rule 37 conference, defense counsel refused to provide details on any efforts taken to search for and find these highly relevant documents.  Accordingly, Defendant should be compelled to conduct a complete search for this Perform Time software information and documents for the entire statutory period or submit a sworn verification averring such information and documents do not exist.

9.      The evidence also shows that Paycor stores Plaintiff's and Class Members' biometric templates on Paycor servers, databases and/or cloud systems, or those provided to Paycor by third parties, such as AWS and Microsoft. (Ex. A at 19:19-21:15; 54:9-24; 55:15-20;[6] Ex B at JOHNS-PAYCOR00031653 and JOHNS-PAYCOR00031683; Ex. D). In Interrogatory No. 13, Plaintiff asks Paycor to identify and describe where and how Paycor stored Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information (*e.g.* identify and describe any and all servers located onsite or identify and describe any and all cloud systems that are offsite).[7] Defendant, however, refuses to identify the specific servers, databases and/or cloud systems, locations or other details where such biometric information has been maintained. *See* Dkt. No. 234 at 16-17.[8] Accordingly, for Plaintiff and all Class Members, Defendant should be ordered

---

[6] Dahdaly testified that "The finger template is stored on the device itself, as well as in our software that's hosted on the Microsoft Azure platform."

[7] Plaintiff has also requested this information in his First Requests for Production Nos. 8, 16 and 29.

[8] In its discovery answers and elsewhere, Defendant claims that its customers, not Paycor, store users' biometric templates in something called "tenant segregated databases." (*See also* Dkts. 162 at 10; 188-3 ¶ 20). The term "tenant segregated database" is undefined, appears nowhere in any document produced in discovery and appears to be a term manufactured solely for litigation purposes.  In any event, Paycor's effort to shift responsibility to its customers not only contradicts the evidence adduced in this case but defies common sense.  Paycor, which designed and developed its Perform Time System, including all hardware, software and storage components, is indisputably the entity which stores class members' biometric templates on its servers and the servers of third parties contracted by Paycor.  When asked if Paycor designed its software to capture biometric templates, Dahdaly testified that "The clock would replicate it back to Paycor for storage purposes." *Id.* at 91:14-18.  Goodwin similarly testified that there are three places

to: (i) provide the specific servers, databases and cloud systems where it sent, stored or maintained their biometric templates and provide the corresponding geographic location(s); (ii) identify which third parties, including, but not limited to AWS, Microsoft, ZKTeco and/or Grosvenor were involved; and (iii) provide all contracts between Paycor and any of these third parties.[9] *See* Ex. F, Request for Production 15 at 28-29) Based on the limited documents produced to date and Defendant's evasiveness, Plaintiff has serious concerns that Paycor has sent and stored his and other class members' biometric information to multiple servers, databases, and cloud systems without their knowledge, which is exactly what BIPA was designed to prevent.

10.    In addition to collecting and storing class members' biometric data, Paycor, in June 2018, implemented a new process for deleting users' biometric data. (Ex. E JOHNS-PAYCOR000000423). Plaintiff, in Interrogatories 14-16 (Dkt. 234 at 17-19), as well as Requests for Production 5 and 12 (Ex. F) asks Paycor to identify and produce the protocols, policies, procedures and/or processes for purging and/or deleting class members' biometric identifiers and biometric information.  On October 31, 2025, Defendant provided supplemental answers stating: "employee templates are automatically and permanently deleted from a customer's dedicated environment after the customer ends its business relationship with Paycor, and terminates its contracts;" that customers "can also permanently delete their employees' templates;" and that since fall of 2021, "when a customer indicates that an employee has been terminated, the employee template is deleted from the customer's Perform Time clock and the customer-segregated environment."  Defendant, however, has refused to provide its policies, practices, technical

---

[9] where biometric data could be sent – one is Paycor's servers in Ohio, the second is Microsoft Azure servers arranged for by Paycor and the third would be in a disaster recovery server maintained by Paycor in Texas. Ex. B at 121.

[9] David Goodwin testified that Paycor puts biometric data onto the Microsoft Azure database per a services agreement. Ex. B at 119-121.  Paycor, however, has refused to produce such agreements.

specifications, meeting agendas, notes, source code, communications or any other materials related to its deletion of employee biometric data.[10]  In fact, the sum of Defendant's entire production on this issue consists of *a single page*.

## IV.    CONCLUSION

For all these reasons, Paycor should be compelled to produce its policies for deleting biometric templates, how it accessed the templates to delete them, the technical specification for purging biometric data, communications related to these deletions, the type of biometric data deleted and when biometric data was deleted, from which customers and for which class members.

Date:    December 15, 2025                    Respectfully Submitted,


By: */s/ Catherine Mitchell Duffy*
Ryan F. Stephan
James B. Zouras
Catherine Mitchell Duffy
Justin Caparco
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
jcaparco@stephanzouras.com

Brandon M. Wise
**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
314-833-4825
bwise@peifferwolf.com

---

[10] Goodwin testified that since 2018, he was part of a cross-functional team that conducted meetings and planned the deletion of biometric data from "lost" clients. He also testified there should be emails, data within Azure Dev Ops and other documents related to the meeting and deletion of biometric data. Ex. B at 144-146.

7

Myles McGuire
Evan Meyers
Brendan Duffner
**MCGUIRE LAW, PC**
55 West Wacker Drive, 9th Fl.
Chicago, Illinois 60601
(312) 893-7002
mmcguire@mgcpc.com
emeyers@mgcpc.com
bduffner@mcgpc.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on December 15, 2025, I filed the attached with the Clerk

of the Court using the ECF system, which will send such filing to all attorneys of record.

*/s/ Catherine Mitchell Duffy*

8