# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

KELLIN JOHNS and JUAN BARRON,
individually and on behalf of all others similarly
situated,

                      Plaintiff,

        v.

PAYCOR, INC.,

                      Defendant.

Case No.  3:20-cv-00264-DWD

Hon. David W. Dugan

**PAYCOR, INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Paycor, Inc. ("Paycor") submits the following supplemental answers and
objections to Plaintiff Kellin John's First Set of Interrogatories, responding to them as if they also
been propounded by Plaintiff Juan Barron (collectively "Plaintiffs"), and subject to the Instructions
and General Objections, which are incorporated into each of the following specific answers, as
well as to the stated specific objections. Paycor responds as follows:

**PRELIMINARY STATEMENTS**

1.      By responding to these Interrogatories, Paycor does not waive or intend to waive:
(a) any objections as to the competency, relevancy, materiality, privilege, status, or admissibility
as evidence, for any purpose, of any documents or information produced in response to these
Interrogatories; (b) the right to object on any ground to the use of the documents or information
produced in response to these Interrogatories at any deposition, hearing, trial, or other proceeding,
or to their use in any pleading or submission; or (c) the right to object on any ground at any time
to a demand for further response to these Interrogatories.

2.      By responding that it will produce documents or information responsive to a particular Interrogatory, Paycor does not assert or admit that it has responsive documents or information or that such documents exist, only that it will conduct a reasonable search and produce relevant, responsive, non-privileged documents or information. No objection made herein, or lack thereof, is an admission by Paycor as to the existence or non-existence of any documents or information.

3.      By responding to a particular Interrogatory, Paycor does not admit to any violations alleged by the Interrogatory. Specifically, by responding to a particular Interrogatory, Paycor does not admit to any violation of BIPA nor does Paycor admit that BIPA is even applicable to Paycor. Additionally, by responding to a particular Interrogatory, Paycor does not waive any defenses to any claims Paycor may possess. Legal assertions or conclusions made in the Interrogatories are only allegations and are not entitled to any legal weight.

4.      The objections and responses made herein are based on Paycor's investigation to date of those sources within its possession, custody, and control where it reasonably believes responsive documents or information may exist. Paycor's investigation is ongoing, and Paycor reserves the right to amend or supplement these objections and responses in accordance with the applicable rules and court orders and based on results of its continuing investigation, and as additional documents or information are discovered during the course of merits discovery.  Per the parties' discussions, Paycor is actively undertaking ESI collection and review of potentially relevant custodians and may produce additional documents responsive to these Interrogatories as part of its forthcoming ESI production(s).

5.      Where Paycor has specifically identified documents in response to an Interrogatory, it may also produce documents that are not specifically identified, which are also responsive to the Interrogatory.

6.      The information supplied herein is for use in this litigation and for no other purpose.

7.      The information and documents provided herein are subject to the Parties' Agreed Confidentiality Order (Dkt. 49) and Addendum to Agreed Confidentiality Order (Dkt. 142) even if earlier-produced information and documents are later designated as Confidential Information pursuant to these Orders.

## **GENERAL OBJECTIONS**

The following Objections shall be deemed incorporated into the specific responses and objections to each and every Interrogatory.

1.      Paycor objects to each Interrogatory to the extent it seeks to impose on Paycor obligations and duties beyond those authorized by the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of Illinois, and any other applicable rules and decisions.

2.      Paycor initially objected to responding to these Interrogatories on a class-wide basis or with respect to Plaintiff Juan Barron, given that the Interrogatories were originally served when Kellin Johns was the only named Plaintiff. On March 28, 2025, the Court entered an Order declining Plaintiff Johns' request to serve as a class representative and certifying Plaintiff Juan Barron as the sole class representative/named Plaintiff, because Plaintiff Johns' counsel admitted and represented to the Court that Plaintiff Johns only enrolled on a Perform Time System (PTS) in Missouri. Dkt. 155, fn. 4. After an August 6, 2025 meet and confer with Plaintiffs' counsel, and subject to this objection, Paycor is electing to respond to these Interrogatories as if they were also

3

propounded by Plaintiff Barron as requested by Plaintiffs' counsel, and as such, Paycor's responses and document production in lieu of answers as permitted by Fed. R. Civ. P. 33(d) apply equally to Plaintiff Barron, as do the limitations on Interrogatories set forth in Fed. R. Civ. P. 34.

3.    Subject to the agreement above, Paycor objects to responding to any Interrogatory to the extent it seeks information related to Paycor's Perform Time timeclocks in Illinois and Plaintiff Kellin Johns, as Paycor has presented uncontroverted evidence that Kellin Johns never used a Paycor Perform Time clock in Illinois. *See* Paycor document production Johns-Paycor00000108-144 and Johns-Paycor00000127-A.

4.    Paycor objects to Plaintiff's use of the term "Relevant Time Period," to the extent the timeframe for any Interrogatory is not limited to the timeframe October 1, 2015 to March 30, 2016, the timeframe when Plaintiff Johns contends he used a Perform Time finger-scan timekeeping device, and September 2015 to April 2016, when Plaintiff Barron contends that he used a Perform Time finger-scan timekeeping device. *See* Plaintiff's Responses to Defendant Paycor, Inc.'s First Set of Interrogatories to Plaintiff Kellin Johns, Answer No. 2, Verified on 11/9/2020; *See also*, Plaintiff Juan Barron's Responses to Defendant Paycor, Inc.'s First Set of Interrogatories To Plaintiff Juan Barron, Answer No. 3, Verified on 1/8/2021.

5.    Paycor further objects that the latest end date for any discovery, and thus the end of any arguably "Relevant Time Period," is October 18, 2021, the date that Paycor completed the process of implementing BIPA-compliant embedded consent on its Perform Time timeclocks.  *See* Paycor document production Johns-Paycor00000108-143, 273, and 424; Johns-Paycor00030237.

6.    Paycor objects to responding to any Interrogatory to the extent it seeks information other than that related to Paycor's Perform Time finger-scan timeclocks at issue in this lawsuit.

7.     Paycor objects to Plaintiff's definitions to the extent they are inconsistent with the definitions in the Illinois Biometric Information Privacy Act or incorrectly describe the products at issue, specifically Plaintiff's definition of "Biometric Device." BIPA does not define this term and Plaintiff's definition is not accurate in describing the Perform Time timeclocks. Furthermore, in answering these Requests, Paycor does not concede, and expressly denies, that it captured, collected, converted, stored, possessed, disclosed, re-disclosed, shared, disseminated, profited from, or otherwise obtained "biometric identifiers" or "biometric information" as defined by BIPA. Plaintiff's definitions are vague and ambiguous, misleading, overbroad, not relevant to any party's claim or defense, and not proportional to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

8.     Paycor objects that it  cannot and should not respond to "Proposed Class Member" or other class-wide or customer-wide discovery while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition, the timeframe for discovery, and the scope of discovery.  Any class-wide or all-customer discovery requests and discovery responses made by or to "Proposed Class Member[s]" are premature, vague and undefined, and Paycor is not capable of responding thereto.

9.     Paycor objects to each Interrogatory to the extent it seeks responses that are not relevant to any party's claim or defense and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

10.    Paycor objects to each Interrogatory to the extent it seeks responses based on information not known or reasonably available to Paycor, or that is outside of Paycor's possession, custody, or control, or can be more readily obtained through other sources.

11.    Paycor objects to each Interrogatory to the extent that it seeks responses, documents, or information protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege, exemption, immunity, or protection. Any such privileged or otherwise protected information will not be provided. Any inadvertent disclosure of privileged information or of any other information otherwise protected from disclosure shall not constitute a waiver of any claim or privilege or exemption from disclosure. Counsel for Paycor will confer with Plaintiff's counsel regarding the means and timing of identifying privileged/protected documents, should such documents exist.

12.    Paycor objects to each Interrogatory to the extent that it is unduly burdensome, overly broad, vague, or ambiguous. In particular, where Plaintiff requests information and/or data relating to different devices, technologies, and/or software (e.g., Biometric Devices, servers, and/or related software) other than the Perform Time finger-scan timeclocks they actually used, each Interrogatory is unduly burdensome, overly broad, vague, and/or ambiguous, due to differences in how each device, technology, and/or piece of software operates on its own and in conjunction with other technologies (including third-party proprietary software that Paycor does not have access to).

13.    Paycor objects to each Interrogatory to the extent it seeks confidential, proprietary business information, or trade secrets.

14.    Paycor objects to each Interrogatory to the extent it pertains to a legal conclusion that will be reached based on all available evidence.

15.     Paycor objects to Plaintiff's Instructions to the extent that they purport to require Paycor to log privileged communications from after this case was filed as unduly burdensome and inconsistent with the requirements of the Federal Rules of Civil Procedure, Local Rules, and any other applicable rules and decisions.

## ANSWERS TO PLAINTIFF'S INTERROGATORIES

## INTERROGATORY NO. 1

Identify all persons that answered or assisted in responding to these Interrogatories and Plaintiff's First Set of Requests for Production of Documents to Defendant Paycor. For each person Identified, state the person's position or title, their job duties or responsibilities, the length of time of each such person's employment, and where applicable, Identify the answers or responses that each such person assisted in answering.

**10/31/25 AMENDED ANSWER:**   Paycor objects to this Interrogatory to the extent it seeks information within the attorney work product doctrine. Paycor further objects to this Interrogatory as irrelevant and immaterial to the issues in this lawsuit and as not likely to lead to the discovery of admissible evidence. Subject to and without waiving its General Objections and these additional objections, Paycor states that the phraseology of the answers is that of counsel. Since the Interrogatories are directed to corporate entities, these answers to Interrogatories do not constitute, nor are they derived from the personal knowledge of any single individual, but include record information, information derived from documents, knowledge obtained that cannot be attributed to any single individual, recollection of employees and general knowledge of the answering employee and others. The answers were prepared with the assistance of counsel's advice and recommendations. These responses have been verified by David Goodwin, a duly appointed representative of Paycor. Paycor further responds by stating that Paycor is providing a signed

7

verification as to those interrogatories where it previously produced documents pursuant Rule 33(d).

**INTERROGATORY NO. 2**

Identify and Describe the make, model, and manufacturer of the Biometric Device(s) implemented and used during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:** Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects to this Interrogatory to the extent that it seeks information about all "Biometric Device(s)" as outside the scope of the allegations actually pled in Plaintiff's Complaint. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiff Kellin Johns. As such, Paycor has never "implemented" or "used" a "Biometric Device" as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:** Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), related to the Perform Time finger-scan timeclocks used during the timeframe set forth in Paycor's General Objections, including Johns-Paycor000001-31; Johns-Paycor00000108-128; *See also* Declaration of B. Scott Swann filed under seal in this matter, Dkt. 128-1, and related production Johns-Paycor00000482-483.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that the Perform Time timeclock devices in use between 2015 and the present consist of the following five models:

| Paycor Timeclock Model | Timeclock Manufacturer | Manufacturer's Timeclock Product Code |
|---|---|---|
| PT 100 | ZKTeco | US-10C |
| PT 150 | ZKTeco | US-15C |
| PT 300 | Grosvenor Technology | GT4 |
| PT 400 | Grosvenor Technology | GT4 |
| PT 800 | Grosvenor Technology | GT8 |

**INTERROGATORY NO. 3**

For the Biometric Device(s) Identified in Response No. 2, state the number of devices in use, their specific location, customer, and the length of time they were of [sic] have been in use.

**NOVEMBER 2020 ANSWER:** To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here. Paycor objects to the phrase "in use" as vague and ambiguous. Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects to this Interrogatory as seeking information that is outside of Paycor's knowledge, particularly with respect to the specific location of devices, as Paycor has no control over or knowledge of the physical location of any devices after they leave Paycor's possession. Subject to and without waiving its General Objections and these additional objections, Paycor states that its investigation continues.

9

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor objects that it has no control over or knowledge of the physical location of its Perform Time timeclocks after they are leased/sold to customers, nor does it know whether or how long a finger-sensor attachment was in use at any Illinois customer locations. Paycor further objects to identifying its Perform Time customers, as the Court has already held that he does not need to do so. Paycor also objects that it is unable to respond to class-wide or customer-wide discovery while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition, the timeframe for discovery, and the scope of discovery. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000116-135; Johns-Paycor00000127-A and 128-A, the Declaration of David Goodwin (Johns-Paycor00000108-115), and the Sealed Supplemental Declaration of David Goodwin (Dkt. 186-1).

**10/31/25 SUPPLEMENTAL ANSWER:** In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by objecting to this Interrogatory because customer identity lacks relevance and disproportionate to the needs of the case. *Hoerchler v. Equifax Information Services, Inc.*, 568 F.Supp.3d 931, 935 (N.D. Ill. 2021) (citing FRCP 26(b)(1)). Moreover, Paycor objects to identifying its customers and notes that the Court has previously stated that it need not do so with respect to the class lists (Dkt. 206). Furthermore, Paycor states that it has no control over or knowledge of the physical location of its Perform Time timeclocks after they are leased/sold to customers, nor does it know whether or how long a finger-sensor attachment was in use at any Illinois customer locations, or the number of finger-sensor

attachments used in Illinois. Paycor previously produced the Club Fitness specific agreements and "lost client" information (Johns-Paycor00000116-135; Johns-Paycor00000127-A and 128-A), which indicate the specific number of Perform Time timeclocks leased by two Club Fitness locations, and the dates when these Club Fitness locations became lost customers and presumably ceased using those Perform Time timeclocks. These are assumptions because Paycor has no record of whether any employee of any customer clocked in or out using the finger-scan attachment (including Club Fitness employees), in Illinois or otherwise. Further answering, the Club Fitness punch data for Plaintiffs ends prior to the "lost client" data, indicating it is likely Club Fitness started using another vendor's timeclocks in April of 2016 (see Affidavit of Eric Schreimann, Dkt. 188-3 at 36, ¶ 8), which states that Club Fitness used ADP timeclocks during 2016.

**INTERROGATORY NO. 4**

Identify any and all instruction manuals, user guides, implementation guides, user enrollment guides, and/or service manuals Related To the Biometric Device(s) Identified in response to Interrogatory No. 2.

**NOVEMBER 2020 ANSWER:**  To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here.  Paycor further objects to the term "any and all" as overly broad and unduly vague. Paycor further objects that it lacks knowledge regarding specific instruction manuals, user guides, implementation

guides, user enrollment guides, and/or service manuals that may have been accessed by Club Fitness in the September/October 2015 – May/June 2016 timeframe, because customers can access Paycor's knowledge center for user guides, and Paycor does not know if Club Fitness (or any other customer) did so. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), directing Plaintiffs to Johns-Paycor000001-31.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds via its document production pursuant to Fed. R. Civ. P. 33(d), directing Plaintiff to Johns-Paycor00030241-30583.

**INTERROGATORY NO. 5**

Identify any and all device manuals, technical manuals, and/or schematics Related To the Biometric Device(s) Identified in response to Interrogatory No. 2.

**NOVEMBER 2020 ANSWER:**  To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**    To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here.  Paycor further objects to the term "any and all" as overly broad and unduly vague. Paycor further objects that it lacks knowledge regarding specific device manuals or technical manuals (to the extent Paycor understands this term) that may have been accessed by Club Fitness in the September/October 2015 – May/June 2016 timeframe, because customers can access Paycor's

knowledge center for guides, and Paycor does not know if Club Fitness (or any other customer) did so. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production, including Johns-Paycor000001-31; Johns-Paycor00000532; and Johns-Paycor00000534.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds via its document production pursuant to Fed. R. Civ. P. 33(d), directing Plaintiff to Johns-Paycor00030241-30583.

**INTERROGATORY NO. 6**

Identify any and all promotional materials, informational pamphlets and/or any sales materials used during the Relevant Time Period Related To the Biometric Device(s) identified in response to Interrogatory No. 2.

**NOVEMBER 2020 ANSWER:**  To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**    To the extent that this Interrogatory refers to Interrogatory No. 2, Paycor incorporates each of its objections to Interrogatory No. 2 here.  Paycor further objects to the term "any and all" as overly broad and unduly vague. Paycor further objects that it lacks knowledge regarding specific sales or promotional materials or informational materials, if any, that may have been used by Club Fitness in September/October 2015 – May/June 2016.   Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this

Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor0000012-13, and Johns-Paycor000029-32. Investigation continues.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds via its document production pursuant to Fed. R. Civ. P. 33(d), directing Plaintiff to Johns-Paycor00030584-30591, Johns-Paycor00030593-30596, and Johns-Paycor00030598-30600. Paycor further responds by stating that, per the parties' discussions, Paycor is actively undertaking ESI collection and review of potentially relevant custodians and will produce any further documents responsive to this interrogatory as part of its forthcoming ESI production(s).

**INTERROGATORY NO. 7**

Identify and Describe any and all software programs used in connection with any Biometric Device during the Relevant Time Period, including the manufacturer of any such software.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the term "in connection with" as vague and ambiguous. Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. Paycor further objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. As such, Paycor's time clocks do not constitute "Biometric Devices" as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to the term "any and all" as overly broad and unduly vague. Paycor further objects to this request as it appears to seek "software programs" within the PT 100 timeclocks or finger sensors, which Paycor does not manufacture and which

would be more appropriately responded to by the respective manufacturers. Paycor further objects that this Interrogatory has been asked and answered during the Dec. 4, 2024 Deposition of David Goodwin. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000482-483 and Johns-Paycor00000532-535. Paycor further directs Plaintiffs to the Dec. 4, 2024 Deposition of David Goodwin at 24:2-18; 24:19-25; and 31:3-23.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that David Goodwin testified that manufacturers provide the software contained within their particular timeclock models. The manufacturers and models are listed in Paycor's October 31, 2025 Supplemental Answer to Interrogatory No. 2. ZKTeco uses its own software in its timeclocks, which ZKTeco creates, including any software updates. Dec. 4, 2024 Deposition of David Goodwin at 24:4-17; 40:19-41:2; 59:4-14. The same is true for Grosvenor Technology timeclocks. *See id.* at 24:4-17. In addition, as David Goodwin testified, Paycor has its own software on the web, which is branded as Paycor Time, and which links to the software on the timeclock. *See* id. 48:9-14. Paycor Time serves as a calculation and scheduling system which is described on page 31 of the transcript for David Goodwin's Dec. 4, 2024 Deposition. Moreover, the diagrams previously provided as Johns-Paycor00000482-483 and Johns-Paycor00000532-535 detail the software programs used and their respective functions. Johns-Paycor00000534-535 describe the flow of data between the software and the databases.

**INTERROGATORY NO. 8**

Identify and Describe any and all contracts or agreements for lease and/or purchase of Biometric Devices entered into by and between Paycor and any customers, including Club Fitness, Inc., during the Relevant Time Period.

**NOVEMBER 2020 ANSWER**:  Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects to this Interrogatory because it calls for the disclosure of sensitive confidential business information it is not permitted to disclose. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor has never entered into a contract or agreement for "lease and/or purchase" of a "Biometric Device" as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory as to Club Fitness.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to the term "any and all" and "any customers" as overly broad and unduly vague. Paycor further objects that it is unable to respond to discovery regarding "any customers" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition, the timeframe for and the scope of discovery. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-135.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, and following meet and confer communications with Plaintiff's counsel, Paycor is producing the form agreements applicable to the lease or purchase of the Perform Time devices identified in response to Interrogatory No. 2. *See* Form Agreements beginning at Johns-Paycor00030601.

**INTERROGATORY NO. 9**

Identify and Describe any and all contracts or agreements for payroll, timekeeping or other employee management services entered into by and between Paycor and any customers, including Club Fitness, Inc., during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:**   Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case because it seeks agreements between Paycor and "any customers," including customers that never used the types of time clock at issue in this litigation. Paycor further objects to this Interrogatory because it calls for the disclosure of sensitive confidential business information it is not permitted to disclose. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory as to Club Fitness.

**8/12/25 SUPPLEMENTAL ANSWER:**   Paycor objects to the terms "any and all" and "any customers" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects that it is unable to respond to discovery regarding "any customers" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant scope of discovery. Paycor further objects to the extent that this Interrogatory to the extent that it is not limited to Perform Time timeclocks, as these are

the only clocks within the class certification order (Dkt. 155). Paycor additionally objects to providing discovery regarding agreements for payroll, or other employee management services that are not relevant to the claims or defenses in this case. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-135.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, and following meet and confer communications with Plaintiff's counsel, Paycor is producing the form agreements applicable to the Perform Time clocks identified in response to Interrogatory No. 2. *See* Form Agreements beginning at Johns-Paycor00030601. Although not relevant to this lawsuit, those form agreements may also reference payroll and other non-timekeeping services.

**INTERROGATORY NO. 10**

Identify and Describe any and all software licensing agreements entered into by and between Paycor and any customers, including Club Fitness, Inc., Related To the Biometric Devices used during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:**    Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects to this Interrogatory because it calls for the disclosure of sensitive confidential business information it is not permitted to disclose. Paycor further objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor has never entered into a contract or agreement for "lease and/or purchase" of a

"Biometric Device" as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory as to Club Fitness.

**8/12/25 SUPPLEMENTAL ANSWER:**    Paycor objects to the terms "any and all" and "any customers" as overbroad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects that it is unable to respond to discovery regarding "any customers" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe for and scope of discovery. Paycor further objects to the extent that this Interrogatory is not limited to Perform Time timeclocks, as these are the only clocks within the class certification order (Dkt. 155). Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000116-135.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, with respect to the Perform Time clocks identified in response to Interrogatory No. 2, Paycor grants customers access rights to its timekeeping services, not "licenses," to the extent we understand that term. Paycor's customers may purchase licenses for third-party services, which can include software. Paycor previously produced a form Services Agreement used with Club Fitness that references the access rights granted to Paycor software and Paycor licensed software, as listed in Section 15 of Johns-Paycor00000116-125. *See also* Johns-Paycor00000126-135, § 15. Additionally, Paycor is producing additional form agreements

applicable to the Perform Time identified in response to Interrogatory No. 2, which contain similar provisions. *See* Form Agreements beginning at Johns-Paycor00030601.

**INTERROGATORY NO. 11**

Describe the manner or process by which You collect, obtain, enroll, store, or enter Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information on any Biometric Device implemented and/or used during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:** Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, they are not "Biometric Devices" as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it cannot describe the process referenced above because Paycor does not collect, obtain, enroll, store, or enter biometric identifiers or biometric information on any of its time clocks. Subject to its General Objections and these additional objections, Paycor refers Plaintiffs to the documents Paycor has produced describing the features and functionality of the devices at issue in this litigation.

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor objects to any attempt to extend discovery beyond the Perform Time finger-scan timeclocks at issue, given the limitation of the class to Perform Time clock users. (Dkt. 155). Paycor further objects to discovery regarding "any customers" or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and timeframe of and scope of discovery. Paycor further objects that it does not collect, obtain, enroll, store, or enter finger-

scan data of customers' employees. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; and Johns-Paycor00000532-535.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that Perform Time customers, not Paycor, enroll their employees in the Perform Time clocks listed in response to Interrogatory No. 2, using a method chosen by the customer or even by the individual employee as described in David Goodwin's Dec. 4, 2024 Deposition at 36-42. User guides are provided to customers regarding enrollment, including enrollment options. See Johns-Paycor000001-11, Johns-Paycor00030249-30257; Johns-Paycor00030277-30284; Johns-Paycor00030362-30375. Paycor does not itself store any template data from the Perform Time devices identified in Interrogatory No. 2. Goodwin Dep. 32:10-20. Finger-sensor templates enrolled by Paycor's customers are housed in each customer's Perform Time clocks. Goodwin Dep. 36:14-25. Finger-sensor templates enrolled by Paycor's customers are also sent as algorithmic calculations of the finger to customer-segregated databases for each customer's exclusive use. Goodwin Dep. 45:13-25; 46:1-46. In addition, David Goodwin's Declaration, addresses template creation and clarifies that template storage is on customer's timeclocks and in customer-segregated databases. Johns-Paycor000112 at ¶¶ 18-22. Mr. Goodwin's statements apply to the Perform Time clocks identified in response to Interrogatory No. 2. *See also*, Johns-Paycor000112 at ¶¶ 18-22. Paycor does not access templates. Johns-Pacyor0000112 at ¶¶ 22-23.

**INTERROGATORY NO. 12**

Identify and Describe the process by which the Biometric Device(s) personally identified Plaintiff and the Proposed Class Members.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the phrase "personally identified" as vague and ambiguous. Paycor also objects to the phrase "Proposed Class Members" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor has never used a "Biometric Device" as defined by Plaintiffs, and therefore no "Biometric Device" ever personally identified Plaintiff or the Proposed Class Members. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to discovery regarding "any customers" or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the timeframe and scope of discovery. Paycor further objects that finger-sensor templates do not identify employees and customers choose how to use the timeclocks, not Paycor. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; Johns-Paycor00000482-483; and Johns-Paycor00000491-492.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that Perform Time customers identify their

employees for the purposes of timekeeping, initially by assigning a badge number. *See* Johns-Paycor000001-11, Johns-Paycor00030249-30257, Johns-Paycor00030277-30284, and Johns-Paycor00030362-30375 for details about how employers personally identify their employees for the purpose of timekeeping. Employers determine which employees have access to and can use the Perform Time clocks. Additionally, templates are not stored with any personally identifying information. David Goodwin Dec. 4, 2024 Dep. at 122:3-25;123:1-18; *see also* Declaration of David Goodwin ¶ 21.

**INTERROGATORY NO. 13**

Identify and Describe where and how Paycor stored Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information (*e.g.* identify and describe any and all servers located onsite or identify and describe any and all cloud systems that are offsite).

**NOVEMBER 2020 ANSWER:**  Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it has not itself stored customer employee data of any kind but, for some customers, it has provided an environment in which such customers store and manage their respective data. Paycor's customers own that data and Paycor does not have independent rights with respect to such data.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to discovery regarding "any customers" or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending,

as decisions on these Motions will impact the class definition and the timeframe for and scope of discovery. Paycor further objects that Paycor does not store finger-sensor templates, its customers do so, regardless of the customer. Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 11 to the extent it seeks information about template storage, and incorporates its response to Interrogatory No. 11 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; and Johns-Paycor00000532-535.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that finger-sensor templates are stored by Paycor's customers, not Paycor. Finger-sensor templates enrolled by Paycor's customers are housed in each customer's Perform Time clocks. Goodwin Dep. 36:14-25. Finger-sensor templates enrolled by Paycor's customers are also sent as algorithmic calculations of the finger to customer-segregated databases for each customer's exclusive use. Goodwin Dep. 45:13-25; 46:1-46. In addition, in David Goodwin's Declaration, he describes how customers store templates under their sole control either on the timeclock or in dedicated environments in tenant-segregated databases hosted on cloud servers. Johns-Paycor000112 at ¶¶ 18-22.

**INTERROGATORY NO. 14**

Identify and Describe the manner in which You collect, process, store, use, disseminate, back up, purge, or delete Biometric Data, Biometric Identifiers, and Biometric Information from each device where it is stored.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the phrase "Biometric Data" as vague and ambiguous as that term is not used in BIPA and Plaintiffs do not define the term. Paycor further objects to this Interrogatory because Paycor does not collect, process, store, use, disseminate, back up, purge, or delete biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects that it does not collect, process, store, use, disseminate, back up, purge, or delete biometric identifiers or information as those terms are defined in BIPA, and objects that BIPA does not use the term "Biometric Data." Paycor further objects to any attempt to extend discovery beyond the Perform Time finger-scan timeclocks at issue, given the limitation of the class to Perform Time clock users. (Dkt. 155). Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 11 to the extent it seeks information about finger-scan template storage and collection, and incorporates its response to Interrogatory No. 11 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; Johns-Paycor00000532-535; Johns-Paycor00000423-424.

**10/31/25 SUPPLEMENTAL ANSWER:**  In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that it does not collect, process, store, use, disseminate, or back up biometric identifiers or information as those terms are defined in BIPA. *See* Paycor's October 31, 2025 Supplemental Answers to Interrogatories Nos. 11–13. In addition,

in David Goodwin's Declaration, he describes how customers may replicate templates through an automated process via a series of "gets" and "posts" between the customers' timeclocks and the tenant-segregated databases. Johns-Paycor00000534-535 describe the flow of data between the software and the databases. With respect to the deletion and destruction of templates, see Paycor's October 31, 2025 Supplemental Answers to Interrogatories Nos. 15-16.

**INTERROGATORY NO. 15:**

Describe the protocol(s), policies, procedure(s) or process(es) You follow to destroy, delete and/or purge Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information from Your Biometric Device(s).

**NOVEMBER 2020 ANSWER:** Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it cannot describe the protocols, policies, procedures, or processes that are the subject of this Interrogatory because the destruction of such data is solely within its customers' control and Paycor has not destroyed any such data except at the express direction of a customer. Paycor has no knowledge of when customers delete or destroy their employees' data or the protocols, policies, procedures, or processes that they may follow to do so. Each customer—not Paycor— would possess information that would be responsive to this Interrogatory regarding the protocols, policies, procedures, or processes they follow when they delete or destroy their employees' data.

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor objects that it does not destroy, delete or purge biometric identifiers or biometric information as those terms are defined in BIPA, and objects that

BIPA does not use the term "Biometric Data." Paycor further objects to discovery regarding "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe and scope of discovery. Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 14 to the extent it seeks information about finger-scan template "purge" and "deletion," and incorporates its response to Interrogatory No. 14 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; Johns-Paycor00000532-535; Johns-Paycor00000423-424.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that employee templates are automatically and permanently deleted from a customer's dedicated environment after the customer ends its business relationship with Paycor, and terminates its contracts. *See* Declaration of David Goodwin ¶ 31. Customers can also permanently delete their employees' templates. Since Fall 2021, when a customer indicates that an employee has been terminated, the employee template is deleted from the customer's Perform Time clock and the customer-segregated environment. Leased timeclocks that are returned to Paycor are wiped of any remaining data, by pressing the factory re-set button, which automatically wipes the clock clean. *Id.*

**INTERROGATORY NO. 16**

State whether Paycor has destroyed Plaintiff's Biometric Identifiers and Biometric Information and if so, how such destruction was effectuated and when it took place.

**NOVEMBER 2020 ANSWER:**  Paycor objects to this Interrogatory to the extent it implies that Paycor collected, captured, possessed, stored, used, or otherwise obtained Plaintiffs' biometric identifiers and biometric information. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor was never in a position to destroy Plaintiffs' biometric identifiers or biometric information. Subject to its General Objections and these additional objections, Paycor states that the destruction of such data is solely within its customers' control and Paycor has not destroyed any such data except at the express direction of a customer. Paycor has no knowledge of when customers delete or destroy their employees' data and each customer—not Paycor—would possess information that would be responsive to this Interrogatory regarding when they delete or destroy their employees' data.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects that it does not collect or store, and thus does not destroy, biometric identifiers and biometric information as those terms are defined in BIPA. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d) Johns-Paycor00000108-115; Johns-Paycor00000423; and Johns-Paycor00000442-00000443.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that, no later than August 22, 2018, any finger-sensor templates of employees of all Club Fitness customers, including employees of CF Collinsville LLC/Client 78986, where Plaintiff Barron worked, were permanently destroyed. David Goodwin Declaration ¶¶ 31-32.

**INTERROGATORY NO. 17**

State the number of Proposed Class Members within the Relevant Time Period.

**NOVEMBER 2020 ANSWER:**  Subject to and without waiving its General objections, Paycor states that it does not know and cannot reasonably ascertain the total number of Proposed Class Members. Paycor further states that it lacks the information to determine which customers installed and used finger-sensor devices in Illinois, during what periods of time, which of their employees used the devices, and whether such employees were informed of the purposes and uses of such data and provided the releases and consents specified under BIPA, or whether the employers were otherwise exempt under BIPA.

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor objects to responding to this Interrogatory because it cannot determine which customers' employees used finger-sensor devices in Illinois. Paycor further objects that it is unable to respond to discovery regarding "any customers" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and any resultant class size. Paycor further objects that it has asserted various affirmative defenses that would further reduce the class size, including consent, labor law preemption, government contractor exclusion, standing, extraterritorial application of BIPA, and double recovery/mootness, which further reduce any class size. Dkt. 170. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor refers Plaintiffs to the Supplemental Declaration of David Goodwin, filed under seal at Dkt. 186-1.

**10/31/25 SUPPLEMENTAL ANSWER:**  In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that it has produced two class notice lists (Johns-

Paycor00030239 and Johns-Paycor00030240) as instructed by the Court. Following a ruling on Paycor's Motion to Alter/Amend Class Definition, which was fully briefed on October 24, 2025, Paycor is prepared to promptly produce an updated class notice list if the Court so requires.

**INTERROGATORY NO. 18**

Identify each person or entity, including but not limited to associates, affiliates, third-parties, third-party vendors, or independent contractors with access to Your Biometric Device(s) and/or Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information. For each such person or entity, provide their name, company name, title, and the reason for their access.

**NOVEMBER 2020 ANSWER:** Paycor objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of this case to the extent it seeks information unrelated to Plaintiffs' claims. Specifically, Paycor objects to the extent this Interrogatory asks Paycor to identify each person or entity that has access to Plaintiffs' or the Proposed Class Members' Biometric Identifiers and Biometric Information, because such a request necessarily encompasses persons and entities—unknown to Paycor—that may have gained "access" to such information in a way that is completely unrelated from this case. Paycor objects to the term "access" as unduly vague and ambiguous as "access" is not a term that is included in BIPA. Paycor further objects to this Interrogatory because Paycor does not access (as that term is commonly understood) any biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor has never owned or sold "Biometric Devices" as defined by Plaintiffs and therefore no persons or entities would have access to such "Biometric Devices." Paycor further objects to this Interrogatory as seeking information that is not within its possession, custody, or control, as Paycor has no knowledge what data Plaintiffs' employers have

access to, nor to which individuals Plaintiffs' employers allow to access such data. Paycor objects to the term "Proposed Class Members" as detailed in its General Objections No. 3. Subject to and without waiving its General Objections and these further objections, Paycor states as follows: The finger-sensor information that is captured by the devices used by Plaintiffs' employers is owned by and accessible to Plaintiffs' employers. Paycor has no knowledge of what data Plaintiffs' employers access or to whom they may grant access.

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor further objects to discovery regarding "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe and scope of discovery. Paycor further objects to any attempt to extend discovery beyond the Perform Time finger-scan timeclocks at issue, given the limitation of the class to Perform Time clock users. (Dkt. 155). Paycor further objects that Paycor does not access templates. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115.

**10/31/25 SUPPLEMENTAL ANSWER:** In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that its customers, pursuant to their contracts, have access to Perform Time timekeeping services to enter their employee data, and to set up and use the timeclocks. *See* October 31, 2025 Supplemental Answers to Interrogatory Nos. 8-10; Form Agreements beginning at Johns-Paycor00030601. Paycor objects to identifying its customers and notes that the Court has previously stated that it need not do so with respect to the class lists (Dkt. 206). Furthermore, Paycor states that it has no control over or knowledge of the

physical location of its Perform Time timeclocks after they are leased/sold to customers, and thus has no knowledge of who might have access to a customer's Perform Time timeclocks. As stated in David Goodwin's Declaration at ¶ 22, Paycor does not access customers' templates.

**INTERROGATORY NO. 19:**

Identify and Describe any protocols, policies, or procedures put in place during the Relevant Time Period to address the repair, replacement, or decommission of any Biometric Device.

**NOVEMBER 2020 ANSWER:**  Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. Paycor further objects to this Interrogatory as irrelevant and not likely to lead to the discovery of relevant evidence because it seeks information related to "any Biometric Device" including devices that are not relevant to the claims brought in Plaintiffs' complaint. Paycor objects to this Interrogatory because Paycor's time clocks do not collect, capture, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that its investigation continues.

**SUPPLEMENTAL ANSWER 8/12/25:**  Paycor further objects to discovery regarding "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe and scope of discovery. Paycor further objects to any attempt to extend discovery beyond the Perform Time finger-scan timeclocks at issue, given the limitation of the class to Perform Time clock users. (Dkt. 155). Paycor further objects that this Interrogatory has been asked and answered with respect to

returned Perform Time timeclocks during the Dec. 4, 2024 Deposition of David Goodwin. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115. Paycor further directs Plaintiffs to the Dec. 4, 2024 Deposition of David Goodwin at 94:2-96:15. Investigation continues.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that leased Perform Time timeclocks may be returned to Paycor after the customer ends its business relationship with Paycor and terminates its contracts. Customers may also return leased Perform Time timeclocks to Paycor for repair and/or destruction. Leased timeclocks that are returned to Paycor (for any purpose) are wiped of any remaining data, by pressing the factory re-set button, which automatically wipes the timeclock clean. Paycor further responds that it does not undertake repairs or refurbishment of Perform Time clocks. If a PT 100 or PT 150 customer contacts Paycor indicating that a timeclock is not working, a Salesforce ticket is created and a shipping label is sent to the customer for the customer to use to return the timeclock to Paycor. When the timeclock is returned, it is received by a Hardware Support team member. Paycor first checks whether the unit will turn on. If the timeclock does not power on, it is destroyed. If it does power on, the factory re-set button is pressed, which automatically wipes the timeclock clean. If a PT 300, PT 400 or PT 800 customer contacts Paycor indicating that a timeclock is not working, a Salesforce ticket is created and a shipping label is sent to the customer for the customer to use to return the timeclock to Grovesnor Technology for refurbishment or repair. If a customer wishes to return a leased PT 300, PT 400 or PT 800 timeclock, those clocks are returned to Grovesnor Technology by the customers.

**INTERROGATORY NO. 20**

Identify and Describe the manner in which Paycor informed Plaintiff and the Proposed Class Members in writing of the purpose and length of time for which their Biometric Identifiers and Biometric Information was being collected, captured, stored, used, accessed (or permitted access), possessed, disseminated, or otherwise obtained during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the term "Proposed Class Member" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because it has not collected, captured, stored, used, accessed, or permitted access to, possessed, disseminated, or otherwise obtained biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it lacked knowledge of or any relationship with Plaintiffs or any Proposed Class Members in order for Paycor to inform them of anything relating to their biometric identifiers and biometric information or the finger-sensor device used by their respective employers. Paycor further states that it cannot describe the manner by which Plaintiffs and the Proposed Class Members were so informed because such communications would have been between them and their respective employers.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to discovery regarding "any customers" or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe for scope of discovery. Paycor further objects that it does not collect, obtain, enroll, store, or enter finger-scan data of customers' employees and thus is not obligated to follow the provisions of BIPA Section 15(b). Paycor further objects that it can obtain consent through its customers and does not

need to do so directly. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115; Johns-Paycor00000142-143; Johns-Paycor00000449-450; Johns-Paycor00000531; Johns-Paycor00000595; Johns-Paycor00000600-601; and Johns-Paycor00000602-30236; and Johns-Paycor00030237.

**10/31/25 SUPPLEMENTAL ANSWER:**   In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that it implemented embedded consents on its Perform Time timeclocks, *see e.g.*, Johns-Paycor00000142-143; Johns-Paycor00000449-450, beginning in April 2021, and fully completed the process as of October 18, 2021. *See* Declaration of David Goodwin ¶ 27. As of October 18, 2021, no user could use any Perform Time timeclock's finger-sensor functionality without first being presented with and agreeing to the embedded consent. During the implementation process, some Paycor customers advised Paycor that they were already BIPA compliant. *See id.* Some Paycor customers also have advised Paycor that they implemented consents that expressly included Paycor. *See id.* ¶ 28; *see e.g.*, Johns-Paycor00000531.

**INTERROGATORY NO. 21**

Identify and Describe the manner in which You requested or obtained Plaintiff's and the Proposed Class Members' written consent before collecting, capturing, storing, using, accessing, possession, disseminating, or otherwise obtaining their Biometric Identifiers and Biometric Information during the Relevant Time Period.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the term "Proposed Class Member" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because Paycor does not collect,

capture, store, use, access, possess, disseminate, or otherwise obtain biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it lacked any knowledge of or relationship with Plaintiffs in order for Paycor to request or obtain any consents from them. Paycor further states that it cannot describe the manner in which any consents were requested or obtained from Plaintiffs because such consents would have been requested and obtained by their respective employers.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to discovery regarding or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe and scope of discovery. Paycor further objects that it does not collect, obtain, enroll, store, or enter finger-scan data of customers' employees and thus is not obligated to follow the provisions of BIPA Section 15(b). Paycor further objects that it can obtain consent through its customers. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115; Johns-Paycor00000142-143; Johns-Paycor00000449-450; Johns-Paycor00000531; Johns-Paycor00000595; Johns-Paycor00000600-601; Johns-Paycor00000602-30236; and Johns-Paycor00030237.

**10/31/25 SUPPLEMENTAL ANSWER:**  In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that it implemented embedded consents on its Perform Time timeclocks, *see e.g.*, Johns-Paycor00000142-143; Johns-Paycor00000449-

450, beginning in April 2021, and fully completed the process as of October 18, 2021. *See Declaration of David Goodwin* ¶ 27. As of October 18, 2021, no user could use any Perform Time timeclock's finger-sensor functionality without first being presented with and agreeing to the embedded consent. During the implementation process, some Paycor customers advised Paycor that they were already BIPA compliant. *See id.* Some Paycor customers also have advised Paycor that they implemented consents that expressly included Paycor. *See id.* ¶ 28; *see e.g.*, Johns-Paycor00000531.

**INTERROGATORY NO. 22**

Identify and Describe any protocols, policies, or procedures You have established or followed during the Relevant Time Period to ensure compliance with BIPA.

**NOVEMBER 2020 ANSWER:** Paycor objects to this Interrogatory to the extent it implies that BIPA applies to Paycor, which it does not. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:** Paycor objects that it can become BIPA compliant through its customers. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115;   Johns-Paycor00000142-143;   Johns-Paycor00000449-450;   Johns-Paycor00000531;   Johns-Paycor00000595;   Johns-Paycor00000600-601;   and   Johns-Paycor00000602-30236;  Johns-Paycor0000032-107;  Johns-Paycor00000423;  and  Johns-Paycor00000442-443; and Johns-Paycor00030237.

**10/31/25 SUPPLEMENTAL ANSWER:**    In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that it implemented embedded consent on its Perform Time timeclocks, *see e.g.*, Johns-Paycor00000142-143; Johns-Paycor00000449-450, beginning in April 2021, and fully completed the process as of October 18, 2021. *See* Declaration of David Goodwin ¶ 27. As of October 18, 2021, no user could use any Perform Time timeclock's finger-sensor functionality without first being presented with and agreeing to this embedded consent. Furthermore, Paycor has a practice wherein employee templates are automatically and permanently deleted from a customer's dedicated environment after the customer ends its business relationship with Paycor, and terminates its contracts. *See* Declaration of David Goodwin ¶ 31. Customers can also permanently delete their employees' templates. Since Fall 2021, when a customer indicates that an employee has been terminated, the employee template is deleted from the customer's Perform Time clock and the client-segregated environment. Leased timeclocks that are returned to Paycor are wiped of any remaining data, by pressing the factory re-set button, which automatically wipes the clock clean. *Id.*

## INTERROGATORY NO. 23

Identify and Describe all third-party data centers where Your infrastructure is maintained.

**NOVEMBER 2020 ANSWER:**  Paycor objects to the terms "infrastructure" and "maintained" as vague and ambiguous. Paycor objects to this Interrogatory as overboard, unduly burdensome, and disproportionate to the needs of this case. Paycor further objects to this Interrogatory to the extent it seeks information that is irrelevant to the claims that Plaintiffs allege in their complaint. Paycor is a company with multiple product lines that operates in multiple states, the majority of which are not related to this litigation and requiring Paycor to identify and describe all third-party data centers with which it works across its entire business is not calibrated to lead to relevant evidence. Paycor

further objects to this Interrogatory because it calls for the disclosure of sensitive and confidential business information that Paycor should not be required to disclose. Subject to and without waiving its General Objections and these further objections, Paycor states that its investigation continues. Subject to and without waiving General Objections and these further Objections, Paycor states that its investigation continues

**8/12/25 SUPPLEMENTAL ANSWER:** In addition to the above objections, Paycor objects to the terms "infrastructure" and "maintained," as vague misnomers to which it is not capable of responding. Paycor further objects to the extent this Interrogatory is not limited to the "Perform Time System" referenced in Plaintiffs' operative complaint and to the class definition, which is limited to Perform Time users. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor00000108-115; and Johns-Paycor00000532-535. Subject to and without waiving its General Objections and these further objections, Paycor states that its investigation continues.

**10/31/25 SUPPLEMENTAL ANSWER:** In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that in David Goodwin's Declaration, he describes how customers store templates under their sole control either on the timeclock or in dedicated environments in tenant-segregated databases hosted on cloud servers. Johns-Paycor00000112. Johns-Paycor00000532-535 describe the flow of data.

**INTERROGATORY NO. 24**

State the specific facts underlying the affirmative defenses asserted in Your Answer.

**NOVEMBER 2020 ANSWER:**  Paycor objects to this Interrogatory as irrelevant. Subject to and without waiving its General Objections and these further objections, Paycor states that after serving these discovery requests, Plaintiffs filed a First Amended Complaint. Paycor has not answered the First Amended Complaint, indeed it has moved to dismiss it instead. Paycor's Answer to Plaintiff's original complaint is no longer operative and is now irrelevant. As such, no answer is required for this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to this Interrogatory as compound, overly broad and unduly burdensome, and should be reasonably read and interpreted as a separate interrogatory as to each of the Eleven Affirmative Defenses set forth in Paycor's Answer to Plaintiffs' First Amended Class Action Complaint (Dkt. 170), which exceeds the permissible number of Interrogatories (25, including discrete subparts) under Fed. R. Civ. P. 33. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor directs Plaintiffs to its document production, as well as its Opposition to Class Certification (Dkt. 125), its terminated Motion for Summary Judgment (Dkt. 126), its Motion to Reconsider (Dkt. 162), and its Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f), which reference and/or support the factual bases for its affirmative defenses, as well as applicable case law cited in its pleadings, which underly Paycor's affirmative defenses. Paycor is willing to meet and confer regarding a more narrowly-focused Interrogatory.

## INTERROGATORY NO. 25

State the specific facts underlying the seventh affirmative defense, that "Plaintiff's Class Action Complaint is barred because Defendant does not capture, collect, possess, purchase, transmit, receive in any manner, or profit from Plaintiff's biometric identifiers or Plaintiff's biometric information as defined in the BIPA statute, as alleged by Plaintiff."

**NOVEMBER 2020 ANSWER:**  Paycor objects to this Interrogatory as irrelevant. Subject to and without waiving its General Objections and these further objections, Paycor states that after serving these discovery requests, Plaintiffs filed a First Amended Complaint. Paycor has not answered the First Amended Complaint, indeed it has moved to dismiss it instead. Paycor's Answer to Plaintiff's original complaint is no longer operative and is now irrelevant. As such, no answer is required for this Interrogatory.

**8/12/25 SUPPLEMENTAL ANSWER:**  Paycor objects to this Interrogatory as exceeding the permissible number of Interrogatories (25, including discrete subparts) under Fed. R. Civ. P. 33, in light of Interrogatory No. 24. Subject to and without waiving its prior objections, subject to the Instructions and Objections above, and subject to these objections, Paycor's Answer to Plaintiffs' First Amended Class Action Complaint (Dkt. 170) does not assert the "seventh affirmative defense" stated above, and it is thus unable to respond to this Interrogatory.

Dated: October 31, 2025

Respectfully Submitted,

PAYCOR, INC.

By:  _/s/Melissa A. Siebert_

Melissa A. Siebert
Corey T. Hickman

COZEN O'CONNOR
123 N. Wacker Dr., Suite 1800
Chicago, IL 60606
(312)-474-7900
msiebert@cozen.com
chickman@cozen.com

Brian A. Browne
COZEN O'CONNOR
2001 M Street NW, Suite 500
Washington, D.C. 20036
(202)-304-1458
bbrowne@cozen.com

Max Kaplan
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
(215) 665-4682
mkaplan@cozen.com

Counsel for Paycor, Inc.

## VERIFICATION

I, David Goodwin, state that I am authorized to sign this verification on behalf of Defendant Paycor, Inc. in the above-entitled action; that I have reviewed the foregoing Answers (including Amended, Supplemental, and Second Supplemental Answers) to Plaintiff's First Set of Interrogatories and know the contents thereof; that Paycor prepared the Answers with the assistance and advice of its counsel; that I relied upon the aforementioned assistance, and that some of the information contained herein is accordingly outside the scope of my personal knowledge; that the information, subject to inadvertent or undiscovered error, is based on, and is therefore necessarily limited by, records and information still in existence, presently recollected and thus far discovered in the course of the preparation of the Answers. Consequently, Defendant Paycor, Inc. reserves the right to make any changes to the Answers if it appears at any time that omission or errors have been made therein or that more accurate information is available.

I declare under penalty of perjury that the foregoing is true and correct.

Dated October 31, 2025.

David Goodwin
Senior Portfolio Product Manager
Paycor, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I, Melissa A. Siebert, an attorney, hereby certify that on **October 31, 2025**, I caused a true and complete copy of the foregoing **PAYCOR, INC.'S SECOND SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT PAYCOR, INC.** to be served via electronic mail upon all counsel of record.

*/s/ Melissa A. Siebert*