IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

JUAN BARRON, individually and on behalf of all others similarly situated, )
)
)
Plaintiff, )
)
vs. )        Case No. 3:20-cv-264-DWD
)
PAYCOR, INC., )
)
Defendant. )

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

## Background

As reflected in the filings on the docket, the parties have litigated this case in an exceedingly contentious manner, frequently requiring the Court's intervention in discovery. Indeed, in addition to the Plaintiff's Motion to Compel (Doc. 247; Sealed Doc. 248) that is addressed in this Memorandum and Order, other discovery related matters currently pending on the docket include: Defendant's Motion to Compel Plaintiff to Appear for a Deposition (Doc. 249), Defendant's Motion to Compel a Full and Complete Response to Request for Admission No. 16 (Doc. 250), Plaintiff's Motion for Sanctions (Docs. 265 & 287; Sealed Docs. 266 & 288), Defendant's Motion to Compel Discovery From Class Members and Plaintiff (Doc. 301), Defendant's Motion for Sanctions (Doc. 305), Plaintiff's Second Motion to Compel (Doc. 309; Sealed Doc. 310) and, most recently, Defendant's Motion for Extension of Time to Complete Discovery and Resetting of

Deadlines (Doc. 318). And, notably, it is becoming clear to the Court that the parties will require even more motion practice to complete discovery.

## Discovery Practice

The Federal Rules of Civil Procedure govern discovery. To begin, a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 33(a)(2) goes on to add that "an interrogatory may relate to any matter that may be inquired into under Rule 26(b)." In discovery, what is relevant includes more than what is admissible at trial. Instead, relevant matter includes "anything that appears reasonably calculated to lead the discovery of admissible evidence." *Barker v. Life Ins. Co. of N.Am.*, 265 F.R.D. 389, 393 (S.D. Ind. 2009) (internal citation omitted). Given the liberal scope of discovery under Fed. R. Civ. P. 26(b), "[t]he burden rests upon the objecting party to show why a particular discovery request is improper." *Gingerich v. City of Elkhart Prob. Dep't,* 273 F.R.D. 532, 536 (N.D. Ind. 2011) (internal citations omitted). Nevertheless, "the proponent of a motion to compel discovery still bears the initial burden of proving that the information sought is relevant." *Fralish v. Digital Media Solutions, Inc.*, 2021 WL 5370104, at *3 (N.D.Ind., 2021)

"The grounds for objecting to an interrogatory must be stated with specificity." Fed. R. Civ. P. 33(b)(4). And, when objecting to a request for the production of documents, "[a]n objection must state whether any responsive materials are being withheld on the

2

basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). General objections or what some term "boilerplate objections" are ineffective to the preservation of an objection to discovery.

### *Paycor's "General Objections"*

Here, in Paycor's Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, Paycor raises 15 paragraphs of "General Objections." (Doc. 234-7) Then, in its First Supplemental Responses and Objections to Plaintiff's First Set of Requests for Production, Paycor raises 20 paragraphs of "General Objections" (Doc. 247-6) In some instances, Paycor attempts to unilaterally change the scope of the requests for discovery by its objections. (See General Objections 2, 3, 4, 5, and 8) In other objections, for example, Paycor parses words and argues definitions, claiming Plaintiff's definitions are wrong, vague, ambiguous, misleading, overbroad and not relevant. (See General Objection 7) Paycor goes on to cast a general objection on grounds of relevancy and proportionality without providing support or explanation for its argument. (See General Objection 9) In other general objections, Paycor attempts to redefine and relieve itself of its obligations by objecting to discovery that "can be more readily obtained through other sources" regardless of whether it identifies those other sources. (See General Objection 10) Paycor objects to any interrogatory to that "seeks responses, documents, or information protected from disclosure by the attorney-client privilege, work product doctrine, or any other applicable privilege" and then asserts such "protected information will not be provided" thereby ignoring the mandate of Rule 26(b)(5) that the objecting party expressly make the claim of privilege and describe the nature of the documents not

3

produced. (See General Objection 11).[1] Paycor's General Objections to Plaintiff's First Set of Requests for Production (Doc. 247-6) are encompassing as well.

General Objections so expansive and labyrinthine that they effectively obscure whether the answers to interrogatories and documents produced are complete and fully responsive serve only to frustrate the discovery regime established by rule. This is why Courts regularly overrule General Objections and deem them waived. When a party raises objections to discovery requests, the objecting party bears the burden to explain precisely why its objections are proper given the broad construction of the federal discovery rules. *In re Aircrash Disaster Near Roselawn, Inc*. Oct. 31, 1994, 172 F.R.D. 295, 307 (N.D. Ill. 1997). Thus, general objections to discovery requests that merely recite boilerplate language without explanation do not meet this burden, and courts within the Seventh Circuit consistently overrule them or entirely disregard such. *Manassa v. National Collegiate Athletic Association*, 2022 WL 2292833, at *5 (S.D.Ind., 2022) See *Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (" 'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered"). Further, when the objecting party raises nonspecific boilerplate objections without clearly explaining how the request is objectionable, courts should overrule the objections in favor of broad discovery, pursuant to the federal rules. *Novelty*, 265 F.R.D. at 375 (holding that

---

[1] Paycor also states: "No objection made herein, or lack thereof, is an admission by Paycor as to the existence or non-existence of any documents or information." (Doc. 234-7, p. 3) *Cf.* Fed. R. Civ. P. 34(b)(2)(C) which provides: "An objection must state whether any responsive materials are being withheld on the basis of that objection."

boilerplate objections without explanation are deemed waived); *McGrath v. Everest Nat. Ins. Co.*, 625 F.Supp.2d 660, 671 (N.D. Ind. 2008) (staying the objecting party must specify why the discovery request is improper) Magistrate Judge Clifford Proud provided possibly the best counsel on the subject when he observed: "[m]aking general objections is a dangerous practice, as the party who offers such general objections runs the risk of having them summarily denied." *Avante Int'l Tech., Inc. v. Hart Intercivic, Inc.*, 2008 WL 2074093, at *2 (S.D. Ill. 2008).

Considering the guidance the Federal Rules of Civil Procedure provide, the Court finds that the General Objections 1-15 (Doc. 247-6) and the General Objection 1-20 (Doc. 235-6) should be overruled and deemed waived as to Interrogatories 7, 13, 14, 15, 16 and Requests for Production 5 and 12.

### *Paycor's Specific Objections and Plaintiff's Motion to Compel*

Plaintiff Files his Motion Compel (Doc. 247) seeking a determination regarding Paycor's responses and objections to interrogatories and requests for production. (Doc. 234-7 and 259). Plaintiff seeks to compel Paycor to respond to the following general areas of inquiry:

a. The name(s), description and documents related to all software programs used in connection with the biometric devices during the relevant time period.

b. Discovery, including documents, related to the servers, databases and/or cloud systems where Paycor has stored Plaintiff's and class members biometric identifiers and biometric information; and

c. The protocols, policies, procedures and/or processes followed by Paycor to

delete and/or purge Plaintiff's and class members' biometric identifiers and biometric information.

Doc. 247, P. 2

Although Plaintiff does not clearly reference the specific interrogatory and request for production he wants answered or responded to, the Court can glean from the filings those in question.[2] Having reviewed each of the interrogatories and requests for production, together with Paycor's responses and objection and the joint report of the parties, the Court grants the Plaintiffs Motion to Compel for the reasons stated below.

INTERROGATORY NO. 7

Identify and Describe any and all software programs used in connection with any Biometric Device during the Relevant Time Period, including the manufacturer of any such software.  (Doc. 234-7)

Paycor provided the following responses and objections to Interrogatory No. 7:

NOVEMBER 2020 ANSWER:  Paycor objects to the term "in connection with" as vague and ambiguous. Paycor objects to this Interrogatory as overbroad, unduly burdensome, and disproportionate to the needs of this case. Paycor further objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. As such, Paycor's time clocks do not constitute "Biometric Devices" as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

---

[2] The attorneys are respectfully reminded that clarity and specificity in briefing is of great benefit to Court and its ability to timely address motions, while hyperbole, derisory comments and blame-casting are not helpful.

8/12/25 SUPPLEMENTAL ANSWER: Paycor objects to the term "any and all" as overly broad and unduly vague. Paycor further objects to this request as it appears to seek "software programs" within the PT 100 timeclocks or finger sensors, which Paycor does not manufacture and which would be more appropriately responded to by the respective manufacturers. Paycor further objects that this Interrogatory has been asked and answered during the Dec. 4, 2024 Deposition of David Goodwin. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns Paycor00000482-483 and Johns-Paycor00000532-535. Paycor further directs Plaintiffs to the Dec. 4, 2024 Deposition of David Goodwin at 24:2-18; 24:19-25; and 31:3-23.

10/31/25 SUPPLEMENTAL ANSWER: In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that David Goodwin testified that manufacturers provide the software contained within their particular timeclock models. The manufacturers and models are listed in Paycor's October 31, 2025 Supplemental Answer to Interrogatory No. 2. ZKTeco uses its own software in its timeclocks, which ZKTeco creates, including any software updates. Dec. 4, 2024 Deposition of David Goodwin at 24:4-17; 40:19-41:2; 59:4-14. The same is true for Grosvenor Technology timeclocks. See id. at 24:4-17. In addition, as David Goodwin testified, Paycor has its own software on the web, which is branded as Paycor Time, and which links to the software on the timeclock. See id. 48:9-14. Paycor Time serves as a calculation and scheduling system which is described on page 31 of the transcript for David Goodwin's Dec. 4, 2024 Deposition. Moreover, the diagrams previously provided as Johns-Paycor00000482-483 and Johns-Paycor00000532-535 detail the software programs used and their respective functions. Johns-Paycor00000534-535 describe the flow of data between the software and the databases.

Notwithstanding its obligation to do so, Paycor offers no elaboration or support for its contention that Interrogatory No. 7 is overbroad, unduly burdensome, and disproportionate to the needs of this case. The Court finds that, in fact, Interrogatory No.

7 is not overbroad, unduly burdensome or disproportionate to the needs of this case. Paycor also objects to the term "any and all" as overly broad and unduly vague. Again, Paycor offers no specific reason for its objection. The Court finds that these objections should be overruled as well.

Paycor also objects on the basis that Interrogatory No. 7 seeks "software programs" within the PT 100 timeclocks or finger sensors Paycor does not manufacture and which would be more appropriately responded to by the respective manufacturers. Paycor also objects that the Paycor's time clocks do not constitute "Biometric Devices" as defined by Plaintiffs. Paycor is quibbling. The interrogatory asks for the identification of software, not software it manufactures. If Paycor does not know the answer, then it may respond accordingly. However, if it has the requested information, it must provide it regardless whether Paycor manufactures software or the hardware. Accordingly, Paycor's specific objections to Interrogatory No. 7 will be overruled.

INTERROGATORY NO. 13

> Identify and Describe where and how Paycor stored Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information (e.g. identify and describe any and all servers located onsite or identify and describe any and all cloud systems that are offsite).

Paycor responded in the following fashion to Interrogatory No. 13 :

> NOVEMBER 2020 ANSWER: Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by

Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it has not itself stored customer employee data of any kind but, for some customers, it has provided an environment in which such customers store and manage their respective data. Paycor's customers own that data and Paycor does not have independent rights with respect to

such data.

8/12/25 SUPPLEMENTAL ANSWER:   Paycor objects to discovery regarding "any customers" or "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiff's Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the timeframe for and scope of discovery. Paycor further objects that Paycor does not store finger-sensor templates, its customers do so, regardless of the customer. Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 11 to the extent it seeks information about template storage, and incorporates its response to Interrogatory No. 11 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; and Johns Paycor00000532-535.

10/31/25 SUPPLEMENTAL ANSWER: In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that finger-sensor templates are stored by Paycor's customers, not Paycor. Finger-sensor templates enrolled by Paycor's customers are housed in each customer's Perform Time clocks. Goodwin Dep. 36:14-25. Finger-sensor templates enrolled by Paycor's customers are also sent as algorithmic calculations of the finger to customer-segregated databases for each customer's exclusive use. Goodwin Dep. 45:13-25; 46:1-46. In addition, in David Goodwin's Declaration, he describes how customers store templates under their sole control either on the timeclock or in dedicated environments in tenant-segregated databases hosted on cloud servers. Johns-Paycor000112 at ¶¶ 18-22.

Paycor objects to Interrogatory No. 13 because Paycor asserts it does not

collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric

information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. Again, Paycor offers no legal basis for the objection, nor does it suggest in what way the interrogatory is improper. Rather, it uses factual disputes as a basis for an objection. It does appear, however, that, despite the objection in 2020, it provides some responsive information in its 10/31/25 supplemental response. Paycor's ability to provide some apparently meaningful response to the interrogatory belies the objection. Still, the objection should be overruled.

INTERROGATORY NO. 14

Identify and Describe the manner in which You collect, process, store, use, disseminate, back up, purge, or delete Biometric Data, Biometric Identifiers, and Biometric Information from each device where it is stored.

Paycor responded:

NOVEMBER 2020 ANSWER: Paycor objects to the phrase "Biometric Data" as vague and ambiguous as that term is not used in BIPA and Plaintiffs do not define the term. Paycor further objects to this Interrogatory because Paycor does not collect, process, store, use, disseminate, back up, purge, or delete biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. Subject to its General Objections and these additional objections, pursuant to Federal Rule of Civil Procedure 33(d), Paycor will produce documents responsive to this Interrogatory.

8/12/25 SUPPLEMENTAL ANSWER: Paycor objects that it does not collect, process, store, use, disseminate, back up, purge, or delete biometric identifiers or information as those terms are defined in BIPA, and objects that BIPA does not use the term "Biometric Data." Paycor further objects to any attempt to extend discovery beyond the Perform Time finger-scan timeclocks at issue, given the limitation of the class to Perform Time clock users. (Dkt. 155). Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 11 to the extent it seeks information about finger-scan

10

template storage and collection, and incorporates its response to Interrogatory No. 11 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d), including Johns-Paycor000001-31; Johns-Paycor00000108-115; Johns-Paycor00000532-535; Johns-Paycor00000423-424.

10/31/25 SUPPLEMENTAL ANSWER: In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that it does not collect, process, store, use, disseminate, or back up biometric identifiers or information as those terms are defined in BIPA. See Paycor's October 31, 2025 Supplemental Answers to Interrogatories Nos. 11–13. In addition, in David Goodwin's Declaration, he describes how customers may replicate templates through an automated process via a series of "gets" and "posts" between the customers' timeclocks and the tenant-segregated databases. Johns-Paycor00000534-535 describe the flow of data between the software and the databases. With respect to the deletion and destruction of templates, see Paycor's October 31, 2025 Supplemental Answers to Interrogatories Nos. 15-16.

Paycor objects to the phrase "Biometric Data" as vague and ambiguous because that term is not used in BIPA and Plaintiffs do not define the term. Paycor does not offer reasons why the absence of a statutory definition makes a term vague or ambiguous. It is likewise difficult to understand how it is, at this stage in this litigation, Paycor does not know what is meant by the term "biometric data". It is a term in common usage and, while it is indeed a broad term contemplating biological data not at issue here (i.e. DNA), it is neither vague nor ambiguous.  Accordingly, Paycor's objection on this basis should be overruled.

INTERROGATORY NO. 15:

Describe the protocol(s), policies, procedure(s) or process(es) You follow to destroy, delete and/or purge Plaintiff's and the Proposed Class Members' Biometric Identifiers and Biometric Information from Your Biometric Device(s).

NOVEMBER 2020 ANSWER: Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. Subject to and without waiving its General Objections and these additional objections, Paycor states that it cannot describe the protocols, policies, procedures, or processes that are the subject of this Interrogatory because the destruction of such data is solely within its customers' control and Paycor has not destroyed any such data except at the express direction of a customer. Paycor has no knowledge of when customers delete or destroy their employees' data or the protocols, policies, procedures, or processes that they may follow to do so. Each customer— not Paycor— would possess information that would be responsive to this Interrogatory regarding the protocols, policies, procedures, or processes they follow when they delete or destroy their employees' data.

8/12/25 SUPPLEMENTAL ANSWER: Paycor objects that it does not destroy, delete or purge biometric identifiers or biometric information as those terms are defined in BIPA, and objects that BIPA does not use the term "Biometric Data." Paycor further objects to discovery regarding "Proposed Class Members" while Paycor's Motion to Amend Class Definition (Dkt. 188) and Plaintiffs' Class Notice Motion and Paycor's Opposition thereto (Dkt. 181; 186) remain pending, as decisions on these Motions will impact the class definition and the resultant timeframe and scope of discovery. Paycor further objects that this Interrogatory is duplicative of Interrogatory No. 14 to the extent it seeks information about finger-scan template "purge" and "deletion," and incorporates its response to Interrogatory No. 14 here. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d),

including    Johns-Paycor000001-31;    Johns-Paycor00000108-115;    Johns Paycor00000532-535; Johns-Paycor00000423-424.

10/31/25 SUPPLEMENTAL ANSWER: In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds that employee templates are automatically and permanently deleted from a customer's dedicated environment after the customer ends its business relationship with Paycor, and terminates its contracts. See Declaration of David Goodwin ¶ 31. Customers can also permanently delete their employees' templates. Since Fall 2021, when a customer indicates that an employee has been terminated, the employee template is deleted from the customer's Perform Time clock and the customer-segregated environment. Leased timeclocks that are returned to Paycor are wiped of any remaining data, by pressing the factory re-set button, which automatically wipes the clock clean. Id.

Paycor objects to this Interrogatory because Paycor's time clocks do not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA or, to the extent that the definitions differ, as defined by Plaintiffs. Again, under Rule 33, if a party believes a particular interrogatory is outside the scope of discovery or otherwise improper, the party may object to the question. The mere difference between the parties' perspective of the facts does not serve as a basis for a valid objection. Paycor can simply state that either its time clocks do or do not collect, capture, obtain receive or otherwise use biometric identifiers. The objection is improper and should be overruled.

INTERROGATORY NO. 16

State whether Paycor has destroyed Plaintiff's Biometric Identifiers and Biometric Information and if so, how such destruction was effectuated and when it took place.

13

Paycor Responded:

11/7/20 ANSWER: Paycor objects to this Interrogatory to the extent it implies that Paycor collected, captured, possessed, stored, used, or otherwise obtained Plaintiffs' biometric identifiers and biometric information. Paycor further objects to this Interrogatory because Paycor does not collect, capture, obtain, receive, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ, as defined by Plaintiffs. As such, Paycor was never in a position to destroy Plaintiffs' biometric identifiers or biometric information. Subject to its General Objections and these additional objections, Paycor states that the destruction of such data is solely within its customers' control and Paycor has not destroyed any such data except at the express direction of a customer. Paycor has no knowledge of when customers delete or destroy their employees' data and each customer—not Paycor—would possess information that would be responsive to this Interrogatory regarding when they delete or destroy their employees' data.

8/12/25 SUPPLEMENTAL ANSWER: Paycor objects that it does not collect or store, and thus does not destroy, biometric identifiers and biometric information as those terms are defined in BIPA. Subject to and without waiving its November 2020 objections, and subject to the Instructions and General Objections above and these additional objections, Paycor responds to this Interrogatory via its document production pursuant to Fed. R. Civ. P. 33(d) Johns Paycor00000108-115; Johns-Paycor00000423; and Johns-Paycor00000442-00000443.

10/31/25 SUPPLEMENTAL ANSWER: In addition and subject to Paycor's August 12, 2025 Supplemental Answer, Paycor further responds by stating that, no later than August 22, 2018, any finger-sensor templates of employees of all Club Fitness customers, including employees of CF Collinsville LLC/Client 78986, where Plaintiff Barron worked, were permanently destroyed. David Goodwin Declaration ¶¶ 31-32.

Paycor objects to this Interrogatory to the extent it implies that Paycor collected, captured, possessed, stored, used, or otherwise obtained Plaintiffs' biometric identifiers and biometric information. This objection is not well-taken. Clearly, the Plaintiff asks

14

"whether" Paycor did those things and does not imply otherwise.  This objection should

be overruled.

REQUEST FOR PRODUCTION NO. 5

All Documents Identifying Paycor's protocols, policies, or procedures Related To the destruction of Biometric Identifiers and Biometric Information, including, but not limited to, any and all retention schedule(s) or guidelines for destroying, disposing of, protecting, or preserving Biometric Identifiers or Biometric Information.

Paycor responded:

NOVEMBER 2020 RESPONSE: Paycor objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of this case to the extent that it seeks information to Paycor's "protocols, policies, or procedures" that apply outside of the State of Illinois and are irrelevant to this case. Paycor further objects to this Request because it does not collect, capture, store, use, disclose, or otherwise obtain biometric identifiers or biometric information as defined by BIPA, or, to the extent the definitions differ as defined by Plaintiffs. As such, Paycor is not required to destroy, dispose of, protect, or preserve biometric identifiers or biometric information. Paycor further objects to this Request to the extent that it implies that BIPA applies to Paycor, which it does not. Subject to and without waiving its General Objections and these additional objections, Paycor will produce non-privileged documents sufficient to identify Paycor's data security policies.

SUPPLEMENTAL RESPONSE: Paycor objects to this Request because it is not temporally limited and is therefore overly broad, unduly burdensome, and disproportionate to the needs of the case. Paycor further objects to the implication or assumption by Plaintiff in this Request that finger-scan templates are "biometric identifiers" or "biometric information," and states they are not. Paycor further objects to the implication or assumption by Plaintiff in this request that Paycor collects, stores, possesses, uses, and/or accesses finger-scan templates, and states that is incorrect, rather, Paycor's customers collect, store, and use finger-scan templates. Subject to, and without waiving these objections, its

15

November 2020 objections, and its General Objections, Paycor has produced the following documents relating to the Perform Time timeclocks, deletion of finger-scan templates, and the implementation of embedded consent: JOHNS-PAYCOR00000001-11; JOHNS-PAYCOR00000031; JOHNS-PAYCOR00000032-35; JOHNS-PAYCOR00000036-40; JOHNS-PAYCOR00000041-46; JOHNS-PAYCOR00000047 52; JOHNS-PAYCOR00000053-55; JOHNS-PAYCOR00000056-62; JOHNS PAYCOR00000063-66; JOHNS-PAYCOR00000067-70; JOHNS-PAYCOR00000071-75; JOHNS-PAYCOR00000076-92; JOHNS-PAYCOR00000093-96; JOHNS-PAYCOR00000097 101; JOHNS-PAYCOR00000102-104; JOHNS-PAYCOR00000105-107; JOHNS PAYCOR00000108-115; JOHNS-PAYCOR00000423; JOHNS-PAYCOR000442-443; JOHNS PAYCOR00030249-30251; JOHNS-PAYCOR00030277-30284; JOHNS-PAYCOR00030362 30375; and JOHNS-PAYCOR00030601-00030862. Paycor further responds that, per the parties' discussions, Paycor is actively undertaking ESI collection and review of potentially relevant custodians and will produce any further documents responsive to this Request as part of its forthcoming ESI production(s).

Paycor objects to this Request as overbroad, unduly burdensome, and disproportionate to the needs of this case to the extent that it seeks information to Paycor's "protocols, policies, or procedures" that apply outside of the State of Illinois and are irrelevant to this case. It also claims that it is vague and ambiguous because it is not "temporally" limited. Paycor fails to elaborate on the reasons for this objection. Apart from Paycor's failure to meet its obligation to provide support for the objection, the information sought by this interrogatory is clearly relevant to the issues to the case regardless whether that information existed or exists outside of Paycor's belief of an appropriate time period and regardless of whether the information applied outside the

16

state of Illinois.  Accordingly, the Court finds that this request is not overbroad, unduly

burdensome or disproportionate and, therefore, Paycor's objections should be overruled.

REQUEST FOR PRODUCTION NO. 12

All Documents, including Correspondence, Identifying any and all efforts to destroy, purge, delete, overwrite or otherwise dispose of Plaintiff's and Proposed Class Members' Biometric Identifiers or Biometric Information during the Relevant Time Period.

Paycor responded:

NOVEMBER 2020 RESPONSE: Paycor objects to the term "Proposed Class Members" as detailed in its General Objection No. 3. Paycor objects to this Request because it seeks information that is not within its possession, custody, or control because Paycor customers control their data and the destruction thereof. Paycor further objects to this request because it does not collect, capture, otherwise obtain, possess, or otherwise use biometric identifiers or biometric information as defined by BIPA, or, to the extent that the definitions differ, as defined by Plaintiffs. As such, Paycor is not required to destroy, purge, delete, overwrite or otherwise dispose of biometric identifiers or biometric information. Subject to and without waiving its General Objections and these additional objections, Paycor states that it does not possess documents responsive to this Request. DECEMBER 2, 2025 SUPPLEMENTAL RESPONSE: Paycor objects to this Request as overly broad and disproportionate to the needs of the case because it purports to include a period of time between October 19, 2021 and the present for which Paycor indisputably had completed implementation of an embedded consent into the Perform Time timeclocks. Paycor further objects to the implication or assumption by Plaintiff in this Request that finger-scan templates are "biometric identifiers" or "biometric information," and states they are not. Subject to, and without waiving these objections, its November 2020 objections, and its General Objections, Paycor has produced the following documents relating to deleting finger-scan templates:  JOHNS-PAYCOR00000032-55;  JOHNS-PAYCOR00000105-107;

17

JOHNS   PAYCOR00000108-144;   JOHNS-PAYCOR00000273;   JOHNS-PAYCOR00000423;   JOHNS   PAYCOR00000442;   and   JOHNS-PAYCOR00000443. Paycor reserves the right to supplement its response to this request as discovery is ongoing. Paycor further responds that, per the parties' discussions, Paycor is actively undertaking ESI collection and review of potentially relevant custodians and will produce any further documents responsive to this Request as part of its forthcoming ESI production(s).

Paycor objects to this Request because it seeks information that is not within its possession, custody, or control because Paycor customers control their data and the destruction thereof. However, Rule 34(a)(1) only requires that a party produce documents in its "possession, custody or control." Thus, Paycor's objection is not appropriate.  In any event, Paycor does provide documents meeting the request in its December 12, 2025 supplement. Again, its production belies its objection.

Paycor also objects to this Request as overly broad and disproportionate to the needs of the case. Paycor claims that it objects because "it purports to include a period of time between October 19, 2021 and the present for which Paycor indisputably had completed implementation of an embedded consent into the Perform Time timeclocks." Given the prior rulings in this case (See Doc. 277, p. 6), the request is not overly broad nor is it disproportionate to the needs of the case. Accordingly, Paycor's objection should be overruled.

## Disposition

Plaintiff's Motion to Compel (Doc. 247) is hereby **GRANTED**. Paycor's specific objections and General Objections (Doc.  234-7 and 247-6)  are  overruled  as  to

18

Interrogatories 7, 13, 14, 15, and 16 and Requests for Production 5 and 12. Paycor shall fully respond to Interrogatories 7, 13, 14, 15, and 16 and Requests for Production 5 and 12 on or before June 26, 2026.

**SO ORDERED.**

Dated: May 26, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.05.26 17:37:40 -05'00'

_____

DAVID W. DUGAN
United States District Judge