IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JUAN BARRON, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 3:20-cv-264-DWD |
| PAYCOR, INC., | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

This matter comes on for hearing on the Plaintiff Juan Barron's Motion for Sanctions. (Doc. 265, 266). Defendant Paycor filed its response to the Motion. (Doc. 270). The parties filed respective supplemental briefing. (Doc. 288, 296). The Motion was argued before the Court on June 2, 2026 and is now ripe for consideration.

**PLAINTIFF'S MOTION FOR SANCTIONS**

Plaintiff contends generally that Paycor has not provided an accurate class size and that this this evident from the several class size assessments and errors made by Paycor in reaching those assessments. More specifically, Plaintiff argues that Paycor's assessments over the years have varied from 14,000 members in 2021, 15,178 in December 2024, to 14,178 in April 2025, and to 11,602 in June 2025. But then, later in June 2025 Paycor announced a new data set it had just discovered that *reduced* the class size to only 2,968. However, just 2 months later, Paycor disclosed that its latest assessment was also

1

incorrect and that the actual class size consisted of 16,546 members. (Doc. 266, pp. 4-5) Of significance is that Paycor appears to have been until November 2025 excluding from the class size assessment those individuals who possibly consented to the scans. So, including those individuals, the class as of November 2025 was approximately 29,922 members. At the time of oral argument in June 2026, the class size grew to approximately 30,000. According to Plaintiff's Counsel, notices have been sent to those individuals.

Plaintiff claims that the various changes in the class sizes configured by Paycor was a product of failure to "double check" the work of Mr. Goodwin, as well as his lack of access to necessary data and his belief that the Class lists would be more precise "if they were rooted in biometric data Paycor has [available to it], such as biometric templates." (Doc. 266, pp 6-7).  Plaintiff also contends that the failure of Paycor to have Mr. Goodwin verify the accuracy of the class size amounts to bad faith that warrants sanctions. (Doc. 266, P. 12). In particular, Plaintiff argues that the discovery of a "new data set" that reduced the class size to 2,968 "lacked any basis in fact [and] should have been obvious to Paycor" since it directly contradicted the sworn deposition testimony of Mr. Dahdaly. *Id.* These considerations, together with allegations that Paycor refused to properly meet and confer about the discrepancies of the new data set, suggest to Plaintiff that Paycor acted vexatiously.

Plaintiff argues that given the lack of trustworthiness of Paycor and the lack of confidence in its methodology to arrive at a precise and accurate class size, sanctions are appropriate under 28 U.S.C. §1927 in the form of access to and an audit of Paycor's databases.

Paycor disagrees that it acted in bad faith in its assessments of class size and that the erroneous dataset that resulted in the reduction of class size to only 2,958 was an innocent error which was readily and timely corrected. Paycor also argues that 28 U.S.C. §1927 does not authorize this Court to impose sanctions other than in the form of fees and certainly not of the kind that would allow Plaintiff's expert "unfettered access to Paycor's customers' segregated, private environments located on over 100 databases, and 500 applications, which contain the data of US-based customers and their US and worldwide-based employees." (Doc. 270, p. 4)

For the reasons explained below, the Plaintiff's Motion for Sanctions will be denied.

### ANALYSIS

28 USCA § 1927 provides that "[a]ny attorney or other person .   .   . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 "explicitly requires that counsel act unreasonably *and* vexatiously before sanctions are warranted." *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (C.A.7 (Ill.),1992)(emphasis in original). And "past decisions have interpreted vexatious to mean either subjective or objective bad faith." *Id.* See, *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987) (indicating that intentional ill will or reckless conduct constitutes vexatious conduct); *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir.1985) (bad faith can be demonstrated by subjective evidence of malice, objective evidence of reckless conduct, or indifference to the law). Mere negligence alone does not satisfy the

3

requirement of §1927. *Walter v. Fiorenzo*, 840 F.2d 427, 433 (C.A.7 (Ill.), 1988) ("A court may impose sanctions under 28 U.S.C. § 1927, against an attorney where that attorney has acted in an objectively unreasonable manner by engaging in a "serious and studied disregard for the orderly process of justice") By its own terms, the statute limits the authority of a district court to impose sanctions to" excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." But Plaintiff does not seek these sanctions. Rather, Plaintiff wants the Court to allow his expert to have access to Paycor's databases for the purpose of conducting an audit. The grant of such access is not a sanction permissible under § 1927.

But Plaintiff pivots to the argument that this Court may invoke its "inherent authority" to impose sanctions because that is appropriate where "those who show willful disobedience of court order, delay, disruption, or hampering enforcement of a court order." *See* Doc. 266, p. 9, citing *Fuery v. City of Chicago*, 900 f3d 450, 463 (7th Cir., 2018). Certainly, "[s]anctions imposed pursuant to the district court's inherent power are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 661–62 (C.A.7 (Ill.), 2012). However, a district court must exercise restraint and caution in exercising its inherent power. *Id.* This Court will do so here.

First, Plaintiff cites to no authority that suggests that a district court may, in its exercise of its inherent authority, impose as a sanction to allow wholesale access to a party's private databases for the purpose of carrying out an audit. The closest that Plaintiff comes is his reference to an unreported West Virgina case, *Adair v. EQT*

*Production Company*, 2018 WL 3617887, at *1 (W.D.Va., 2018). There, the Plaintiffs contended that Defendant had failed to provide it with accurate lists of the names and addresses of putative class members and had resisted doing so since the classes were certified approximately a year prior. But far from helpful to Plaintiff in this matter, the Court in *Adair* denied the sanctions request and directed Defendant to correct its class list. *Id* at *2.

Second, Plaintiff points to no specific act on the part of the Defendant or its attorneys that amounts to a willful misrepresentation of class size. [1] Rather, Plaintiff points to the fluctuations in the class size estimated by Paycor for the proposition that Paycor's conduct has been vexatious and has caused intolerable delay. Certainly, the class size as assessed by Paycor did fluctuate on several occasions in 2024 and 2025. The first eyebrow raising downward fluctuation occurred in early June 2025 resulting in a class size of 11,620. The second significant downward assessment occurred later the same month when the putative class size was estimated by Paycor to be only 2,968. Paycor's counsel represented to the Court on August 13, 2025, that 2,968 was, in fact, the class size. (Doc. 217, Tr. p. 12). During that hearing, the Court ordered Paycor to produce both the 2,968 and the 15,178 lists, which Paycor did. Shortly thereafter, Plaintiff brought to the attention of Paycor that the lists demonstrated discrepancies. (Doc. 266, p. 5). The next

---

[1] During oral argument, the Court asked Counsel to point to misrepresentations were made by Defendant and none were identified. (Tr. p. 5) Still, the Court is mindful of the obvious resistance Paycor exhibited toward this Court's refusal to exclude "consenters" from the class definition but the record does not clearly reflect that Paycor intentionally misrepresented a class membership assessment on that basis.

day, on September 5, 2025, Paycor filed its Notice of Withdrawal of Argument, assigning the error to calculations made by Mr. Goodwin.

Plaintiff's claims of willfulness are based mostly upon Paycor's 2,968 member class size and the failure of Paycor to "confirm, investigate or double-check" Mr. Goodwin's First Supplemental Declaration (Doc. 266; see also Doc. 186-1) Plaintiff focuses on the 2,968 class size reduction as evidence necessary to justify sanctions, but the record reflects that it was more likely an error of negligence. Once discovered it was self-reported. Paycor immediately withdrew its argument that the class was only 2,968 individuals and submitted Mr. Goodwin's Second Supplemental Declaration. (Doc. 212, 212-1) These observations from the record suggest to this Court that Paycor's conduct relative to the class size assessments and calculations was not vexatious under § 1927. Likewise, the Court cannot find, based upon the record before it, that Paycor, "willfully abused the judicial process or otherwise conducted litigation in bad faith" so as to warrant sanctions under the Court's inherent authority. See, *Tucker v. Williams*, 682 F.3d 654, 661–62 (C.A.7 (Ill.), 2012).

Worthy of note here is that the complexity of Paycor's platforms, databases, datasets and templates for the collection of unique biodata is readily apparent from the record. Paycor in its briefing emphasizes the complexity of and the breadth of its efforts in arriving at a reliable estimate of class membership and outlines. (Doc. 270, pp. 10-14) Likewise, Paycor outlines the testimony of Mr. Goodwin and Mr. Dahdaly to illustrate its efforts. *Id*. Paycor asserts that "Paycor's systems are complex, and Paycor has no data that would definitely show who used a finger- or face-scan device in Illinois." (Doc. 296,

p. 5) It is apparent that over time repeated queries with different search parameters may result in a different number of class members. Here, with the exception of the errors that resulted in a massive reduction in the class size, the other changes in class sizes were relatively small. These small changes in class size calculations do not necessarily point to any willful or contumacious behavior on the part of Paycor that would call for sanctions.

Before concluding, the Court should note as well that the apparent confusion over fluctuations in the class membership occurred during a period when avenues of supplemental discovery were available. Supplemental requests for production and supplemental interrogatories, designed and fashioned to address the very questions raised in the instant motion, were apparently not tendered. Nor were requests for supplemental depositions made. Possibly, given the obvious animosity existing between the parties, Plaintiff believed such efforts would be futile. Still, even if it was futile to make the requests, the Court would have been available to consider such requests, and expend possibly less time in that consideration than with the present motion and its plentiful pages of briefing and exhibits. Plaintiff asks for an evidentiary hearing to build its case in support of its motion for sanctions generally and "to determine the mechanics of Plaintiff's audit" specifically. (Doc. 288, p. 11) Under these circumstances, the Court declines to do so. "The inherent authority of federal courts to punish misconduct before them is not a grant of authority to do good", nor is it, this Court believes, to be used in place of available discovery processes. *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Company*, Inc., 313 F.3d 385, 390 (C.A.7 (Ill.), 2002)

## DISPOSITION

Plaintiff Juan Barron's Motion for Sanctions (Doc. 265 and 266) is DENIED.

**SO ORDERED.**

Dated: June 16 2026.

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.06.16 07:13:35 -05'00'

_____

DAVID W. DUGAN
United States District Judge

8